ANASTASIA P. BODEN, No. 281911
Email: aboden@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
Email: jthompson@pacificlegal.org
DANIEL M. ORTNER, No. 329866
Email: dortner@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiff Creighton Meland, Jr.*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREIGHTON MELAND, JR.,<br><br>                            Plaintiff,<br><br>    v.<br><br>ALEX PADILLA, in his official capacity as Secretary of State of the State of California,<br><br>                            Defendant. | No. 2:19-cv-02288-JAM-AC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

SB 826, or California's "Woman Quota," requires shareholders of publicly traded companies that are incorporated or headquartered in the state to elect a certain number of women to the corporations' boards of directors. Since the start of 2020, that quota has stood at one female director per board. But by the end of 2021, the quota increases depending on the board's size.

Creighton Meland, a shareholder of a publicly traded corporation headquartered in California, has sued under Section 1983 and the Equal Protection Clause of the Fourteenth Amendment because the challenged law requires him to make decisions on the basis of sex. Specifically, the law forces him and all other shareholders to take sex into account at the annual shareholder elections when they vote for the board of directors. Meland alleges that this requirement is unconstitutional because it creates a sex-based classification that is not narrowly

Plaintiff's Opposition to Defendant's MTD

1

tailored to any compelling government interest. He seeks to be free of state-mandated discrimination so that he may legally vote for the candidate of his choice without regard to sex.

Plaintiff has standing to bring this claim. SB 826 seeks to influence shareholder voting decisions, making shareholders the object of regulation. Plaintiff has alleged that the quota is coercive and a vast amount of shareholders agree, as evidenced by the fact that they have elected women to corporate boards in droves since the law's passage. As long as SB 826 is in place, Meland will be required, by law, to vote at annual elections according to a sex-based quota. He is thus injured now and will continue to be injured until the law is invalidated. The Secretary's[1] motion should be denied.

## STATEMENT OF THE FACTS

**A. The Challenged Law**

SB 826 requires publicly traded companies that are incorporated or headquartered in California to have a minimum number of women on their boards of directors. As of December 31, 2019, corporations have been required to have a minimum of one female director on their boards. Complaint ¶ 9. By December 31, 2021, that number increases depending on the board's size: a corporation with four or fewer directors must have a minimum of one female director; a corporation with five directors must have a minimum of two female directors; and a corporation with six or more directors must have a minimum of three female directors. *Id.* ¶ 9. The Secretary of State is authorized to impose fines for any violation of the Woman Quota. *Id.* ¶ 14. A first violation results in a $100,000 fine. *Id.* Any subsequent offense is $300,000. *Id.* Each seat that must be filled by a woman but is not so filled constitutes a separate violation. *Id*.

To help enforce the quota, SB 826 requires corporations to file an annual statement with the Secretary which discloses whether the corporation complies. *Id.* ¶ 12. A corporation's failure to report or to timely report whether it complies with the quota will result in a $100,000 fine. *Id.* ¶ 16. The Secretary is then required to publish reports on his Office's website listing compliant

///

---

[1] Secretary Padilla is sued in his official capacity pursuant to *Ex Parte Young*, 209 U.S. 123 (1908).

Plaintiff's Opposition to Defendant's MTD

2

corporations, and has already published one such report.[2] The Secretary is also authorized to implement additional regulations necessary to enforce the Woman Quota. Cal. Corp. Code § 301.3 (e)(1).

Before SB 826 was enacted, the California State Assembly Judiciary Committee recognized that "SB 826 would likely be challenged on equal protection grounds and the means that the bill uses, which is essentially a quota, could be difficult to defend." *Id.* ¶ 8. The Assembly floor analysis included the same language. *Id*. When Governor Brown signed SB 826 into law, he acknowledged that "[t]here have been numerous objections to this bill and serious legal concerns have been raised." *Id.* ¶ 7. He further recognized that these "potential flaws . . . may prove fatal to its ultimate implementation." *Id*. Despite these concerns, he signed the law out of his desire to respond to "recent [public] events." *Id.* ¶ 7.

