ANASTASIA P. BODEN, Cal. Bar No. 281911
Email: ABoden@pacificlegal.org
JOSHUA P. THOMPSON, Cal. Bar No. 250955
Email: JThompson@pacificlegal.org
DANIEL M. ORTNER, Cal. Bar No. 329866
Email: DOrtner@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREIGHTON MELAND, JR.,<br><br>    Plaintiff,<br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,<br><br>    Defendant. | No. 2:19-cv-02288-JAM-AC<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:    September 28, 2021<br>Time:    1:30 p.m.<br>Place:    Courtroom 6, 14th Floor<br>Judge:    Hon. John A. Mendez |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ............................................................................................................................1
BACKGROUND ..............................................................................................................................1
    I.    SB 826 and Its Requirements...........................................................................................1
    II.   Plaintiff and Procedural History.......................................................................................3
LEGAL STANDARD .......................................................................................................................4
ARGUMENT ....................................................................................................................................4
    I.    Meland Is Likely to Prevail on the Merits ......................................................................4
        A.   Sex-based Balancing for Its Own Sake Cannot Justify the Quota ................................5
        B.   The Woman Quota's Sex-based Stereotypes Are Offensive and Illegitimate ..................6
        C.   The Woman Quota Is Not Substantially Related to Remedying Discrimination...............7
            1.   Disparities alone do not demonstrate discrimination ......................................................7
            2.   The Woman Quota is not properly tailored to its end.................................................10
            3.   The Woman Quota fails if only because it lasts in perpetuity ...................................12
    II.   Meland Will Suffer Irreparable Harm Absent a Preliminary Injunction ...........................12
    III.  The Balance of Harms and Public Interest Weigh in Plaintiff's Favor................................13
    IV.  No Security Should Be Required ...................................................................................13
CONCLUSION ................................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009)..................................................................................4

*Associated Gen. Contractors of Am., San Diego Chapter, Inc. v.
  California Dep't of Transp.*,
  713 F.3d 1187 (9th Cir. 2013)..................................................................................4

*Associated General Contractors of California, Inc. v.
  City and County of San Francisco*,
  813 F.2d 922 (9th Cir. 1987).................................................................................7–8

*Back v. Carter*,
  933 F. Supp. 738 (N.D. Ind. 1996)......................................................................8, 12

*City of Richmond v. J.A. Croson Co.*,
  488 U.S. 469 (1989).............................................................................................9–10

*Conlin v. Blanchard*,
  890 F.2d 811 (6th Cir. 1989)......................................................................................9

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
  321 F.3d 878 (9th Cir. 2003)..............................................................................13–14

*Coral Const. Co. v. King County*,
  941 F.2d 910 (9th Cir. 1991)....................................................................................11

*Craig v. Boren*,
  429 U.S. 190 (1976)...................................................................................................7

*Engineering Contractors Ass'n of South Fla., Inc. v. Metropolitan Dade County*,
  943 F. Supp. 1546 (S.D. Fla. 1996) ..........................................................................8

*Ensley Branch, N.A.A.C.P. v. Seibels*,
  31 F.3d 1548 (11th Cir. 1994)............................................................................11–12

*Ex parte Young*,
  209 U.S. 123 (1908)...................................................................................................2

*Gerritsen v. Warner Bros. Entm't Inc.*,
  112 F. Supp. 3d 1011 (C.D. Cal. 2015)....................................................................2

*Gratz v. Bollinger*,
  539 U.S. 244 (2003) ................................................................................................10

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) ................................................................................................10

*Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo*,
  743 F. Supp. 977 (N.D.N.Y. 1990)............................................................................9

*Hecox v. Little*,
  479 F. Supp. 3d 930 (D. Idaho 2020).....................................................................12

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017)...................................................................................12

*Johnson v. Transportation Agency, Santa Clara Cty., Cal.*,
  480 U.S. 616 (1987).................................................................................................12

*Lamprecht v. F.C.C.*,
  958 F.2d 382 (D.C. Cir. 1992) ..............................................................................6–7

