1  Rob Bonta, State Bar No. 202668
   Attorney General of California
2  Michael L. Newman, State Bar No. 222993
   Senior Assistant Attorney General
3  Laura L. Faer, State Bar No. 233846
   Vilma Palma-Solana, State Bar No. 267992
4  Supervising Deputy Attorneys General
   Lisa Cisneros, State Bar No. 251473
5  Marisol León, State Bar No. 298707
   Deputy Attorneys General
6   455 Golden Gate Ave., Suite 11000
    San Francisco, CA 94102-7004
7   Telephone: (415) 510-3438
    E-mail: Lisa.Cisneros@doj.ca.gov
8  *Attorneys for Defendant California*
   *Secretary of State Shirley N. Weber*

9                IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

11                         EASTERN DIVISION

12

13

14  **CREIGHTON MELAND, JR.,**            Case No. 2:19-cv-02288-JAM-AC

15                          Plaintiff,     **DEFENDANT SECRETARY OF**
                                           **STATE'S MEMORANDUM IN**
16         **v.**                          **OPPOSITION TO PLAINTIFF'S**
                                           **MOTION FOR PRELIMINARY**
17                                         **INJUNCTION**
    **SHIRLEY N. WEBER, in her official**
18  **capacity as Secretary of State of the State of**  Date:      October 19, 2021
    **California,**                        Time:       1:30 p.m.
19                                         Dept:       Courtroom 6, 14th Floor
                            Defendant.     Judge:      Honorable John A. Mendez
20                                         Action Filed: November 13, 2019

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 2

    I.    OSI's Corporate Governance and the Role of Shareholders in Director Elections ........................................................................................................... 2

    II.    Senate Bill No. 826 Was Adopted to Remedy Discrimination and Achieve the Benefits that Gender Diversity on Corporate Boards Provides ........................ 3

        A.    Evidence of Sex Discrimination ................................................................ 3

        B.    The Economic Benefits of and Public Interests Served by a Critical Mass of Women on Corporate Boards ........................................................ 6

        C.    Previous Efforts by the Legislature and Private Sector to Increase the Number of Women Corporate Directors ................................................ 7

ARGUMENT ................................................................................................................. 8

    I.    Plaintiff Lacks Evidence of Injury Necessary to Establish Standing ..................... 8

    II.    Plaintiff Is Unlikely to Prevail on His Equal Protection Claim .................................................................................................................. 11

        A.    Plaintiff is Not Likely to Succeed on the Merits Because SB 826 Satisfies the Intermediate Scrutiny Standard of Review .......................... 11

        B.    SB 826 Serves Important Government Interests in Remedying Discrimination and Advancing Diversity on Corporate Boards .............. 12

            1.    SB 826 was enacted in response to significant evidence of sex discrimination in corporate board selection ........................... 12

            2.    SB 826 also furthers the important state interest in achieving economic benefits and State's long-term economic wellbeing advanced by gender diverse corporate boards .............. 16

            3.    SB 826 is substantially related to the achievement of the State's important interests, and it is not a quota .......................... 19

            4.    SB 826 does not perpetuate sex stereotypes ................................. 22

    III.    Plaintiff Will Not Suffer Irreparable Harm Nor Will the Public's Interest Be Undermined if SB 826's Final Provision Takes Effect ................................... 23

        A.    Plaintiff Cannot Establish Irreparable Harm ............................................ 23

        B.    An Injunction Against SB 826 Is Unwarranted in Light of the Balance of Equities and Does Not Serve the Public Interest ................... 24

CONCLUSION ............................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Associated Gen. Contractors. of Am., San Diego Chapter v. Cal. Dep't of Transp.*
713 F.3d 1187 (9th Cir. 2013)...................................................................... 11, 14, 15

*Associated Gen. Contractors v. City & County of San Francisco*
813 F.2d 922 (9th Cir. 1987).................................................................................. 12

*Associated Gen. Contractors v. City & County of San Francisco*
813 F.2d 922 (9th Cir. 1987).............................................................. 13, 14, 16, 19

*Back v. Bayh*
933 F. Supp. 738 (N.D. Ind. 1196) .......................................................................... 20

*Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*
481 U.S. 537 (1987)................................................................................................... 12

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*
941 F.3d 1195 (9th Cir. 2019) ......................................................................... 11, 12

*Bernhardt v. County of Los Angeles*
279 F.3d 862 (9th Cir. 2002)................................................................................... 11

*Califano v. Goldfarb*
430 U.S. 199 (1977).......................................................................................... 22, 23

*California v. Azar*
911 F.3d 558 (9th Cir. 2018)...................................................................... 23, 24, 25

*Chen-Oster v. Goldman Sachs & Co.*
325 F.R.D. 55 (S.D.N.Y 2018) ............................................................................... 15

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*
944 F.3d 773 (9th Cir. 2019)..................................................................................... 9

*Colo. River Indian Tribes v. Dep't of Interior*
2015 WL 12661945 (C.D. Cal. Jun. 11, 2015) ...................................................... 23

*Coral Const. Co. v. King County*
941 F.2d 910 (9th Cir. 1991)........................................................................... *passim*

*Craig v. Boren*
429 U.S. 190 (1976)....................................................................................... 18, 22, 23

ii

*East Bay Sanctuary v. Barr*
    934 F.3d 1026 (9th Cir. 2019) ............................................................. 24

*Ensley Branch, N.A.A.C.P. v. Seibels*
    31 F.3d 1548 (11th Cir. 1994) ............................................................. 20

*First Nat. Bank of Boston v. Bellotti*
    435 U.S. 765 (1978) ...................................................................... 17, 18

*Gratz v. Bollinger*
    539 U.S. 244 (2003) ............................................................................ 21

*Grutter v. Bollinger*
    539 U.S. 306 (2003) ........................................................ 17, 18, 20, 21

*Hollingsworth v. Perry*
    133 S.Ct. 2652 (2013) ........................................................................ 10

*Interpipe Contracting, Inc. v. Becerra*
    898 F.3d 879 (9th Cir. 2018) ............................................................. 11

*Jewel Companies, Inc. v. Pay Less Drug Stores Nw., Inc.*
    741 F.2d 1555 (9th Cir. 1984) ........................................................... 22

*Johnson v. Goodyear Mining Co.*
    59 P. 304 (Cal. 1899) ......................................................................... 17

*Kahn v. Shevin*
    416 U.S. 351 (1974) ........................................................................... 13

*Lyon v. Neustar, Inc.*
    2019 U.S. Dist. LEXIS 75307 (E.D. Cal. May 3, 2019) ..................... 25

*Mallory v. Harkness*
    895 F. Supp. 1556 (S.D. Fla. 1995) ................................................... 20

*Meland v. Weber*
    2 F.4th 838 (9th Cir. 2021) ................................................................... 1

*Meland v. Weber*
    2 F.4th 838 (9th Cir. 2021) ..................................................... 8, 9, 10

*Michael M. v. Superior Court*
    450 U.S. 464 (1981) ........................................................................... 12

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)

*Miss. Univ. for Women v. Hogan*
    458 U.S. 718 (1982) ................................................................................................ 19

*Monterey Mechanical Company v. Wilson*
    125 F.3d 702 (9th Cir. 1997) .......................................................................... 14, 22

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*
    858 F.2d 1376 (9th Cir. 1988) ............................................................................ 8, 9

*Munaf v. Geren*
    553 U.S. 674 (2008) ............................................................................................ 9, 11

*Orr v. Orr*
    440 U.S. 268 (1979) .......................................................................................... 22, 23

*Regents of Univ. of Cal. v. Bakke*
    438 U.S. 265 (1978) ................................................................................................ 22

*Richmond v. J.A. Croson Co.*
    488 U.S. 469 (1989) .......................................................................................... 12, 13

*Schlesinger v. Ballard*
    419 U.S. 498 (1975) ................................................................................................ 12

*Stanton v. Stanton*
    421 U.S. 7 (1975) .............................................................................................. 22, 23

*Tuan Anh Nguyen v. I.N.S.*
    533 U.S. 53 (2001) .................................................................................................. 23

*United States v. Salerno*
    481 U.S. 739 (1987) ................................................................................................ 20

*United States v. Virginia*
    518 U.S. 515 (1996) .......................................................................................... 13, 16

*Weinberger v. Wiesenfeld*
    420 U.S. 636 (1975) ........................................................................................ *passim*

*Western States Paving v. Wash. State Dep't of Transp.*
    407 F.3d 983 (9th Cir. 2005) ................................................................................ 13

