1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MICHAEL L. NEWMAN, State Bar No. 222993
    Senior Assistant Attorney General
3   LAURA L. FAER, State Bar No. 233846
    VILMA PALMA-SOLANA, State Bar No. 267992
4   Supervising Deputy Attorney General
    LISA CISNEROS, State Bar No. 251473
5   Deputy Attorney General
      455 Golden Gate Ave., Suite 1100
6     San Francisco, CA 94102-7004
      Telephone:  (415) 510-3438
7     E-mail:  Lisa.Cisneros@doj.ca.gov
    *Attorneys for Defendant, California Secretary of State*
8   *Dr. Shirley N. Weber*

9                 IN THE UNITED STATES DISTRICT COURT

10              FOR THE EASTERN DISTRICT OF CALIFORNIA

11                          EASTERN DIVISION

12

13

14  **CREIGHTON MELAND, JR.,**                Case No. 2:19-cv-2288-JAM-AC

                                Plaintiff,
15

16            v.                              **DECLARATION OF JESSICA N.
                                              GROUNDS IN SUPPORT OF
17  **SHIRLEY N. WEBER, in her official**     DEFENDANT'S OPPOSITION TO
    **capacity as Secretary of State of the State of**  PLAINTIFF'S MOTION FOR
18  **California,**                           PRELIMINARY INJUNCTION

19                              Defendant.

20

21

22

23

24

25

26

27

28

**DECLARATION OF JESSICA N. GROUNDS, M.S.**

I, Jessica N. Grounds, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.     I am over the age of 18 years and a U.S. citizen.  I know the following facts based on my own personal knowledge, and, if called as a witness, I could and would testify competently to the truth of the matters set forth herein.

**Background and Experience**

2.     I obtained a B.A. in Political Science and a minor in Sociology from Pepperdine University in 2003.  I have a graduate certificate in Women, Policy, and Political Leadership from American University in 2007; and I obtained a Master's of Science in Leadership from Georgetown University, McDonough School of Business in 2012.

3.     I am an expert in women's leadership, organizational culture, and diversity.  My work focuses on diversity issues in leadership, particularly related to gender leadership dynamics, including the gender composition of companies (at every level) across sectors and industries.   I advise domestic companies, multinational companies, federal agencies, non-profit organizations, Members of Congress, policy makers, and nongovernmental organizations, through my company, Mine The Gap.  I have advised several of the largest private sector companies in the United States and global organizations through my work at Mine The Gap, including Amazon Web Services, Facebook, PG&E Corporation, and the United States Department of State.  I currently serve as an advisor on a global economic empowerment project called WE EMPOWER G7, a project led jointly by the European Union, United Nations (UN Women), and the International Labour Organization.  I have served in various capacities advising companies and building organizations on gender diversity and leadership dynamics for the past 15 years.

4.     I also advise the non-profit organization the California Partners Project, where I consult investors, business leaders, advocates, and policy makers on primary barriers and challenges to increasing the number of women on company boards, specifically in the state of California.  Through this work, I have conducted the latest research about composition of women on public company boards in the state of California.  Because of this work, I have also consulted

policy makers and business leaders in Washington State, Connecticut, and New Jersey.

5.    Through my work, I have been the lead researcher and writer on multiple reports related to gender diversity issues on corporate boards, including (1) Claim Your Seat: A Progress Report on Women's Representation on California Corporate Boards (October 2020), and (2) Claim Your Seat: Women of Color on Public Company Boards in California (May 2021), both published and released by California Partners Project; and (3) All Our Talent: Women on Boards & Commissions (June 2020), published and released by the San Diego Regional Chamber of Commerce Foundation.  These research reports were data-driven analyses of corporate board diversity, specifically focused on the gender make-up of company boards.

6.    I am the co-author of a large-scale gender research study on workplace dynamics for women.  On the basis of that study, I published several reports through my company Mine The Gap including the following: *#MeToo At Work* (2018), *Enthusiasm Gap At Work* (2018) and *Culture At Work* (2019). The findings generated stories in prominent business publications including, *Bloomberg News, Fast Company,* and *Forbes.*

7.    I am an expert lecturer and trainer for the United States Department of State where I have advised U.S. Embassies, business and political leaders, and organizations in Europe, Central America, Central Asia, East Asia, the Middle East, and Africa.  I also advise global non-governmental organizations funded by the United States government about efforts to expand women's legislative rights, increase the number of women in leadership roles, reduce government and corporate corruption, and build more effective workplaces.  I have been contracted as an adviser in this capacity since 2009. My most recent project was in March of 2021, for the U.S. consulate in Tokyo, Japan.

8.    I am an Adjunct Professor of diversity and leadership practices at Georgetown University in Washington, DC, where I will teach a course in the Fall of 2021 and Spring of 2022 about integrating gender into diversity and inclusion practices.  I am also Adjunct Professor at Pepperdine University in Los Angeles, California, where I taught the most recent course on *Women and Politics* during the Fall of 2020 semester, and plan to teach this course during the Spring 2022 semester.

9.      My education, professional background, and publications (including additional research not listed above) are described in additional detail in my curriculum vitae, which is attached hereto as **Exhibit 1**.

### Introduction

10.     This declaration considers three issues.  First, using quantitative data and analysis based on publicly-available research, this declaration considers whether in California, before SB 826 was passed into law, women were underrepresented on corporate boards of directors. Research from multiple sources, including research that I led and wrote, shows that women have been underrepresented on the boards of publicly held companies, headquartered in California.

11.     Secondly, using publicly-available data and analysis based on publicly-available research, the data shows that there is no evidence of "over boarding" the same women directors onto multiple public company boards.  Over boarding refers to a director who sits on an excessive number of boards, resulting in time constraints and an inability to fulfill their duties.  While there is not universal agreement on what number of board seats held constitutes "excessive board service," many corporate governance experts refer to over boarding as when a director sits on four or more boards.  Research demonstrates that most women added to boards the year after the SB 826 passed into law serve on only one publicly held board.  Moreover, many of these newly added women are first-time directors.