**B. SB 826's Effect**

Since the Woman Quota was signed into law, the Secretary has taken several actions in furtherance of the quota. On May 31, 2019, the Secretary sent a letter to all publicly traded corporations with a California address to inform them of the Woman Quota and the new filing requirements.[3] Then on December 16, 2019, the Secretary sent a letter to all corporations that it identified as publicly traded and incorporated in California to inform them of the same.[4]

On July 1, 2019, the Secretary published a report that identified more than 500 companies subject to the Woman Quota and that listed those companies that were known to be in compliance.[5] The information in the report was derived from publicly available information from California and federal corporate filings, stock exchanges, company websites, and other internet sources.

///

---

[2] https://bpd.cdn.sos.ca.gov/women-on-boards/WOB-Report-04.pdf. The Court may take judicial notice of publicly available information found on a government website. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015); Fed. R. Evid. 201. Plaintiff requests that this Court do so for this document and for all other public documents from government websites cited herein.
[3] https://bpd.cdn.sos.ca.gov/women-on-boards/CorpDisletter.pdf
[4] https://bpd.cdn.sos.ca.gov/women-on-boards/RevCorpDisLetter.pdf
[5] https://bpd.cdn.sos.ca.gov/women-on-boards/final-report.xlsx

Each year the Secretary must publish an updated report on the Office's website listing the number of corporations that 1) were in compliance with the Woman Quota during at least one point of the year; 2) moved their headquarters either to or from California during the year; or 3) ceased to be publicly traded over the course of the year. Complaint ¶ 11. The Secretary published the first of these reports on March 1, 2020, as required by SB 826.[6]

The Woman Quota has already started to have its intended effect of pressuring shareholders into electing women to corporate boards. Estimates show that before the quota, between a quarter and a third of companies lacked a female member.[7] Some reports show that only 4% now lack a female director.[8]

### C. Plaintiff Creighton Meland, Jr.

Plaintiff Creighton Meland, Jr., is a shareholder of OSI Systems, Inc. (OSI), a publicly traded company that is incorporated in Delaware and headquartered in Hawthorne, California. Complaint ¶¶ 4, 17. Prior to 2010, OSI was incorporated in California. *Id.* ¶ 18. However, in 2010 the company reincorporated in Delaware to "enhance shareholder control over [the] company's Bylaws." *Id.* ¶ 18. Because OSI is a publicly traded company headquartered in California, it must comply with the Woman Quota or face fines. *Id.* ¶ 20.

The shareholders of OSI, including Meland, select who sits on the corporation's board of directors. *Id.* ¶ 23. While a Nominating and Governance Committee helps to vet and recommend board members, it is ultimately the shareholders of OSI that must vote on whether a particular individual is elected to the OSI board at annual elections. *Id.* ¶ 23. Individual shareholders or groups of shareholders may also submit names of candidates for election to the board of directors. *Id.* ¶ 24.

///

---

[6] https://bpd.cdn.sos.ca.gov/women-on-boards/WOB-Report-04.pdf
[7] https://www.nytimes.com/2019/12/17/us/california-boardroom-gender-quota.html; https://www.latimes.com/opinion/story/2020-01-06/woman-quota-law-scares-companies-into-doing-the-right-thing.
[8] https://www.axios.com/californias-woman-quota-law-seems-to-be-working-f18e9450-40de-483d-99f6-d8b850439824.html (estimating that only 4% of companies are out of compliance); KPMG, The Women Changing California's Boardrooms, https://boardleadership.kpmg.us/content/dam/boardleadership/en/pdf/2020/the-women-changing-california-boardrooms.pdf.

1  A person is elected to OSI's board if a plurality of shareholders vote in favor at the annual shareholder meeting. *Id.* ¶ 25.

Prior to December 2019, OSI had an all-male seven member board. *Id.* ¶ 21. On December 12, 2019, at its Annual Meeting of Stockholders, the shareholders of OSI voted to place Keli Bernard, a woman, on the board to fill a spot vacated by another board member.[9] Because of its size, the shareholders will be required to vote annually to retain Mrs. Bernard or another woman indefinitely, and to add two more female board members by the end of 2021. *Id.* ¶ 21. Plaintiff intends to vote annually at shareholder elections. *Id.* ¶ 27.

## STANDARD OF REVIEW

Defendant has moved to dismiss for lack of standing under Rule 12(b)(1). When considering a motion to dismiss, courts "must review the complaint in the light most favorable to Plaintiffs, accept their factual allegations as true," and grant dismissal only when "Plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). At the pleading stage, "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

There is no "probability requirement" at the pleading stage. *Id.* Instead, plaintiffs must allege facts sufficient to "raise a reasonable expectation that discovery will reveal evidence" in support of their allegations. *Id.* at 556. A well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (cleaned up). Plaintiff's complaint withstands Defendant's motion.