| | |
|---|---|
| *Landwatch v. Connaughton*,<br>905 F. Supp. 2d 1192 (D. Or. 2012) | 13 |
| *Main Line Paving Co. v. Bd. of Educ.*,<br>725 F. Supp. 1349 (E.D. Penn. 1989) | 8 |
| *Mallory v. Harkness*,<br>895 F. Supp. 1556 (S.D. Fla. 1995) | 8, 12 |
| *Meland v. Weber*,<br>2 F.4th 838 (9th Cir. 2021) | 4, 13 |
| *Melendres v. Arpaio*,<br>695 F.3d 990 (9th Cir. 2012) | 13 |
| *Michigan Road Builders Ass'n, Inc. v. Milliken*,<br>834 F.2d 583 (6th Cir. 1987) | 10 |
| *Mississippi Univ. for Women v. Hogan*,<br>458 U.S. 718 (1982) | 5, 7–8, 11 |
| *Monterey Mech. Co. v. Wilson*,<br>125 F.3d 702 (9th Cir. 1997) | 4–5, 12–13 |
| *Northeastern Fla. Ch. of Assoc. Gen. Contractors v. City of Jacksonville*,<br>508 U.S. 656 (1993) | 13 |
| *People of State of Cal. ex rel. Van de Kamp v. Tahoe Regional Planning Agency*,<br>766 F.2d 1319 (9th Cir. 1985) | 13 |
| *Regents of Univ. of California v. Bakke*,<br>438 U.S. 265 (1978) | 5, 10 |
| *Roberts v. U.S. Jaycees*,<br>468 U.S. 609 (1984) | 6 |
| *Rodriguez v. Robbins*,<br>715 F.3d 1127 (9th Cir. 2013) | 13 |
| *Saunders v. White*,<br>191 F. Supp. 2d 95 (D.D.C. 2002) | 8 |
| *Shelley v. Kraemer*,<br>334 U.S. 1 (1948) | 5 |
| *Steele v. F.C.C.*,<br>770 F.2d 1192 (D.C. Cir. 1985) | 6 |
| *Tuan Anh Nguyen v. I.N.S.*,<br>533 U.S. 53 (2001) | 7 |
| *United States v. Virginia*,<br>518 U.S. 515 (1996) | 5–6 |
| *W. States Paving Co. v. Wash. State Dep't of Transp.*,<br>407 F.3d 983 (9th Cir. 2005) | 10 |
| *Weinberger v. Wiesenfeld*,<br>420 U.S. 636 (1975) | 7 |
| *Winter v. Nat. Res. Def. Council, Inc.*,<br>555 U.S. 7 (2008) | 4 |
| *Wygant v. Jackson Bd. of Educ.*,<br>476 U.S. 267 (1986) | 10 |

*Zepeda v. I.N.S.*,
   753 F.2d 719 (9th Cir. 1983) .................................................................................. 13

**Rule**

Fed. R. Evid. 201 ............................................................................................................. 2

**Other Authorities**

50/50 Women on Boards Reveal Gender Diversity Index Key Findings; Quantifies
   Commitment to Diversity with Women of Color Holding at Least 20% of All
   Corporate Board Seats (Apr. 28, 2021), https://www.prnewswire.com/news-
   releases/5050-women-on-boards-reveals-gender-diversity-index-key-findings-
   quantifies-commitment-to-diversity-with-women-of-color-holding-at-least-20-
   of-all-corporate-board-seats-301278679.html ......................................................... 11

Amicus br. for the American Civil Liberties Union,
   *Craig v. Boren*, 1976 WL 181333 (U.S.) .................................................................. 7

Assembly Committee on the Judiciary, SB 826 (Jackson and Atkins) –
   As Amended May 25, 2018,
   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=20172
   0180 SB826# ........................................................................................................... 12

Brown, Courtenay, *California's 'Woman Quota' Law Seems to be Working*, Axios
   (Feb. 21, 2020), https://www.axios.com/californias-woman-quota-law-seems-
   to-be-working-f18e9450-40de-483d-99f6-d8b850439824.html ............................. 3

*Corporations: Boards of Directors: Hearing on S.B. 826 Before the Assemb.
   Comm. on Judiciary*, 2017-2018 Leg., Reg. Sess. 7 (Cal. 2018) .................... 6, 8–9

*Corporations: Boards of Directors: Hearing on S.B. 826 Before the Senate Comm.
   on Judiciary*, 2017-2018 Leg., Reg. Sess. 7 (Cal. 2018) ...................................... 6, 9

Equilar Q2 2019 Gender Diversity Index, https://www.equilar.com/reports/67-q2-
   2019-equilar-gender-diversity-index.html ............................................................ 1, 9

Equilar Q3 2018 Gender Diversity Index, https://www.equilar.com/reports/61-
   equilar-q3-2018-gender-diversity-index.html ........................................................... 1

July 2019 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/final-report.xlsx ...... 3

KPMG, *The Women Changing California's Boardrooms*,
   https://boardleadership.kpmg.us/content/dam/boardleadership/en/pdf/2020/the-
   women-changing-california-boardrooms.pdf .......................................................... 3

March 2020 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/WOB-Report-
   04.pdf ........................................................................................................................ 3

March 2021 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/wob-report-
   2021-02.pdf ............................................................................................................... 3

Padilla, Alex, Letter to Compliance Officers (Dec. 16, 2019),
   https://bpd.cdn.sos.ca.gov/women-on-boards/RevCorpDisLetter.pdf .................... 3

Padilla, Alex, Letter to Compliance Officers (May 31, 2019),
   https://bpd.cdn.sos.ca.gov/women-on-boards/CorpDisletter.pdf ........................... 2