*Williams-Yulee v. Fla. Bar*
    575 U.S. 433 (2015) ................................................................................................ 17

iv

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)

**CALIFORNIA STATUTES**

California Corporations Code
§ 300 ................................................................................................ 22
§ 301.3 ............................................................................ 20, 21, 24, 25

**FEDERAL STATUTES**

17 Code of Federal Regulations
§ 229.407 ........................................................................................... 8

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12 ............................................................................................. 11

**OTHER AUTHORITIES**

California Senate Bill No. 826, 2017-2018 Leg. Reg. Sess. (Cal. 2018) .............................. *passim*

California Senate Concurrent Resolution No. 62, 2013–2014 Leg. Reg. Sess. (Cal. 2013) ............................................................................................... 7, 8

**INTRODUCTION**

Senate Bill No. 826 (SB 826) sets forth modest, minimum gender diversity requirements for one aspect of California public corporations: the composition of their board of directors. SB 826 is vital legislation to address current and long-standing discrimination that has created a stark lack of female directors on corporate boards, and to advance gender diversity that strengthens corporations' performance to protect the interests of California residents and retirees. SB 826 establishes narrow, flexible diversity and reporting requirements for publicly held corporations with headquarters in California. As of the close of 2019, these corporations were required to have at least one female director on their board, and, by the end of 2021, at least two female directors on five-member boards, and three female directors on boards of six members or more. At the same time, corporations have the express authority and flexibility under SB 826 to add director seats to comply with the law or potentially pay a fine, if they choose not to diversify the board.

Plaintiff's request to preliminarily enjoin SB 826 fails on three separate grounds. First, Plaintiff lacks standing. Plaintiff's alleged injury is that SB 826 requires or encourages him to vote for a woman director based on her sex. Unlike in the prior stage of this case, in which Plaintiff was permitted to rely on his pleadings alone, he must now establish his standing with "the manner and degree of evidence required" at this stage of the case, in which the parties have conducted discovery. *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021). The evidence now shows that Plaintiff, who owns just 65 out of nearly 18 million shares in OSI Systems, Inc. (OSI), may decline to cast his vote for OSI's only woman director, or any particular director, without impacting OSI in any way. Plaintiff in fact voted against OSI's only woman director in both elections for which he was eligible to cast a vote. In the first OSI election in which he participated, which occurred five days after he filed this action alleging that SB 826 "injured [his] right to vote for the candidate of his choice," Plaintiff voted in favor of all of the male directors and against OSI's only woman director. Compl. ¶ 28. Plaintiff's injury is non-existent, and this action must be dismissed.

Second, even if Plaintiff had standing, he is not likely to succeed on the merits. The evidence also shows that for this facial challenge, SB 826's flexible remedial scheme to address

1

sex discrimination in board selection passes intermediate scrutiny. SB 826 is supported by important government interests—addressing gender discrimination and increasing diversity at the highest level of business governance. SB 826 is also substantially related to these objectives as it is tailored to women in the corporate board context where the Legislature identified sex discrimination, applies to a small subset of corporations that most impact the public—an estimated .06 percent of approximately 1 million registered stock corporations in California—and was enacted only after other measures were considered, tried, and failed. Finally, preliminary relief is unwarranted because Plaintiff lacks any imminent and substantial irreparable injury and the balance of the equities weighs in favor of the Secretary of State (Secretary).

## STATEMENT OF FACTS

### I. OSI'S CORPORATE GOVERNANCE AND THE ROLE OF SHAREHOLDERS IN DIRECTOR ELECTIONS

Plaintiff commenced his lawsuit based on 40 shares of OSI stock he purchased in 2019 after SB 826's passage; he most recently disclosed ownership of 65 shares. Declaration of Marisol León (León Decl.), Ex. J. For purposes of OSI's director elections in 2019 and 2020, and establishing each stockholder's vote share, OSI had 18,357,463 and 17,919,229 outstanding shares of common stock on the October record date of each respective year. Declaration of Victor Sze (Sze Decl.), Ex. 47 (2020 Proxy Statement) at 1. Each stockholder is entitled to one vote for each share of stock held. Sze Decl., Ex. 3 at Art. II, Sec. 7. Stockholders, including Plaintiff, have the option to withhold their vote, i.e. vote against a nominee, vote in favor of any nominee, or decline to vote their proxy card (a non-voter). *See e.g.*, Sze Decl., Ex. 45 at 56; Ex. 46 at 3; Ex. 47 at 81; Ex. 48 at 3; Declaration of Andrew Jennings (Jennings Decl.) ¶¶ 26-27.

OSI's bylaws require the annual election of its Board of Directors. Sze Decl., Ex. 3 at Art. II., Sec. 2. The OSI Board has discretion to expand the size of its board (between five and nine directors) without shareholder approval, and has added seats in prior years. Sze Decl., Ex. 2 at V; Ex. 3 at Art. III, Sec. 2; Jennings Decl. ¶¶ 39-40. OSI's Board has exclusive control over selection of the board nominees that appear on OSI's shareholder proxy card. *See* Sze Decl., Ex. 3 at Art II., Sec. 14(a)(i); León Decl., Ex. B (Corporate Governance Guideline 5); Jennings Decl.

2

¶ 41. Since 1997, when OSI became a publicly held company, OSI has held uncontested elections presenting for shareholder approval its Board-nominated slate of candidates. *See* Jennings Decl. ¶ 42, Ex. 2, Table 1. Due to OSI's plurality voting rule, each director has needed only one vote from one stockholder to be elected. *Id.* ¶ 26. Each of OSI's directors hold shares and can vote for themselves. Sze Decl., Ex. 47 at 81.

From 1997 until 2019, OSI had an all-male Board. Sze Decl. ¶ 2. In 2019, the first year Plaintiff owned stock in OSI and voted in its director election, he voted against the only woman nominated for OSI's formerly all-male Board, while voting for all of the male nominees. León Decl., Ex. E. He cast this vote five days after he filed this present suit challenging the constitutionality of SB 826 and requesting injunctive relief to "restore Mr. Meland's ability to vote free of a government-imposed sex quota." *Id.* at Ex. G at 8; Compl. ¶ 32. OSI's first woman director nevertheless prevailed, receiving the most votes of any of the nominees—over 15 million votes. Sze Decl., Ex. 46 at 3. In 2020, Plaintiff again voted against the sole woman director and for the male nominees on OSI's slate. León Decl., Ex. G at 6. The sole woman director again won the most votes of any nominee—receiving over 14.6 million votes. Sze Decl., Ex. 48 at 3.

## II. SENATE BILL NO. 826 WAS ADOPTED TO REMEDY DISCRIMINATION AND ACHIEVE THE BENEFITS THAT GENDER DIVERSITY ON CORPORATE BOARDS PROVIDES

The legislative findings and record overall demonstrate that remedying discrimination and advancing gender diversity to enhance corporate performance in the public's interest were the two principal reasons for enacting SB 826, 2017-2018 Leg., Reg. Sess. (Cal. 2018).

### A. Evidence of Sex Discrimination

The purpose of SB 826 "is to remedy a long and well-documented history of discrimination depriving women of equal opportunity (or, in many cases, any opportunity at all) to serve on corporate boards." Request for Judicial Notice (RJN) Ex. 10 at 12 (discussing the purpose of the legislation in anticipation of a constitutional challenge); *see also* RJN Ex. 22 at 1. Research and statistical evidence of disparities cited in the legislative record, as well as testimony and letters of support, provided ample evidence that discrimination against women had led to significant gender disparities on corporate boards. RJN Ex. 14 at 2-4; Ex. 10 at 10, 13; Ex. 18 at 4. *See infra* at 6-7.

3

The legislative findings expressly recognize that statistical evidence of the underrepresentation of women in comparison to men on corporate boards is stark. *See* SB 826, § 1(e), (f)(3). A 2017 report revealed that "[o]ne-fourth of California's public companies in the Russell 3000 Index have NO women on their boards of directors; and for the rest of the companies, women hold only 15.5 percent of the board seats." *Id.* § 1(e) (emphasis in original). Among the 446 California public companies in the Russell 3000 Index, only 54, or 12 percent, of these companies had three or more female directors. *Id.* § 1(e)(3).