12.     Lastly, using publicly-available data and analysis based on publicly-available research, this declaration demonstrates that there are qualified women to serve on corporate boards, and the women who have been added to corporate boards since the passage of SB 826, many of whom are first-time board directors, have significant credentials and experience.

### Methodology and Research

13.     Demographic-related data (e.g., gender, race, ethnicity) of publicly held company board directors is not required to be reported to the Securities and Exchange Commission.  To track the gender breakdown of California's public company boards, I have gathered publicly-available data available on the Securities and Exchange Commission website and analyzed a

number of required forms, including proxy statements and form 10-Ks, to identify the gender identification of board directors.  This method has been followed by other data researchers in this field, and I rely on their research and analysis for this declaration, as well as my own data research.  For the purposes of my declaration, gender is determined by pronoun use (she/her) in the board director biographies, which are reported on company proxy statements.  For purposes of analyzing SB 826, directors are women based on individual self-identification of gender as a woman, without regard to the individual's designated sex at birth.[1]

14.    A form 10-K is a publicly-available comprehensive report filed annually by a publicly traded company about its financial performance and is required by the U.S. Securities and Exchange Commission (SEC).  The form contains much more detail than a company's annual report, which is sent to its shareholders before an annual meeting to elect company directors.  Some of the information a company is required to document in the 10-K includes its "history, organizational structure, financial statements, earnings per share, subsidiaries, executive compensation, and any other relevant data."[2]

15.    These filings are consequential to the data collection process because the form 10-K is used to determine whether the companies are headquartered in California for purposes of SB 826.  Embedded in the 10-K filing is information about the location of the principal executive headquarters for the company.  This is an important data point to ensure that the company is subject to SB 826.  It does not matter where the company is incorporated, but the principal executive headquarters must be in the state of California to be subject to SB 826.  All data sources used in the research highlighted in this declaration checked form 10-K filings to ensure that each company's listed principal executive offices are in California.

16.    The following organizations have been tracking the number of women who serve on California public company boards in some manner, at various timeframes, over the past two decades: Bloomberg Law, Board Governance Research, California Partners Project, Equilar,

---

[1] As stated in SEC. 2. Section 301.3, California SB 826.

[2] Kenton, W. (2020, March 16). What is a 10-K. Investopedia.
**https://www.investopedia.com/terms/1/10-k.asp**

KPMG Board Leadership Center, Mine The Gap, Latino Corporate Directors Association, and UC Davis School of Management.

17.  Studies from several of the organizations listed above were used for this declaration.[3]  Most of the raw data used for analysis in the reports referenced comes from Equilar, a reputable data collection company based in California, which has been tracking information about corporate board directors for the past 21 years.  In most cases, researchers authoring the studies and analyses detailed in this report have either purchased the raw data about California companies from Equilar to use for their data analysis, or they have had it in-kind donated by Equilar.  The data comes to researchers in the form of raw data in excel spreadsheets that includes multiple categories for analysis.  For example, it includes the current board directors' names, director biographies, and whether the company is headquartered in California.  This data is pulled from the Securities and Exchange website by the data analysts who work for Equilar.  For the reports that I led for the California Partners Project, I analyzed a combination of data provided by Equilar and I also analyzed data that I hand-collected (with my team) from the Securities and Exchange website.  All the findings shared in this declaration are publicly available, except for work done by me about women board director qualifications, which was specifically collected and analyzed based on corporations' available proxy filings and on data that I had access to from Equilar.  This analysis was undertaken for this declaration, and has not been published.

18.  The following are important terms and definitions used in this declaration, in addition to the form 10-K, which I described above.  ***Microcap companies*** are publicly traded companies in the U.S. that have a market capitalization between approximately $50 million and $300 million. Microcap companies have greater market capitalization than nano-cap companies, but less than small-, mid-, large- and mega-cap corporations.  Stock prices do not necessarily correlate to corporation size: companies with larger market capitalization do not automatically have stock prices that are higher than those companies with smaller market capitalizations.[4]  The ***Fortune 1000*** is an annual list of the 1000 largest American companies maintained by the popular

---

[3] See appendix for a list of studies included in this report.
[4] Chen, J. (2020, May 27). Micro Cap. Investopedia. **https://www.investopedia.com/terms/m/microcapstock.asp**

business magazine *Fortune*.  *Fortune* ranks the eligible companies by revenue generated from core operations, discounted operations, and consolidated subsidiaries.  Since revenue is the basis for inclusion, every company is authorized to operate in the United States and files a form 10-K or comparable financial statement with a government agency.[5]  **The Russell 3000 Index** is a market-capitalization-weighted equity index maintained by FTSE Russell that tracks the performance the top 3,000 publicly traded U.S. companies, as ranked by the value of the companies' market capitalization (that is, its outstanding shares).[6]  The Index further breaks down companies into two subsets: the *Russell 1000*, which measures the 1,000 biggest large-cap U.S. companies, and the *Russell 2000*, which measures the remaining companies, based on market capitalization. A **proxy statement** is a document containing the information the Securities and Exchange Commission (SEC) requires companies to provide to shareholders so they can make informed decisions about matters that will be brought up at an annual or special stockholder meeting.  Issues covered in a proxy statement can include proposals for new additions to the board of directors, information on directors' salaries, information on bonus and options plans for directors, and any declarations made by the company's management.[7]

19.  Unless otherwise noted, all companies and board directors included in this declaration are covered by SB 826.

## Analysis

### Section I: Women Directors in California Before SB 826

<u>Women Directors in California Before Legislative Action</u>

20.  University of California, Davis (UC Davis) Graduate School of Management pioneered analyzing the gender breakdown of California public company board directors. Beginning in 2006, the school's research considered the gender composition of 400 of the largest companies headquartered in the state, based on market capitalization.[8]  From 2006 - 2015, UC

[5] Chen, J. (2021, March 16). Fortune 1000. Investopedia. **https://www.investopedia.com/terms/f/fortune-1000.asp**
[6] Hayes, A. (2021, June 28). Russell 3000 Index. Investopedia. **https://www.investopedia.com/terms/r/russell_3000.asp**
[7] Tuovila, A. (2020, Oct. 30). Proxy Statement. Investopedia. **https://www.investopedia.com/terms/p/proxystatement.asp**
[8] Fernando, J. (2021, February 5). Market Capitalization. Investopedia.