## SUMMARY OF THE ARGUMENT

Plaintiff has alleged an injury that is ripe and not moot, and he therefore has standing to bring this suit. First, Meland has alleged an Article III injury that directly affects his own rights and is non-derivative of any injury to the corporation. The Constitution not only guarantees that persons will not be subject to "the burden of invidiously discriminatory disqualifications," *Ne. Fla. Chap.*

---

[9] Defendant requests judicial notice of this fact, and Plaintiff does not dispute it.

Plaintiff's Opposition to Defendant's MTD

5

of *Assoc. Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 508 U.S. 656, 666 (1993), it also guarantees they will not be forced to effectuate discrimination themselves. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002). Plaintiff alleges that he is injured by SB 826 because it requires shareholders like him to take sex into account when they elect the board of directors. That injury satisfies prudential shareholder standing concerns because it is separate and distinct from the purely financial injury caused to the corporation by the penalty.

Plaintiff's claim is ripe because the complaint alleges a credible threat of enforcement. Plaintiff alleges that he wishes to act in a way prohibited by law: that is, voting without reference to the candidate's sex. And he has alleged a substantial threat of enforcement because the Secretary is collecting compliance information and publicly releasing it in an attempt to coerce shareholders into complying. Moreover, shareholders are forced to comply now because elections are annual, and the Secretary may decide to impose penalties at any time between elections.

That claim is not made moot by the fact that the shareholders at OSI Systems elected a woman at the last election.[10] In fact, that only makes the injury more concrete. Plaintiff continues to be injured because he will have to vote again annually to keep the company in compliance, and will have to vote to add *more* women to the board in future elections to satisfy the increasing mandates.

## ARGUMENT

### I.   Plaintiff Has Standing

Like all plaintiffs, Meland must satisfy Article III's standing requirements. As a shareholder, he must also satisfy prudential concerns, which requires him to demonstrate a "direct, personal interest in a cause of action" that is separate from any harm to the corporation. *Franchise*

---

[10] Whether Plaintiff ultimately votes in or out of compliance with the quota, or whether Plaintiff's preferred candidate ultimately wins the election, is irrelevant to his standing. Plaintiffs need not actually violate the law to have standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 163 (2014) ("Nothing in this Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he *will* in fact violate that law."). And the injury in an Equal Protection Challenge is not denial of a benefit or specific outcome, but rather the simple fact of being subject to a sex-based classification. *See, e.g., Ne. Fla. Chap. of Assoc. Gen. Contractors of Am.*, 508 U.S. at 666.

Plaintiff's Opposition to Defendant's MTD

6

*Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). Because SB 826 requires shareholders to take sex into account when voting, it imposes an Article III injury directly on shareholders, and Mr. Meland has standing to challenge the quota.

### a.   Meland has pleaded an Article III injury

In order to establish Article III standing, a plaintiff must demonstrate an injury in fact, fairly traceable to the defendant's conduct, which is likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560–61. Plaintiff has established all three.

Meland is injured because the purpose and effect of SB 826 is to coerce shareholders into voting for a minimum number of female board members, and "[a] person required by the government to discriminate by ethnicity or sex against others has standing to challenge the validity of the requirement." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 707 (9th Cir. 1997); *accord Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 798 (9th Cir. 2001); *see also RK Ventures, Inc.*, 307 F.3d at 1055–56 (same); *cf. Peterson v. City of Greenville*, 373 U.S. 244, 248 (1963) (A "law compelling persons to discriminate against other persons because of race" is a "palpable violation of the Fourteenth Amendment."); *Scott v. Greenville Cty.*, 716 F.2d 1409, 1415–16 (4th Cir. 1983) (same). Plaintiff has not only suffered an injury at the previous election, where shareholders voted in anticipation of the quota going into effect, he will continue to be injured in the future because he must vote annually according to SB 826's sex-based criteria.[11] That injury is fairly traceable to the defendant because Secretary Padilla is responsible for enforcing the challenged law. A favorable decision will redress that injury because it will restore Plaintiff's ability to vote free of a sex-based mandate.