SB 826 .................................................................................................................. 1, 2, 5

Senate Rules Committee, SB 826 Senate Floor Analyses,
   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=20172
   0180SB826# .............................................................................................................. 2

U.S. Board Diversity Trends in 2019, Harvard Law School Forum on Corporate Governance, https://corpgov.law.harvard.edu/2019/06/18/u-s-board-diversity-trends-in-2019/ ................................................................................................................ 1, 9

Mem. in Supp. of Pl.'s Motion for Prelim. Inj.  
No. 2:19-cv-02288-JAM-AC

v

## INTRODUCTION

SB 826 seeks to compel shareholders like Plaintiff to vote for women board candidates simply because they are women. The Bill's stated aims are achieving a rote increase in the number of women on corporate boards and spreading the purported benefits of women's intrinsic leadership style. Under Supreme Court precedent, both are impermissible. But even if the Bill sought a permissible end like remedying discrimination—which it does not—it couldn't possibly be tailored to that goal because it imposes an arbitrary, perpetual quota on a diverse array of businesses in a diverse array of fields that have widely varying degrees of female representation.

Whatever the Legislature's benign intentions, the law is plainly unconstitutional—something both the Legislature and the Governor conceded when adopting it. The Bill perpetuates the notion that women can't make it without government help, it relies on stereotypes that deny women their individuality, and it establishes a permanent governmental mandate for private companies to engage in outright gender balancing. It's also deeply patronizing. Because the Woman Quota infringes Plaintiff's Fourteenth Amendment right to vote free of a government imposed sex-based mandate, a preliminary injunction should issue.

## BACKGROUND

### I. SB 826 and Its Requirements

Despite the consistent gains that women have been making in corporate representation,[1] the California legislature passed SB 826 in 2018 to compel "parity" in the boardroom. *See* SB 826. It states as its objectives increasing the number of women board members and expanding the purported benefits of women's working style.

///

---

[1] In 2018, 34% of new board hires across the country were women. In the first half of 2019, that number rose to 45%. *See, e.g.*, U.S. Board Diversity Trends in 2019, Harvard Law School Forum on Corporate Governance, https://corpgov.law.harvard.edu/2019/06/18/u-s-board-diversity-trends-in-2019/; Equilar Q3 2018 Gender Diversity Index, https://www.equilar.com/reports/61-equilar-q3-2018-gender-diversity-index.html. And as of September 2019, women had increased their representation on corporate boards for 7 straight quarters in a row. *See* Equilar Q2 2019 Gender Diversity Index, https://www.equilar.com/reports/67-q2-2019-equilar-gender-diversity-index.html.

Since December 31, 2019, publicly held corporations headquartered in California have been required to have at least one female director on their boards. *Id.* After December 31, 2021, that number will increase: a corporation with four or fewer directors must have at least one female director; a corporation with five directors must have at least two female directors; and a corporation with six or more directors must have at least three female directors. *Id.* The Secretary of State[2] is authorized to impose fines for any violation of the Woman Quota. *Id.* The first violation results in a $100,000 fine to the corporation and any subsequent offense results in a $300,000 fine. *Id.* Each seat not filled by a woman as required under SB 826 constitutes a separate violation. *Id.*

SB 826 further requires corporations to file an annual statement with the Secretary disclosing whether the board complies with the quota. *Id.* A corporation's failure to report or to timely report whether it complies with the quota subjects it to a $100,000 fine. *Id.* The Secretary is required to publish reports on her Office's website listing compliant corporations and may implement any additional regulations necessary to enforce the Woman Quota. *Id.*

The Legislature expected that the quota would be enforced immediately, estimating it would cost $500,000 each year for the Secretary to "develop regulations, investigate claims, and enforce the violations of this Bill's provisions," in addition to "unknown additional costs for [the Secretary] related to production of the annual report." *See* Senate Rules Committee, SB 826 Senate Floor Analyses.[3] And in fact, the Secretary has taken several actions in furtherance of the quota. On May 31, 2019, the Secretary sent a letter to all publicly held corporations with a California address to inform them of the Woman Quota and the new filing requirements.[4] Then on December 16, 2019, the Secretary sent a letter to all publicly held corporations incorporated in California to inform them

---

[2] Secretary Weber is sued in her official capacity pursuant to *Ex parte Young*, 209 U.S. 123 (1908).

[3] https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826#. Courts may take judicial notice of publicly available information found on a government website. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015); Fed. R. Evid. 201. Appellant requests that this Court do so for this document and all other public documents from government websites cited herein.