The Legislature heard testimony regarding the causes of these disparities, which include the secretive nature of the nomination processes, male-dominated social networks that are typically the source for director candidates, and entrenched male boards. RJN Ex. 1 at 8:6-7, 12:24-14:25, Ex. 2 at 52:17-20 ("The guys are comfortable with each other. And as a result, there is a discrimination . . . and women haven't been able to penetrate that ceiling."); *see also* RJN Ex. 31. Nominees are often "university buddies or golf course buddies, or friends" who are already known to the corporation's leadership. RJN Ex. 1 at 13:11-13. Because of the reliance on these networks, women are often not among the individuals considered for corporate directorships. *Id.* at 13:13-17. "[T]he big myth is that people think that search firms reach out and find candidates for boards. The company, [directors] themselves, give us that list of their friends and they say, 'Vet those candidates.'" *Id.* at 13:17-19; *see also* RJN Ex. 24 at 104 ("[E]xceptionally qualified executives, often overlooked due to the closed board recruitment process, will now be asked to . . . lead"). Proponents explained that a substantial pool of qualified women were readily available for directorships but were not chosen due to sex discrimination. *See* RJN Ex. 1 at 6:5-12; Ex. 2 at 2:02-06; 34:14-34:20, 35:12-14 (Sen. Jackson describing SB 826's purpose to "break open those impenetrable walls of discrimination" and referring to gender discrimination and need for equal treatment), 47:11-18, 52:8-12, 52:19-22 ("[T]here is a discrimination, there is a ceiling, and women haven't been able to penetrate that ceiling by asking, by urging, by encouraging. It just hasn't happened."), 53:19-53:23 ("Why are we not in the board rooms? Is it because we're not qualified? We are eminently qualified. But what we have is a history of discrimination that, unless we blast it open, sadly, is not going to change."); Ex. 8 at 4:22-6:4 (Sen. Pre. Pro Tem &

4

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)

SB 826 Co-Author Atkins describing not a "glass ceiling", but a "ceiling [] bolted shut with metal", and experiences of "incredible women with credentials and degrees and real experience . . . [who have] lost out to those less experienced, less talented . . ."); Ex. 5 at 3:4-3:8.

Testimony and letters of support also set forth the substantial pool of women qualified to serve on corporate boards. *Id.* at 5:16-21 (describing thousands of executive, experienced women and those certified for board service by elite university programs), 8:5-9, 10:15-25; *see also* RJN Ex. 9 at 6, Ex. 32, Ex. 24 at 9, 105 (300 California CEOs organization founder stating there is "an abundance of qualified women leaders" for corporate boards). Over fifty California business leaders highlighted that "the pipeline of qualified women candidates . . . is overflowing with experienced and capable women leaders." RJN Ex. 32. SB 826 proponents cited: (1) a 2016 study identifying 191 women serving as C-suite executives in California's largest public companies; (2) over 200 women CEOs and women business owners in California; and (3) hundreds of other qualified women executives currently serving as Chief Operating, Financial, and Human Resources Officers and General Counsel at California's public corporations. RJN Ex. 24 at 61, ; *see also* León Decl., Ex. H at 5. The Legislature considered this pool of thousands, including data specific to qualified women candidates in California, in relation to 26% (117) of 446 California based, public companies with no women directors at all. SB 826, § 1(e)(2).

Based on this record evidence, the Legislature determined that sex discrimination resulted in the exclusion of qualified women from director positions that led to severe underrepresentation in comparison to men on corporate boards. *See supra* at 3- 5; *see also* RJN Ex. 2 at 48:21-25 (Sen. Monning: SB 826 is intended to address "well-documented discrimination in our system."); Ex. 5 at 14:14-15:8 (Chair Stone: SB 826 creates an "opportunity [for women] to overcome what has really been longstanding discrimination throughout the process."); Ex. 9 at 1; Ex. 10 at 12.

The Secretary's experts and declarants with substantial knowledge of the corporate board selection process confirm that sex discrimination, including an "old boys'" culture, gender bias, and different treatment in the pipeline, has led to the exclusion of qualified women from and severe gender disparities on boards. Rosenblum Decl. ¶ 83; Schipani Decl. ¶¶ 45-57 (disparities

5

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)

are "rooted in discrimination" and "gender bias"), ¶¶ 49-50 49, (81% of boards without women

failed to consider a single woman candidate for most recent board vacancy);

Grounds Decl., ¶¶ 20-21, 25-26, 28-34; Konrad Decl., ¶¶ 10-11, 16-30, 62-65; *see also*

Berkhemer-Credaire Decl., ¶¶ 24-25; Meline Decl., ¶¶ 27-28, 31 n.6. These experts further

confirm that the insular, secretive nature of the director nomination process makes it nearly

impossible for women to challenge that process or even know when a seat is open on a board.

Konrad Decl., ¶¶ 16-24, 29; Schipani Decl., ¶¶ 46, 91; Berkhemer-Credaire Decl., ¶¶ 21-26, 29-

30, 35, 39 [insular and secretive]; Meline Decl., ¶¶ 27-29, 31-32, 43 ("single-gender" men's

network); *id.* ¶ 30 (no application or application process); *id.* ¶ 34 (selection criteria includes

"cultural alignment with the existing Board"); *id.* ¶ 35 (no transparency in process or retaliation

protection); Rosenblum Decl., ¶ 83 (boards reflected an "old boys club"); *see also id.* ¶¶ 2, 71-73,

89. They confirm that board members typically nominate people in their same professional and

social circle, resulting in nominees having the same characteristics as the nominators: the

nominees are overwhelmingly men. *Id.* And that there is a substantial pool of qualified women

ready and willing to serve. Grounds Decl., ¶¶ 41-45, 48; Konrad Decl., ¶ 10 (35% of business

school composed of women since 1985 but lack of movement in board participation); Berkhemer-

Credaire Decl., ¶¶ 12-16, 37; Schipani Decl., ¶¶ 28-41; Meline Decl., ¶¶ 22-25.

> **B.     The Economic Benefits of and Public Interests Served by a Critical Mass of Women on Corporate Boards**

The Legislature also provided ample justification for another key objective of SB 826–

increasing gender diversity on boards to improve corporate performance and benefit California's

shareholders, residents, and the larger public. *See* RJN Ex. 1 at 3:6-9 ("By having such low

participation rates for women in California's corporate leadership ranks, we effectively inhibit our

own economic performance as a state."), 11:21-12:7; Ex. 2 at 10:10-11:20; Ex. 5 at 4:20-23; Ex.

19 at 59-60, 102, Ex. 21; Declaration of Nora Lynn (Lynn Decl.), Ex. B (diversity is a CalSTRS

priority "because [it] is good for business"—"not just from an ethnical perspective but also from a

financial one," and describing efforts to increase gender diversity on California boards).

Numerous reports cited in the legislative record described the economic and business

justifies for gender diversity on corporate boards. *See* SB 826, § 1(c); RJN Exs. 25 at 3-4, 26-30. Studies cited by the Legislature from UC Berkeley, McKinsey,[1] MSCI, and Credit Suisse showed corporate governance, performance, and long-term sustainability benefits for corporations with female directors in comparison to those with no female directors. *See id.* § 1(c)(1)-(5), (g)(2); *see also* RJN Ex. 1 at 4:4-12; Ex 20. For example, a study analyzing U.S. corporation performance from 2011 and 2016 found that those with three or more female directors reported earnings per share 45 percent higher than those with no female directors at the outset of the period. *Id.* § 1(c)(1). A Credit Suisse study found that corporations with at least one female director had a nearly two times greater price-to-book value and an average return on equity of 12.2 percent, compared to 10.1 percent for corporations with no female directors. *Id.* § 1(c)(2). Research also supported the Legislature's determination that a critical mass of three or more women directors improves corporate boards' effectiveness, productivity, and workforce engagement, and avoids tokenism and supports more effective engagement of women directors on their board. *Id.* § 1(g)(1)-(2).

The Secretary's experts and witnesses confirm that gender diversity, and the presence of a critical mass of women on corporate boards, will benefit California's shareholders, residents, and the larger public. *See* Konrad Decl., ¶¶ 4, 31-36, 41-60, 61, 66-67, 69-75; Meline Decl., ¶ 34; Schipani Decl., ¶¶ 59-68, 70-87, 99-110; Lynn Decl., Ex. B, at 3 (corporate governance improves with more diversity, leading to "increased long-term value" for CalSTRS' investments); Declaration of Simiso Nzima (Nzima Decl.), ¶¶ 3-4, 6 (CalPERS) (same).