Davis researchers found that of the corporations they surveyed, board seats held by women only rose by 4.4 percentage points: in 2006, women held a mere 8.8% of public company board seats in California, and by 2015, they held 13.3% of those board seats.[9]  While this data was collected and analyzed well before SB 826 became law, the type of companies included in this research would later be subject to SB 826: they were companies both public and headquartered in California.[10]  The following chart reflects this data.



21.  In addition to the researchers' overall assessment of women board directors for the largest 400 public companies in California, they also found that women were severely underrepresented in the role as board chair, representing only 2.6% of chairs in 2015.[12]  This early research found that almost all companies (91% of those analyzed) had either zero, one, or only two women on their boards.[13]  These findings are reflected in the following two charts.

**https://www.investopedia.com/terms/m/marketcapitalization.asp**
[9]  UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 6.
[10] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 4.
[11] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 6.
[12] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 8.
[13] Ibid.



14



15

Senate Concurrent Resolution 62 (September 20, 2013)

22.    On September 20, 2013, former State Senator Hannah-Beth Jackson (D. – Santa Barbara) introduced non-binding Senate Concurrent Resolution 62, aimed at urging public companies in California to voluntarily increase the number of women on their boards. California was the first state in the United States to adopt such a resolution, which called on corporations to add between one and three women to their boards (depending on the board's size) by the end of 2016.[16]

---

[14] Ibid.
[15] Ibid.
[16] SCR 62 Senate Concurrent Resolution No. 62. 2013.

23.   That resolution, which was not binding, called for all publicly held corporations in California with 9 or more director seats to have a minimum of 3 women on their boards, those with 5-8 director seats to have a minimum of 2 women, and those with fewer than 5 director seats to have a minimum of 1 woman, by December 2016.[17]

24.   While the resolution had the effect of encouraging discussion regarding board diversity among corporate directors and set an example for other state legislatures to do the same,[18] when the deadline for this resolution was reached on December 31, 2016, only 20 percent of publicly held California-headquartered companies listed on the Russell 3000 Index[19] had met the minimum requirement set forth in the resolution.[20]

Women on California Corporate Boards

Between December 31, 2016, and September 30, 2018 (Passage of SB 826)

25.   A June 30, 2017, report authored by Annalisa Barrett of Board Governance Research, analyzed 445 publicly-held companies headquartered in California that are included on the Russell 3000 Index and found that between those 445 companies, there were 3,645 board seats.[21]  Of those board seats, only 15.5% were held by women, while an analysis of the overall Russell 3000 Index (which included approximately 2,815 companies, including non-California companies) reflected that 16.2% of board seats were held by women.[22]  Notably, the increase to 15.5% of women on board seats was only a 2.3% increase from 2015, where women held 13.3% of board seats.[23]  At the time, then, California companies were more likely to have fewer women

---

[17] SCR 62 Senate Concurrent Resolution No. 62. 2013.

[18] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 1.

[19] As stated earlier, the Russell 3000 Index is a compilation of the 3000 largest public companies, based on market capitalization, in the United States.  All companies headquartered in California and on the Russell 3000 Index would be covered by California Senate Resolution 62.

[20] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 1.

[21] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 2.

[22] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 3.

[23] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 8.

1  on their boards compared to the entire Russell 3000 Index.  This data is depicted in the following

2  chart.



26.    Furthermore, the board size of a company provides insight about the number of

women who hold board seats.  The same 2017 report on California publicly held companies

found that smaller boards were more likely to have fewer or no women directors serving.  For

example, at the time women held only 7.7% of board seats on company boards of five or fewer,

and 68.8% of the smallest boards in California (5 seats or fewer) had zero women directors.[25]

This data is reflected in the following two charts.

[24] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 3. Image used with the authorization of the author.
[25]  Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 5.





27.     SB 826 was co-authored by California State Senator Hannah-Beth Jackson (D – Santa Barbara) and State Senate President Pro Tempore Toni Atkins (D – San Diego).  They introduced the legislation to the California Senate on January 3, 2018, and it was passed on September 30, 2018.[28]

28.     A report analyzing data from 2018, includes details about the representation of women on California publicly held companies as of June 30, 2018 (that is, several months before SB 826 was enacted).[29]

---

[26] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 5. Image used with the authorization from the author.
[27] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 5. Image used with the authorization from the author.
[28] California Senate Bill No. 826.
[29] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 1.

29.     In June 2018, there were 632 companies headquartered in California and traded on the NYSE or Nasdaq exchanges. Key findings shared[30]:

- These companies had between them 4,941 board seats;

- Of those seats, women held 15.5% of board seats (766 board seats);

- Men held 84.5% of those board seats (4,175 board seats);

- On two-thirds (66%) of California public companies, men held at least 80% of board seats; and

- At the time, only 1% of California public company boardrooms had reached gender parity (balance of 50% male board directors and 50% women board directors).

The following charts reflect this data.



Chart 1

[31]

[30] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.
[31] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2. Image used with the authorization from the author.