### i.   Defendant cannot recast Plaintiff's injury as a "corporate injury"

Secretary Padilla argues that Plaintiff has suffered no injury because the law governs "corporate conduct, not shareholder conduct." Mtn. to Dismiss at 7. But that semantic argument puts form over substance because the corporation itself has no control over who becomes a board

---

[11] Shareholders are also injured because they must take the quota into account if they seek to nominate a board member for election, and must make sex-conscious voting decisions when deciding whether to appoint, retain, or remove a board member.

Plaintiff's Opposition to Defendant's MTD

7

member. That decision is made by the shareholders who vote at annual meetings. *See* Complaint ¶ 43; *Pell v. Kill*, 135 A.3d 764, 786 (Del. Ch. 2016) ("The stockholders' power is the right to vote on specific matters, in particular, in an election of directors."). The entire point of the law, then, is to influence the behavior of the *shareholders*, because they are the ones who choose the composition of the board.[12]

### b. Shareholders are not free to vote how they want

Where the plaintiff is the object of regulation, "there is ordinarily little question" that the plaintiff has standing. *Lujan*, 504 U.S. at 561–62. The Secretary argues, however, that because the penalty for failing to comply with the quota is imposed on corporations, the quota does not actually require shareholders to do anything. Instead, shareholders are purportedly "free" to choose between voting in accordance with the quota or flouting it.[13] This argument ignores the penalty's coercive effect.

Plaintiff alleges that although the penalty is imposed upon corporations, it is designed to twist shareholders' arms into complying; it's akin to the state saying "do what I say or I'll punish your friend." Complaint ¶ 30. In addition to using the penalty as a threat, the Secretary publishes a

---

[12] Though the law does not explicitly say, "shareholders must vote for a minimum number of women," that is the exactly the way the law is intended to work. "Whether someone is in fact an object of regulation is a flexible inquiry rooted in common sense." *See Texas v. EEOC*, 933 F.3d 433, 446 (5th Cir. 2019). Common sense tells us that though the statute does not spell it out in precise terms, it requires shareholders to vote at annual elections according to the quota. Defendant cannot recast the law as "a corporate obligation" by ignoring the way board elections work in practice. *See Colum. Broad. Sys. v. United States*, 316 U.S. 407, 422 (1942) (standing is unaffected by the fact that a law is not explicitly directed at the injured party where it sets standards that affect a party's rights). Defendant's argument would mean that a law requiring "cars to be smog tested" imposes a mandate on the car rather than its owner. The "object of regulation" is a practical inquiry, not a semantic game.

[13] SB 826's stated purpose is to "to proactively increase the number of women serving on corporate boards." The bill further states that such a mandate was necessary because *non*-mandatory resolutions had been ineffective. The only way that the law can accomplish that purpose is if the shareholders vote for women, and the penalty is therefore designed to change shareholder behavior. If the government argues that shareholders will *not* feel coerced into obeying the mandate, it will be arguing that its law serves no purpose. *See also Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) (finding it "odd that the Agency is arguing that it must have a strict rule *now* to get [its objects] to be more compliant with [the agency's] rules, but at the same time it is asserting that these rules are not meant to change anyone's immediate behavior enough to confer standing to challenge that regulation").

Plaintiff's Opposition to Defendant's MTD

list of compliant and non-compliant corporations to stigmatize the latter as discriminatory. Together, the quota, the penalty, the record keeping, and the public shaming, put shareholders between the "Scylla of intentionally flouting state law and the Charybdis of forgoing what [they] believe[] to be constitutionally protected activity." *See Steffel v. Thompson*, 415 U.S. 452, 462 (1974). Plaintiff has therefore plausibly alleged that the quota has a coercive effect on shareholder behavior, which is a cognizable injury under Article III. *See Texas v. Equal Employment Opportunity Comm'n*, 933 F.3d 433, 448 (5th Cir. 2019) (concluding that it would "strain credulity" to find that a declaration that certain conduct is unlawful "does not require action immediately enough to constitute an injury-in-fact").