[4] Alex Padilla, Letter to Compliance Officers (May 31, 2019), https://bpd.cdn.sos.ca.gov/women-on-boards/CorpDisletter.pdf.

of the same.[5] On July 1, 2019, the Secretary published a report that identified more than 500 companies subject to the Woman Quota and that listed the companies that were known to be in compliance.[6] In March of 2020 and March of 2021, the Secretary published updated reports.[7]

The Woman Quota has already started to have its intended effect of coercing shareholders to put sex above other characteristics and creating the Legislature's preferred sex-based balance on corporate boards. Estimates show that before the quota, between a quarter and a third of companies lacked a female member.[8] Some reports show that only 4% now lack a female director.[9] Soon shareholders like Plaintiff will once again face government compulsion to vote based on sex at shareholder elections in advance of the more intensive requirements going into effect on December 31, 2021.

**II. Plaintiff and Procedural History**

Appellant Creighton Meland, Jr., is a shareholder of OSI Systems, Inc. (OSI), a publicly held company that is incorporated in Delaware and headquartered in Hawthorne, California, and subject to the quota. Complaint ¶¶ 4, 17. The shareholders of OSI, including Meland, select who sits on the corporation's board of directors. *Id.* ¶ 23.

///

///

---

[5] Alex Padilla, Letter to Compliance Officers (Dec. 16, 2019), https://bpd.cdn.sos.ca.gov/women-on-boards/RevCorpDisLetter.pdf.

[6] July 2019 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/final-report.xlsx.

[7] March 2020 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/WOB-Report-04.pdf; March 2021 Report, https://bpd.cdn.sos.ca.gov/women-on-boards/wob-report-2021-02.pdf.

[8] SB 826, § 1(e)(2) ("More than one-quarter, numbering 117, or 26 percent, of the Russell 3000 companies based in California have NO women directors serving on their boards.").

[9] Courtenay Brown, *California's 'Woman Quota' Law Seems to be Working*, Axios (Feb. 21, 2020), https://www.axios.com/californias-woman-quota-law-seems-to-be-working-f18e9450-40de-483d-99f6-d8b850439824.html (estimating that only 4% of companies are out of compliance); KPMG, *The Women Changing California's Boardrooms*, https://boardleadership.kpmg.us/content/dam/boardleadership/en/pdf/2020/the-women-changing-california-boardrooms.pdf.

|   | Prior to December 2019, OSI had a seven-member, all-male board. *Id.* ¶ 21. On December 12, 2019, at its Annual Meeting of Stockholders, the shareholders of OSI voted to place a woman on the Board to fill a spot vacated by another board member. Meland Decl. ¶ 6. Because of the Board's size, the quota requires shareholders to add two more female board members by the end of 2021 and requires them to vote annually to stay in compliance. Complaint ¶ 21. Meland has voted in past shareholder elections and plans to exercise his shareholder vote in the next election in December 2021. Meland Decl. ¶ 3. |

Meland filed this lawsuit in November 2019. In April 2020 this Court granted Defendant's Motion to Dismiss for lack of standing. On June 21, 2021, the Ninth Circuit Court of Appeals reversed and remanded and this Court reopened the case. The Ninth Circuit held that Meland had standing because he "has plausibly alleged that SB 826 requires or encourages him to discriminate on the basis of sex[.]" *Meland v. Weber*, 2 F.4th 838, 842 (9th Cir. 2021). This motion followed.

## LEGAL STANDARD

To secure a preliminary injunction, Plaintiff must show that he is "likely to succeed on the merits, that [he is] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [his] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Each of these four requirements is satisfied here.

## ARGUMENT

**I. Meland Is Likely to Prevail on the Merits**

SB 826's broad, arbitrary, and perpetual quota is unconstitutional. Under the Equal Protection Clause of the Fourteenth Amendment, sex-based classifications of any kind are subject to intermediate scrutiny, meaning they must be "supported by an 'exceedingly persuasive justification' and substantially related to the achievement of that underlying objective." *Associated Gen. Contractors of Am., San Diego Chapter, Inc. v. California Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013). This is a "demanding" burden that "rests entirely on the State." *Monterey*

*Mech. Co. v. Wilson*, 125 F.3d 702, 713 (9th Cir. 1997) (citation omitted).[10] The government's justification "must be genuine, not hypothesized or invented *post hoc* in response to litigation." *United States v. Virginia*, 518 U.S. 515, 533 (1996). And despite the state's "recitation of a benign, compensatory purpose," a "searching analysis" must be made in every case. *Miss. Univ. for Women*, 458 U.S. at 729.

The Woman Quota fails that test. The Bill's stated interests—increasing representation for its own sake and expanding the benefits of women's supposed "working style"—are per se illegitimate, and its broad, rigid, and perpetual quota is not substantially related to remedying discrimination.