### C.   Previous Efforts by the Legislature and Private Sector to Increase the Number of Women Corporate Directors

Prior to SB 826, the Legislature passed several measures to reduce sex discrimination in public board selection, but these and other public and private efforts were unsuccessful. Steps were taken to provide boards with more information to identify qualified candidates, and thereby improve the pipeline. In 1995, the California legislature initiated a registry for qualified board

---

[1] The McKinsey study cited was inadvertently referred to as the 2016 "Women Matter" study, but is in fact a McKinsey study cited in Senate Concurrent Resolution No. 62, legislation adopted in 2013 to encourage boards to include women, *infra* at 8. *See e.g.*, SB 826, § 1(b). The correct McKinsey study is attached as Exhibit A to the Lynn Declaration.

7

candidates, but this approach was ineffective. *See* RJN Ex. 10 at 1-2, 13. Privately run registries are available through elite business schools such as Stanford and Harvard, and the CalPERS and CalSTRS registry (3D) of qualified board candidates with diverse backgrounds launched in 2009, but notice of a diverse pool of qualified candidates did little to change severe disparities. RJN Ex. 4 at 22:9-11; Ex. 2 at 34:18-35:1, 38:8-10; Lynn Decl., Ex. B at 2 (email identifying CalSTRS diversity initiatives since the 2000s, and letter discussing CalPERS and CalSTRS registry); *see also* León Decl., Ex. I at 20-22. Efforts were also undertaken to influence corporations to increase their selection of diverse directors. Since 2009, the Securities Exchange Commission (SEC) has required public corporations to make public disclosures (i.e. transparency) regarding their board nominations processes and consideration of diversity. 17 C.F.R. § 229.407; Rosenblum Decl., ¶ 56. In 2008 the State Controller asked CalPERS and CalSTRS to prioritize corporate diversity where they invest. RJN Ex. 19 at 25, 56-57. In 2011 California established the Insurance Diversity Initiative. RJN Ex. 19 at 26, 57. In 2013, the Legislature approved Senate Concurrent Resolution No. 62, urging California publicly held corporations to, within three years, have a minimum number of women directors commensurate with board size. S. Conc. Res. No. 62, 2013 –2014 Leg., Reg. Sess. (Cal. 2013) (S. Conc. Res. 62). The Legislature reviewed prior measures and determined they were insufficient. *See* SB 826, § 1(b); RJN Ex. 10 at 2, 13; Ex. 9 at 3.

## ARGUMENT

### I. PLAINTIFF LACKS EVIDENCE OF INJURY NECESSARY TO ESTABLISH STANDING

Plaintiff is unlikely to prevail in this case because the evidence demonstrates that he has not been injured. "'The party invoking federal jurisdiction bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the *successive stages of the litigation*.'" *Meland v. Weber*, 2 F.4th 838, 843 (9th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added)). "Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citing *Mollan v. Torrance*, 22 U.S. 536, 538 (1824)). "If jurisdiction is lacking at the outset, the district court has

8

'no power to do anything with the case except dismiss.'" *Id.* (quoting 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3844, at 332 (1986)).

The complaint alleges that SB 826 "injures Plaintiff's right to vote for the candidate of his choice, free from the threat that the corporation will be fined if he votes without regard to sex." Compl. ¶ 28. He seeks injunctive relief, such that "he would no longer have to worry that he might subject OSI to potential fines unless he considers sex when selecting a board member." Compl. ¶¶ 22-32. At the pleading stage, accepting the material facts alleged as true (as it must), the Ninth Circuit held that Plaintiff had suffered a personal injury sufficient to confer standing because he alleged that "[i]n order to keep OSI in compliance with California law and avoid potential monetary sanctions (and alleged public shaming), . . . he is required or encouraged to make discriminatory decisions in voting for board members." *Meland*, 2 F.4th at 847. The Ninth Circuit reasoned that SB 826 would encourage a reasonable shareholder to vote for female board members, but at that time evidence concerning OSI's election process and Plaintiff's voting history were not yet part of the record. *Id.* at 845-847. At the preliminary injunction stage, however, Plaintiff "bears the burden of establishing the elements of standing[.]" *City & Cnty. of San Francisco v. U.S. Citizenship & Immigration Servs.*, 944 F.3d 773, 786-87 (9th Cir. 2019).

Undisputed evidence submitted with this opposition demonstrates that Plaintiff has not made the required "clear showing" of standing. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). In both OSI director elections in which Plaintiff has been eligible to vote, he voted against the sole female OSI director nominee, with no impact whatsoever on OSI or its compliance with SB 826. *Supra* at 3. The evidence, which was not before the Ninth Circuit, shows that Plaintiff's actions during the OSI elections have no bearing on the final outcome of any director election, and therefore he is not required or encouraged to vote in favor of a woman for OSI's Board. *Supra* at 3. As an owner of 65 out of nearly 18 million (0.000363%) OSI shares on the 2020 record date– the date closest to the date of the complaint's filing–Plaintiff's vote did not (and will not) sway the election in favor of, or against, any particular director. *See id.*; Jennings Decl. ¶¶ 28, 32-34.

Contrary to what Plaintiff has alleged in his complaint, he can choose to withhold his vote, vote in favor of any director, or decline to vote, without impacting in any way who is elected to

9

the Board. *Supra* at 2-3. Thus, the Ninth Circuit's reasoning no longer applies, as the evidence demonstrates that Plaintiff's right to vote freely in the OSI election was not harmed in any way. *See Meland*, 2 F.4th at 845-847. This is so for several reasons. First, OSI's directors have sole authority to determine who to put forth in a proxy proposal for election to the Board each year, and they have sole authority to decide the number of seats on the Board. *Supra* at 2. Since OSI became a publicly held company in 1997, OSI has recommended for approval by stockholders the exact number of nominees as there are Board director seats, and directors are elected by a plurality of votes cast–thus, any nominee with a single vote wins. Jennings Decl. ¶¶ 25-28, 32-34. Because all Board members also hold OSI shares, their votes for themselves or each other are always sufficient for election.[2] Jennings Decl., Ex. 2. Thus, it is mathematically impossible for Plaintiff's vote to affect the outcome of an OSI board election, and his alleged specific, individual harm has not been and cannot be realized under the actual circumstances of OSI elections, as OSI does not face a "threat" of fine or other penalty on account of Plaintiff's vote. *See* Compl. ¶ 28.

Plaintiff's decision to withhold his vote(s) or abstain from voting, rather than voting for a woman nominee, will also never jeopardize the ability of OSI to achieve the quorum (set at 50% + 1 of shares) to proceed with the election because, by OSI by-laws, shareholders' withheld votes and nonvotes of shares held by brokerage firms, which include Plaintiff's shares, count towards quorum. Sze Decl., Ex. 47 at 2; Jennings Decl. ¶ 32. In addition, institutional investors, directors, and company executives have owned over 50 percent of outstanding shares, so they can achieve quorum without the votes of any individual shareholders, like Plaintiff. *Id*.

Because the evidence demonstrates that Plaintiff is neither required nor encouraged to vote for a woman nominee, but rather is entirely free to withhold his vote or vote against the woman candidate with no impact at all on the board election or the corporation's legal compliance with SB 826, he has not "suffered a concrete and particularized injury" of any kind, let alone one that is "fairly traceable to the challenged conduct." *Hollingsworth v. Perry*, 133 S.Ct. 2652, 2661

---

[2] Even if OSI had a contested election, which it has never had, there is no evidence that Plaintiff's 65 share vote would change the outcome, especially as OSI's sole woman director has garnered the most votes of any director in both elections and OSI's principal institutional shareholders, including one with more than 2.7 million shares have expressed strong support for gender diversity on boards. Sze Decl., Ex. 47 at 45-46; Jennings Decl. ¶¶ 28-29.

10

(2013). Plaintiff, in fact, voted his preference in the two elections held since he filed this complaint, without any effect on the election or OSI's SB 826 compliance. For all of these reasons, Plaintiff's injury is entirely "conjectural" and "hypothetical." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868–69 (9th Cir. 2002).

"[I]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 891 (9th Cir. 2018) (Court may dismiss sua sponte any time it determines plaintiff lacks standing). Because Plaintiff cannot prove his allegations regarding his purported injury that he is required or encouraged to discriminate on the basis of sex, he lacks Article III standing necessary for the Court to consider his claim, and Plaintiff's action must be dismissed.