Decl. of Jessica N. Grounds ISO Def.'s Opp. to Plf.'s Mot. for Preliminary Injunction
No. 2:19-cv-02288-JAM-AC



Chart 3

30.     The 2018 data shows that 29% of all publicly held companies with headquarters in California, a total of 183, had <u>all male boards of directors</u> with zero women directors.  At the time, only 11% of California companies had three or more women directors.[33]

31.     The same report, using data from 2018, compares the number of women directors on boards based on the size of the company, as defined by Fortune 1000 and Russell 3000 Index companies.  Overall, the report finds, as the 2017 report from Board Governance did, that women held 15.5% of corporate board seats in California on publicly held corporations with headquarters in the state.  The report goes even further, however, and finds important distinctions between the size of the company (based on market capitalization) and the number of women board directors serving, notably:[34]

- Of the 111 largest publicly held companies in California at the time (as of June 30, 2018) nearly 97% had at least one woman board director.

- Among all of the California companies listed at the time on the Russell 3000 (439 companies) 80% of those companies had at least one woman on their board.

---

[32] Ibid.
[33] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.
[34] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 5.

1    • But when looking at microcap companies, more than half (53%) of the 146 microcap

2        companies in California had zero women on their boards.[35]   Microcap companies, like

3        those analyzed in this research, would be covered by SB 826 if they are publicly held and

4        have headquarters in California.

5   The following chart reflects this data.

6



7   **Percent of California Companies With No Female Directors**
    *Comparison by Company Size*

8   Fortune 1000*
9   (n=111)    3%

10  Russell 3000*
    (n=439)    20%

11  Microcap
    Companies
12  (n=146)    53%

    **Percent of Companies**

13

14  **Chart 7**

15  * The California Fortune 1000 companies studied are also
    included among the California Russell 3000 companies.

                                                        36

16

17

18       32.    It is clear from this comparison that smaller companies generally, and microcap

19  companies specifically, had fewer or even zero women on their boards before SB 826 was

20  passed. A similar pattern emerges when looking at the overall percentage of women directors

21  based on company size.  For example, only 10% of board seats of California microcap companies

22  were held by women before SB 826 passed.[37]  For Fortune 1000 companies in California, the

23

24  _____

25  [35] As noted above, microcap companies are not listed on the Russell 3000 Index and have less than $300 million in
    market capitalization, but those that are publicly held and are headquartered in California are currently subject to SB
    826.

26  [36] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research.
    Annalisa Barrett. Pg. 5. Image used with the authorization from the author.

27  [37] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research.
    Annalisa Barrett. Pg. 5.

28

numbers were better: women held 22% of board seats for these companies.[38]  This data is reflected in the following chart.

**Percent of California Board Seats Held by Women**
*Comparison by Company Size*

| Company | Percent |
|---------|---------|
| Microcap Companies (n=933) | 10% |
| Russell 3000* (n=3,645) | 17% |
| Fortune 1000* (n=1,098) | 22% |

Percent of Board Seats

**Chart 8**

\* The California Fortune 1000 company board seats studied are also included among the number of California Russell 3000 company board seats.

[39]

33.     Additionally, data from this timeframe shows that California companies represented in the Russell 3000 Index had a higher number of company boards with zero women directors compared to the whole Russell 3000 Index, which includes companies throughout the U.S.[40]  This reflects little change from the 2017 report described above at paragraphs 25 and 26 which reflected similar data.  This data is shown in the following chart.

---

[38] Ibid.
[39] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 5. Image used with the authorization from the author.
[40] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 5.



Chart 10

34.     In sum, in the two decades before SB 826 passed, women had been added to corporate boards, but at a very slow pace: from 2006 to 2018, the percentage of women holding corporate boards seats had increased from 8.8% to 15.5% of all seats available in publicly held, California-headquartered corporations.[42]   Moreover, as shown above, overall, California companies had fewer women on corporate boards as compared to companies nationwide, and smaller California companies, in particular, had the worst rates, with little to no percentage growth.

### Women Directors Added After SB 826 Passed Into Law

35.     Since SB 826 passed into law there has been a significant increase in the number of women appointed to serve on California public company boards.  Whereas in 2018 (before the law was passed), as noted above, 29% of California companies that would have been subject to SB 826 had all-male boards, as of March 1, 2021, only 1.3% of corporations subject to SB 826 have all male-boards.[43]

[41] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 6. Image used with the authorization from the author.
[42] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 6. & Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.
[43] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2. & Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 8.

36.     Similarly, a specific subset of corporations – microcap companies – have made significant progress.  In 2018, as noted above, 53% of California microcap companies had all-male boards (47% had at least one woman on their board), but today 93% of microcap companies have at least one woman on their board.[44]



**Smaller Companies**

Microcap companies (market cap of less than $300m) have made remarkable progress. Today, 93% have at least one woman on their board up from 47% in 2018.

[45]

37.     Analysis led by Board Governance Research, in addition to research I led and wrote for the California Partners Project, found the following with respect to publicly held corporations with headquarters in California:

- In 2018 (prior to SB 826's passage), 766 California company board seats were held by women;[46]

- By September of 2020, 1,275 board seats were held by women;[47] and

- As of March 1, 2021, 1,483 board seats were held by women.[48]

---

[44] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 5. & Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 8
[45] Ibid.
[46] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.
[47] Claim Your Seat: A Progress Report on Women's Representation on California Corporate Boards. California Partners Project, October 2020. Pg. 7.
[48] Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 7.