Importantly, courts have held that plaintiffs have standing to challenge mandates even when there's *zero* penalty for failing to comply. The Fifth Circuit recently ruled that the plaintiffs had standing to challenge the requirement that individuals obtain health insurance (the "individual mandate") even though Congress had reduced the penalty for failure to comply to $0. *See Texas v. United States*, 945 F.3d 355, 380 (5th Cir. 2019). The court ruled that it was reasonable to expect that some people will choose to obey the law simply because *it's the law*. Thus, even where there is *no* threat of *any* penalty to *anyone* in the event of non-compliance, plaintiffs have standing to challenge a requirement where it imposes a legal obligation on them and where they plausibly allege that they feel obligated to follow the law. *Id.*

Meland has made an allegation of concrete harm here. He is injured because he is forced, *by law,* to vote sex-consciously and failure to satisfy the quota will result in OSI's noncompliance being posted on a government website, stigmatization, and the potential of six-figure fines that can be imposed at any time. And at the very least, "some people will follow the law precisely because it is law." *Texas*, 945 F.3d at 379.[14] Despite Defendant's insistence that shareholders are entirely

---

[14] Whether it's the threat of the penalty to the corporation or the mere fact that the law imposes a mandate, scores of shareholders clearly feel compelled to abide by the quota, because they've voted for several women candidates in anticipation of the quota. *See supra* notes 6 & 7. These shareholders believe that the quota requires them to vote in a certain way and feel compelled to abide by that mandate. The fact that the shareholders of OSI recently voted a woman onto their board only underscores this theory. Defendant's claim that shareholders are free to "ignore" the quota is belied by how effective the quota has been in effectuating coercion.

free to disregard the quota, Plaintiff has alleged that the penalty and the public reports have a coercive effect on shareholder behavior. He has therefore pleaded an Article III injury.

### c. Plaintiff satisfies prudential shareholder standing concerns

As a prudential matter, a shareholder generally "cannot rest his claim to relief on the legal rights or interests" of a corporation. *Alcan Aluminium Ltd.*, 493 U.S. at 336. Instead, he must assert "a direct, personal interest in a cause of action" that is non-derivative of the corporation's injury. [15] *Id.* Whether a shareholder has suffered a direct injury rather than a derivative one is determined by the law of the state of incorporation. *See Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (courts should "rely upon state law to determine whether the plaintiffs' claims are direct or derivative"); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 879 (3d Cir. 1990) (same); *Harpole Architects*, *P.C. v. Barlow*, 668 F. Supp. 2d 68, 76 (D.D.C. 2009) (same).

Under Delaware law, whether an injury is direct or derivative is determined by two factors: "Who suffered the alleged harm—the corporation or the suing stockholder individually—and who would receive the benefit of the recovery or other remedy?" *Tooley v. Donaldson*, *Lufkin & Jenrette*, *Inc.*, 845 A.2d 1031, 1035 (Del. 2004). Plaintiff has alleged a direct injury because he asserts an injury to his shareholder voting rights—that is, being forced to take sex into account when voting on the board of directors—that is separate from any injury to the corporation, and because the remedy he seeks would accrue to him.

Under Delaware law, any act that limits or encroaches upon shareholder voting rights causes a direct injury to shareholders rather than a derivative one. *Tooley*, 845 A.2d at 1036 (lawsuits involving "injuries affecting [an individual's] legal rights as a stockholder" are direct rather than derivative). Delaware case law is particularly protective of shareholder voting rights. *See, e.g., EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("shareholder voting rights are

---

[15] "[T]he same set of facts can give rise to both a direct claim and a derivative claim." *Gentile v. Rossette*, 906 A.2d 91, 100 n.19 (Del. 2006); *Lipton v. News Intern. PLC*, 514 A.2d 1075, 1079 (Del. 1986) (same). Additionally, under Delaware law, a shareholder's injury need not be "separate and distinct from that suffered by other stockholders." *Northstar Fin. Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1058 (9th Cir. 2015) (citing *Tooley*, 845 A.2d at 1038-39 and applying Delaware law).

sacrosanct," and the "ability to vote for the directors the shareholder wants to oversee the firm" is a "fundamental governance right" possessed by the shareholder); *MM Companies*, *Inc. v. Liquid Audio*, *Inc.*, 813 A.2d 1118, 1126 (Del. 2003) (A shareholder's "right to vote on specific matters, in particular, in an election of directors" is the "ideological underpinning" of corporate legitimacy.). An act impairs those rights even when it merely limits when and how shareholders can elect directors (for example, only at certain meetings and with a certain vote percentage). *In re Gaylord Container Corp. Shareholders Litig.*, 747 A.2d 71, 83 (Del. Ch. 1999); *see also In re Tri-Star Pictures*, *Inc.*, *Litig.*, 634 A.2d 319, 331 (Del. 1993), *as corrected* (Dec. 8, 1993) (allegation that a merger reduced the shareholders' voting power pleaded direct injury); *Pell*, 135 A.3d at 794 (an injury to "the right of shareholders to a meaningful exercise of their voting franchise" is a direct injury); *Carmody v. Toll Bros.*, 723 A.2d 1180, 1189 (Del. Ch. 1998) (plaintiff's allegation that activity "directly impair[ed] shareholders' voting rights" pleaded direct injury).