### A. Sex-based Balancing for Its Own Sake Cannot Justify the Quota

SB 826 seeks to "achieve gender parity" for its own sake. *See* SB 826, § 1(a). Given the lack of diversity on corporate boards and the amount of time it would take for "the numbers of women on boards to match men," it concludes that a mandatory quota is necessary. *Id*. But the government may neither pursue diversity nor sex-based balancing as an end in itself. *See, e.g.*, *Monterey Mech. Co.*, 125 F.3d at 714–15. The rights protected by the Fourteenth Amendment are "personal rights" that are "guaranteed to the individual," not groups. *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948); *see also Monterey Mech. Co.*, 125 F.3d at 714 (same). Thus, the "laudable desire to improve the social position of various groups perceived to be less well off," cannot be achieved "by ethnic and sex discrimination against individuals excluded by ethnicity or sex from these groups, in the absence of Constitutionally required justification." *Monterey Mech. Co.*, 125 F.3d at 714–15.

To the extent that the Woman Quota serves to guarantee gender parity rather than remedy concrete instances of discrimination or some other important objective, it is "discrimination for its own sake" and "facially invalid." *Regents of Univ. of California v. Bakke*, 438 U.S. 265, 307 (1978).

---

[10] The fact that a classification "discriminates against males rather than against females does not exempt it from scrutiny or reduce the standard of review." *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 723 (1982).

## B. The Woman Quota's Sex-based Stereotypes Are Offensive and Illegitimate

SB 826 is rife with stereotypes about the "female perspective." According to the Senate Judiciary Committee's report, the author of SB 826 argued that a Woman Quota was necessary to change corporate policy related to "pay parity," "safer workplaces," and "greater work-life balance" and suggested that more women board members will "change the culture that has permitted sexual harassment to be so pervasive in our society."[11] *Corporations: Boards of Directors: Hearing on S.B. 826 Before the Senate Comm. on Judiciary* ("Senate Judiciary Committee Report"), 2017-2018 Leg., Reg. Sess. 7 (Cal. 2018). The Assembly Committee on the Judiciary similarly lauded the "perspective . . . that women bring with them to the corporate setting." *Corporations: Boards of Directors: Hearing on S.B. 826 Before the Assemb. Comm. on Judiciary* ("Assembly Judiciary Committee Report"), 2017-2018 Leg., Reg. Sess. 7 (Cal. 2018).

The Bill itself is even more specific about what women purportedly bring to the boardroom. Citing a 2012 study, it states as fact that women board members create "more risk averse" corporations, lead to a more "sustainable future," and carry less corporate debt—as if women share a certain perspective and working style (namely, risk-aversion and overall prudency). But intermediate scrutiny rejects justifications that "rely on overbroad generalizations about the different talents, capacities, or preferences of males and females." *Virginia*, 518 U.S. at 516.

The notion that people of the same sex have an identifiable, homogenous perspective is not only offensive, it is exactly the type of "unsupported generalizations about the relative interests and perspectives of men and women" that the Equal Protection Clause repudiates. *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984). As Justice Scalia wrote when still sitting on the D.C. Circuit, "Women transcend ethnic, religious, and other cultural barriers. In their social and political opinions and beliefs, for example, women in fact appear to be just as divided among themselves as men. It is not reasonable to expect that a woman would manifest a distinctly 'female' viewpoint." *Steele v. F.C.C.*, 770 F.2d 1192 (D.C. Cir. 1985); *Lamprecht v. F.C.C.*, 958 F.2d 382, 395 (D.C.

---

[11] This quote spares no one in its condescension. On the one hand it suggests that problems related to sexual harassment in the workplace are attributable to the mere fact of men being in charge. On the other hand, it perpetuates the notion of women as society's keeper.

Cir. 1992) (rejecting government's assumptions that "there exists such a thing as women's programming" or "that women were more likely than men to broadcast it"). This type of sex stereotyping is illegitimate even if the Secretary can muster empirical support for it.[12] *Craig v. Boren*, 429 U.S. 190, 201 (1976) (invalidating a sex-based classification even though the evidence supporting the distinction was "not trivial in a statistical sense"); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 645 (1975) (same).

If the government seeks to make corporations more risk-averse or "sustainable," or ensure they carry less corporate debt, it can impose requirements related to risk-aversion, sustainability, and corporate debt rather than relying on sex-based classifications that are based on stereotypes.[13] *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 89–90 (2001). Using sex as a proxy for certain traits or characteristics "den[ies] individuals opportunity" and is per se unconstitutional. *Id.* at 74.

### C. The Woman Quota Is Not Substantially Related to Remedying Discrimination

#### 1. Disparities alone do not demonstrate discrimination

"Before [the government] embarks on an affirmative action program, it must have convincing evidence that remedial action is warranted." *Associated General Contractors of California, Inc. v. City and County of San Francisco,* 813 F.2d 922, 932 (9th Cir. 1987). Requiring the government to demonstrate that discrimination actually exists not only ensures that "members of the gender benefited by the classification actually suffer a disadvantage,'" but also that the law does not

---

[12] It's irrelevant that the generalization is considered complimentary. "The hallmark of a stereotypical sex-based classification… is not whether the classification is insulting, but whether it 'relie[s] upon the simplistic, outdated assumption that gender could be used as a 'proxy for other, more germane bases of classification.'" *Miss. Univ. for Women*, 458 U.S. at 726 (quoting *Craig*, 429 U.S. at 198).