## II. PLAINTIFF IS UNLIKELY TO PREVAIL ON HIS EQUAL PROTECTION CLAIM

### A. Plaintiff is Not Likely to Succeed on the Merits Because SB 826 Satisfies the Intermediate Scrutiny Standard of Review

A preliminary injunction is "an extraordinary and drastic remedy" that should only be awarded "upon a clear showing" that a plaintiff is "entitled to such relief." *Munaf*, 553 U.S. at 689-90 (cleaned up). Even if Plaintiff could overcome this threshold standing requirement, he is not likely to succeed on the merits because SB 826 passes intermediate scrutiny: it is supported by exceedingly persuasive justifications—the law serves important governmental interest and is substantially related to the achievement of those underlying interests. *See Associated Gen. Contractors. of Am., San Diego Chapter v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1195 (9th Cir. 2013) (citing *United States v. Virginia*, 518 U.S. 515, 524 (1996)). Plaintiff is not likely to prevail on the merits because the Secretary can show that women, who are "members of the gender benefited by the [remedial purpose of the] classification actually suffer a disadvantage related to the classification." *Coral Const. Co. v. King County*, 941 F.2d 910, 931-32 (9th Cir. 1991) (cleaned up), overruled on other grounds by *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). The Secretary has provided substantial evidence that "[s]ome degree of discrimination [has] occurred in a particular field," which is more than

sufficient to justify "a gender-specific remedy" for publicly held corporations headquartered in California. *Id.* at 932 (citing *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 729 (1982)).

**B. SB 826 Serves Important Government Interests in Remedying Discrimination and Advancing Diversity on Corporate Boards**

**1. SB 826 was enacted in response to significant evidence of sex discrimination in corporate board selection**

"Helping women overcome the adverse effects of discrimination" and the many barriers and "disadvantages that women confront" in receiving equal treatment and opportunities in business is a sufficiently important government interest to "justify the limited use of gender-based classifications." *Coral Constr. Co.*, 941 F.2d at 932; *Associated Gen. Contractors v. City & County of San Francisco*, 813 F.2d 922, 939-40 (9th Cir. 1987), *overruled on other grounds by Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989), *as stated in Coral Constr. Co.*, 941 F.2d at 916 n.6; *see also Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987); *Schlesinger v. Ballard*, 419 U.S. 498, 508 (1975). Plaintiff does not dispute that remedying discrimination is an important government interest, but instead contends that it was not the Legislature's stated purpose and it is unsupported by the evidence. Mot. at 7.

First, Plaintiff's assertion that the Legislature failed to identify remedying discrimination as a justification or purpose for passing SB 826 is plainly wrong. Mot. at 8. SB 826's findings expressly refer to the "lack of gender diversity on corporate boards" and the "lack [of] female directors," SB 826, § 1(d), (e)(4), and sex discrimination was discussed explicitly and in detail throughout the legislative record. *Supra* at 4-6. The anti-discrimination purpose of the bill was expressly reiterated by legislators at hearings, discussed on numerous instances in multiple bill analyses, and unambiguously stated in Senator Jackson's letter to the Governor. *Id.*

To the extent Plaintiff is making a technical argument, based on the absence of the word "discrimination" in SB 826's text, this argument also fails. Courts consider justifications advanced by the state in defense of a law challenged under the Equal Protection Clause, even if the legislature's purpose is "somewhat less clear." *Michael M. v. Superior Court*, 450 U.S. 464, 469 (1981). A state's asserted purpose in defense of a law's constitutionality must be considered, unless "an examination of the legislative scheme and its history demonstrates that it could not

12

have been the goal of the legislation." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 648 n.16 (1975). Furthermore, even when evaluating evidence of discrimination under the more rigorous strict scrutiny standard applied to race cases, courts do not limit the inquiry to findings and declarations. Courts consider the legislative record, including any data and testimony presented during the legislative process, the statute itself, and the context in which it was approved. *See Croson*, 488 at 499-504; *Kahn v. Shevin*, 416 U.S. 351, 353-54 & n.4, 7 (1974) (considering federal agency data and academic articles to discern law's purpose). Here, the legislative record is replete with discussion of the discrimination against women on corporate boards, which exceeds the legal requirements for the Court to consider the law's remedial purpose. *Supra* at 4-6.

Moreover, Plaintiff also does not, and cannot, dispute that the Legislature adopted SB 826 for broad economic reasons impacting corporations and the public at large. SB 826, § 1(a). The law's remedial purpose cannot be separated reasonably from the business case for SB 826. The purposes operate in tandem, as the Legislature recognized the larger economic and social costs resulting from sex discrimination in the board context of publicly held corporations. *See United States v. Virginia*, 518 U.S. 515, 533 (1996) (recognizing exclusion of women from elite, higher education institution can curb work opportunities and undermine deployment of full "talent and capacities" of people across the country).

Plaintiff's second contention—that the evidence of discrimination is insufficient to support SB 826 as a remedial statute—also fails.[3] Mot. at 7-9. Plaintiff incorrectly argues that the convincing evidence standards should apply here. Mot. at 7; *see Associated. Gen. Contractors*, 813 F.2d at 928, 932, 941 (upholding facial challenge to gender-conscious program, and applying convincing evidence standard to a *race-based program* as part strict scrutiny review).[4] To survive

_____

[3] Plaintiff also suggests that the Secretary may not rely on precedents authorizing governments to enact laws to remedy discrimination because SB 826's mandate applies to private parties. Mot. at 10 n.14. However, Plaintiff incorrectly applies *Croson*, a strict scrutiny case. "[U]nlike the strict standard of review applied to race-conscious programs, intermediate scrutiny does not require any showing of governmental involvement, active or passive, in the discrimination it seeks to remedy." *Coral Constr. Co.*, 941 F.2d at 932.

[4] Plaintiff erroneously argues for the application of cases involving strict scrutiny review of race-based programs to SB 826. *See* Mot. at 10 (citing *Croson*, 488 U.S. at 469 (applying strict scrutiny); *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978); *Grutter v. Bollinger*, 539 U.S. 306, 309 (2003); *Gratz v. Bollinger*, 539 U.S. 244, 293 (2003)). And, *Western States Paving v.*

intermediate scrutiny, the Secretary only needs to show that "[s]ome degree of discrimination []

occurred in a particular field before a gender-specific remedy may be instituted in the field."

*Coral Constr. Co.*, 941 F.2d at 932; *Associated Gen. Contractors*, 813 F.2d at 940 (a gender

conscious program is only justified if women "actually suffer a disadvantage related to" their

gender.). "[T]he degree of specificity required" in the evidence may vary, and "anecdotal

evidence [in support] need not be verified." *Cal. Dep't of Transp.*, 713 F.3d at 1195-1197

(merging review of race and gender-conscious measures under strict scrutiny standard, upholding

entirety of the program, and quoting *Croson*, 488 U.S. at 489).

Contrary to Plaintiff's contention, the Legislature did not rely on statistical disparities alone

to establish the existence of discrimination. *See supra* at Facts, Part II.A. A wide body of

evidence supports the Legislature's determination that sex discrimination has infected the

selection of corporate directors in publicly held corporations headquartered in California. *Id.* This

evidence consists of statistical analyses, expert studies, anecdotal evidence, and witness testimony

presented to the Legislature, as well as expert testimony collected since SB 826's enactment, and

presented to this Court. *See Coral Constr. Co.*, 941 F. 2d at 920 (the constitutionality of city's

remedial program "should be evaluated based upon all evidence presented to the district court

whether such evidence was adduced before or after enactment of the [program]").

Nor does SB 826 include, as Plaintiff claims, the flaw that the Supreme Court identified in

*Croson*, a strict scrutiny public contracting case where the city relied on the disparity between the

number of prime contracts awarded to minority firms and the minority population in the city as a

whole to determine that racial discrimination had occurred. Mot. at 9 (citing *Croson,* 488 U.S. at

501-502 ("[T]he city does not even know how many [minority businesses] in the relevant market

are qualified to undertake [the work]."))[5] The Legislature discussed the obvious fact that more

than fifty percent of the United States population is women, but it did not end there. Plaintiff

*Wash. State Dep't of Transp.*, 407 F.3d 983, 990 n.6, 1000-02 (9th Cir. 2005) applied a strict
scrutiny analysis, without undertaking a separate intermediate review, something the court cannot
do here. Mot. at 10.

[5] Plaintiff's citation to *Monterey Mechanical Company v. Wilson*, 125 F.3d 702, 708, 713-715 (9th Cir. 1997) is also easily distinguished because no evidence of discrimination was offered in defense of the challenged remedial statute. Mot. at 5.