1  This progress shows an increase in the percentage of women holding board seats in California

2  growing from 15.5% in June of 2018 to 26.5% in March of 2021.[49]  All of the companies

3  considered in this research were subject to SB 826's requirements (that is, they were publicly held

4  and headquartered in California) at the time the data for those companies was pulled.[50]

5          38.     Overall, then, the increase in women on corporate boards has increased at a much

6  faster pace since SB 826 was passed.  Over a 12-year period before SB 826 passed into law (2006

7  – 2018), the percentage of women serving on California boards increased from 8.8% - 15.5%, an

8  average increase of 0.56% per year.[51]  Over a period of three years (2018 – 2021), beginning with

9  the year the law passed, the percentage of women serving of California boards increased from

10  15.5% - 26.5%, an average increase of 3.7% per year.[52]  This constitutes an average growth rate

11  increase of 561%.[53]

12  **Section II: Expanding the Talent Pool of Women Directors**

13          39.     Data from 2019 shows that SB 826 is broadening the talent pool of women being

14  added to public company boards in California: many women are now serving as corporate

15  directors, as opposed to having the same woman serve on multiple boards.  For example, in 2019,

16  62% of the women added to all-male boards in California were first-time directors.[54]

17          40.     Furthermore, when looking at this same universe of women added to all-male

18  company boards in 2019, only 4 were added to more than one all-male board. In fact, the data

19  shows that a substantial majority of women in this cohort only serve on 1 public board (69%).[55]

---

[49] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2. & Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 6.

[50] The Secretary of State's March 2021 report was based on data pulled between January 1, 2020 through December 31, 2020.  See Pg. 2.  Based on that data, 647 companies were subject to SB 826's requirements in the Secretary of State's report.  I conducted my research based on data pulled in March 2021, and at that time, there were 678 companies that were publicly traded and headquartered in California, based on that data.

[51] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 6. & Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.

[52] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2. & Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 6.

[53] Average growth rate was determined with the following calculation (3.7 – 0.56 / 0.56) x 100%).

[54] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 5.

[55] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 6.

1   One of the concerns critics of SB 826 had was that the same women directors would be over

2   boarded (added to multiple boards) to satisfy the new law.  As KPMG states in its research,

3   "While proxy advisor and institutional investor policies have varying thresholds for over boarding

4   for outside directors, by any standard, the majority of new directors added in 2019 would not be

5   considered over boarded."[56]  While there is not universal agreement on what number of board

6   seats held constitutes "excessive board service," many corporate governance experts believe that

7   over boarding is reached when a director sits on four or more boards.  But these numbers

8   demonstrate that the concern about over boarding has not been realized in California's case and

9   that there is, in fact, a significant pool of qualified women to serve as board directors.  The next

10  chart depicts these numbers.



**Number of public boards on which female directors currently serve**
n=138

One board 69%
Two boards 1%
Three boards 6%
Four boards 19%
Six boards 5%

57

**Section III: Qualifications of Newly Appointed Women Directors**

23  41.   The women directors who were added to California's corporate boards since SB

24  826 went into effect bring significant experience, education, and expertise to their board roles.  A

25  study released in 2020 provides insight about the rich industry expertise and credentials of the

26  women directors added to all-male boards of California companies the year after SB 826 passed.[58]

---

[56] Ibid.
[57] Ibid.
[58] The Women Changing California Boardrooms. KPMG, LLP. 2020.

This study looked at actively employed women directors added to corporations with previously all-male boards during the calendar year 2019, and further analyzed those that had employment information available, using biographical information routinely included in proxy statements filed with the Securities and Exchange Commission.  The study found that nearly half (46 percent) of these newly added directors currently hold c-suite positions, including the titles of chief executive officer or president, chief operating officer, or other c-suite roles.[59]  C-suite, or C-level, positions is a term used to represent a group of a corporation's most senior executives with the top titles in the company.[60]  In addition to these more common titles, the newly appointed women directors also have held titles[61] such as, chief marketing officer, chief legal officer, chief scientific officer, and chief medical officer.  Their biographies also show that these newly added board directors serve in a variety of leadership posts within their fields of expertise. For example, women directors as also hold positions with the titles division president, vice president, advisor, consultant, and investor.[62]  The below chart reflects the titles that newly added female directors in California hold.



**Titles held by female directors**
n=99

| Title | Percent |
|---|---|
| CEO/President | 23% |
| Partner/Managing director/Principal | 15% |
| EVP/SVP/Division president/VP | 15% |
| Other C-suite officer | 15% |
| Attorney/Advisor/Consultant | 13% |
| COO/CFO/CAO | 8% |
| Academia | 4% |
| VC/Investor | 3% |
| Other | 3% |

**Note:** Does not equal 100% due to rounding. Many of the women with the titles "Partner/Managing director/Principal" are in the finance/ investment banking industry.                                                                                   63

---

[59] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 4.
[60] Bloomenthal, A. (February, 2021). C-Suite. Investopedia. **https://www.investopedia.com/terms/c/c-suite.asp**
[61] Women directors held these titles at the time the biographies were posted to company proxy statements found on the SEC website.
[62] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 4.
[63] Ibid.

42.    Beyond titles, the women added in 2019 to all-male boards also bring a deep bench of education and background.  The study found that 39% of women had a Master of Business Administration, and nearly 18% of these newly added board members have two or more advanced degrees.[64]  This is reflected in the following chart.



43.    My own analysis looked at women directors added in 2019 to California company boards that already had a least one woman serving as a director.  This analysis was developed from data shared with me through my work with the California Partners Project and provided to California Partners Project as an in-kind donation from Equilar.  This is a different data set from the previous research referenced in paragraphs #41 and #42 because these women were added to boards that already had at least one woman director.  In addition to evaluating data provided by Equilar, I utilized internet searches, corporate websites, and other public databases as part of my research.  The 177 women directors included in the research I present below represent directors who were employed full-time (as opposed to retired) during the year of their appointment.[66]

44.    My research found that 32% of the 177 newly added directors in this data set have held the title of CEO or President, 12% hold the title of COO or CFO, and another 15% have held

---

[64] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 5.
[65] Ibid.
[66] These results and findings have not been published. These findings were determined for this declaration.

another title in the c-suite, for example, chief medical officer, chief information officer, or chief marketing officer, as the following chart shows.[67]

**Roles held by women directors appointed in 2019 to boards with at least one woman already serving**

*n=177*

| Role | Percentage |
|------|-----------|
| CEO/President | 32% |
| Other C-suite officer | 15% |
| EVP/SVP/VP | 14% |
| COO/CFO | 12% |
| Partner/Director/Owner | 11% |
| Attorney/Consultant | 10% |
| Academia/Government | 4% |
| Other | 2% |

[68]

45.    In addition to my analysis of titles held by women added to boards with one woman director already serving in 2019, I also analyzed the educational background and degrees held by these newly appointed women directors. My research shows that 74% of the 177 newly added directors hold post graduate degrees.  The most common degree is Master of Business Administration (38%), followed by PhD in science or another health-related field (11%).[69]  Most directors have one post graduate degree, and 11% have two or three post graduate degrees.  In addition to post graduate degrees, a significant number of directors without post graduate degrees hold CPA certifications, a valuable credential for directors serving on the audit committees of corporate boards.  The following chart reflects these percentages.