Here, SB 826 harms Plaintiff directly because it affects his ability to vote for the board member of his choice. Ordinarily, a shareholder is free to "exercise wide liberality of judgment in the matter of voting," and vote for any individual according to his conscience. *Ringling Bros.-Barnum & Bailey Combined Shows v. Ringling*, 29 Del. Ch. 610, 622 (1947). Under the Woman Quota, the State is trying to influence that choice and coerce a certain outcome. Plaintiff is not suing to vindicate a financial injury to the corporation, like lost profits, or monetary loss caused by the penalty. He is suing to vindicate his constitutional rights and therefore satisfies the first prong of *Tooley*.

Plaintiff satisfies the second prong because an injunction and declaratory judgment would benefit Plaintiff and other shareholders directly by freeing them up to nominate, support, and vote for director candidates without regard for the sex of the candidate.[16]

---

[16] Notably, Delaware courts "have been more prepared to permit the plaintiff to characterize the action as direct when the plaintiff is seeking only injunctive or prospective relief," as opposed to damages. *Grimes v. Donald*, 673 A.2d 1207, 1213 (Del. 1996) (citing American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations Section* § 7.01 cmt d. (1992)), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see also Grayson v. Imagination Station*, *Inc.*, No. CIV.A. 5051-CC, 2010 WL 3221951, at *6 (Del. Ch.

### d. Plaintiff's injury is ripe

The ripeness requirement exists to prevent courts "from entangling themselves in abstract disagreements" and to ensure that a policy's "effects [have been] felt in a concrete way." *Municipality of Anchorage v. United States*, 980 F.2d 1320, 1325 (9th Cir. 1992). "Pure legal questions that require little factual development," like those posed here, "are more likely to be ripe."[17] *San Diego County Gun Rights Committee v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996).

A claim is ripe where the plaintiff states an intention to act in a way protected by the Constitution but prohibited by law combined with a credible threat of enforcement. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 (9th Cir. 2013) (a pre-enforcement case is ripe where plaintiff states "a realistic danger" of injury due to the "statute's operation or enforcement"). Here, Meland alleges that he wishes to vote according to his conscience but is subject to sex-discriminatory interference by the State. Complaint ¶ 28. He alleges that the Secretary is enforcing the law by collecting and publishing that data in an attempt to coerce shareholders of non-compliant corporations. *Id.* ¶¶ 11–13. Moreover, the statute authorizes Defendant to impose fines at any time. Importantly, shareholders are forced to comply now because election results stand for a year, and Defendant may choose to impose penalties at any time between elections. *See Texas*, 945 F.3d at 378 (noting plaintiffs are injured when they must take steps now to ensure compliance later). And while Defendant tepidly states he has not *yet* imposed penalties, he does not specifically disclaim an intention to do so.[18] *See Babbitt v. United*

---

2010) ("The remedy sought … supports a finding that [a complaint] states a direct claim."). When only injunctive or declaratory relief is sought, "the policy considerations favoring a derivative action are less persuasive, because typically the requested relief will not involve significant financial damages against corporate officials, the period in which the corporation is exposed to multiple suits will be relatively brief, and the relief will benefit all shareholders proportionately." *Principles of Corporate Governance: Analysis and Recommendations Section* § 7.01 cmt d. (1992).

[17] Indeed, this case is so ripe that both the California Governor and Legislature recognized it was subject to legal challenge when it was adopted.

[18] Even if Defendant were to say now that he did not intend to enforce the Woman Quota, the case would not be moot. Absent "the repeal, amendment, or expiration of challenged legislation," the voluntary cessation of enforcement does not moot a case because "the defendant would be free to resume the conduct." *Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019).

Plaintiff's Opposition to Defendant's MTD

*Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (finding case ripe where the government "has not disavowed any intention of invoking the ... penalty provision"). That's enough to force shareholders to act now to avoid punishment later. The fact that shareholders are largely complying demonstrates that they, too, feel there is a credible threat of enforcement.