[13] For this reason, the Supreme Court has repeatedly struck down laws designed to benefit women that were based on "flattering" stereotypes, including an Oklahoma law that permitted women to purchase beer at a younger age than women. *Craig*, 429 U.S. 190. Although the state trotted out statistics demonstrating that women drink less, drink and drive less, and are overall better behaved, the Court affirmed that the Equal Protection Clause does not countenance sex-based stereotypes. Quoting the Supreme Court on which she would eventually sit, then-attorney Ruth Bader Ginsburg noted in an amicus curiae brief on behalf of the ACLU that what is at one time considered "gallantry" is often in hindsight "Victorian condescension." Amicus br. for the American Civil Liberties Union, *Craig v. Boren*, 1976 WL 181333, at *18.

"reflect or reinforce archaic and stereotyped notions of the roles and abilities of women," like the perception that women can't advance in their career without government help. *See id.* (quoting *Miss. Univ. for Women*, 458 U.S. at 728).

SB 826 itself never actually asserts it's aimed at remedying discrimination; instead, it points to disparities and describes increasing representation of women on corporate boards. But these numbers alone are not evidence of discrimination. *See Main Line Paving Co. v. Bd. of Educ.*, 725 F. Supp. 1349, 1363 (E.D. Penn. 1989) (the government must "detail the cause of th[e] disparity" or "say for certain that it was caused by gender discrimination, rather than other conditions in the general economy"); *Saunders v. White*, 191 F. Supp. 2d 95, 132 (D.D.C. 2002) (the government must articulate how "raw data should be interpreted and the reasons why it supports a classification."); s*ee Mallory v. Harkness*, 895 F. Supp. 1556 (S.D. Fla. 1995) (invalidating gender quota where the government "did not positively identify any discriminatory policy or practices" and pointed solely to disparities). Disparities may arise as a result of any number of factors, including the individual characteristics, wants, needs, and choices of the people involved. They might arise from the number of women who attend business school, *see Back v. Carter*, 933 F. Supp. 738 (N.D. Ind. 1996) (factors related to law school may create disparities in the field of law), or the number of women who choose a given field, *cf. Miss. Univ. for Women*, 458 U.S. at 729 (state could not justify woman-only nursing school given dominance of women in nursing); or the number of women who seek out positions as board members. *See Associated General Contractors of California*, 813 F.2d at 933 (city must look at relevant labor pool, not general population). In public contracting, for example, courts have found that disparities may arise not because of discrimination but because of things like the "size and experience" of women-owned businesses. *Engineering Contractors Ass'n of South Fla., Inc. v. Metropolitan Dade County*, 943 F. Supp. 1546, 1571 (S.D. Fla. 1996).

The Assembly Committee on the Judiciary itself concluded that "to defend the constitutionality of this Bill, it would not appear to be enough to simply cite statistics showing that women are grossly underrepresented on corporate boards." *See* Assembly Judiciary Committee Report at 8. Instead, "the defenders" would need to provide "specific evidence of discriminatory

behavior, rather than simply inferring discrimination from the disproportionate numbers." *Id.* The Senate Committee on the Judiciary likewise conceded that the Bill's "findings and declarations do not explicitly draw [a] link" between the disparities and discrimination and suggested that legislators bolster the data in order to satisfy equal protection concerns. *See* Senate Judiciary Committee Report at 12. These committees were right: the government must provide something more than raw disparities to demonstrate discrimination.

The government's failure to bolster its claims is particularly relevant here, where evidence suggests that prior to the Woman Quota going into effect, nearly half of open board seats were being given to women. *See, e.g.*, Harvard Study, Equilar Diversity Index, *supra* n.1. In fact, despite California's dismal picture of female representation, the number of women on corporate boards has been consistently growing. In 2018, 34% of new board hires across the United States were women. *Id.* In the first half of 2019, that number rose to 45%. *Id.* And as of September 2019, women had increased their representation on corporate boards for 7 straight quarters in a row. *See* Equilar Q2 2019 Gender Diversity Index, *supra* n.1. Current hiring patterns, compared to raw disparities, don't bear out claims of widespread discrimination.

Relatedly, SB 826 compares representation on corporate boards to the number of women in society. But as the Supreme Court has held, it is "completely unrealistic" to assume that groups will choose a particular trade in lockstep proportion to their representation in the local population. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 507 (1989). The proper comparison is the number of women in the relevant labor pool. *Conlin v. Blanchard*, 890 F.2d 811, 816 (6th Cir. 1989). Without more than broad statistics relevant to the general population, SB 826 "evidences an intent to provide women with their fair share of contracts (simple gender balancing) as much as [it] shows an intent to cure the effects of past discrimination," and fails intermediate scrutiny. *Harrison and Burrowes Bridge Constructors, Inc. v. Cuomo*, 743 F. Supp. 977, 1002 (N.D.N.Y. 1990).