14

ignores the Legislature's explicit review and reliance on multiple sources of evidence identifying a substantial pool of thousands of qualified California women candidates, just a subset of the national pool of thousands of qualified women that far exceeded the number of women on Boards. *Supra* at Part II A; *see also* Konrad Decl., ¶ 10 (women earning at least 33% of MBAs in United States since 1986-87); Schipani Decl., ¶¶ 28-41 (registries and studies noting thousands of women directors); Grounds Decl., ¶¶ 41-45, 48 (same); Berkhemer-Credaire Decl., ¶¶ 12-16, 37 (same); Meline Decl., ¶¶ 22-25 (same). Plaintiff also omits the Legislature's comparison to stark and unrefuted statistical data showing 26% of California public corporations with no women directors at all and only 15.5% of corporate board seats held by women before SB 826's passage. SB 826, § 1(e)(1)-(2).

There is also abundant anecdotal and expert evidence regarding the insular, secretive director selection process that advantages men. RJN Ex. 1 at 12:24-14:25; Meline Decl., ¶ 30 (selection process "rarely known outside the boardroom"); Schipani Decl., ¶ 46, 91 (boardrooms' tendencies to recruit people similar to themselves); Konrad Decl., ¶¶ 16-24, 29; Rosenblum Decl., ¶¶ 2, 71-73, 83, 89; *see also Chen-Oster v. Goldman Sachs & Co.*, 325 F.R.D. 55, 76-77 (S.D.N.Y 2018) (testimony by female investment banker regarding her exclusion from golf outings was relevant evidence, along with other evidence of disparate treatment, for a compensation discrimination claim). There is also significant evidence of gender bias against women in board selection pipeline process, and that when women have not been excluded, highly qualified women have readily filled board seats. *Supra* at 4; Grounds Decl., ¶¶ 41-45; Konrad Decl., ¶¶ 16-30; Meline Decl., ¶¶ 26-29; Schipani Decl., ¶¶ 28-36, 41, 45-57, 88-98. The Legislature found and the Secretary's evidence confirms that women have faced, and continue to face, long-standing discrimination in attaining corporate directorships. *Supra* at 4-6; Schipani Decl., ¶¶ 45-57, 88-98; Konrad Decl., ¶¶ 16-30, 62-65; Rosenblum Decl., ¶¶ 71, 73; RJN Ex. 5 at 4:11-13; Berkhemer-Credaire Decl., ¶ 35; Meline Decl., ¶¶ 26-38.

In sum, there is more than sufficient evidence supporting the Legislature's determination that, given the statistical data, expert analyses, anecdotal evidence, the availability of so many qualified women, and the male-dominated, insular, and secretive nomination process, sex

15

discrimination led to gender disparities on corporate boards. *See Coral Constr. Co.*, 941 F. 2d at 932 (evidence of "some degree of [sex] discrimination" is required); *Cal Dep't of Transp.*, 713 F.3d at 1192 (statistical and anecdotal evidence sufficient to uphold a remedial program).[6]

Furthermore, the Ninth Circuit has followed Supreme Court precedents holding that the "reduction of the disparity in economic condition between men and women caused by the long history of discrimination against women has been recognized as [] an important governmental objective." *Coral Constr. Co.*, 941 F.2d at 932 (quoting *Califano v. Webster*, 430 U.S. 313, 317 (1977)); *Associated Gen. Contractors*, 813 F.2d at 940 (citing *Califano*, 430 U.S. at 318, and *Schlesinger*, 419 U.S. at 508); *see also Virginia*, 518 U.S. at 534 ("Sex classifications may be used to compensate women for 'particular economic disabilities [they have] have suffered,' . . . to advance full development of the talent and capacities of our Nation's people.") (cleaned up). As discussed above, *supra* at 5-7, the legislative record and accompanying evidence show that the stark lack of women on corporate boards is due to longstanding discrimination against women in the selection of corporate director seats. Men have not suffered discrimination in the board selection process; indeed, they have benefited from a secretive, discriminatory process and "old boys" culture for decades, and the Legislature's purpose in enacting SB 826 is to remedy that discrimination.

**2. SB 826 also furthers the important state interest in achieving economic benefits and State's long-term economic wellbeing advanced by gender diverse corporate boards**

SB 826 is justified by a second important governmental interest–securing the benefits associated with increased board diversity in publicly held companies that hold enormous sway over the economic wellbeing of the State. *See* SB 826, § 1(a) (protecting the interests of

---

[6] Plaintiff also argues that recent "hiring" trends undermine the Legislature's determination that sex discrimination exists and must be remedied. Mot. at 9. But the Harvard published analysis and the 2019 Q2 Equilar report reflect data regarding women who secured their directorships in 2019, *after* SB 826 was enacted, and the data concern new hires only, rather than overall board composition. Mot. at 1, n.1. Equilar's 2018 Q3 report, which reflects data from July to September 2018, immediately prior to SB 826's enactment on September 30, shows only a .3 percent increase in the percentage of women on Russell 3000 boards. In addition, Equilar's 2019 Q2 report lauded less than two years of growth in the percentage of women on Russell 3000 boards. Mot. at 1, n.1. This analysis is of limited value because director elections generally occur annually.

California taxpayers, shareholders, and retirees); (e)(1) (446 California public companies represent nearly $5 trillion in market capitalization); *see also* Lynn Decl., Ex. B ($221.7 billion of CalSTRS pension fund invested in California companies); Nzima Decl., ¶ 6 (corporate board diversity benefits CalPERS fund participants); Chamberlain Decl. ¶¶ 5-6 ("financial outlook of corporations with headquarters in California affects the State's financial health . . . estimated 10% of the State's General Fund revenue comes from the corporate income tax[.]"). The Supreme Court has recognized that diversity and the benefits it brings may establish a compelling government interest. *See, e.g.*, *Grutter*, 539 U.S. at 328 (law school had a compelling interest in attaining benefits of a diverse student body sufficient to uphold race-conscious admissions policy); *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 444-448 (2015) (identifying a compelling interest in protecting integrity of the judiciary and maintaining the public's confidence in its impartiality in First Amendment case). The State's interest in the benefits of more diverse corporate leadership—to shareholders, retirees, and indeed the public—is more than sufficient to demonstrate an important state interest to satisfy intermediate review.

Publicly held corporations are analogous to the institutions of higher education addressed in *Grutter* and the judiciary addressed in *Williams-Yulee*, for which the Supreme Court found an interest in diversity compelling. *Id.* Like those institutions, publicly held corporations hold a special position of influence within our society, are foundational for the long-term success and functioning of our society, and are entities created through statute. *Grutter*, 539 U.S. at 328-333 (recognizing "the important purpose of public education" within our constitutional tradition and role of universities as "the training ground for a large number of our Nation's leaders"); *Williams-Yulee*, 575 U.S. at 445-446 (recognizing "the place of the judiciary within the government," and the need for public confidence to ensure its ongoing authority).

Corporations, as "creatures of the state," *Johnson v. Goodyear Mining Co.*, 59 P. 304, 309 (Cal. 1899), are "artificial entities created by law for the purpose of furthering certain economic goals." *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 809, (1978) (White, J., dissenting). "[S]pecial rules" relating to corporations have been established "to increase their economic viability and thus strengthen the economy generally," and at the same time, "[i]t has long been

17

recognized, however, that the special status of corporations has placed them in a position to control vast amounts of economic power" with broad implications for society. *Id.* "Publicly traded firms play a unique role in developed economies since they comprise the largest firms in which most citizens invest and from which they consume. . . . States, including California, are some of the largest investors . . . , by way of their public pension plans, and have a strong interest in the good governance of the firms in which they invest." Rosenblum Decl., ¶ 30; *see also* Konrad Decl., ¶¶ 37-40, 68. This special role is well illustrated by CalPERS, a state agency that administers a retirement system for more than 2 million members, in which public corporations represent a large portion of its investments, and the agency has recognized the benefits of gender diversity to the pension's long-term success. Nzima Decl., ¶¶ 3-4, 6; *see also* Lynn Decl., Ex. B.