---

[67] Based on raw data collected by the author.
[68] Data collected by author and chart created by author. This information is not published.
[69] Data collected by author.

**Advanced degrees held by newly appointed
women directors in 2019**

*Women added to boards with at least one woman already serving
n=177; multiple degrees possible*

| Degree | Percentage |
|---|---|
| MBA | 38% |
| PhD in science or health-related field | 11% |
| JD | 10% |
| Masters in science or health-related field | 8% |
| MD | 6% |
| Masters in other business-related field | 5% |
| Masters in engineering | 4% |
| PhD in other field | 2% |
| Masters in other field | 1% |

[70]

## Conclusions

46.    In conclusion, analysis from multiple research reports, including my own research, demonstrates that women have been underrepresented on the boards of publicly held companies, headquartered in California.  In 2018, before SB 826 was passed, 29% of California's publicly held companies had zero women on their board of directors and women held only 15.5% of board seats.[71]  Companies with smaller boards had even fewer women directors.  For example, women held 7.7% of board seats on company boards of five or fewer, and 68.8% of the smallest boards in California (5 seats or fewer) had zero women directors.[72]  Additionally, analysis of California company boards from 2017 and 2018 (prior to SB 826's passage) concludes that there were a higher percentage of boards with zero women directors in the state, compared with all of the

---

[70] Data collected by author and chart created by author.  Note that these directors were appointed in 2019 to boards that already had at least one-woman director serving.  This information is not published.
[71] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.
[72] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 5.

1   Russell 3000 Index.[73]  Importantly, all of the companies considered in the 2017 and 2018

2   analyses would have been subject to SB 826 at the time if SB 826 had been in effect.[74]

3         47.     While women continue to be underrepresented as corporate directors on publicly

4   held California company boards, the trend towards increasing the numbers has progressed quickly

5   in the three years since SB 826 first passed.  From 2006 – 2018, the percentage of women serving

6   on California boards increased from 8.8% - 15.5%, an average increase of 0.56% per year.[75]

7   From 2018 – 2021, the percentage of women serving of California boards increased from 15.5% -

8   26.5%, an average increase of 3.7% per year.[76]  This constitutes an average growth rate increase

9   of 561%.[77]  Notably, my most recent research shows that as of this spring (March, 2021) only

10   1.3% of companies had zero women on their boards.[78]

11         48.     Data shared in this declaration indicates that not only is this law expanding the

12   pool of directors for corporate board service, but many of the women are first-time corporate

13   board directors. As noted earlier, research about women added to boards in 2019 (the year after

14   SB 826 was passed into law) shares that 62% of the women added to all-male boards were first-

15   time directors.[79]  Data and analysis show that women are eminently qualified to serve and their

16   backgrounds are in-line with the deep experience and expertise expected of corporate board

17   directors.  Thus, based on this research, there is not a shortage of qualified professional women

18   able and willing to serve as directors on California corporate boards.

19         49.     SB 826 has made significant impact on increasing the number of women serving

20   on California's company boards, greatly increasing the rate by which women have been added to

21   [73] Women on Boards of Public Companies Headquartered in California 2017 Report, Board Governance Research, Annalisa Barrett. Pg. 3. & Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 5.

22   [74] The only exception to this would be if the company was no longer headquartered in California or no longer publicly held.

23   [75] UC Davis Study of California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives. November 27, 2015. Pg. 6. & Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2.

25   [76] Women on Boards of Public Companies Headquartered in California, 2018 Report. Board Governance Research. Annalisa Barrett. Pg. 2. & Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 6.

26   [77] Average growth rate was determined with the following calculation (3.7 – 0.56 / 0.56) x 100%).

27   [78] Claim Your Seat: Women of Color on California's Public Company Boards. California Partners Project, May 2021. Pg. 8.

28   [79] The Women Changing California Boardrooms. KPMG, LLP. 2020. Pg. 5.

California's corporate boards, and has also greatly diversified the talent that serves on corporate boards.

I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct and that this declaration was executed on August 20, 2021, in San Diego, California.

Jessica N. Grounds

1

**Appendix**

2

3          List of research reports referenced in this declaration.

4          UC Davis Study of California Women Business Leaders: A Census of Women Directors and
           Highest-Paid Executives. November 27, 2015.
5

6          Women on Boards of Public Companies Headquartered in California 2017 Report, Board
           Governance Research, Annalisa Barrett.

7
           Women on Boards of Public Companies Headquartered in California, 2018 Report. Board
8          Governance Research. Annalisa Barrett

9          Claim Your Seat: A Progress Report on Women's Representation on California Corporate
           Boards. California Partners Project, October 2020.
10

11         Claim Your Seat: Women of Color on California's Public Company Boards. California Partners
           Project, May 2021.