Defendant argues that the case is not ripe because he has not *yet* imposed penalties and he allegedly must issue regulations before he may even do so.[19] But the bill's text indicates that the Legislature expected it would be immediately enforced because the prior non-binding resolutions had been ineffective. *See* SB 826. The Legislature therefore estimated that the Secretary would spend about $500,000-$600,000 a year to enforce it.[20] Moreover, the statute makes non-compliance illegal on its face and explicitly authorizes the Secretary to impose fines. There's no reason to believe he must promulgate additional regulations before doing so and, nevertheless, he does not disavow that he will. Lastly, Defendant *is*, at present, enforcing the statute by collecting compliance data and publishing it—which alone is enough to coerce some shareholders into complying. A Damoclean sword hangs over the head of all shareholders, forcing them to vote today to protect themselves from tomorrow.[21] The case is therefore ripe.

### e.     Plaintiff's injury is not moot

Plaintiff's claims are live. Every year, Meland will be required to vote for the board of directors according to the quota established by SB 826. That injury is a continuous one because elections happen annually. Plaintiff therefore seeks prospective relief to shield him from having to vote according to the quota at future annual shareholder elections.

---

[19] Again, notwithstanding the penalties, it's reasonable to assume some people follow because it's the law. *See Texas*, 945 F.3d at 378.

[20] *See* SB 826 Bill Analysis, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826. *See also Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) ("We see no reason to assume that the … legislature enacted this statute without intending it to be enforced.").

[21] Prudential considerations, including "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration" weigh in favor of ripeness. *See Abbott Labs.*, 387 U.S. at 149. This lawsuit asks only a legal question: is the statute substantially related to a compelling state interest. Until that question is resolved, Plaintiff and other shareholders are suffering a hardship.

Plaintiff's Opposition to Defendant's MTD

13

Defendant claims that the case is moot because one election has passed and SB 826 successfully coerced shareholders into voting in accordance with the quota at that election. First, this misunderstands the nature of Plaintiff's injury; he is not injured by having his preferred candidate win or lose or by having a woman elected to the board, or by the imposition of a penalty; he is injured by the coercive requirement that he make sex-conscious decisions. That injury will recur every year regardless of who wins the election. Second, in a case for prospective relief, the fact that one election has taken place does not obviate Plaintiff's need for protection from future elections. A case is moot only when "it [is] absolutely clear that the litigant no longer ha[s] any need of the judicial protection that it sought," *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 224 (2000); *see also Smith v. Univ. of Wash., Law Sch.*, 233 F.3d 1188, 1194 (9th Cir. 2000) (a case is moot only where "events have completely and irrevocably eradicated the effects of the alleged violation").[22] Plaintiff is still in need of protection from upcoming elections—a fact that is made especially plain given that the quota is set to increase.[23]

DATED: March 10, 2020.

    Respectfully submitted,

    ANASTASIA P. BODEN
    JOSHUA P. THOMPSON
    DANIEL M. ORTNER

    By: s/ Anastasia P. Boden
        ANASTASIA P. BODEN

    *Attorneys for Plaintiff Creighton Meland, Jr.*

---

[22] Defendant also relies on "prudential mootness." But "[t]he Ninth Circuit has not explicitly adopted the prudential-mootness doctrine." *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358-PK, 2007 WL 4117978, at *7 (D. Or. Nov. 16, 2007). Nor has the Supreme Court. And in any event, it is inappropriate here where the Court still has the ability to grant Plaintiff meaningful prospective relief.

[23] Even if there were any colorable argument that the case was made moot by the past election, the mootness doctrine would be inappropriate under the capable of repetition yet evading review doctrine. Under that doctrine, the case is not moot where, 1) the challenged action is in its duration too short to be fully litigated prior to expiration and 2) there is a reasonable expectation the same complaining party would be subject to the same action again. *Wolfson*, 616 F.3d at 1054.

Plaintiff's Opposition to Defendant's MTD

14

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** has been served through the Court's CM/ECF system on all registered counsel this 10th day of March, 2020.

DATED: March 10, 2020.

Respectfully submitted,

ANASTASIA P. BODEN
JOSHUA P. THOMPSON
DANIEL M. ORTNER

By: s/ Anastasia P. Boden
    ANASTASIA P. BODEN

*Attorneys for Plaintiff Creighton Meland, Jr.*