///

///

///

///

### 2. The Woman Quota is not properly tailored to its end

Even if disparities could demonstrate discrimination, SB 826 isn't substantially related to the goal of remedying it.[14] Quotas are an inherently sloppy tool for remedying discrimination because they're at once both capricious and rigid. On its face, SB 826 is arbitrary: it's not clear how the Legislature came to the conclusion that one woman board member was the appropriate remedy for discrimination in corporations with four or fewer directors, two for corporations with five, or three for six or more. Why not two, three, or four board members respectively? Why not one number across the board? In fact, given SB 826's admonition that a minimum of three women board members is necessary to realize the benefits of female leadership, why not three? The number was seemingly picked at random.

The quota is also overly rigid. Rather than using a flexible approach that takes immutable characteristics into account while allowing entities to make good faith efforts to comply, the quota "assign[s] a preordained" or outcome determinative "value" to sex "in all cases" without exception. *Gratz v. Bollinger*, 539 U.S. 244, 293 (2003). It's this very quality that has led the Supreme Court to repeatedly rule that quotas are per se unconstitutional. *See, e.g.*, *Bakke*, 438 U.S. 265; *Gratz*, 539 U.S. at 293; *Grutter v. Bollinger*, 539 U.S. 306, 309 (2003); *Croson*, 488 U.S. at 507–08; *see also W. States Paving Co. v. Wash. State Dep't of Transp.*, 407 F.3d 983, 994 (9th Cir. 2005) (quotas are the "hallmark" of an impermissible "inflexible affirmative action program").

---

[14] SB 826 is notable for just how far it departs from Supreme Court and Ninth Circuit precedent. First, SB 826 requires wholly *private* parties to engage in sex-based action, rather than requiring remedial sex-based action by the government itself. Even public contracting cases, which come the closest to requiring private parties to engage in sex-based acts, have been justified on the theory that the government need not be a "passive participant" in potentially discriminatory schemes. *Croson*, 488 U.S. at 492. Here, by contrast, there is no connection to a public entity or public funds; the law operates on wholly private parties.

Second, the state seeks to remedy societal discrimination rather than government discrimination—a theory that the Supreme Court has thoroughly rejected in the racial context and has never explicitly approved of in the context of sex. *See, e.g.*, *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 274 (1986) (requiring "some showing of prior discrimination by the governmental unit involved"); *Michigan Road Builders Ass'n, Inc. v. Milliken*, 834 F.2d 583, 595 (6th Cir. 1987) (same). As the Supreme Court has warned in the context of race-based laws, allowing the government to draw lines on the basis of immutable characteristics for the purpose of remedying generalized societal discrimination would "convert a remedy heretofore reserved for violations of legal rights into a privilege that all institutions throughout the Nation could grant at their pleasure to whatever groups are perceived as victims of societal discrimination." *Bakke*, 438 U.S. at 310.

Finally, the quota is overbroad because the disparities vary wildly from corporation to corporation. In order to ensure a sex-based classification is sufficiently tailored, courts have traditionally required evidence of discrimination in the relevant field, defined narrowly. *See, e.g.*, *Miss. Univ. for Women*, 458 U.S. at 729 (striking down woman-only state-sponsored nursing school where state "made no showing that women lacked opportunities to obtain training in the field of nursing or to attain positions of leadership in that field."); *cf. Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1580 (11th Cir. 1994) (requiring the state to show discrimination in the relevant economic sector); *Coral Const. Co. v. King County*, 941 F.2d 910, 931 (9th Cir. 1991) ("Some degree of discrimination must have occurred in a particular field before a gender-specific remedy may be instituted in that field."). Discrimination in the biotech industry cannot justify gender-conscious measures in the publishing industry; the government must demonstrate that there is discrimination in every field to which it applies. Here, the Legislature took no industry by industry analysis, instead imposing a quota across all publicly held corporations despite significant industry-by-industry differences.[15]

The Bill itself acknowledges that disparities also vary from corporation to corporation depending things like a corporation's size. According to SB 826's text, smaller companies are "much more likely to lack female directors." Among the 50 publicly held corporations with the lowest revenue, women held 8.4% of director seats; among the 50 companies with the highest revenue, women held 23.5% of director seats and all 50 had at least one woman on their board. Yet the quota applies to them all equally.