The benefits yielded by gender-diverse boards were closely studied by the Legislature and are well supported by the evidence. The Legislature reviewed and cited multiple studies evidencing that corporations with gender diverse boards perform better than corporations with boards lacking in such diversity across multiple facets of corporate performance. SB 826, § 1(c)(1), (c)(20), (c)(4), (c)(5); *see also* Schipani Decl., ¶¶ 59-68, 99-110; Konrad Decl., ¶¶ 41-60, 69-75. There is evidence that increased gender diversity on corporate boards is associated with a reduction in groupthink, and enables boards to identify broader market opportunities and tap wider market power. Rosenblum Decl., ¶¶ 43, 83; Schipani Decl., ¶¶ 82-83, 100, 108. The Supreme Court has also recognized that corporations need diversity to compete effectively in the global marketplace. *See Grutter*, 539 U.S. at 330. The documented benefits also relate to aspects of business performance that have broad social implications, such as corporate transparency, ethical behavior, social responsibility, and a pattern of less harmful risk-taking. SB 826, § 1(a), (c); León Decl., ¶¶ 2-3, Ex. A, B; Konrad Decl., ¶¶ 41-60, 61, 69-75; Schipani Decl., ¶¶ 76-87.[7]

---

[7] Plaintiff has not disputed evidence concerning the economic benefits of gender diverse corporate boards, but instead urges that SB 826 is a *per se* unconstitutional stereotype, and argues that the Court may disregard the empirical evidence in support of SB 826. Mot. at 7. *Craig v. Boren*, 429 U.S. 190 (1976), however, does not support this proposition. There, the Court found the state's empirical evidence unpersuasive, given that it indicated that only a very small percentage of males between 18-20 years old were arrested for driving under the influence, and state law did not criminalize their beer consumption. *Id.* at 201-204. Nor is *Weinberger* on point. There, the Court declined to hold that evidence that men were more likely than women to be the

The State has an important interest in ensuring gender diversity on the boards that lead publicly held corporations, which collectively have enormous impact on our economy and society. *Id.*

### 3. SB 826 is substantially related to the achievement of the State's important interests, and it is not a quota

SB 826 is substantially related to achieving the underlying objectives of the statute. SB 826's diversity requirement focuses squarely on females, consistent with the sex discrimination identified by the Legislature, the stark gender disparities evident in the data, and the research showing the benefits associated with gender diversity on corporate boards. The law also applies only to boards of publicly held corporations headquartered in California, which were the focus of the evidence considered by the Legislature. *See Hogan*, 458 U.S. at 729 (requiring a showing of discrimination in the relevant field).

Plaintiff incorrectly contends that SB 826 fails intermediate scrutiny because it is not limited to a specific industry or geographic region. Mot. at 11. But the Ninth Circuit has rejected facial challenges, like this one, to gender-conscious remedial programs that apply across industries, because, unlike racial classifications that must be "narrowly tailored," there is no requirement that gender-based programs be drawn as precisely, and though preferences may extend to some industries where women are not disadvantaged, experience suggests that such scenarios are still the exception. *Associated Gen. Contractors*, 813 F.2d at 941-42; *Coral Constr. Co.*, 941 F.2d at 932. In fact, no intermediate scrutiny case has required such a limitation.

Even if a stricter standard applied, the breadth of SB 826 is supported by the Secretary's evidence establishing that public corporations in a range of regions and industries within California fall short of a critical mass of women directors. In addition, the Legislature used another limiting tool–confining the bill to publicly held companies–625 companies in 2019— though the number of private stock corporations currently registered in California is significantly greater at over 1 million. Bogart Decl., ¶¶ 5, 19, Exs. B, D. With this limitation in place, the Legislature's goal of enhancing corporate performance to advance the larger public interest,

primary financial supporters of spouses and children, justified denying benefits for the surviving husbands of working women who had contributed under the Social Security Act for benefits during their lifetime. 420 U.S. at 645. The Secretary further opposes the assertion that SB 826 is premised on an unlawful stereotype later in this memorandum, *infra* at 23.

19

including the interests of California retirees and residents, applies to publicly held corporations regardless of sector or size. Furthermore, corporate directors' skills are transferrable, and many male directors have served effectively in various industries other than their own. Berkhemer-Credaire Decl., ¶ 38; Meline Decl., ¶¶ 25, 34. Limiting the diversity requirement to an industry or companies of a certain size would undermine SB 826's effectiveness as a remedy.

Plaintiff's objection that SB 826 is not expressly time-limited fails for similar reasons. The out-of-circuit cases upon which Plaintiff relies establish no such principle. Mot. at 12 (citing *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1581 (11th Cir. 1994) (holding only that if a statute is left in place for decades without reevaluation it may invite a new Equal Protection Clause challenge); *Back v. Bayh*, 933 F. Supp. 738, 759 (N.D. Ind. 1196); *Mallory v. Harkness*, 895 F. Supp. 1556, 1562 (S.D. Fla. 1995). *Mallory* is also unpersuasive, as it failed to cite or follow the Eleventh Circuit's intermediate review under *Ensley*, and without explanation, applied strict scrutiny review to invalidate a remedial statute that included gender-based measures.

Regardless, the Secretary is required to publish annual reports analyzing SB 826's effects, which ensures annual public evaluation of the requirement. Cal. Corp. Code § 301.3(d). Plaintiff points to no cases that require the Legislature to speculate and set an arbitrary sunset date for a program to remedy gender discrimination. Mot. at 12. Instead, the Legislature took a reasonable approach to achieve important governmental interests by requiring annual reports to apprise itself, the public, and stakeholders regarding progress made. *Id.* Nor was the State required to exhaust all conceivable gender-neutral solutions. Such a standard does not even apply under strict scrutiny review. *Grutter*, 539 U.S. at 339. Even so, the Legislature approved its gender diversity requirement only after alternative measures were considered, and multiple efforts had been tried in California, the United States, and other countries, and had failed. SB 826, § 1(b),(e); *supra* at 7-8; Rosenblum Decl., ¶ 55-73, 81-89; Grounds Decl., ¶ 38; Meline Decl., ¶ 44-45.

Moreover, to show he is more likely to prevail on his facial challenge, which is "the most difficult challenge to mount successfully," Plaintiff "must establish that no set of circumstances exists under which the Act would be valid" on the face of the statute's text alone, which he cannot do. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Despite Plaintiff's attempts to

20

characterize it to the contrary, SB 826, on its face, does not impose a rigid, impermissible quota that imposes a hard percentage or "gender parity" or necessarily deprives anyone of a corporate directorship. Mot at 10. To begin with, Plaintiff relies on strict scrutiny cases involving race-based programs, which are inapplicable here. *Supra* at 16 n. 4. Even if such cases did control here, they are distinguishable on their facts. SB 826 introduces a flexible, gender diversity floor: corporations must have a certain number of women directors, depending on board size, and a corporation is expressly permitted to comply by "increas[ing] the number of directors on its board." SB 826, § 2; Cal. Corp. Code § 301.3(a). Men are not excluded from or restricted to limited membership on corporate boards, because for every woman a corporation adds to its board, that corporation may add a male board member and there is no limit on the number of men who may serve. *Id.*; *see also* Jennings Decl., ¶¶ 39, 44; RJN Ex. 4 at 24:15-19. ("[W]e're not asking for you men to leave the room, we're just asking for you to make room in the room."). In addition, a corporation can even come into compliance with SB 826 without adding a female director at all. For example, a corporation with a six member board, consisting of two women and four men, may, in the event that a male director retires, and retain all remaining directors.

On its face, the Legislature's flexible approach permits the "individualized consideration" of director candidates, regardless of their gender, as corporations have the authority to add director positions on their boards and there is no limit to the number of director positions that may be added. *See Grutter*, 539 U.S. at 334. Gender is considered permissibly in a "flexible, nonmechanical way" because corporations determine the overall composition and board size, and the criteria for any director seat. *Id.* at 334-335. In this way SB 826 does not assign a preordained value to a prospective woman director based on her gender, as the university admissions program did in *Gratz* with respect to minority student applicants. 539 U.S. at 256. The diversity floor, alone, does not create an impermissible quota. *Grutter*, 539 U.S. at 336 ("'Some attention to numbers,' without more, does not transform a flexible [] system into a rigid quota.") (quoting *Bakke*, 438 U.S. at 336 (Powell, J., concurring)). Finally, under SB 826, a corporation can do nothing and faces only a potential limited fine. *Compare* Rosenblum Decl. ¶ 40 (discussing other countries' mandatory penalties, including corporate dissolution), *with* SB 826, § 1(d).