12         The Women Changing California Boardrooms. KPMG, LLP. 2020

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

JESSICA N. GROUNDS
2772 Angell Avenue, San Diego, CA 92122
(+1) 202-494-7624  |  jgrounds@gmail.com
www.minethegap.co  |  @jessicangrounds  |  @minegaps  |  www.linkedin.com/in/jessicagrounds/

KEY QUALIFICATIONS

- Workplace culture expert working with Fortune 500 companies, public sector institutions, political organizations, multinational companies, and nongovernmental organizations
- Thought leader in women's leadership, corporate leadership, and workplace effectiveness
- Founded and led multiple organizations across sectors to advance women in leadership
- Cutting-edge researcher developing ground-breaking reports on gender dynamics in the workplace and women on corporate boards and commissions
- Seasoned board member serving as both chair and co-chair of national nonprofit organizations, advisory board member for workplace sustainability company and international NGO
- Robust connections in the U.S. and globally within political, policy, business, government, and advocacy networks
- Thought leader, advisor, and consultant to public policy makers
- Skilled fundraiser with vast relationships across sectors
- Global travel to more than 35 countries in 4 regions
- Experienced media communicator, presenter, trainer, and keynote speaker

PROFESSIONAL EXPERIENCE
Mine The Gap, San Diego, California / Washington, DC, 2016 – present
*Co-Founder*

- Mine The Gap equips leaders, industries, and organizations with the strategy and tools to create and sustain gender-inclusive environments by activating the full potential of a team, department, division, corporation, or organization
- Identify and advise clients to become more accountable on diversity by building and investing in new internal and public initiatives
- Incubate ground-breaking projects that pilot new ways of addressing persistent gender-related challenges such as public-private partnerships that advance gender equality
- Pioneered cutting-edge research on women in the workplace, showcased in Fast Company and Bloomberg News
- Lead research and strategy partner in work across the State of California to measure the adoption of SB826 requiring women as corporate board directors
- Developed high-profile pilot project, the California Leadership Collaborative, which provides a platform for women in the private sector and public office to support each other. The project is supported by PG&E, Facebook and the Tecovas Foundation.
- Strengthen and develop new measurement tools for reporting outcomes, including developing new gender indicators and pioneering ways to measure and evaluate the impacts of gender interventions. This includes making clients and partners aware of gender statistics and global standards, tailoring it for their sector.
- Clients include: Amazon Web Services, National Geographic Society, PG&E, UNWomen, Sasakawa Peace Foundation, FTI Consulting, Federal Aviation Administration & Georgetown University (consultant & faculty)

Pepperdine University, Los Angeles, CA 2020 – present
*Adjunct Faculty Professor*
- Professor of Women and Politics in the Political Science Department of Pepperdine University, Seaver College
- Taught Women and Politics course during fall 2020 semester
- Expected to teach spring 2022 semester course

United States Department of State, Washington DC & various international locations, 2012 - 2017
- Speakers Bureau keynote, lecturer & expert trainer in Panama, Tajikistan, Lesotho, Czech Republic, Bangladesh, Germany, and Italy

Solid Grounds Strategy, LLC, Washington, DC, 2009 – 2016
*Founder and Principal Strategist*
- Founded and managed firm offering women's leadership consulting on strategy for political candidates and organizations
- Frequent trainer, lecturer and keynote speaker for women's conferences and events
- Co-Founder of *Women's Campaign Consortium,* a project of Solid Grounds Strategy that works with other women consultants to comprehensively support women candidates across the U.S.

Various International Projects on Women's Leadership & Political Strategy, 2013 - 2018
- Academy for Gender Parity, Inaugural trainer and curriculum development in Tokyo, Japan
- Strategy Consultant, Women for Election, an NGO based in Dublin, Ireland
- Friedrich-Ebert-Stiftung Foundation, Transatlantic Delegations, participant and lecturer, Berlin, Germany & Strasbourg, France
- ONE Campaign political & policy delegation, Rwanda
- Presented and trained delegations: Argentina, Venezuela, Chile, Dominican Republic, Panama, Peru, Yemen, Ireland, Turkey, Cameroon, Liberia, Nigeria, Senegal, Sierra Leon, and Zambia

Ready for Hillary, Arlington, VA, 2013 – 2015
*Director of Women Ready for Hillary*
- Created, directed, and implemented initiatives to engage women in Ready for Hillary's efforts to build support for a potential Hillary Clinton presidential run
- Identified influential and grassroots women supporters for Hillary in key presidential states including Iowa, New Hampshire, South Carolina, and Nevada
- Cultivated relationships with robust network of women's organization
- Managed and cultivated an effective team of Women Ready for Hillary staff and interns

Running Start, Washington, DC, 2007- 2016
*Executive Director, Co-Founder,* 2009 - 2013
*Co-Founder,* 2007-2009
- Co-Founded 501c3 organization inspiring girls and young women to become political leaders
- Directed and managed organization's major programs
- Led training sessions and created strategy to effectively teach young women leaders
- Established and cultivated relationships with corporate donors; to date has raised over $3 million dollars
- Created and developed a number of Running Start's signature programs including: Congressional Fellowship (Star Fellowship), Elect Her and the Young Women's Political Summit

Stones' Phones, Political Consulting Firm, Washington, DC, 2004-2009
*Senior Vice President,* 2007 - 2009
*Senior Strategist,* 2006-2007
*Senior Account Executive,* 2004-2005
- Developed voter communication strategy for Democratic consulting firm working with high-level political campaigns, labor unions, and nonprofit political organizations
- Managed strategy for messaging, targeting, communication planning, budgeting, and project execution
- Helped to develop industry-leading technology for clients
- Consulted over 1,000 campaigns and organizations

- Assisted company partner on all staff hiring and management of staff
- Comprehensive understanding of various mediums including media, polling, direct mail, opposition research, and social media

**Women Under Forty Political Action Committee, Washington, DC, 2003-2017**
*Board of Directors,* 2003 - 2017
*Chair of the Board of Directors,* 2009 - 2013
*President,* 2007-2009
*Political Director,* 2006
*Director of Fundraising,* 2003-2005
- Directed all political and organizational decisions for political action committee that raises funds and support to women forty years of age and younger running for federal, state and local office
- Acted as chief spokeswoman, led and managed board of directors