The same goes for location. The legislative history noted that corporations located in Los Angeles, and Silicon Valley, and San Francisco counties had 12%, 16%, and 21% female directors

---

[15] To take one example, Equilar, a well-known source for corporate governance data, reports that while only 20% of energy sector companies currently have three or more women on their boards, 71% of utilities companies do. *See* 50/50 Women on Boards Reveal Gender Diversity Index Key Findings; Quantifies Commitment to Diversity with Women of Color Holding at Least 20% of All Corporate Board Seats (Apr. 28, 2021), https://www.prnewswire.com/news-releases/5050-women-on-boards-reveals-gender-diversity-index-key-findings-quantifies-commitment-to-diversity-with-women-of-color-holding-at-least-20-of-all-corporate-board-seats-301278679.html.

respectively compared to 15.5% female directors for the state average.[16] And while about a quarter of Russell 3000 companies based in California had no women directors, 12% of those corporations had *three or more* female directors. Yet again, the quota applies to them all, making it vastly over-inclusive. In sum, the Woman Quota is not substantially related to any remedial goal because it is arbitrary, rigid, and overbroad.

### 3. The Woman Quota fails if only because it lasts in perpetuity

If all of the above were not enough, SB 826 would fail for the simple reason that it has no end date. *See Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d at 1581. Equal protection requires "at a minimum, the development of gender-neutral selection procedures," otherwise remedial gender-based laws create "a potentially indefinite cycle of discrimination." *Id.*; *Carter*, 933 F. Supp. at 759 (same); *Mallory*, 895 F. Supp. at 1562 (same). Without an end date, a sex-based mandate is unconstitutional on its face.

SB 826's Woman Quota applies at each and every election into perpetuity regardless of any progress that's made. It is therefore not intended to "cure [gender] imbalance;" it is impermissibly "designed to maintain [gender] balance" and fails the tailoring requirement for that reason alone. *Johnson v. Transportation Agency, Santa Clara Cty., Cal.*, 480 U.S. 616, 630 (1987).

## II. Meland Will Suffer Irreparable Harm Absent a Preliminary Injunction

A plaintiff's allegation that he is suffering an ongoing deprivation of his constitutional rights "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Under Ninth Circuit precedent, that includes deprivations of equal protection rights. *Monterey Mech. Co.*, 125 F.3d at 715; *see also Hecox v. Little*, 479 F. Supp. 3d 930, 987 (D. Idaho 2020).

Absent a preliminary injunction, Plaintiff will suffer irreparable harm because OSI shareholders are required to elect a total of three women to OSI's board at the upcoming shareholder election in December 2021 in order to keep the company in compliance with SB 826. Meland Decl.

---

[16] Assembly Committee on the Judiciary, SB 826 (Jackson and Atkins) – As Amended May 25, 2018, https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826#.

¶ 7. Mr. Meland will therefore once again face SB 826's mandate that he elect board members on the basis of sex. Meland Decl. ¶ 9; s*ee Meland v. Weber*, 2 F.4th at 846 ("At a minimum, therefore, SB 826 would encourage a reasonable shareholder to vote in a way that would support corporate compliance with legal requirements."). Because the pressure to select three women will invariably skew the election, Meland suffers an injury regardless of who he votes for, and regardless of who is elected; the injury in an equal protection case is denial of equal treatment, not the denial of a certain benefit or outcome. *See Northeastern Fla. Ch. of Assoc. Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Meland Decl. ¶ 10. After the election is held, there will be no adequate post-election remedy that could make up for the injury that Mr. Meland will suffer. *See Monterey Mech. Co.*, 125 F.3d at 715.

### III. The Balance of Harms and Public Interest Weigh in Plaintiff's Favor

The potential irreparable harm to Plaintiff outweighs any harm that a preliminary injunction would cause Defendant because the government "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). Moreover, it is always in the public interest to prevent the violation of a person's constitutional rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). No shareholders or companies subject to the Woman Quota would be harmed in any way by a preliminary injunction as all would remain free to elect the directors of their choosing without the coercive pressure of the state. By contrast, absent a preliminary injunction, Mr. Meland would suffer an irreparable violation of his constitutional rights.

### IV. No Security Should Be Required

No bond should be required in this case. "Federal courts have consistently waived the bond requirement in public interest . . . litigation, or required only a nominal bond." *Landwatch v. Connaughton*, 905 F. Supp. 2d 1192, 1198 (D. Or. 2012) (citing *People of State of Cal. ex rel. Van de Kamp v. Tahoe Regional Planning Agency*, 766 F.2d 1319 (9th Cir. 1985)). Moreover, Mr. Meland has established a strong likelihood of success and this "tips in favor of a minimal bond or no bond at all." *Van de Kamp*, 766 F.2d at 1326. Finally, "the bond amount may be zero if there

is no evidence the party will suffer damages from the injunction," and such is the case here. *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

## CONCLUSION

The Motion for a Preliminary Injunction should be granted.

DATED: August 5, 2021.                    Respectfully submitted,

ANASTASIA P. BODEN
JOSHUA P. THOMPSON
DANIEL M. ORTNER

By: _____/s/ Anastasia P. Boden_____
　　　　　ANASTASIA P. BODEN
　　　　　Attorneys for Plaintiff