21

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)

The corporate board selection process is also distinguishable from the contract set-aside and admissions programs in cases that Plaintiff cites because, based on SB 826's text, displacement of male directors is not an inevitable outcome. Mot. at 10. Under existing case law, the hallmark of a quota program is a rigid mandate that allocates a fixed resource among a defined pool of applicants, such as contracting firms participating in a bidding process or students competing for limited seats in an incoming class. *See Bakke*, 438 U.S. at 265 (admissions for 100 seats in a medical school class); *Croson*, 488 U.S. at 481 (install toilets); *Monterey Mech.*, 125 F.3d at 704 (upgrade electrical and heating systems). But participation in a corporate board is not a finite resource; a corporate directorship involves decision-making authority. Director positions may be added or eliminated with relative ease, based on board approval. Jennings Decl., ¶¶ 39, 43-44. Determining a board's size and composition is also materially different from allocating seats in a class or a project to a public contractor because as to the former there is *no* position description, *no* application process, and, therefore, *no* defined candidate pool. *See* Berkhemer-Credaire Decl., ¶¶ 15, 18, 31. And, corporate board directorships are positions of influence with respect to high-level decisions, and unlike applicants for school admission or public contractors, directors may be called upon to lead as the business at hand requires, and the body may grow or shrink as needed. *See Jewel Companies, Inc. v. Pay Less Drug Stores Nw., Inc.*, 741 F.2d 1555, 1560 (9th Cir. 1984); Cal. Corp. Code § 300(a). In sum, Plaintiff is not likely to succeed on the merits because SB 826 satisfies intermediate scrutiny.

### 4.    SB 826 does not perpetuate sex stereotypes

Finally, Plaintiff is plainly wrong in asserting that SB 826 is premised on patronizing, outmoded gender stereotypes. Mot. at 6. SB 826 is not based on "archaic or overbroad" generalizations about the role of women as contributors to their families or their level of maturity relative to male peers. *See Weinberger*, 420 U.S. at 643 (provision regarding surviving spouses); *Stanton v. Stanton*, 421 U.S. 7 (1975) (female age of majority); *Craig*, 429 U.S. at 190 (men could purchase beer); *Califano v. Goldfarb*, 430 U.S. 199, 205-06 (1977) (provision regarding surviving spouses); *Orr v. Orr*, 440 U.S. 268 (1979) (only men required to pay alimony). These statutes were constitutionally invalid because they rested on assumptions and stereotypes

22

"casually adopted" by legislatures, or the legislative history did not indicate the purpose of the gender-based distinction, and overbroad generalizations were rejected. *See, e.g.*, *Califano*, 430 U.S. at 217 n.18; *Weinberger*, 420 U.S. at 644-645, n.15; *Orr*, 440 U.S. at 279-280; *Craig*, 429 U.S. at 199 n.7; *id.* at 213 n.5 (Stevens, J., concurring); *Stanton*, 421 U.S. at 9 at n.**. In contrast, SB 826 is based on a substantial body of evidence demonstrating that qualified women face barriers to securing directorships that do not similarly affect men, and women remain underrepresented despite the strong business case for their selection. *Supra* at Part II.A. SB 826 does not command that any woman director advance particular workplace or business policies, or adopt a specific leadership style. SB 826 is the opposite of a law based on sex stereotypes; instead its citation to a myriad of studies dispel old arguments that women are not qualified to serve and that businesses will suffer if the glass ceiling "bolted shut with metal" is finally removed. RJN Ex. 8 at 5:5-9. *See Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 68 (2001) (a stereotype is "a frame of mind resulting from irrational or uncritical analysis").

## III.  PLAINTIFF WILL NOT SUFFER IRREPARABLE HARM NOR WILL THE PUBLIC'S INTEREST BE UNDERMINED IF SB 826'S FINAL PROVISION TAKES EFFECT

Plaintiff's motion also fails because he will not suffer irreparable harm in the absence of preliminary relief, and he has not demonstrated that such relief is in the public interest.

### A.  Plaintiff Cannot Establish Irreparable Harm

Plaintiff's assertions of likely irreparable harm are insufficient to justify the broad scope of relief that he requests. Irreparable harm for purposes of injunctive relief is distinct from an injury alleged to establish Article III standing; to demonstrate irreparable harm, a plaintiff must show a likelihood of "immediate threatened injury." *Colo. River Indian Tribes v. Dep't of Interior*, 2015 WL 12661945, *30 (C.D. Cal. Jun. 11, 2015) (*citing Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 673 (9th Cir. 1988)). Furthermore, the "broad relief [that Plaintiff seeks] must be *necessary* to give the prevailing part[y] the relief to which they are entitled." *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (cleaned up, emphasis in original).

SB 826 includes several provisions with varying effective dates, yet Plaintiff has not demonstrated that an injunction of each is necessary to prevent likely irreparable harm. The first

23

provision, that California publicly held corporations have a minimum of one female director, has been in effect since the close of 2019. Cal. Corp. Code § 301.3(a). The second provision, requiring the Secretary to issue reports documenting the number of California publicly held corporations and their compliance, went into effect in 2019, and reports issued in 2020 and 2021. *Id.* § 301.3(c), (d). The third provision, setting a diversity floor–up to 3 female directors depending on board size–must be complied with by the end of this year. *Id.* § 301.3(b). The final provision, *id.* § 301.3(e), authorizes but does not require the Secretary to adopt regulations and impose monetary fines for violations, which the Secretary has not done. Bogart Decl., ¶ 8.

Plaintiff claims that SB 826 requires or encourages him to vote for a female director candidate because of her sex. This harm that Plaintiff asserts does not implicate SB 826's reporting requirement under Section 301.3(c) and (d), especially as the identities of board directors are already revealed on OSI's website and in mandatory SEC filings. Nor does Plaintiff's asserted harm relate to Section 301.3(a) because, as discussed above, Plaintiff's vote has no impact on the election outcome. He has already voted against OSI's first woman director twice with no impact, and is free to do so again in 2021 with no impact on OSI. Plaintiff does not assert that he faces monetary penalties under SB 826, and therefore his harm does not implicate Section 301.3(e), authorizing regulations and fines.

With respect to the last provision of SB 826 to take effect, the diversity floor requirement, as discussed *supra* at 1, 23, Plaintiff has the option to withhold his vote as he did in both 2019 and 2020. Withholding his vote will not affect the outcome of the election or deny OSI the quorum for the election, *supra* at 11-12. Because Plaintiff can (and has) voted as he wishes without any impact, Plaintiff cannot demonstrate irreparable harm necessary to enjoin this provision within SB 826, Section 301.3(b), let alone the entirety of SB 826. *See East Bay Sanctuary v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019).

### B. An Injunction Against SB 826 Is Unwarranted in Light of the Balance of Equities and Does Not Serve the Public Interest

When the state is a party to the lawsuit, courts apply the balance of equities and public interest prongs of the preliminary injunction test together. *Azar*, 911 F.3d at 581. Plaintiff asserts

that the public interest will be served by a preliminary injunction because preventing the violation of a person's constitutional rights is always in the public's interest. However, the balancing of the equities will not always yield to the constitutional interest at stake. *See id.* at 581-82 (holding no sufficient basis to "second guess" district court's finding that religious interests were outweighed by public health and other public interests present in the case).

Here, Plaintiff has failed to demonstrate that he is likely to establish that SB 826 violates the Equal Protection Clause. None of the precedents upon which he relies are squarely on point with SB 826's background and justifications, and the evidence in support of the need for the legislation is substantial. Moreover, when compared to the interests of thousands of qualified women who seek to serve on corporate boards, who now finally have a more equal opportunity to gain a directorship, and the benefits that board diversity brings to California retirees, residents and the state overall, enjoining the law for Plaintiff's wholly unsupported claim of voter coercion is not in the public interest. *Cf. Lyon v. Neustar, Inc.*, 2019 U.S. Dist. LEXIS 75307, *26 (E.D. Cal. May 3, 2019) (finding that California had a strong public interest in protecting employees within its jurisdiction, and rejecting a preliminary injunction). Because his claim is not likely to prevail, a preliminary injunction will not serve the public's interest. In addition, the vast majority of public corporations elect board directors between January and the end of May, such that the comply by date for SB 826's diversity floor requirements has already come due, practically speaking. Jennings Decl. ¶ 30.

## CONCLUSION

For the foregoing reasons, Plaintiff's request to preliminarily enjoin the entirety of Section 301.3 of the California Corporations Code must be denied.

Dated:  September 28, 2021        Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Lisa Cisneros*
LISA CISNEROS
Deputy Attorney General
*Attorneys for Defendant California Secretary of State*

25

Def. SOS Memo. in Opp. to Plf.'s Motion for Prelim. Inj. (2:19-cv-02288-JAM-AC)