**Hillary Clinton for President, Des Moines, Iowa, 2007-2008**
*Training Lead*
- Developed series of trainings for Hillary Clinton supporters participating in the Iowa Caucuses
- Trained precinct captains, elected officials, staff, and volunteers on duties to build the campaign organization
- Managed training team, developed materials for trainings, briefed, and trained senior staff

**Aristotle International, Washington, DC, 2003-2004**
*Project Assistant*
- Assisted political software company with project and administrative support
- Developed industry-leading creation and procurement of voter files

**ADDITIONAL POLITICAL AND CAMPAIGN EXPERIENCE, Multiple locations, U.S.**
- Field organizing and training: John Kerry for President, Kay Hagan for U.S. Senate, Francine Busby for Congress, Lois Capps for Congress & Fran Pavley for California Assembly
- National Foundation for Women Legislators, Public Policy Director

**EDUCATION**
*Georgetown University, McDonough School of Business*, Washington, DC
Master of Science in Leadership, 2012

*American University, Women & Politics Institute*, Washington, DC
Graduate certificate in Women, Policy, and Political Leadership, 2007

*Pepperdine University*, Los Angeles, CA
Bachelor of Arts in Political Science, Minor in Sociology, 2003

**PUBLISHED WORK, ARTICLES & RESEARCH**
"Do Women Lead Differently During a Crisis?" Opinion piece, MSNBC Know Your Value, May 8, 2020
"#MeToo At Work, The Enthusiasm Gap & Culture at Work" original research on gender dynamics in the workplace developed and published with FTI Consulting, Oct. & December 2018, March 2019
"Gender Diversity is More Than Numbers" Role Breakers by Alice, May 16, 2018
"Companies Should Be Asking, Can #MeToo Happen Here" Mine The Gap, Nov. 14, 2017
"Why More Women in Politics is Good for Business" San Jose Mercury Times, July 27, 2017
"Why We Need More Women on Capitol Hill" MSNBC.com, Dec. 5, 2014
"Young Women Don't Think They Want to Run" Huffington Post, May 1, 2013
"Despite Election Day Wins, Women Still Need a Running Start" Roll Call Newspaper, Nov. 15, 2012
"Jungle Primaries May Open Door for Women" Roll Call, June 18, 2012
"Gender and Voting Behavior" *Encyclopedia of U.S. Campaigns, Elections & Electoral Behavior*
(Sage Publications, 2008)

"How They Lead: Examining Male and Female Congressional Leadership" (American Univ. Press, 2007)

TRAINING & SPEAKING EXPERIENCE
*Women's Leadership Trainer, Lecturer, and Advisor*
- American Association of University Women
- American Association of Political Consultants
- American Council of Young Political Leadership
- European Union Women's Lobby
- Girls on the Run
- National Council of Women's Organizations
- National Democratic Institute
- National Association of Women Business Owners
- League of Women Voters
- Professional Women Controllers
- Public Leadership Education Network
- Sasakawa Peace Foundation
- She Should Run
- Senior Women in Policing, Belfast, Northern Ireland
- Twitter
- United States Chamber of Commerce Foundation
- WeLead, a project of the Women & Politics Institute
- Women's Campaign Fund
- Women's Congressional Staff Association
- Women in Government Relations

*Campaign Strategy Trainer and Lecturer*
- Academy for Gender Parity (Tokyo, Japan)
- American Medical Association Political Action Committee
- American University
- Dickinson College
- Drury University
- Duke University
- George Washington University, Graduate School for Education & Veteran's Campaigns
- Human Rights Campaign College
- Middlebury College
- Missouri State University
- Murray State University
- National Young Leadership Conference
- Johns Hopkins University
- Southern Methodist University
- Women's Campaign School, Yale Law School

PRESS
- Profiled in *ELLE, Glamour*, MSNBC, *The Philadelphia Citizen, The Hill, Politico, CQ Roll-Call, Business Insider, Daily Muse, Forbes, Presidential Gender Watch, U.S. News*, NPR, *Time, Huffington Post, Fresno Bee, Examiner, Elect Women*
- *Media Appearances:* Voice of America, *Washington Post*, MSNBC, National Public Radio (NPR), Women Count Radio, Swedish Public Radio, & KSMU Public Radio
- International television interviews in Czech, Basotho (Lesotho), Italian, German, French, & Japanese media outlets

AWARDS & DISTINCTIONS
- Pepperdine University Outstanding Alumni Women in Leadership Award, 2019
- 40 Under 40 Award Recipient, American Association of Political Consultants, 2018
- The New Guard 2016: America's 50 Most Powerful Women, *Marie Claire* Magazine Profile, 2016
- ONE Campaign political delegate to Rwanda, 2014
- Top 50 Political Influencer, *Campaigns & Elections,* 2014
- Profiled in *Georgetown University Business Magazine,* 2012, 2019
- Young Woman of Achievement Award, Women's Information Network, 2010
- Rising Star, *Campaigns & Elections,* 2009
- Honorary Committee Member, Women's Bar Association, 2009

BOARD OF DIRECTORS AND MEMBERSHIPS
- Georgetown University Women's Forum Alumni Faculty and Committee – current
- UN Women WE Empower Advisory Council – 2018 – current
- Co-Chair Emerita of the Board of Directors, Running Start 2017 – current
- International Building Institute WELL Community Advisory Team – 2019 – 2020
- Co-Chair of the Board of Directors, Running Start 2014 – 2016
- Parity Project, Leadership Team Member, Hunt Alternatives Fund – 2012 - 2015
- Board of Directors for Women Under Forty PAC – 2003 – 2017
- Chair of Board for Women Under Forty PAC – 2007 – 2010
- IMPACT Center, Leadership Council – 2011
- Elected Executive Board Member, National Council of Women's Organizations – 2010 - 2013
- President, Pepperdine Young Democrats of America – 2002