ROB BONTA (SBN 202668)
Attorney General of California
MICHAEL L. NEWMAN (SBN 222993)
Senior Assistant Attorney General
LAURA L. FAER (SBN 233846)
VILMA PALMA-SOLANA (SBN 267992)
Supervising Deputy Attorneys General
LISA CISNEROS (SBN 251473)
MARISOL LEÓN (SBN 298707)
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA 90013
  Telephone:  (213) 269-6413
  E-mail:  Marisol.Leon@doj.ca.gov
*Attorneys for Defendant California
Secretary of State Shirley N. Weber*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| **CREIGHTON MELAND, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,**<br><br>Defendant. | Case No. 2:19-cv-02288-JAM-AC<br><br>**DEFENDANT SECRETARY OF STATE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANT SECRETARY OF STATE'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      October 19, 2021<br>Time:     1:30 p.m.<br>Dept:     Courtroom 6, 14th Floor<br>Judge:    Honorable John A. Mendez |

1    PLEASE TAKE NOTICE that defendant, Dr. Shirley N. Weber, in her official capacity

2    as Secretary of State of the State of California, hereby requests, pursuant to Rule 201 of the

3    Federal Rules of Evidence, that the Court take judicial notice of the legislative record material

4    described below in connection with Defendant Secretary of State's Memorandum in Opposition

5    to Plaintiff's Motion for Preliminary Injunction, filed concurrently herewith.

6

7    ***Committee Hearings and Floor Sessions Regarding SB 826***

8    1.   A publicly-available video recording of a hearing held by the California Senate Banking

9    and Financial Institutions Committee on April 18, 2018, wherein the committee discusses Senate

10   Bill No. 826 (SB 826). That recording is available at https://www.senate.ca.gov/media/senate-

11   banking-financial-institutions-committee-20180418/video (last accessed September 20, 2021). A

12   certified copy of a court reporter's transcript for the SB 826-related portion of the April 18, 2018

13   hearing [34:13-1:17:38] is attached hereto as **Exhibit 1**.

14   2.   A publicly-available video recording of a hearing held by the California Senate Judiciary

15   Committee on April 24, 2018, wherein the committee discusses SB 826. That recording is

16   available on the California Senate website, at the following URL:

17   https://www.senate.ca.gov/media/senate-judiciary-committee-20180424/video (last accessed

18   September 20, 2021). A certified copy of a court reporter's transcript for the SB 826-related

19   portion of the April 24, 2018 hearing [26:00-1:25:00] is attached hereto as **Exhibit 2**.

20   3.   A publicly-available video recording of the May 31, 2018 California Senate Floor

21   Session. This video recording is available on the California Senate's State Media Archive, at the

22   following URL: https://www.senate.ca.gov/media/senate-floor-session-20180531/video (last

23   accessed September 22, 2021).  A certified copy of a court reporter's transcript for the SB 826-

24   related portion of the Floor Session [2:14:12-2:31:49] is attached hereto as **Exhibit 3**.

25   4.   A publicly-available video recording of a hearing held by the California Assembly

26   Committee on Banking and Finance on June 25, 2018, wherein the committee discusses SB 826.

27   That recording is available at https://www.assembly.ca.gov/media/assembly-banking-finance-

28   committee-20180625/video (last accessed September 20, 2021). A certified copy of a court

1

reporter's transcript for the SB 826-related portion of the June 25, 2018 hearing [1:20:00 - 1:49:15] is attached hereto as **Exhibit 4**.

    5.   A publicly-available video recording of a hearing held by the California Assembly Judiciary Committee on June 26, 2018, wherein the committee discusses SB 826. That recording is available at https://www.assembly.ca.gov/media/assembly-judiciary-committee-20180626/video (last accessed September 20, 2021). A certified copy of a court reporter's transcript for the SB 826-related portion of the June 26, 2018 hearing [2:33:00 –2:48:35] is attached hereto as **Exhibit 5**.

    6.   A publicly-available video recording of the August 8, 2018 California Assembly Appropriations Committee. This video recording is available on the California Assembly's State Media Archive, at the following URL: https://www.assembly.ca.gov/media/assembly-appropriations-committee-20180808/video (last accessed September 22, 2021).  A certified copy of a court reporter's transcript for the SB 826-related portion of the August 8, 2018 Committee meeting [1:19:01-1:22:23] is attached hereto as **Exhibit 6**.

    7.   A publicly-available video recording of the August 26, 2013 California Senate Floor Session. The substantive relevant discussion starts at 1:09:35 and ends at 1:21:13. This video recording is available on the California Senate's State Media Archive, at the following URL: https://www.senate.ca.gov/media/20130826_285_1/video (last accessed September 22, 2021). A certified copy of a court reporter's transcript for the relevant portion of the August 26, 2013 Floor Session [1:09:35-1:21:13] is attached hereto as **Exhibit 7**.

    8.   A publicly-available video recording of the August 30, 2018 California Senate Floor Session. This video recording is available on the California Senate's State Media Archive, at the following URL: https://www.senate.ca.gov/media/senate-floor-session-20180830/video (last accessed September 22, 2021).  A certified copy of a court reporter's transcript for the SB 826-related portion of the Floor Session [45:32-55:33] is attached hereto as **Exhibit 8**.

    9.   A publicly-available video recording of the May 25, 2018 California Senate Appropriations Committee Hearing.  This video recording is available on the California Senate's Media Archive at the following URL: https://www.senate.ca.gov/media/senate-appropriations-

1    committee-20180525/video (last accessed September 25, 2021), and the relevant portion of the

2    Hearing starts at 2:28 and ends at 3:03.

3

4    ***Committee and Floor Bill Analyses for SB 826***

5        10.  A publicly-available California Senate Banking and Financial Institutions Committee

6    Bill Analysis concerning SB 826 prepared for an April 24, 2018 hearing. It is available on the

7    Legislature's website for SB 826, under the Bill Analysis section "4/16/18-Senate Banking and

8    Financial Institutions" link at the following URL:

9    https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

10   accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 9**.

11       11. A publicly-available California Senate Judiciary Committee Bill Analysis concerning SB

12   826 prepared for an April 24, 2018 hearing. It is available on the Legislature's website for SB

13   826, under the Bill Analysis section "4/23/18-Senate Judiciary" link at the following URL:

14   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

15   accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 10**.

16       12. A publicly-available California Senate Committee on Appropriations Bill Analysis

17   concerning SB 826 prepared for a May 7, 2018 hearing. It is available on the Legislature's

18   website for SB 826, under the Bill Analysis section "5/7/18-Senate Appropriations" link at the

19   following URL:

20   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

21   accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 11**.

22       13. A publicly-available California Senate Committee on Appropriations Bill Analysis

23   concerning SB 826 prepared for a May 25, 2018 hearing. It is available on the Legislature's

24   website for SB 826, under the Bill Analysis section "5/25/18-Senate Appropriations" link at the

25   following URL:

26   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

27   accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 12**.

28       14. A publicly-available California Senate Rules Committee Floor Bill Analysis

3

1   concerning SB 826 prepared for a May 29, 2018 hearing. It is available on the Legislature's

2   website for SB 826, under the Bill Analysis section "5/29/18-Senate Floor Analyses" link at the

3   following URL:

4   https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

5   accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 13**.

6        15. A publicly-available California Assembly Banking and Finance Committee Bill Analysis

7   concerning SB 826 prepared for a June 25, 2018 hearing. It is available on the Legislature's

8   website for SB 826, under the Bill Analysis section "6/22/18-Assembly Banking and Finance"

9   link at the following URL:

10  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

11  accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 14**.

12       16. A publicly-available California Assembly Judiciary Committee Bill Analysis

13  concerning SB 826 prepared for a June 26, 2018 hearing. It is available on the Legislature's

14  website for SB 826, under the Bill Analysis section "6/24/18-Assembly Judiciary" link at the

15  following URL:

16  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

17  accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 15**.

18       17. A publicly-available California Assembly Appropriations Committee Bill Analysis

19  concerning SB 826 prepared for an August 8, 2018 hearing. It is available on the Legislature's

20  website for SB 826, under the Bill Analysis section "8/6/18-Assembly Appropriations" link at the

21  following URL:

22  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

23  accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 16**.

24       18. A publicly-available California Assembly Floor Bill Analysis concerning SB 826

25  prepared for an August 21, 2018 hearing. It is available on the Legislature's website for SB 826,

26  under the Bill Analysis section "8/21/18-Assembly Floor Analysis" link at the following URL:

27  https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last

28  accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 17**.

19. A publicly-available California Senate Rules Committee Floor Bill Analysis concerning SB 826 prepared for an August 30, 2018 hearing. It is available on the Legislature's website for SB 826, under the Bill Analysis section "6/24/18-Assembly Judiciary" link at the following URL: https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=201720180SB826 (last accessed September 20, 2021). A copy of the Bill Analysis is attached hereto as **Exhibit 18**.

### *Other Legislative Record Documents*

20. The following exhibits are SB 826 legislative history materials obtained by our office from the California State Archives and legislative staff members.  Partial legislative record materials were provided to our office by the State Archives in 2019, and our office subsequently received additional legislative records in 2021, as detailed in the Declarations of Anthony Lew and Nora Lynn, filed concurrently with this Request for Judicial Notice.  Mr. Lew is a Deputy Attorney General in the Office of Legislative Affairs for the California Department of Justice. Ms. Lynn is the former Chief of Staff for Senator Hannah-Beth Jackson, who authored SB 826.

21.  Exhibits 19 through 21 are excerpts from the legislative records of the California Senate Banking and Financial Institutions Committee.

22. Attached as **Exhibit 19** are excerpts from legislative records of the California Senate Banking and Financial Institutions Committee, including but not limited to its Background Information Request and attachments, presentations, and studies before the Committee.

23. Attached as **Exhibit 20 is** a copy of the "Women on Boards in California," report conducted by University of San Diego Professor Annalisa Barrett. The Legislature cited the report in SB 826's legislative findings.

24. Attached as **Exhibit 21** is a copy of the 2016 California State Teachers' Retirement System Factsheet entitled, "CalSTRS Corporate Governance at a Glance."

25. Exhibits 22 through 24 are excerpts from the legislative records of the California Assembly Committee on Banking and Finance.

1    26. Attached as **Exhibit 22** is a copy of the California Assembly Committee on Banking and

2  Finance, Background Information Request.

3    27. Attached as **Exhibit 23** is a copy of Senate Concurrent Resolution No. 62, filed with the

4  Secretary of State on September 30, 2013 [Bates No. AGA0000052-54], which urged California

5  publicly held corporations to, within three years, have a minimum of number of women directors

6  commensurate with board size. Senate Concurrent Resolution No. 62, 2013–14 Leg., Reg. Sess.

7  (Cal. 2013) (Ch. 127).  The Resolution is available at

8  https://leginfo.legislature.ca.gov/faces/billPdf.xhtml?bill_id=201320140SCR62&version=20130S

9  CR6297CHP.

10    28. Attached as **Exhibit 24** is a copy of a series of letters in support of SB 826.

11    29. Exhibits 25 through 31 are excerpts from the SB 826 legislative history materials obtained

12  from Senator Hannah-Beth Jackson's author's file on SB 826, which is not yet in the State

13  Archives and which was provided to our office by her former chief of staff, Nora Lynn. (Lew

14  Decl, ¶¶ 8-9).

15    30. Attached as **Exhibit 25** is a letter to Governor Jerry Brown from Senator Hannah-Beth

16  Jackson requesting that he sign SB 826, dated September 14, 2018.

17    31. Attached as **Exhibit 26** is a publicly-available study by M. Torchia, A.Calabrò, and M.

18  Huse, "Women Directors on Corporate Boards from Tokenism to Critical Mass," cited by the

19  Legislature in SB 826's legislative findings. (SB 826, § 1, subd. (g)(1)(A).)

20    32. Attached as **Exhibit 27** is a publicly-available study entitled, "Critical Mass on Corporate

21  Boards: Why Three or More Women Enhance Governance," which was cited by the Legislature

22  in SB 826's legislative findings. (SB 826, § 1, subd. (g)(1)(A).)

23    33. Attached as **Exhibit 28** is a study conducted by Kellie A. McElhaney and Sanaz

24  Mobaserri at UC Berkeley Haas School of Business that was cited by the Legislature in its SB

25  826 legislative findings entitled, "Women Create a Sustainable Future, October 2012."

26    34. Attached as **Exhibit 29** is a study conducted by Credit Suisse that was cited by the

27  Legislature in its SB 826 legislative findings entitled, "The CS Gender 3000: The Reward for

28  Change, September 2016."

6

1    35. Attached as **Exhibit 30** is a study conducted by Meggin Thwing Eastman at Morgan

2    Stanley Capital International (MSCI) that was cited by the Legislature in its SB 826 legislative

3    findings entitled, "Women on Boards: Progress Report 2017."

4    36. Attached as **Exhibit 31** is an excerpt from a document put together by the National

5    Association of Women Business Owners (NAWBO), entitled "NAWBO-California SB 826

6    Arguments in Favor, June 7, 2018."

7    37. Attached as **Exhibit 32** are excerpts from the legislative records of the California

8    Assembly Judiciary Committee on Banking and Finance, as described in the concurrently filed

9    Declaration of Thomas Clark.

10   A Court "must take judicial notice" of adjudicative facts "if a party requests it and the

11   court is supplied with the necessary information."  Fed. R. Evid. 201(c)(2).  The Court can

12   judicially notice any "fact that is not subject to reasonable dispute because it: . . . can be

13   accurately and readily determined from sources whose accuracy cannot reasonably be

14   questioned."  Fed. R. Evid. 201(b)(2).  Only relevant facts may be judicially noticed.  *See*

15   *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 991 n.8 (9th Cir.

16   2012).

17   **Exhibits 1-18 and 23** are judicially noticeable because the Court may take notice of

18   material available on California's Assembly and Senate websites.  The Ninth Circuit has held

19   that it is appropriate to take judicial notice of information "made publicly available by

20   government entities" on their websites.  *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–

21   99 (9th Cir. 2010) (taking judicial notice of information made publicly available by a

22   government entity on its website); *see also Paralyzed Veterans of America v. McPherson*, No.

23   C 06–4670 SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (finding that courts

24   commonly take judicial notice of information and documents on government websites, citing

25   cases from various jurisdictions).  Thus, the publicly-available video recordings, bill analyses,

26   and resolution contained within **Exhibits 1-18 and 23** are not subject to reasonable dispute, as

27   they "can be accurately and readily determined from sources whose accuracy cannot reasonably

28   be questioned."  Fed. R. Evid. 201(b)(2).

7

**Exhibits 1-18** also represent testimony given at California Assembly and Senate hearings, in different Assembly and Senate committees, and during Senate Floor Sessions which are properly subjects of judicial notice. *See Adarand Constructors, Inc. v. Slater*, 228 F.3d 1147, 1168 n.12 (10th Cir. 2000) (taking "judicial notice of the content of hearings and testimony before […] congressional committees and subcommittees"); *see also Cty. of Santa Clara*, 250 F. Supp. 3d at 520 n. 4, 522 nn. 6 & 7, 523 n. 10 (taking judicial notice of government officials' press conference statements, press briefings, and interview statements).

**Exhibits 1-32** are also judicially noticeable because they are "matters of public record" that are not "subject to reasonable dispute." *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see Sanders v. Kerry*, 180 F. Supp. 3d 35, 41 (D.D.C. 2016) (public records are subject to judicial notice).

Lastly, **Exhibits 1-32**—all of the records listed above for which Defendant Secretary of State seeks judicial notice—are records of official acts of the California Legislature and as such are judicially noticeable. "[T]he Court may properly take notice of the legislative history of relevant statutes." *Robles v. Comtrak Logistics, Inc.*, No. 2:13-CV-00161-JAM-AC, 2014 WL 7335316, at *2 (E.D. Cal. Dec. 19, 2014) (citing *Louis v. McCormick & Schmick Rest. Corp.*, 460 F.Supp.2d 1153, 1155 (C.D.Cal. 2006) (citing Federal Rule of Evidence 201)). The legislative findings, history of bills, and transcripts of legislative hearings are therefore subject to judicial notice.

Defendant Secretary of State is making this request contemporaneously with the filing of her Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction. Because the above documents satisfy the criteria of Rule 201(b) of the Federal Rules of Evidence, Defendant requests that the Court take judicial notice of them pursuant to Rule 201(c)(2) of the Federal Rules of Evidence.

8

1   Dated: September 28, 2021

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
LAURA L. FAER
VILMA PALMA-SOLANA
Supervising Deputy Attorneys General
LISA CISNEROS
Deputy Attorney General

MARISOL LEÓN
Deputy Attorney General
*Attorneys for Defendant California
Secretary of State*

9

# Exhibit 1

1

2

3

4

5

6

7

8

9

10

11

12

13   California House and Senate Hearings

14   April 18, 2018

15

16

17

18

19

20

21

22

23

24

25

Page 1

1          SENATOR STEVEN BRADFORD:  Next up,

2    Senator Jackson, item SB-826.  When you're ready,

3    Senator Jackson.

4          SENATOR HANNAH-BETH JACKSON:  Mr.

5    Chairman, I inquire, how many speakers do you

6    like to have?

7          SENATOR STEVEN BRADFORD:  Asking for

8    two primary witnesses.  And then we'll have the

9    additional "Me too's" form a line.

10          SENATOR HANNAH-BETH JACKSON:  Very

11   good.  Thank you.  Good afternoon, Mr. Chair and

12   members.  I am proud to present SB-826, an

13   effective approach to requiring more women

14   directors on the boards of publicly held

15   corporations in California.  California women

16   make up 52 percent of our state's population, but

17   only about 28 percent of the directors of our

18   public corporations, which also include non-

19   profit boards.

20          The 28 percent is a rather high number

21   relative to the private corporations we have.

22   But if you bring them together with our non-

23   profit boards, as well as the public

24   corporations, it comes to 28 percent.

25   Nonetheless, 28 percent means that roughly 70

                                        Page  2

1   percent of the state's corporations are operating

2   without the benefit of the experienced

3   perspective and tools that women bring with them

4   to the corporate setting.  Research clearly shows

5   that boards with women members perform better in

6   the marketplace.  By having such low

7   participation rates for women in California's

8   corporate leadership ranks, we effectively

9   inhibit our own economic performance as a state.

10          Other nations have previously

11  acknowledged the financial benefits, and require

12  a percentage of board membership to be female,

13  thus representing the experience, expertise and

14  wisdom of half the population.  And as women make

15  up approximately 70 percent of consumers, the

16  female perspective provides a logical economic

17  benefit for corporations and has indeed been

18  proven to be such.

19          This measure takes the first step

20  towards closing this gender gap.  The measure

21  increases gender diversity on corporate boards by

22  requiring each publicly held corporation that is

23  headquartered in California to have at least one

24  woman on its board of directors by the end of

25  2019.  Further, beginning in July of 2021, the

Page 3

1  bill requires a minimum of two board directors on

2  boards with five directors, and at least three

3  women on boards with six or more directors.  The

4  research, as I mentioned, is abundant, on the

5  influence of women serving on boards, including a

6  2016 McKinsey and Company study, quote, that

7  revealed nationwide the companies where women are

8  most strongly represented at board or top

9  management levels are also business that perform

10  the best in profitability, productivity,

11  innovation, governance, better performance and

12  workforce engagement.

13         The McKinsey study also found that

14  companies with three or more women in senior

15  management positions scored higher on average on

16  the organization performance profile than

17  companies with no women on boards or in the

18  executive ranks.

19         I authored a resolution back in 2013,

20  SCR-62, that urged, didn't mandate, but just

21  urged by 2017 that each public company increase

22  the number of women on its boards to one, two or

23  three, depending upon the size of the board.

24  California was the first state in the United

25  States to adopt this type of resolution.  And it

Page 4

1    over for a white female candidate.  I would note

2    that by calling for women, we are, of course,

3    including all women, including, regardless of

4    race, ethnicity or orientation.  And so, again,

5    we are expanding this to provide the opportunity

6    to remove the barriers that seemed to have

7    existed in our corporate world, in our political

8    world, in all worlds, where we see gender as the

9    primary source of discrimination in our society.

10   We have got to overcome this.  And this is one of

11   those measures that I believe addresses that

12   problem.

13            The committee analysis also raises the

14   issue of over boarding for female executives,

15   implying there might not be a sufficient number

16   of qualified women.  As the many women who are

17   here today can and will testify, there are many

18   extraordinarily qualified women in the pipeline

19   who are willing and able to serve if they'd only

20   be asked and encouraged to do so.

21            If anything, we believe this bill will

22   help to address over boarding among male board

23   members by forcing boards to diversify their

24   membership.  And the committee suggested an

25   interesting concept of amending the bill to

Page 6

1    had the greatest impact.  Because coaches who had

2    ties with Dungy account for 43 percent of

3    minority head coaching hires over the past 20

4    years, including 39 percent of those hired under

5    the Rooney Rule.  So, in the board context as

6    well -- and my witnesses will testify -- the

7    interviews that are conducted are done in secret.

8    And there is no way to know for certain how a

9    company may or may not comply.

10          The only way to move the needle on this

11   issue, we believe, is to establish a seat for

12   women at the board room table.  And I do not

13   dispute the Chair's assertion that diversity, in

14   general, is a challenge to most publicly traded

15   boards.  And I would certainly support a bill

16   directed more broadly at that in the future,

17   should that come before us.

18          But the bill before us today takes the

19   more narrow look at increasing gender diversity

20   in the board room and executive office suites

21   across the strait.  I believe if we can open up

22   the, the roles, open up the board rooms to more

23   women, we will see greater diversity overall.

24   And it is with that focus, and that important,

25   important obstacle that we need to shatter

Page 8

1   about the credit (indiscernible) and the McKinzie

2   Report, is that as a business issue, companies

3   recognize, and institutional investors recognize

4   that having more women on boards is good for the

5   investors.  Companies perform better.  And the

6   research shows that.  So, as an example,

7   BlackRock, which manages six trillion dollars

8   under management, just two weeks ago, made a

9   public announcement that they would vote against

10   the proxy that in their portfolio companies, vote

11   against all directors of companies that did not

12   have a woman on their boards.  And no investor

13   has ever said that before.

14          And the New York State pension fund

15   said that they would vote against the directors

16   of, who are on the nominating committee, of

17   companies that did not have two women on their

18   boards.  So, this is recognition about the

19   importance of having women on the boards, to have

20   the companies be more profitable.

21          And the institutional investors, of

22   course, represent and are stewards of retired

23   employees of the New York State system, just like

24   CalPERS and CalSTRS, which of course, are the

25   largest institutional investors in the world,

Page 11

1   right here in our state.  And the retired

2   employees don't have a choice of what companies

3   their money is invested in.  So, they're going to

4   be happy to know that more women are on boards,

5   that they at least have a chance of earning more

6   money with their dividends, especially in their

7   later years.  Another important issue to share

8   with you is that there are very few open seats

9   that come open for men or women during the course

10  of a year.

11           And that's why it's so important and

12  such an unusual idea to actually add a seat for a

13  woman.  We're not taking a seat away from anybody

14  who has hoping to be in that board seat for life.

15  And as all of you know, corporate board seats are

16  paid positions.  And many times, the people in

17  those seats do not want to give up the seats

18  until they absolutely have to retire.

19           And they've been on the corporate board

20  for 30 or 40 years.  So, we're not going to

21  extricate a man out of a seat.  We're going to

22  add a woman to the board and bring into the

23  perspective how that important perspective will

24  move the needle.  Lastly, I wanted to share, as

25  owner of a retained executive search firm, I know

Page 12

1   how searches work.  And probably, many of you

2   have been in searches in the past.  But board

3   searches are different from senior level position

4   searches.  There are not lists of candidates that

5   are considered.  And they're certainly not

6   public.  So, the nominating committee of a public

7   corporation decides among themselves who is going

8   to be on the list of people they know, whom they

9   feel comfortable with, who could be on their

10  boards.

11          And most of them have, you know, been

12  university buddies or golf course buddies, or

13  friends they know through business.  And their

14  immediate circles don't include women.  So, they

15  say, "We can't find women who will fit into our

16  environment."  Therefore, the women's names are

17  not on the list.  And the big myth is that people

18  think that search firms reach out and find

19  candidates for boards.  We don't.

20          The company, clients themselves, give

21  us that list of their friends and they say, "Vet

22  those candidates."  And they say they don't want

23  additional people who are strangers, men or

24  women.  So, it's important that you are aware and

25  our audience is aware that there is not a long

1   list of potential candidates.  And the lists and

2   the interviews are never made public.  So, even

3   if we require that a woman or two women or a

4   person of color would be interviewed, we would

5   never know if that person -- they just check the

6   box and have no chance of getting on the board

7   over and above all the people that the board

8   already feels comfortable with.  So, that's the

9   important point that I wanted to share, that it's

10  not like a regular job search, where there are

11  people compared against one another.

12          When the search firms vet the

13  candidates, we come back with a report to the

14  corporate client that says, "This person has

15  served on X amount of boards and never had a

16  major problem, or actually did."  And then the

17  nominating committee chooses their favorite, or

18  maybe their favorite two.

19          But they never let anyone know.  They

20  don't want Wall Street to know who might be

21  considered for the board.  And certainly, anybody

22  who might be considered wouldn't want the public

23  to know that they didn't make it.  So, there's

24  never a list.  So, I just wanted to share with

25  you how that process works.  And if we were to

Veritext Legal Solutions
866 299-5127

1            SENATOR HANNAH-BETH JACKSON:  Well, I'd
2    rather not even try to consider the identifying
3    one day as one gender.  I frankly find that
4    insulting.  And I'm disappointed in that as an
5    argument.  So, I will address the ones that
6    aren't insulting.  I just think perhaps
7    incorrect.  The constitutional issues will be
8    fully covered in the judiciary committee.
9            And upon the initial presentation of
10   this bill, working with NAWBO, the addition of a
11   member to a board, I don't now believe -- but we
12   will cover it further -- addresses any
13   constitutional concerns under Prop 209 or any of
14   the other due process or equal protection
15   petition.  So, that is something we plan to look
16   at in the judiciary committee, where it is
17   properly within the jurisdiction of that
18   committee.
19           The increasing diversity, I find that a
20   little disingenuous.  If we were to expand this
21   to include all groups, and just start with
22   gender, as we suggested -- and in fact,
23   historically, once we move forward with one
24   group, that tends to open the opportunities for
25   others.  It's that first step.  You have to

Page 32

1   basically decide that.  But I have very little

2   confidence that the chamber would come in were we

3   to say you have to add one person based on gender

4   and another based on ethnicity and race and so

5   forth, that they would come in and be supportive

6   of the bill.  So, I think they're going to oppose

7   the bill anyway, regardless of whether we focus

8   on gender issues, which is fairly, I should say

9   is not unique.

10          When I did my equal pay bill back in

11  2015, we focused on gender and were able to get

12  that bill passed.  And the following year, that

13  concept was expanded to include all groups, so

14  that you cannot have pay disparities based upon

15  gender or race or ethnicity or national origin.

16  It was that first step, which was mentioned.

17  Historically, you've got to take that first step.

18          And whether you provide for gender or

19  ethnicity or race, we are, we are trying to break

20  through that ceiling, that limitation.  We tried

21  to do it in 2013, when we talked about urging

22  companies to do what they should be doing.  That

23  urging didn't get us anywhere.  And that's why

24  we're back here with this measure.  So, the

25  constitutional issue, the shareholders having to

Veritext Legal Solutions
866 299-5127

1                C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7    _____

8

9

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: August 24, 2021

17

18

19

20

21

22

23

24

25

Page 40

# Exhibit 2

1

2

3

4

5

6

7

8

9

10

11

12

13   California Judiciary Committee, SB-826

14   April 24, 2018

15

16

17

18

19

20

21

22

23

24

25

Page 1

1           SENATOR HANNAH-BETH JACKSON:  This is

2   SB-826, which I believe is a very effective

3   approach to acquiring that we see more women

4   directors on the boards of publicly held

5   corporations in California.  We know that

6   California women make up 52 percent of our

7   state's population, but only approximately 28

8   percent of the directors of our public

9   corporations and that includes non-profit boards

10   where we generally tend to see more women.  So,

11   in the profit-oriented boards in California, the

12   number is significantly less.

13           But even with 28, essentially, 70

14   percent of the State's corporations are operating

15   without the benefit of the experience,

16   perspective, and tools that women bring with them

17   to the corporate setting.  Research clearly shows

18   that boards with women members perform better in

19   the marketplace.  By having such low

20   participation rates for women in California's

21   corporate leadership ranks, we effectively

22   inhibit our own economic performance as a state.

23   Other nations have previously acknowledged the

24   financial benefits and actually require a

25   percentage of board membership to be female, thus

                                          Page  2

1    representing that experience, expertise in women

2    that half the population brings to the table.

3          As women make up more than 70 percent

4    of consumers of these products and services that

5    these businesses develop, the female perspective

6    logically provides an economic benefit for

7    corporations and has clearly been proven to do

8    such.  This measure takes the first step towards

9    closing the gender gap.  SB-826 increases gender

10   diversity on corporate boards by requiring that

11   each publicly held corporation, headquartered in

12   California to have at least one woman on its

13   board of directors by the end of 2019.  Beginning

14   in 2021, the bill requires a minimum of two

15   directors on boards with five directors, and at

16   least three women on boards with six directors or

17   more.

18         Now, the research is abundant, as

19   mentioned.  There's a 2016 McKinsey & Company

20   study that revealed nationwide the companies

21   where are women are most strongly represented at

22   board and top management levels are also

23   businesses that perform the best in terms of

24   profitability, productivity, innovation,

25   governance, and better for -- better performance

Page 3

1    and workforce engagement.  The McKinsey study

2    also found that companies with three or more

3    women in senior management positions scored

4    higher, on average, on the organization

5    performance profile than companies with no women

6    on boards or in the executive ranks.  Now, I

7    tried a softer approach several years ago to

8    address this shortfall.  I authored a resolution

9    back in 2013 called SCR-62 that urged, just urged

10   by 2017 that each public company increase the

11   number of women on their boards to one, two, or

12   three depending upon the size of the board.

13   California was the first state to adopt this type

14   of resolution and five other states actually have

15   followed since then.

16        However, at the end of 2016, fewer than

17   20 percent of the Russell 3000 companies

18   headquartered in California had the minimum

19   number of women directors called for in the

20   resolution.  It was up by one or two percent from

21   what we had had prior to the gentle, soft touch

22   of urging companies to proceed.  So, this is

23   something obviously needs a little firmer touch

24   and that is the reason for this bill.

25        Now, the Committee analysis raises the

                                              Page 4

1   issue of equal protection considerations and

2   strict scrutiny.  We have an attorney with us

3   today to discuss that issue.  But we believe this

4   bill meets that strict scrutiny test.  You see in

5   the findings and declarations a long list of

6   efforts that have been undertaken over many years

7   to get more women on corporate boards, including

8   such things as actually even creating a registry.

9   We heard initially, as we hear in so many

10  professions, there are no women qualified to do

11  this.

12          Well, in 1986, a registry was prepared

13  of women who were clearly extraordinarily

14  qualified to serve on these boards and

15  commissions.  We used to hear that and when I

16  practiced law, well, there were no women

17  qualified to be judges.  And of course, we know

18  that to -- not to be true.  And as we have,

19  thanks to the proactive efforts of the governor,

20  to put more women on the bench, we have seen

21  these women shine and certainly perform as well,

22  if not better, than their male counterparts.

23          I won't go into any further detail on

24  the constitutional issues.  I think they're

25  fairly well discussed in the analysis.  The

Page 5

1    2019 because boards can elect to add a seat,

2    change their by-laws midyear, and vote on it at

3    the end of the year.  So, I think -- I just

4    wanted to add that, that it's possible to do and

5    that we will be the first state in the nation to

6    do so.  Thank you very much.

7         CHAIRMAN:  Thank you, Betsy, if I can

8    be so informal.

9         So, now, Dawn, you get 30 seconds.

10        DIANE HAJIJI:  Thank you.

11        Simply put, passing 826 and taking a

12   further step in gender parity will protect the

13   economic competitiveness of the State of

14   California, the fifth largest economy.  I'm going

15   to start with an introductory comment to pick up

16   on what has been previously said as to why public

17   policy demands that we adopt SB-826 and address

18   with three points why public policy also demands

19   that the Internal Affairs Doctrine does not trump

20   this particular bill.

21        And to start, though, I do want to

22   recognize the vision of our Chair for what she

23   has done to promote gender parity and to protect

24   the citizens of the State of California.  To

25   piggyback on a topic about global companies.  If

Page 10

1    we go to the SEC, the SEC has identified the lack

2    of women on boards as a very urgent problem, one

3    in which is urgent because directors are the

4    gatekeepers of our financial system.   And we need

5    to accord this challenge with the urgency to

6    which it deserves.   And as the Chair has said,

7    there have been a number of initiatives that have

8    not gotten us or have moved the needle.

9           I would like to now go to the Internal

10   Affairs Doctrine and public policy.   California

11   has a longstanding history of regulating

12   corporations' internal affairs that operate

13   within our borders but have incorporated

14   elsewhere.   This type of regulation stems from

15   the Constitution of the State of California from

16   1879 and has been embedded in our state's

17   subsequent statutory and common law where public

18   policy demands that it go forward, where conduct

19   in question implicates a broader public interest,

20   and where there's a vital statewide interest.

21           CHAIRMAN:   Thank you, Ms. Hajiji.

22   Appreciate your testimony.

23           Are there any other witnesses in

24   support?

25           If you could come one at a time and

Page 11

1   we have a -- we, as policymakers, can make

2   policy.  We have had an historic ceiling, a

3   barrier, a wall which has been impenetrable to

4   women.  And whether it's the shareholders or

5   whether it's the traditions down in -- the U.S.

6   Open is played -- where is it?  Down in --

7           UNIDENTIFIED FEMALE SPEAKER:  Augusta.

8           SENATOR HANNAH-BETH JACKSON:   In

9   Augusta.  There were never any women members of

10  Augusta.  It's a private club.  There --

11          UNIDENTIFIED MALE SPEAKER:  Didn't used

12  to be any Jews either.

13          SENATOR HANNAH-BETH JACKSON:  There

14  never -- exactly.  And so, there comes a point as

15  a matter of policy where we have to say there is

16  de facto discrimination going on.  And that's

17  what we have in the board room.  We have de facto

18  discrimination.  We have tried.  We tried with

19  the registry in the 80s.  We tried with a gentle

20  urging, when -- I'm not sure you were in the room

21  when I talked about how in 2013, I did a

22  resolution here in the senate urging California's

23  top corporations, publicly traded, that have

24  their primary headquarters in California --

25  urging them to add more women to their boards of

Page 34

1  directors.  They basically told us to go pound

2  sand because we looked three, four years later,

3  we had -- the ticker had gone up maybe one

4  percent to 15 percent.  In fact, California has a

5  lower percentage of women according to the --

6          UNIDENTIFIED FEMALE SPEAKER:  Lower

7  than the national.

8          SENATOR HANNAH-BETH JACKSON:  --

9  according to the Russell 3000, 15.5 percent of

10 board seats held by women.  And yet, around the

11 country, it's 16.2 percent.  Not that that's very

12 impressive.  So, we, as policymakers,  I think,

13 have a responsibility to try to break open those

14 impenetrable walls of discrimination.  We did

15 that with my equal pay bill back three years ago.

16 How is it we can tell companies what do well when

17 they're discriminating on the basis of gender,

18 that is an unlawful discrimination.

19          And so, what we simply said is, you've

20 got to treat us equally.  And we are here on this

21 situation, when it comes to adding a board seat.

22 It doesn't say we're going to kick any men off.

23 Doesn't say that at all.  It says, if we don't

24 have an opening where there's possibility of

25 having a woman on, we're going to add a seat.

                                        Page 35

1   fair.  That's fair.  I'm just -- I'm trying to

2   put my -- I don't want this to be held

3   unconstitutional.  If you're going to do it, my

4   thought is then the idea is to make the

5   recommendation.  But how do you enforce --

6   force -- you have a broad variety of

7   shareholders, number 1, to make that decision.

8          If you want to say proxies and make

9   recommendations, what we've done in the law is

10  done the following:  1, we say when it's a

11  government contract, we have maybe-weebees; we

12  say, we'll give a preference if it's a government

13  contract to women-owned businesses to be able to

14  get that business because we think that's

15  important.  That's our government role.  We do

16  tax credits.  We do all sorts of incentives.  The

17  question I'm trying to frame is not the policy

18  question.  That's not the issue I'm trying to

19  frame.  I'm only trying to understand how do we

20  do it in a permissible way?

21          SENATOR HANNAH-BETH JACKSON:  Well,

22  again, I think what we've done is -- and there --

23  this was raised in the analysis, we've given a

24  history of this.  You know, for how many years

25  have companies been almost exclusively controlled

Veritext Legal Solutions
866 299-5127

1  by men?  And it's since the beginning of the

2  Republic.  And we have not been able to break

3  that glass ceiling.

4       There were claims, and I don't know if

5  you were here when I mentioned, it was the same

6  excuse they used on the bench.  There are no

7  women qualified to be judges.  And we know that

8  isn't true.  And so, what we've done in 1986, we

9  prepared a registry of extraordinarily qualified

10  women who could be selected to be on boards.  And

11  yet, because this is basically an all-boys

12  network, we are trying to do that and in a way

13  that is constitutional.  We've tried other means.

14  Those haven't worked.  We have tried to address

15  the problem with -- on a voluntary basis.  That

16  hasn't work.

17       And this bill -- again, I think what's

18  elegant about this bill is, we're not kicking

19  anybody off a board.  Even though so many of

20  these fellows who are on boards are the son-in-

21  law of the guy who owns most of the shares.  I

22  mean, arguably, are they qualified?  Not

23  necessarily.

24       SENATOR ROBERT HERTZBERG:  The

25  difference is they own it.  If they're the son-

Page 38

```
 1    they know that having -- I mean, it's not rocket
 2    science.  We're -- 70 percent of the consumers
 3    are women and that there is --
 4           CHAIRMAN:  There's no being passionate
 5    again.
 6           SENATOR HANNAH-BETH JACKSON:  I know.
 7    I just --
 8           CHAIRMAN:  Ms. Berk --
 9           SENATOR HANNAH-BETH JACKSON:  I guess,
10    part of the frustration is we've been trying
11    to -- we've been hoping for 200 years that people
12    would see the light and we would start seeing a
13    better balance in the business community and
14    in -- when it comes to equal, which we now have,
15    hopefully.  But you know, this is an opportunity,
16    I think, to break through that glass ceiling once
17    and for all because we've got some extraordinary
18    women out there.
19           And I think when our male counterparts
20    see that, you know, we don't bring cooties to the
21    board room, we bring great ideas.  And suddenly,
22    then it becomes well, what was the big deal in
23    the first place.  But we have to start somewhere
24    and we've been trying to do it nicely and it
25    hasn't worked.
```

Page 47

1          CHAIRMAN:  So --

2          SENATOR HANNAH-BETH JACKSON:  You know,

3   pretty please with a cherry on top.  That hasn't

4   work.

5          CHAIRMAN:  So, Ms. Berkhemer?

6          BETSY BERKHEMER-CREDAIRE:  Berkhemer.

7   Uh-huh.

8          CHAIRMAN:  Berkhemer.  You answered my

9   questions.  So, thank you.  It's a slate.

10          BETSY BERKHEMER-CREDAIRE:  It is a

11   slate.

12          CHAIRMAN:  And that helped.  And that

13   you would have a woman or two or three on the

14   slate and that would --

15          BETSY BERKHEMER-CREDAIRE:  Right.

16          CHAIRMAN:  -- take care of it.  So,

17   thank you.  Senator Monning has a question or two

18   or four.

19          SENATOR BILL MONNING:  Actually, I

20   think one of my questions was answered about the

21   voting issue.  And I just wanted to first thank

22   the author for bringing this forward and for her

23   continued advocacy in terms of trying to bridge

24   these gaps that are well-documented

25   discrimination in our system.  And we've seen it

Page 48

1   And I'm trying to figure out how we get there so

2   that everybody wins and --

3           SENATOR HANNAH-BETH JACKSON:  Well,

4   that was what the -- my initial resolution did in

5   2013.

6           CHAIRMAN:  Exactly.

7           SENATOR HANNAH-BETH JACKSON:  We tried

8   to encourage companies.  But frankly, you know,

9   we still have sort of a patriarchal view and we

10  have challenges to try to break that glass

11  ceiling when we have the power entity is all male

12  and wants to keep it that way.

13          They, like -- as was mentioned, they're

14  comfortable with each other.  And we had that

15  same argument when it came to the bench 20 years

16  ago, when I was wondering why we didn't have more

17  women on the bench.  The guys are comfortable

18  with each other.  And as a result, there is a

19  discrimination, there is a ceiling, and women

20  haven't been able to penetrate that ceiling by

21  asking, by urging, by encouraging.  It just

22  hasn't happened.

23          And so, as much as that was my first

24  effort and as much as -- as we look at the

25  constitutionality with the strict scrutiny, we

Page 52

1    have to demonstrate its very narrow focus and
2    that we've tried other methods to get to the same
3    result.  And we have.  We started with a
4    registry, just to -- for availability.  We then
5    went to a resolution to urge corporate boards to
6    do this.  And the answer has been, go pound sand.
7          And so, on the basis that these are
8    discriminatory situations that exist, we are not
9    trying to replace men on a board.  I think that's
10   a critical component on the constitutional issue.
11   We are simply adding a position that will be
12   filled by a woman.  So, even these boards,
13   they're still -- if we add a position, one-sixth
14   is certainly not the majority.  We are not
15   reducing the male construct.  We are just adding
16   a woman.
17         We represent 52 percent of the
18   population.  You ask why I get passionate about
19   this.  Why are we not in the board rooms?  Is it
20   because we're not qualified?  We are eminently
21   qualified.  But what we have is a history of
22   discrimination that, unless we blast it open,
23   sadly, is not going to change.  And I also --
24         CHAIRMAN:  And I think we can that as
25   your closing statement.  Do I have a motion?

Veritext Legal Solutions
866 299-5127

1          C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7    _____

8

9

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: August 24, 2021

17

18

19

20

21

22

23

24

25

Page 57

Exhibit 3

1

2

3

4

5

6

7

8

9

10

11

12

13              Senate Floor Session

14                May 31, 2018

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127

 1            MAN 1:  26 by Senator Jackson, an act

 2    (indiscernible) corporations.

 3            MAN 2:  Good afternoon, Senator

 4    Jackson, the floor is yours, ma'am.

 5            SENATOR HANNAH-BETH JACKSON:  Thank

 6    you, sir.  And good afternoon, colleagues.  This

 7    is a measure that tries to address the problem

 8    that we do not have in today's world appropriate

 9    representation on corporate boards with women

10    serving in capacities on those boards.

11            A couple of years ago, I did a

12    resolution that called on, it urged our major

13    companies to put women on their boards.  Because

14    we know, in Europe where this has been done, that

15    these businesses are more efficient, more

16    profitable, and the policies are more apt to

17    address the problems and the issues that our

18    working families have in today's world.

19            So research shows that, as I mentioned,

20    when we have women on these boards, they serve a

21    function of both efficiency, profitability, and

22    better management.  So we -- in this bill, it

23    takes a first step to try to close that gap.

24    Again, we tried to be nice about it.  That didn't

25    work.

                                              Page 2

1          So this bill, in an effort to try to

2    close this gender gap, increases gender diversity

3    by requiring each publicly-held corporation,

4    these are publicly-held companies that are

5    corporately headquartered here, in California, to

6    have at least one woman on its board of directors

7    by the end of 2019, and beginning in 2021,

8    requiring a minimum of two women directors on

9    boards, with five directors.  And then, at least

10   three women on boards with six or more.

11         Now, there's a concern that's been

12   raised about the constitutionality of this issue.

13   What this bill does, is it doesn't kick anybody

14   off.  It doesn't limit participation.  It says

15   that if a woman is not appointed to a board

16   within that period of time, we will add a

17   position for which a woman will then be permitted

18   and encouraged and required to serve.

19         And with that, I'm happy to answer any

20   questions that might exist, and would urge your

21   support as we now, try to break a mold that we

22   have tried to do nicely and hasn't work.  And

23   it's really important that 70 percent of the

24   consumers in this country, who are women, be

25   represented on these boards.  It's good for

Page 3

1   business.  It's good for women.  It's good for
2   families.  It's good for the country.  With that,
3   I would ask your aye vote.
4          MR. PRESIDENT:  Thank you, Madam
5   Senator.  We're going to Madam Pro Tem and then,
6   Senator Anderson.  Madam Pro tem.
7          SENATOR TONI ATKINS:  Thank you,
8   Mr. President.  And I want to express my
9   appreciation to the author of SB 826.  This is an
10  important priority for the Legislative Women's
11  Caucus, and I think, for the state of California.
12          I was pleased to support yesterday our
13  colleague from Berkley's SB 984, which moves
14  along the same lines.  You know, it's really
15  interesting.  We had, as referenced already, a
16  select committee on women, work, and families,
17  and it was entitled A Seat at the Table:  Why
18  More Women on Corporate Boards Protects Workers,
19  Families, Employees, and Shareholders.
20          And you know, we heard that corporate
21  board members come from the ranks of CEOs and
22  people who are already members of other boards.
23  That seems to be how the status quo works.  But
24  our companies really need to reach beyond a small
25  pool of candidates if we're going to be more

                                        Page  4

1   diverse, because we're leaving behind a lot of

2   talent.   And we have to expand our referral

3   process.   There was, of course, as the author

4   said, an urging to do this organically and

5   naturally.

6           But you know, as we have seen from many

7   other things, it actually takes focus and work to

8   create diversity.  We've had to do this in our

9   own hiring practices in this very -- in the

10  senate, And in the Assembly, I might add.  And

11  you know what's interesting is it isn't that

12  there isn't the talent and expertise to do it,

13  it's that, typically, in the world of corporate

14  business, you pick the people you know.  And if

15  you don't have a seat at the table, you're not

16  known.  And therefore, you are cutting out half

17  the population.

18          I found some statistics pretty

19  interesting during that select committee.  Women

20  make purchases of somewhere between five trillion

21  and 15 trillion annually in the United States.

22  More than half of all U.S. personal wealth is

23  controlled by women.  Women even purchase 50

24  percent of products traditionally considered to

25  be products for men.  And one study showed that

Page 5

1                C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

     Date: September 23, 2021

7

8

9

10

11

                        <%12151,Signature%>

12                 Sonya Ledanski Hyde

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page 18

Exhibit 4

1

2

3

4

5

6

7

8

9

10

11

12

13   California House and Senate Hearings

14   June 25, 2018

15

16

17

18

19

20

21

22

23

24

25

Page 1

1           MADAM CHAIR MONIQUE LIMON:  All right.
2    The bill is at eight.  We'll leave it open for
3    other members to add on.  It moves forward to
4    appropriations.
5           SENATOR RICHARD ROTH:  Thank you, Madam
6    Chair and members for your consideration.
7           MADAM CHAIR MONIQUE LIMON:  Thank you,
8    Senator.  We will go ahead and we will hear SB-
9    826.  Thank you, Senator Jackson for joining us.
10          SENATOR HANNAH-BETH JACKSON:  Well,
11   good almost evening.  Thank you for the
12   opportunity to present SB-826.  I really like
13   this bill, I have to say.  We all bring a lot of
14   bills and some are kind of more exciting than
15   others and I think this is a wonderful bill.  It
16   is a proactive approach to require more women
17   directors on the boards of publicly held
18   corporations in California.  This is SB-826.
19          California women make up 52 percent of
20   the population of California, but only about 15.5
21   percent of the directors of our public
22   corporations.  I look at the women at this dais
23   and I know that each one of you is qualified to
24   serve in that capacity, has a capacity here as a
25   member of the State Legislature.  And that

                                        Page 2

1   includes nonprofit boards as well.

2          So more than 80 percent of the State's

3   Corporations are operating without the benefit of

4   the experience, the prospective, and tools that

5   women bring with them to the corporate setting

6   and the life experience that women have that

7   enhance the results of corporations because

8   research clearly shows that boards with women

9   members perform better in the workplace.

10          By having such low participation rates

11   for women in our corporate leadership ranks here

12   in California, we effectively inhibit our own

13   economic performance as a state.  Other nations

14   have previously acknowledged the financial

15   benefits and actually require a percentage of

16   board members to be female, thus representing the

17   experience, expertise and wisdom of half the

18   populations, which also represents 70 percent of

19   all the consumers.

20          This measure takes a big step towards

21   closing this gender gap.  It increases gender

22   diversity on corporate boards by requiring each

23   publicly held corporation headquartered here in

24   California to have at least one woman on its

25   board of directors by the end of 2019 and

Page  3

1  beginning in July 2021, the bill requires a

2  minimum of two women directors on boards where

3  there are five directors and at least three women

4  on boards where there are six or more directors.

5          As I mentioned, the research on this is

6  clear. There is a 2016 McKinsey & Company, a

7  major consulting firm, a business consulting

8  firm, very highly regarded, that did a study that

9  revealed nationwide, the companies where women

10  are most strongly represented at board or top

11  management levels are also businesses that

12  perform the best in profitability, productivity,

13  innovation, governance, better performance and

14  workforce engagement.  What more can you ask for?

15          So this study also found that in

16  companies where there were three or more women

17  creating that sort of critical mass that we talk

18  about, senior management -- where they had three

19  or more women in senior management positions,

20  they scored higher on average on the organization

21  performance profile than companies with no women

22  on boards or in the executive ranks.

23          Women make businesses more profitable,

24  more productive, and better.  So I offered a

25  resolution on this in 2013, SCR-62, that urged,

Page 4

1   wanted to get your thoughts on it in terms of

2   mandating gender quotas for public institutions.

3              SENATOR HANNAH-BETH JACKSON:  The bill,

4   the suggestion that there is a constitutional

5   problem with choosing a woman over a man on a

6   board is a false analogy because what the bill

7   does is it calls for the addition of a position

8   on a board.  So we're not kicking anybody off to

9   put a woman on.  If a company -- and part of the

10  problem to is the turnover rate in this plum

11  position is very limited.

12             So what this would do is say, look, if

13  there hasn't been an opening and you don't have a

14  woman on the board by 2019, you add a position to

15  the board.  And for that position, we should find

16  the best qualified person and I kind of get a

17  little insulted too with the suggestion that, you

18  know, if it's a qualified man and qualified woman

19  and you give the position to a woman, then you're

20  taking away from probably a more qualified man.

21             I mean the problem we've had is for

22  decades and hundreds of years, the only people

23  who have been determined to be qualified have

24  been men obviously because that's why we have, I

25  mean the notice that 40 percent of the

                                            Page 21

1   corporations in California, I believe it was,
2   don't have any women on the boards.  Why is that?
3   Because there has been this sort of blanket
4   discrimination.  So rather than play that game,
5   we're saying, you can keep your board the way it
6   is.  We're just going to add a position and we
7   need to add women.  Find -- and I will tell you
8   there's some incredibly qualified women.
9   Stanford actually has -- its business school has
10  its own registry.  The Harvard Business School
11  has its own registry of women, qualified women.
12  I've looked at some of these registries.  These
13  people are certainly qualified to be President of
14  the United States, but then, again, I won't go
15  into that.  You said it.  Not me.
16          But the point is that these are
17  extraordinarily qualified people who have not
18  been given a chance and in great measure because,
19  as was pointed out, this has been sort of a white
20  man's bastion for years.  And so basically, I was
21  just writing down the -- there are few issues and
22  they will be taken up.  We addressed them in my
23  own Senate Judiciary Committee.
24          I think once we open those doors, we
25  will find that not only will we have more women,

Page 22

1   know very clear that I was to honor and obey her

2   and the she the right to take me out and that was

3   not on a date.

4           SENATOR HANNAH-BETH JACKSON:  My kind

5   of woman.

6           ASSEMBLY MEMBER TIMOTHY GRAYSON:  Yes.

7   So I would not dare stand against this nor not

8   support it in fear that she would visit me

9   tonight from her grave.

10          However, having said that, and again, I

11  do appreciate it, I have noticed and I've

12  experienced something -- just a little testimony

13  possibly to be encouraging and I was doing a

14  townhall a while back and this subject had come

15  up of equity, gender equity.  It was very clear

16  and one female speaker got up and said something

17  really profound.  She said we're not asking for

18  you men to leave the room, we're just asking for

19  you to make room in the room.

20          SENATOR HANNAH-BETH JACKSON:  There you

21  go.

22          ASSEMBLY MEMBER TIMOTHY GRAYSON:  And

23  that really resonated really, really well with

24  me.  And stuck with me even to this day.  And I

25  do have a question and that is I heard your

                                        Page 24

1             C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: August 24, 2021

17

18

19

20

21

22

23

24

25

Page 29

Exhibit 5

1

2

3

4

5

6

7

8

9

10

11

12

13    California House and Senate Hearings

14    June 26, 2018

15

16

17

18

19

20

21

22

23

24

25

Page 1

1    us right now.

2          SENATOR HANNAH-BETH JACKSON: -- you

3    heard this yesterday.  But for anyone who might

4    be interested, this is I think a really critical

5    time and a critical opportunity to start opening

6    up one of the last bastions of white male

7    domination and that is the C-Suite and

8    corporations in California and in this country.

9    There are other nations where they actually

10   require women on corporate boards.  They do so

11   because women add tremendous benefit to companies

12   in terms of profitability, productivity,

13   innovation, workplace harmony, if you will, and

14   success.  And the research is very clear that for

15   whatever reasons -- and I know there's some

16   discussion about causation and what have you --

17   but clearly having women, having 52 percent of

18   the population represented on corporate boards

19   when women represent 70 percent of the consumers,

20   is a good thing.

21          And the fact that we have not been able

22   to move that needle at all with a resolution I

23   did a few years ago urging companies to add women

24   to their corporate boards and we made no progress

25   with that, this is a measure that will require

                                    Page 3

1   that if a -- by 2019, a board has to have a woman

2   on it.  It means that you don't necessarily kick

3   anybody off, that you will add a position.  We

4   believe that will satisfy some of the

5   constitutional questions.

6             I appreciate the discussion.  It's not

7   clear where this would or wouldn't go, but I

8   think it's worthy enough legislation that we

9   should force the discussion and if it does end up

10  in the courts, let the courts make that decision.

11            But clearly, women have been

12  discriminated against in Corporate America for

13  far too long.  It's come we change that.  We know

14  that when you add women to boards, the culture

15  changes and it is time we change the culture

16  whether it's for profitability, whether it is to

17  protect workers from sexual harassment, whether

18  it is to prove the innovative qualities of a

19  particular company, this is a way to get there

20  and I believe this is a measure that will move

21  the ball forward and be beneficial, not only in

22  terms of equity, but in terms of economics and to

23  the benefit of the State of California as well.

24  With that, I would ask for your aye vote.

25            CHAIRMAN MARK STONE:  Thank you,

Page  4

1    Senator.  First witness, please.

2              BETSY BERKHEMER-CREDAIRE:  Good

3    afternoon or good morning still?

4              CHAIRMAN MARK STONE:  Good morning.

5              BETSY BERKHEMER-CREDAIRE:  Betsy

6    Berkhemer-Credaire.  I'm past president of NAWBO-

7    California, National Association of Women

8    Business Owners.  I own a retained executive

9    search firm in Los Angeles where we've done many

10   board searches over the year, and I'm also CEO of

11   20/20 Women on Boards, which is a campaign to

12   encourage and collaborate with companies to help

13   them find more women for corporate boards.

14             The issue that we're trying to deal

15   with here is the problem with supply and demand.

16   There many, in fact, thousands of qualified women

17   not only executive and experienced women, but

18   those who have been certified by UCLA, by

19   Stanford, and other institutions outside our

20   California borders, but who have been qualified

21   for serving on corporate boards.  And they've

22   also paid significant money for that

23   certification.

24             The problem is that there are too few

25   seats on corporate boards and the opportunities

Page 5

1   bring a report back to the nominating committee

2   and they decide which one person they are going

3   to interview.  They don't interview three or

4   four.  They only interview one and if all works

5   out and there aren't any conflicts of dates, that

6   person is brought on the board.  It's generally a

7   man and most likely an Angelo man because that is

8   who the other CEOs on the board already know and

9   trust and feel comfortable with.

10          So it's just a logical thing that has

11   ended up with sort of de facto discrimination.

12          So for your judiciary purposes, we've

13   had input by legal counsel and we understand that

14   in the courts and here in the Committee --

15          CHAIRMAN MARK STONE:  We need you to

16   wrap up.

17          BETSY BERKHEMER-CREDAIRE:  -- I shall -

18   - we need to prove, and we know we can, a

19   compelling interest for the State of California.

20   We need to prove that the Internal Affairs

21   Doctrine does not matter or count in this area.

22          And number three, for constitutionality

23   and equal protection by the law, that we can

24   prove strict scrutiny with all of the other

25   efforts that we've tried to bring forward for the

Page  7

1   last 25 years to improve, including the

2   resolution that Senator put forward five years

3   ago, and that we can prove that the selection

4   process and the purpose of this bill is narrowly

5   tailored so that it's not just gender that is the

6   qualifier for putting this candidate women on the

7   board, it is all the other experiences they have

8   in functional categories are not on that

9   corporate board.

10          So with that, I say thank you, Senator.

11   And I also wanted to compliment your staff

12   because they did a great job on a very

13   complicated topic outlining what the potential

14   issues might be.  Thank you.

15          CHAIRMAN MARK STONE:  Thank you.  Next

16   witness please.

17          ANNALISA BARRETT:  Thank you very much.

18   Thank you, Senator and Ms. Credaire, and members.

19   Thank you for hearing us today.  My name is

20   Annalisa Barrett.  I'm a professor of corporate

21   governance at the University of San Diego and I

22   have conducted research on corporate boards and

23   have advised corporate members and institutional

24   investors on board effectiveness and board

25   composition for about twenty years now.

                                              Page 8

1    investing public, or their employees, and of the

2    members of the community in which their company

3    operates.  And those people are your

4    constituents.

5            So I can go into many details on many

6    policies and practices, but I won't in the

7    interest of time, but I'm happy to answer any

8    questions that you have regarding statistics or

9    board practices as we go through discussion.

10   Thank you for this opportunity and please, we're

11   asking for your aye vote.  Thank you.

12           CHAIRMAN MARK STONE:  Thank you.  Next

13   witness please.

14           ANNE STAINES:  Thank you, Chair and

15   members.  My name is Anne Staines.  I am

16   President of NAWBO-California.  I represent the

17   twelve chapters of the National Association of

18   Women Business Owners across the state and by

19   proxy, the 1.5 million women business owners

20   across the state.  NAWBO is the sponsor of this

21   bill and it is because women business owners are

22   qualified.  There are many, many business owners

23   who are qualified to serve on boards, but the

24   doors are closed for even consideration for the

25   most part.

                                        Page 10

1              As you've seen, the proof is in the

2   pudding.  The bill that was passed -- or the

3   resolution that was passed had no effect.  And it

4   is time that women be considered for these roles.

5   If you even consider that one percent of the

6   women business owners in California could be

7   qualified, that would be well more than would be

8   needed to fill this and even half a percent would

9   be well more than would be needed.  So we urge

10  your vote, please.

11             CHAIRMAN MARK STONE:  Thank you.

12  Anyone else is support?  If you can just give us

13  your name and affiliation.

14             LORI KAMMERER:  Yes, sir.  Good

15  afternoon, or good morning.  Lori Kammerer on

16  behalf of Small Business California.  It's five

17  thousand members, including many, many women.  We

18  support this bill.  Thank you.

19             WILLIAM MUETZENBERG:  Good morning,

20  Committee Members.  I'm William Muetzenberg with

21  Equality California, in strong support.

22             MOREEN LANE:  Good morning.  Moreen

23  Lane, owner of RR Strategies, a consulting firm

24  here in Sacramento and I'm on the NAWBO

25  Sacramental Valley and I'm in support of this

                                            Page 11

1   Association.  We regretfully oppose.

2           KATIE HANSEN:  Katie Hansen of the

3   California Restaurant Association.  We're here in

4   opposition.

5           CHAIRMAN MARK STONE:  Thank you.

6   Anyone else in opposition?  All right.  Seeing

7   none, I'll bring it back to the Committee.

8   Questions, comments?

9           ELOISE GOMEZ REYES:  I will say that

10  until my colleagues returned, we were 50 percent

11  female.

12          CHAIRMAN MARK STONE:  Temporarily.

13  Other questions, comments?  All right, seeing

14  none.  Senator, I appreciate you bringing this

15  forward.  I agree, as the analysis points out,

16  there are some potential constitutional issues,

17  but -- yet part of our role is to push the dialog

18  forward and certainly this bill should pass and I

19  hope it does.

20          It would receive strict scrutiny but I

21  think there is definitely compelling state

22  interest in this and for the courts to take a

23  very close look at this.  They will not have the

24  opportunity to overcome what has really been

25  longstanding discrimination throughout the

Page 14

1    process.  That's part of our responsibility to

2    put opportunities forward to ensure that we are,

3    in fact, addressing discrimination as we see it

4    and the opportunities then to reinterpret the

5    Constitution as necessary to ensure that our

6    goals as a state are met.  I feel this bill is

7    absolutely worthy of our support today and I hope

8    this Committee will pass it out.

9            SENATOR HANNAH-BETH JACKSON:  Thank you

10   very much.  I appreciate that.

11           CHAIRMAN MARK STONE:  With that,

12   Senator, you may close.

13           SENATOR HANNAH-BETH JACKSON:  I will

14   adopt the statement of the Chair and with that,

15   ask for your aye vote.

16           CHAIRMAN MARK STONE:  Thank you.  So

17   the motion is to pass two appropriations.  Call

18   the roll, please.

19           THE CLERK:  Stone.

20           CHAIR:  Aye.

21           THE CLERK:  Stone, aye.  Cunningham.

22           CUNNINGHAM:  Not voting.

23           THE CLERK:  Chau, Chiu, Holden, Kalra.

24           ASH KALRA:  Aye.

25           THE CLERK:  Kalra, aye.  Kiley.

Page 15

1              C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

7

8

9

10

11   Veritext Legal Solutions

12   330 Old Country Road

13   Suite 300

14   Mineola, NY 11501

15

16   Date: August 24, 2021

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127

# Exhibit 6

1

2

3

4

5

6

7

8

9

10

11

12

13          Assembly Appropriations Committee Hearing

14                August 8, 2018

15

16

17

18

19

20

21

22

23

24

25

Page 1

1           ASSEMBLYWOMAN LORENA GONZALEZ FLETCHER:

2    Quickly would be nice.

3           MS. BETSY BERKHEMER-CREDAIRE:   Betsy

4    Berkhemer-Credaire.   I am the board member of the

5    National Association of Women Business Owners in

6    California who brought forward the bill.   We are

7    all potential board members, and as the Senator

8    said, only one-fourth of the companies in

9    California do not have any women on their boards.

10   Public companies.   They're very privately --

11   confidentially selected, the board members, so

12   it's important that women are considered.   The

13   pipeline is overflowing with women.   And one of

14   those is right here, Amy Bernard Bond.

15          MS. AMY BERNARD BOND:   Thank you.   As

16   an experienced consultant to corporate boards,

17   attorney licensed by the California State Bar,

18   and a previous corporate human resources officer,

19   corporate board searches are held very

20   confidentially and behind closed doors.

21          Independent research studies have

22   proven that women on boards bring tax revenues

23   and more profitable companies.   McKinsey and

24   Credit Suisse have issued reports and there will

25   be no cost to the state for research for this

                                        Page  3

1              C E R T I F I C A T I O N

2

3   I, Sonya Ledanski Hyde, certify that the

4   foregoing transcript is a true and accurate

5   record of the proceedings.

6

    Date: September 23, 2021

7

8

9

10

11

12              <%12151,Signature%>

                Sonya Ledanski Hyde

13

14

15

16

17

18

19

20

21

22

23

24

25

                                    Page  6

# Exhibit 7

1

2

3

4

5

6

7

8

9

10

11

12

13                 Senate Floor Session

14                 August 26, 2013

15

16

17

18

19

20

21

22

23

24

25

Veritext Legal Solutions
866 299-5127

1          PRESIDENT GAVIN NEWSOM:  Senate

2  Concurrent Resolution 62 by Senator Jackson,

3  relative to women on corporate boards.  Senator

4  Jackson.

5          SENATOR HANNAH-BETH JACKSON:  Thank

6  you, Mr. President and members.  Today is women's

7  equality day.  Given that we are at least half

8  the population, I would hope that it would be

9  women's equality day half the year, or at least

10  every day.  Every day.

11          One of the last bastions where women

12  are way under represented is in the corporate

13  boardroom.  You know, many years ago, there's a,

14  at least a story about Harry Truman when he was

15  on his railroad trip across America and it'd land

16  in a little town and there'd be 50 men standing

17  waiting to greet him.  And he would say to his --

18  look over to his folks and he'd say, "Great.

19  We've got another hundred votes."  And people

20  would say. "Well, there are only 50 people."

21  "Well, there are 50 men," he'd say, "and they're

22  going to make sure their wives vote with us."

23          Well, the world is a different place

24  than it was back in 1950.  We see more women on

25  the bench, practicing law, as physicians, even

                                      Page  2

1    here in the great legislature in the great state

2    of California.  But we don't see them in the

3    board rooms of California.  Senate Concurrent

4    Resolution 62 encourages equitable and diverse

5    gender representation on corporate boards of

6    California's publicly-held corporations.  Now, I

7    want to emphasize, this encourages.  We haven't

8    mandated.  We are not requiring.  We are

9    encouraging.

10          This measure will specifically ask that

11    every publicly-held corporation in California

12    within the next three years, if it has nine or

13    more director seats, have a minimum of three

14    women on its board.  If it's a board with five to

15    eight directors, it should have a minimum of two

16    members, two women on its board.  And with boards

17    with fewer than five director seats, should have

18    a minimum of one woman on the board.

19          SCR 62 is about starting the

20    conversation of women's roles in corporations,

21    and together, with the National Association of

22    Women Business Owners.  This is an organization

23    that has been very strongly committed to opening

24    these pathways to women.  These are the women

25    business owners.  Here in California, there are

Page 3

1    1.3 million of them, who give employment to an

2    additional 2 million people.

3              Now, many of you were at the luncheon

4    with Sheryl Sandberg when she recently addressed

5    the Legislative Women's Caucus, and as part of

6    the dialogue, she by the way, is the chief

7    operating officer of that little company called

8    Facebook.

9              She discussed the benefits of having

10   women in top positions in companies.  She

11   indicated that companies with women in top

12   positions have better work/life policies for

13   everyone.  Women understand issues that affect

14   women and make better decisions to reflect that.

15             The benefits of having women on boards

16   are not just anecdotal.  Study after study shows

17   that companies that -- companies have great

18   levels of financial success, profitability, when

19   they have board members who are women.  Having a

20   board of all or nearly all men simply doesn't

21   make economic sense in today's business world.

22   Companies with no women on their boards are

23   essentially overlooking half the population.

24             Today, colleagues, women comprise well

25   over 50 percent of the purchasing power in many

                                        Page  4

1   school, she's applied herself, she works hard.

2   She deserves the credit.  I'm not going to give

3   any of that credit to government.  And when my

4   daughters succeed, and they have, it's not

5   because government did it.  The government didn't

6   make their business.  The government didn't make

7   them a professional.  They made themselves a

8   professional.  They work hard, they deserve the

9   credit.  This is demeaning to women.  I ask for a

10  no vote.

11          PRESIDENT GAVIN NEWSOM:  Further debate

12  or discussion on this measure?  Seeing none,

13  Senator Jackson, you may close.

14          SENATOR HANNAH-BETH JACKSON:  Thank

15  you, Mr. President.  You know, that all sounds

16  very good.  Let me tell you the real world just

17  doesn't work that way.  Right now, less than 10

18  percent of all corporate boards are women.

19  There's something called the good old boys'

20  network, and many of us old women here, we're the

21  victims of it.

22          There were very few women who were ever

23  appointed to the bench when I was practicing law.

24  And with all due respect to those male colleagues

25  who are on the bench, there were a lot of good

Page 8

1   women out there who could've done a heck of a lot

2   better job.   But you know what, they were not

3   allowed, encouraged, and promoted because of

4   their gender.

5          The world has not changed that much,

6   sadly.  And it certainly hasn't changed in the

7   corporate world.  Now, I tried to be as clear as

8   I could.  But apparently, I wasn't clear enough.

9   This measure doesn't mandate anything.  It

10  encourages a conversation.  It is a conversation,

11  colleagues, that is long overdue.

12          And to see what I would consider, with

13  all due respect, a knee-jerk reaction to the

14  notion that we should have a conversation about

15  equality and asking why only 10 percent of the

16  members of boards, high-paying jobs, great

17  visibility, good opportunity, why we don't have

18  more women, suggests that perhaps if we have that

19  discussion, Mr. Anderson's daughters might have

20  an opportunity to get on one of those boards

21  because they are competent and qualified.

22          There are stories that are legion.  But

23  in this case, what we are simply trying to do,

24  with the National Association of Women Business

25  Owners, and by the way, colleagues, I know and

Veritext Legal Solutions
866 299-5127

1                  C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

     Date: September 23, 2021

7

8

9

10

11

                        <%12151,Signature%>

12                  Sonya Ledanski Hyde

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page 15

Exhibit 8

1

2

3

4

5

6

7

8

9

10

11

12

13              Senate Floor Session

14               August 30, 2018

15

16

17

18

19

20

21

22

23

24

25

                                    Page 1

1   need me passing this bill for them to be
2   qualified to be on a board.  And I think that
3   this undermines those qualified women who have
4   worked so hard.
5          MADAM PRESIDENT:  Thank you, Senator
6   Anderson.  Madam Pro Tem?
7          SENATOR TONI ATKINS:  Thank you, Madam
8   President.  And I know this bill is back on
9   concurrence, so we should be able to move
10  quickly.  But I do feel compelled to speak on
11  this for a number of reasons.  You know, when we
12  talk, we've tried to incentivize this.  We've
13  tried to do it the way that entices, encourages
14  corporate boards and corporations to understand
15  that this would be in your best interest.  And
16  we've quoted studies, real studies that say your
17  bottom line will be better served by diversity.
18          And I've heard the argument that maybe
19  supporting something like this disadvantages
20  other marginalized minority groups.  Heck,
21  they're not doing so well either last time I
22  looked at the statistics on that.  So all of the
23  arguments that resonate against doing this talk
24  about constitutionality.  I just got to wonder
25  the constitution does support women as well.  I

                                         Page  4

1    wonder about the balance with constitutionality
2    and not supporting access to more than 50 percent
3    of the population to be able to do this.  And we
4    can talk about women who've made it.

5            I just remember a colleague of mine who
6    now serves in the Assembly talking about glass
7    ceiling.  And she said, "Glass ceiling?  That
8    ceiling was bolted shut with metal.  If it were
9    glass, I could handle it."  I just you know, I
10   understand there's lots of barriers to put up to
11   say why not to do this, why not to encourage it.
12   We've tried.  We've tried.

13           I think there needs to be movement,
14   here.  And I think it starts with our efforts.
15   And lots of things have started with laws that
16   have some dispute or debate about
17   constitutionality.  In fact, it's referenced on
18   one of our public safety issues that we were
19   recently discussing.  And what everybody agreed
20   what we have in place is not constitutional.  And
21   yet, we still have to work to make it so, and
22   we're going to be doing that.

23           So I hear the arguments, but I also see
24   in practice incredible women with credentials and
25   degrees and real experience.  And I can quote you

                                        Page 5

1   real-life experiences where a group of women with
2   all of that lost out to those less experienced,
3   less talented, less degrees, and again, it
4   continues.  Members, it starts with us.  We will
5   work out the fall-out of any piece of
6   legislation.  We always do.  I actually have to
7   say the time is now.  And I will quote one last
8   person.  This is not my life now, but I remember
9   one of our strong women speaking decades ago at a
10  convention when she said, "I am sick and tired of
11  being sick and tired.  And I am sick and tired of
12  being in a position of influence and power and
13  yet seeing so many people like me who are still
14  pleading to be given that opportunity.  And
15  they've done everything they're supposed to to be
16  ready."  I would ask you to really consider this
17  one today.  Thank you.  Aye vote.
18          MADAM PRESIDENT:  Thank you, Senator
19  Atkins.  Senator Beall?
20          SENATOR JIM BEALL:  Just briefly.  I
21  think the problems we've had in Silicon Valley
22  with this issue.  Most companies are not
23  recognizing that without women in the leadership
24  positions on the boards, our economy won't
25  thrive.  It simply won't thrive.  And if we look

                                          Page 6

1  to the future, we have to pass this law.  We have

2  to have a directive that this takes place.  It's

3  time to make the change, so let's make this move

4  and vote for this bill.  Thank you.

5           MADAM PRESIDENT:  Thank you, Senator

6  Beall.  Members, further discussion or debate?

7  Seeing and hearing none, Senator Jackson, would

8  you like to close?

9           SENATOR HANNAH-BETH JACKSON:  Thank

10  you, Madam President.  I want to thank my joint

11  author for sort of making the most eloquent

12  justification for this.  You know, we did try

13  this back in 2013.  We did it in the form of a

14  resolution.  We urged these companies to

15  recognize the profitability, the productivity,

16  the benefits, all the benefits, of putting women

17  on these boards and helping run our country.  We

18  know that women are 70 percent of the consumers.

19  Not to have the voice of women on those boards

20  costs these companies money.  Because we know

21  that that's something that most these companies

22  consider about exclusively.

23           But they didn't listen.  So now is the

24  time when we have to step forward and say, we are

25  not going to ask anymore.  We are tired of being

Page 7

1                    C E R T I F I C A T I O N

2

3    I, Sonya Ledanski Hyde, certify that the

4    foregoing transcript is a true and accurate

5    record of the proceedings.

6

     Date: September 23, 2021

7

8

9

10

11

12                    <%12151,Signature%>

                      Sonya Ledanski Hyde

13

14

15

16

17

18

19

20

21

22

23

24

25

                                              Page 13

Exhibit 9

# SENATE COMMITTEE ON
# BANKING AND FINANCIAL INSTITUTIONS
### Senator Steven Bradford, Chair
### 2017 - 2018 Regular

| | | | |
|---|---|---|---|
| **Bill No:** | SB 826 | **Hearing Date:** | April 18, 2018 |
| **Author:** | Jackson | | |
| **Version:** | April 3, 2018   Amended | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | Eileen Newhall | | |

**Subject:**  Corporations:  boards of directors

**SUMMARY**   This bill requires each publicly held corporation whose principal executive offices are located in California to have a minimum number of women on its board of directors, as specified.  It further requires the Secretary of State to review and issue reports regarding corporations' compliance with the bill's provisions and to impose fines for violations of the bill, as specified.

**EXISTING LAW**

1) Provides for the General Corporation Law (Corporations Code Section 100 et seq.). Defines a domestic corporation as a corporation formed under the laws of this state (Corporations Code Section 167).

2) Defines a foreign corporation as a corporation other than a domestic corporation (Corporations Code Section 171) but further provides that a foreign corporation, as used in Chapter 21 of the General Corporation Law, does not include a corporation chartered under the laws of the United States.  Thus, for certain purposes, a foreign corporation is a corporation incorporated in another state, but for other purposes (specifically, for purposes of Chapter 21, which this bill proposes to amend), a foreign corporation is a corporation incorporated in another country.

3) Provides, pursuant to an extensive body of common law, that the board members of a corporation have a fiduciary duty to that corporation.

**THIS BILL**

1) Contains findings and declarations regarding the relative lack of women on corporate boards, the likelihood that this gender disparity will exist for at least the next forty to fifty years if proactive steps are not taken to achieve gender parity, and summarizes research which has found that adding women to corporate boards increases the effectiveness of those boards and the performance of those corporations.

2) Requires each publicly held, domestic or foreign corporation with its principal executive offices in California, according to the corporation's Securities and Exchange Commission (SEC) 10-K form, to have at least one female director on its board, commencing December 31, 2019.  Provides that if no board seat opens up on an all-male board before that date, a corporation must increase its authorized

number of directors by one and must fill that seat with a woman.

3) Requires each publicly held, domestic or foreign corporation whose principal executive offices are located in California, and whose board contains more than four board members, to increase the number of female directors on its board, no later than the close of the 2021 calendar year, as follows:

   a) If the authorized number of directors is five, the corporation must have at least two female directors on its board.

   b) If the authorized number of directors is six or more, the corporation must have at least three female directors on its board.

4) Defines publicly held corporations as corporations with outstanding shares listed on a major United States stock exchange.

5) Provides that its provisions apply to a publicly held, foreign corporation to the exclusion of the law of the jurisdiction in which that foreign corporation is incorporated.

6) Requires the Secretary of State (SoS), no later than July 1, 2019, to publish a report on his or her Internet Web site, documenting the number of publicly held, domestic and foreign corporations whose principal executive offices are located in California, which have at least one female director on their boards.

7) Further requires the SoS, no later than March 1, 2020, and annually thereafter, to publish a report on his or her Internet Web site regarding all of the following, at a minimum:

   a) The number of corporations subject to the provisions of this bill, which were in compliance with the requirements of the bill during at least one point during the preceding calendar year.

   b) The number of publicly held corporations that moved their United States headquarters into California from another state, or that moved their United States headquarters out of California and into another state during the preceding calendar year.

   c) The number of publicly held corporations that were subject to this bill during the preceding year, which were taken private.

8) Authorizes the SoS to fine corporations for violating the provisions of this bill and provides that the money derived from those fines shall be used to offset the SoS's cost to administer the bill, subject to appropriation by the Legislature. Counts as a violation each director seat, which is required to be held by a female by the end of a calendar year, and which is not held by a female during at least a portion of that calendar year.

a) For a first violation, the fine equals the average annual cash compensation of the corporation's directors.

b) For a second or subsequent violation, the fine equals three times the average annual cash compensation of the corporation's directors.

## COMMENTS

1) <u>Purpose of the bill:</u>  This bill is sponsored by the National Association of Women Business Owners California (NAWBO-CA) and is intended to promote equitable and diverse gender representation on every corporate board.

2) <u>Background:</u>  There are currently 761 publicly traded companies headquartered in California, including 510 traded on NASDAQ, 216 traded on the NYSE, and 35 on AMEX (https://www.nasdaq.com/screening/companies-by-region.aspx?region=North+America&country=United+States&state=CA).  The vast majority of these companies are corporations and would thus be subject to this bill's provisions.

According to the author and sponsor, one-fourth of California's publicly held corporations have no female directors on their boards.  Further, California's public corporations have fewer female directors than public corporations elsewhere in United States.  The author notes that, in California, only 15.5% of board seats are held by women, relative to 16.5% of board seats held by women in Russell 3000 companies and 19.8% of board seats held by women in Fortune 1000 firms.  According to Equilar, a company founded to help serve the needs of corporate boards, women currently  account for 21.3% of S&P 500 board seats, a figure that has increased by five percentage points in the last five years.

In 2013, this bill's sponsor and author teamed up to advance Senate Concurrent Resolution (SCR) 62, which urged every publicly held corporation in California to name women to their boards by December 31, 2016.  SCR 62 urged companies with nine or more director seats to have at least three female board members, companies with five to eight director seats to have at least two female board members, and companies with fewer than five director seats to have at least one female board member.  As of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of women directors called for in the resolution.  Senator Jackson and NAWBO-CA are proposing SB 826 as a follow-up  to SCR 62, in light of studies that predict it will take more than 40 years for the boards of directors of California's publicly traded businesses to achieve gender parity, absent proactive measures like this bill.

3) <u>Unanswered Questions and Unintended Consequences:</u>  Although well-intended, the mandate contained in SB 826 raises several unanswered questions and may result in unintended consequences.  For example, will this bill have an adverse impact on minority board representation?  Will any men of color fail to be offered board seats, so that corporations can add women to their boards?

Furthermore,  are we confident that corporations will be able to *identify* a sufficient pool of qualified female directors to comply with the provisions of this bill?  Few

would argue that educated, professional women are unqualified to hold board seats; it is less clear whether corporations know where to find an adequate supply of these women when seeking to fill board seats. If a corporation is unable to identify a sufficient number of qualified female board candidates to comply with this bill, how will that board balance its fiduciary duty to the corporation and that corporation's shareholders against the requirements of the bill? Will this bill result in a less qualified woman being named to a board over a more qualified man?

Will this bill lead to "overboarding" among qualified female board directors? Although different people define overboarding differently, this situation generally occurs when the same individual sits on the boards of three or more (or, according to some people, four or more) companies . Over the years, many institutional investors have voiced concerns about overboarding, believing that the focus and attention of otherwise qualified board members can be too thinly spread, if the same individual serves on too many boards. If SB 826 is enacted, existing, experienced female board members will be in high demand, leading to the possibility that some of these women may become overboarded.

In discussions held prior to this bill's hearing date, this bill's sponsor attempted to counter some of the questions and concerns raised above by pointing to the Equilar Diversity Network (http://www.equilar.com/diversity), a comprehensive database of qualified board candidates. According to David Chun, the founder and CEO of Equilar, "In the past, boards looking for qualified director candidates with diverse backgrounds would have to go to multiple registries and compile significant amounts of data from various sources in order to narrow their searches. With the Equilar Diversity Network, they can start that search with just one click." This bill's sponsor also points to the National Association of Corporate Directors and the National Association of Women Business Owners as resources for corporations seeking to identify women capable of holding board seats.

4) <u>Would An Alternate Approach Be Preferable?</u>  The Rooney Rule, adopted by the National Football League (NFL) in 2003, may provide the framework for an alternate approach that will further the goals of this bill's author and sponsor, without incurring the possible unintended consequences identified in the section above. Named after Dan Rooney, former chairman of the league's diversity committee, and intended to address the significant underrepresentation of people of color among the NFL's head coaching ranks, the Rooney Rule requires league teams to interview minority candidates for head coaching and senior football operation jobs before filling those jobs. The rule appears to be working. Since 2003, when the rule was instituted, the percentage of head coaching jobs filled by people of color has jumped to 22%, up from 6% prior to the rule's enactment.

If SB 826 were amended to require every publicly traded corporation with its principal executive office in California to *interview* at least one woman and one minority for every board opening, the bill would help many women and minorities achieve a goal that has thus far eluded them: getting into the interview room to demonstrate their worth as board members. If the interview process works as it should, the highest quality candidate, regardless of race or gender, should receive an offer. Requiring women and minorities to be interviewed, but leaving the ultimate choice of board member selection to the corporation, will not only ensure that

women and minorities are given consideration, but will also help ensure that the highest quality candidate is offered the position.

5) <u>Will Any Corporations Move Their Headquarters or Take Themselves Private to Avoid the Requirements of This Bill?</u>  The most recent amendments to this bill require the SoS to collect data intended to study this issue.  Although there is no way to know how many corporations that take themselves private or relocate their corporate headquarters following enactment of this bill will have done so in direct response to the bill without asking the CEOs of those firms for their reasons, data of the sort the SoS will be required to collect may help inform those who wish to study the effects of the bill.

6) <u>Can California Dictate The Makeup of Foreign Corporate Boards?</u>  This bill is not limited to publicly traded corporations incorporated in California.  Instead, it applies to all publicly traded, domestic and foreign corporations, regardless of their state or country of incorporation, as long as their principal executive offices are located in California.  It is unclear whether California can legally dictate the makeups of the boards of corporations incorporated outside of the state.

7) <u>Constitutional Questions:</u>   Questions have also been raised by some regarding the extent to which SB 826 may represent a violation of the Equal Protection Clauses of the California and United States Constitutions.  Section 1 of the 14th amendment to the United Stated States Constitution provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws*" (emphasis added).. Section 7 of Article I of the California Constitution similarly states, "A person may not be deprived of life, liberty, or property without due process of law *or denied equal protection of the laws* (emphasis added)."

According to informal advice provided to Committee staff by the Office of the Legislative Counsel, California court rulings on the constitutionality of laws that require differential treatment based on gender have identified gender as a suspect classification subject to strict scrutiny review.  Under that level of scrutiny, a law will be upheld as constitutional only if it furthers a compelling state interest through the least restrictive means available.

8) <u>Support:</u>

a) NAWBO-CA, sponsor of SB 826, represents the interests of the more than 1.6 million established women business owners and women entrepreneurs across all industries in California.  The organization writes, "California is the 5[th] largest economy in the world and should set an example globally for enlightened business practices. therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability.  Research shows that corporations with female directors outperform companies that don't have women on boards.  Yet, one-fourth of California's public companies still have no women directors.

"California would lead the way as the first state in the union to have such a law.

To become a corporate board member is serious business – and it's a serious business issue. Our state ranks No. 1 nationally in the number of women-owned firms, who provide 1.9 million jobs, and generate $318.2 Billion in annual revenues. Women business owners are CEOs who bring diversity of thought, represent the majority of consumer purchasing power, and understand supplier/vendor relationships. As directors, we would be role models for aspiring women leaders inside corporations."

b) In his letter of support, the founder and CEO of the Alliance of Chief Executives, an organization of 300 CEOs in Northern California, discusses several initiatives to increase diversity on corporate boards, including the Directors Academy, Athena Alliance, and Bay Area Women Leadership Roundtables. He states, "gender is only one dimension of diversity but is one of the most obvious opportunities to improve board performance....There is an abundance of qualified women leaders who would be excellent board members if given the opportunity and I would like California to take a leadership role in this initiative."

4) Opposition:  A coalition of 24 business groups led by the California Chamber of Commerce opposes the bill on both policy and legal grounds. The coalition notes, "Gender is an important aspect of diversity, as are the other protected classifications recognized under our laws. We are concerned that the mandate under SB 826 that focuses only on gender potentially elevates it as a priority over other aspects of diversity. Many of our companies are making significant efforts to address and improve diversity in the workforce by focusing on their hiring practices, training promotion, retention, etc. Our companies are not focused on only one particular classification, but rather all classifications. We believe this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity."

The coalition also believes that SB 826 violates the equal protection clauses of the U.S. Constitution and the California Constitution, as well as the Unruh Civil Rights Law (Civil Code Section 51), which states that "all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

9) Amendments:  If this Committee believes that a Rooney Rule-like approach is preferable to the strict mandate in this bill and additionally wishes to address the concerns raised by the opposition about this bill's exclusive focus on women, the following amendments are suggested:

Update the findings and declarations to include references to the value of minorities.

Delete Sections 2 and 3 of the bill and replace them with language to require the board of each publicly held, domestic or foreign corporation incorporated in the United States, whose principal executive offices, according to the corporation's SEC 10-K form, are located in California, to interview at least one woman and one minority for every unfilled board seat, beginning on January 1, 2019. Define "minority" as someone whose race is other than Caucasian. Make conforming

amendments to the reporting and fine provisions of the bill.

10) Prior and Related Legislation:

a) SB 984 (Skinner) requires the composition of state boards and commissions to be comprised of at least 50% women and requires the SoS to disclose the gender composition of each state board and commission on its Internet web site. Double-referred to

b) SCR 62 (Jackson), Resolution Chapter 127, Statutes of 2013 encouraged equitable and diverse gender representation on corporate boards, and urges that, within a three-year period from January 2014 to December 2016, inclusive, every publicly held corporation in California with nine or more director seats have a minimum of three women on its board, every publicly held corporation in California with five to eight director seats have a minimum of two women on its board, and every publicly held corporation in California with fewer than five director seats have a minimum of one woman on its board.

## POSITIONS

Support

NAWBO-CA (sponsor)
Alliance of Chief Executives
Bargas Environmental Consulting
Berkhemer Clayton, Inc.
Consumer Attorneys of California
The Living Planner
NAWBO Ventura County
Sagent
Small Business California
Sunrun
Two private individuals (female executives)

Opposition

Brea Chamber of Commerce
California Ambulance Association
California Association of Winegrape Growers
California Business Properties Association
California Chamber of Commerce
California Grocers Association
California Manufacturers and Technology Association
California Restaurant Association
California Trucking Association
Camarillo Chamber of Commerce
Cerritos Chamber of Commerce
Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce

Greater Riverside Chambers of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Wildomar Chamber of Commerce

**-- END --**

# Exhibit 10

**SENATE JUDICIARY COMMITTEE**
**Senator Hannah-Beth Jackson, Chair**
**2017-2018 Regular Session**

SB 826 (Jackson)
Version: April 3, 2018
Hearing Date: April 24, 2018
Fiscal: Yes
Urgency: No
TG/MS

## SUBJECT

Corporations: boards of directors

## DESCRIPTION

This bill would require that by December 31, 2019, a domestic general corporation or a foreign corporation have at least one female on its board of directors if it is a publicly held corporation, as defined, whose principal executive offices, according to the corporation's SEC 10-K form, are located in California. By December 31, 2021, this bill would require those corporations have a minimum of three, two, or one females on their board of directors, depending on the size of the board of directors, as provided.

This bill would additionally require the Secretary of State (SOS) to publish various reports on its Internet Web site documenting, among other things, the number of corporations in compliance with these provisions by or before specified dates. As well as, authorize the SOS to impose fines for violations of the bill, as specified, and would provide that monies from these fines are available, upon appropriation, to offset the cost of administering the bill.

## BACKGROUND

The General Corporation Law provides for the formation of domestic general corporations by the execution and filing of articles of incorporation with the SOS. Under that law, the business and affairs of these corporations are generally managed by, and all corporate powers exercised by or under, the direction of their boards of directors, and each director is elected by shareholder vote, with certain exceptions, as specified. That law also allows foreign corporations to transact intrastate business by obtaining certificates of qualification from the SOS and requires foreign corporations that meet certain criteria to comply with specified provisions applicable to domestic general corporations to the exclusion of the law of the jurisdiction in which the foreign corporation is incorporated.

Additionally, existing law provides that the SOS shall develop and maintain a registry of distinguished women and minorities who are available to serve on corporate boards

of directors. As used in these provisions, "minority" is defined as meaning an ethnic person of color, including American Indians, Asians, Blacks, Filipinos, and Hispanics. (Corp. Code Sec. 318(a).) This information is then made available to persons and entities qualified to transact business in California, or that meet other qualifications as provided, in an effort to provide corporations with more diverse candidates for their board of directors. (Corp. Code Sec. 318.) Despite this registry having been in effect since 1995, there continues to be a lack of diversity on corporate boards of directors.

In 2013, SCR 62 (Jackson, Ch. 127, Stats. 2013) was introduced in an effort to encourage equitable and diverse gender representation on corporate boards, and urge that, within a 3-year period from January 2014 to December 2016, inclusive, every publicly held corporation in California with: 9 or more director seats have a minimum of 3 women on its board; 5 to 8 director seats have a minimum of 2 women on its board; and fewer than 5 director seats have a minimum of one woman on its board.

SCR 62 was based upon several studies, cited within the resolution, that suggested there is a positive correlation between a corporation's economic performance and the number of women who serve on the corporation's board of directors or in upper management. Yet, despite this, these studies found that even where women make up 50 percent or more of the company's new hires, they make up only a fraction (typically 16 percent or less) of those company's board directors or executive officers.  This suggests well-qualified and well-educated women are obtaining positions in the corporate world in growing numbers, but they are rarely making it into the corporate board room.  (*See* SCR 62 (Jackson, Ch. 127, Stats. 2013).)

An August 2017 Senate Select Committee on Women, Work and Families hearing on the topic of women on corporate boards suggested that despite existing law and the encouragement of SCR 62, not much has changed from 2013 to now. To make real change, this bill would require that specified corporations have at least one female director by the end of 2019, and one or more female directors by the end of 2021, as provided. Additionally, this bill would require the SOS to publish various reports on their Internet Web site documenting, among other things, the number of corporations in compliance with these provisions, as specified. The SOS would also be authorized to impose fines for violations of the bill, as specified.

## CHANGES TO EXISTING LAW

<u>Existing federal law</u>, the United States Constitution, provides that no State shall deny any person within its jurisdiction the equal protection of the laws. (U.S. Const., art. XIV, Sec. 1.)

<u>Existing law</u>, the California Constitution, provides that a person may not be denied equal protection of the laws. (Cal. Const., art. 1, Sec. 7(a).)

SB 826 (Jackson)
Page 3 of 18

Existing law, the California Constitution, provides that a person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin. (Cal. Const., art. 1, Sec. 8.)

Existing law, the California Constitution, provides that the state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting. (Cal. Const., art. 1, Sec. 31.)

Existing law provides that, unless subject to limitations in the articles of incorporation relating to an act required to be approved by shareholders, the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board. (Corp. Code Sec. 300(a).)

Existing law provides that a board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the board.

Existing law provides that at each annual meeting of shareholders, directors shall be elected to hold office until the next annual meeting. (Corp. Code Sec. 301(a).)

Existing law provides that the articles of incorporation may provide that the directors hold office for a shorter term. They may also provide for the election of one or more directors by the holders of the shares of any class or series of shares voting as a class or series. (Corp. Code Sec. 301(a).)

Existing law provides that each director, including those elected to fill a vacancy, shall hold office until the expiration of the term for which elected and until a successor has been elected and qualified. (Corp. Code Sec. 301(b).)

Existing law provides that a listed corporation may, by amendment of its articles or bylaws, adopt provisions to divide its board of directors into two or three classes to serve for terms of three years respectively, or to eliminate cumulative voting, or both. (Corp. Code Sec. 301.5(a).)

Existing law provides that an article or bylaw amendment providing for division of the board of directors into classes, or any change in the number of classes, or the elimination of cumulative voting, may only be adopted by the approval of the board and the outstanding shares voting as a single class, except as provided. (Corp. Code Sec. 301.5(a).)

Existing law provides that if the board of directors is divided into two classes, the authorized number of directors shall be no less than six and one-half of the directors or as close an approximation as possible, shall be elected at each annual meeting of shareholders. If the board of directors is divided into three classes, the authorized

number of directors shall be no less than nine and one-third of the directors, or as close an approximation as possible, shall be elected at each annual meeting of shareholders. (Corp. Code Sec. 301.5(b).)

Existing law provides that if directors for more than one class are to be elected by the shareholders at any one meeting of shareholders and the election is by cumulative voting, as provided, votes may be cumulated only for directors to be elected within each class. (Corp. Code Sec. 301.5(c).)

Existing law defines "listed corporation" as meaning a corporation with outstanding shares listed on the New York Stock Exchange, the NYSE Amex, the NASDAQ Global Marker, or the NASDAQ Capital Market. (Corp. Code Sec. 301.5(d).)

Existing law provides that the board may declare vacant the office of a director who has been declared of unsound mind by an order of court or convicted of a felony. (Corp. Code Sec. 302.)

Existing law provides that a director may not be removed prior to the expiration of the director's term of office unless the removal is approved by the outstanding shares and subject to the following:

- no director may be removed (unless the entire board is removed) when the votes cast against removal, or not consenting in writing to the removal, would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast and the entire number of directors authorized at the time of the director's most recent election were then being elected;
- when by the provisions of the articles of incorporation, the holders of the shares of any class or series, voting as a class or series, are entitled to elect one or more directors, any director so elected may be removed only by the applicable vote of the holders of the shares of that class or series; or
- a director of a corporation whose board of directors is classified pursuant to Section 301.5 may not be removed if the votes cast against removal of the director, or not consenting in writing to the removal would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast and either the number of directors elected at the most recent annual meeting of shareholders, or if greater, the number of directors for whom removal is being sought, were then being elected. (Corp. Code Sec. 303.)

Existing law provides that any reduction of the authorized number of directors or amendment reducing the number of classes of directors does not remove any director prior to the expiration of the director's term of office. (Corp. Code Sec. 303(b).)

Existing law provides that the superior court of the proper county may, at the petition of shareholders holding at least 10 percent of the number of outstanding shares of any class, remove from office any director in case of fraudulent or dishonest acts or gross

abuse of authority or discretion with reference to the corporation, and may bar from reelection any director so removed for a period prescribed by the court. (Corp. Code Sec. 304.)

Existing law provides that unless otherwise provided in the article or bylaws and except for a vacancy created by the removal of a director, vacancies on the board may be filled by approval of the board or, if the number of directors then in office is less than a quorum, by the following:

- the unanimous written consent of the directors then in office;
- the affirmative vote of a majority of the directors then in office at a meeting held pursuant to notice or waivers of notice; or
- a sole remaining director. (Corp. Code Sec. 305(a).)

Existing law provides that unless the articles or a bylaw adopted by the shareholders provide that the board may fill vacancies occurring in the board by reason of the removal of directors, such vacancies may be filled only by approval of the shareholders. (Corp. Code Sec. 305(a).)

Existing law provides that the shareholders may elect a director at any time to fill any vacancy not filled by the directors, through a majority vote of the outstanding shares entitled to vote, unless the vacancy was created by a removal, then a unanimous consent vote is required. (Corp. Code Sec. 305(b).)

Existing law provides that if, after the filling of any vacancy by the directors, the directors then in office who have been elected by the shareholders shall constitute less than a majority of the directors then in office, then both of the following shall be applicable:

- any holder or holders of an aggregate of 5 percent or more of the total number of shares at the time outstanding having the right to vote for those directors may call a special meeting of shareholders; or
- the superior court of the proper county shall, upon application of such shareholder or shareholders, summarily order a special meeting of shareholders, to be held to elect the entire board. The term of office of any director shall terminate upon the election of a success. (Corp. Code Sec. 305(c).)

Existing law provides that any director may resign, effective upon giving written notice to the chairperson of the board, the president, the secretary or the board of directors of the corporation, unless the notice specifies a later time for the effectiveness of such resignation. If the resignation is effective at a future time, a successor may be elected to take office when the resignation becomes effective. (Corp. Code Sec. 305(d).)

Existing law provides that the SOS shall develop and maintain a registry of distinguished women and minorities who are available to serve on corporate boards of directors. As used in these provisions, "minority" is defined as meaning an ethnic

person of color including American Indians, Asians, Blacks, Filipinos, and Hispanics. (Corp. Code Sec. 318(a).)

Existing law provides that for each woman or minority who participates in the registry, the SOS shall maintain information on their educational, professional, community service, and corporate governance background. That information may include, but is not limited to:

- paid or volunteer employment;
- service in elected public office or on public boards or commissions;
- directorships, officerships, and trusteeships of business and nonprofit entities, including committee experience;
- professional, academic, or community awards or honors;
- publications;
- government relations experience;
- experience with corporate constituents; and
- any other areas of special expertise. (Corp. Code Sec. 318(b).)

Existing law provides each woman or minority who participates in the registry may additionally disclose any number of personal attributes that may contribute to board diversity. Those attributes may include, but are not limited to, gender, physical disability, race, or ethnic origin. (Corp. Code Sec. 318(c).)

Existing law provides each woman or minority who participates in the registry may additionally indicate characteristics of corporations for which he or she would consider, or is especially interested in, serving as a director. These characteristics may include, but are not limited to, company size, industry, geographic location, board meeting frequency, director time commitments, director compensation, director insurance or indemnification, or social policy concerns. (Corp. Code Sec. 318(d).)

Existing law provides that any woman or minority may nominate themselves to the registry by filing with the SOS the information required, as provided. Any registrant may attach a copy of his or her resume and up to two letters of recommendation to his or her registration form. Each registrant's registration form, together with any attached resume or letters of recommendation, shall constitute his or her registry transcript. (Corp. Code Sec. 318(e).)

Existing law provides that the SOS shall make appropriate rules requiring registrants to renew or update their filings with the registry, as necessary to ensure continued accuracy of registry information. (Corp. Code Sec. 318(f).)

Existing law provides that the SOS may also make information contained in the registry data base available to any person or entity qualified to transact business in California that regularly engages in the business of providing data base access or search services; provided, that data base access will not be construed to entitle the user to access any registrant's transcript. (Corp. Code Sec. 318(h).)

<u>Existing law</u> provides that the SOS shall make information contained in a reasonable number of registrants' transcripts available to any corporation or its representative. A "representative," for purposes of this subdivision, may be an attorney, an accountant, or a retained executive recruiter. A "retained executive recruiter," for purposes of this subdivision, is an individual or business entity engaged in the executive search business that is regularly retained to locate qualified candidates for appointment or election as corporate directors or executive officers. (Corp. Code Sec. 318(i).)

<u>Existing law</u> provides that the SOS may also grant access to a reasonable number of registrants' transcripts to any other person who demonstrates to the secretary's satisfaction that the person does both of the following:

- Seeks access to the registry in connection with an actual search for a corporate director;
- Intends to use any information obtained from the registry only for the purpose of finding qualified candidates for an open position on a corporate board of directors. (Corp. Code Sec. 318(j).)

<u>Existing law</u> provides that the SOS shall charge fees for registering with the registry, obtaining access to the registry data base, and obtaining copies of registrants' transcripts. The SOS, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, shall fix those fees by regulation. Fees shall be fixed so that the aggregate amount of all fees collected shall be sufficient to cover the total cost of administering the registry program. Registration fees shall be fixed so as to encourage qualified women and minorities to participate. Fees shall be deposited into the SOS's Business Fee Fund. (Corp. Code Sec. 318(n).)

<u>Existing law</u> provides that the SOS may make any rule, regulation, guideline, or agreement the secretary deems necessary to carry out the purposes and provisions of this section. (Corp. Code Sec. 318(o).)

<u>Existing law</u> provides that the SOS may cooperate with the Commission on the Status of Women and Girls, the California Council to Promote Business Ownership by Women, the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, women's organizations, minority organizations, business and professional organizations, and any other individual or entity the secretary deems appropriate, for any of the following purposes:

- promoting corporate use of the registry;
- locating qualified women and minorities and encouraging them to participate in the registry; and/or
- educating interested parties on the purpose and most effective use of the registry. (Corp. Code Sec. 318(p).)

<u>Existing law</u> provides that the secretary may also prepare and distribute publications designed to promote informed use of the registry. (Corp. Code Sec. 318(p).)

Existing law provides that the SOS may seek registrants' consent to be listed in a published directory of women and minorities eligible to serve as corporate directors, which will contain a summary of each listed registrant's qualifications. The secretary may periodically publish, or cause to be published, such a directory. Only those registrants who so consent in writing may be included in the directory. The printed directory shall be provided to any person upon payment of a fee, which the SOS will determine by regulation, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions. (Corp. Code Sec. 318(q).)

Existing law provides that the SOS shall implement this section no later than January 1, 1995. (Corp. Code Sec. 318(r).)

Existing law provides that at least once in each three-year period during which the registry is available for corporate use, the SOS, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, shall report to the Legislature on the extent to which the registry has helped women and minorities progress toward achieving parity in corporate board appointments or elections. (Corp. Code Sec. 318(s).)

This bill would make various findings and declarations regarding the importance of increasing the number of women directors.

This bill would provide that no later than the close of the 2019 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California, shall have a minimum of one female director on its board. A corporation may increase the number of directors on its board to comply with this section.

This bill would provide that no later than the close of the 2021 calendar year, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California, shall comply with the following:

- if its number of directors is six or more, the corporation shall have a minimum of three female directors;
- if its number of directors is five, the corporation shall have a minimum of two female directors; or
- if its number of directors is four or fewer, the corporation shall have a minimum of one female director.

This bill would provide that by July 1, 2019, the SOS shall publish a report on its Internet Web site documenting the number of domestic and foreign corporations whose principal executive offices are located in California and who have at least one female director.

This bill would provide that by March 1, 2020, and annually thereafter, the SOS shall publish a report on its Internet Web site regarding, at a minimum, all of the following:

- the number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year;
- the number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year; and
- the number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

This bill would provide that the SOS may adopt regulations to implement this section. Additionally, the SOS may impose fines for violations of this section as follows:

- for a first violation, an amount equal to the average annual cash compensation for the directors of the corporation; and
- for a second or subsequent violation, an amount equal to three times the average annual cash compensation for the directors of the corporation.

This bill would provide that for the purposes of imposing fines for violations, each director seat required by this section to be held by a female, which is not held by a female during at least a portion of a calendar year, shall count as a violation.

This bill would provide that fines collected pursuant to these provisions, shall be available, upon appropriation by the Legislature, for use by the SOS to offset the cost of administering this section.

This bill would define, for the purposes of these provisions, a "publicly held corporation" to mean a corporation with outstanding shares listed on a major United States stock exchange.

This bill would include foreign corporations that are publicly held, to the exclusion of the law of the jurisdiction in which the foreign corporation is incorporated. This bill would define, for this purpose, a "publicly held corporation" as meaning a foreign corporation with outstanding shares listed on a major United States stock exchange.

## COMMENT

1. Stated need for this bill

According to the Author:

> California is the 5th largest economy in the world and as an economic powerhouse we have an opportunity to take the lead on this issue. Women's high-level involvement in corporations clearly provides a benefit to corporations and to the economic strength and vitality of our state.

In order to finally achieve gender equity in the workplace, including fair representation, pay parity, safer workplaces, and greater work-life balance, changes need to occur at the top of the corporate structure. Moreover, by adding more women, we are likely to reduce and change the culture that has permitted sexual harassment to be so pervasive in our society.

SB 826 ensures a greater role for women in boardrooms and would make California the first in the nation to require the proactive change needed to fully realize gender equality throughout society.

In support, the National Association of Women Business Owners (NAWBO) California, the Sponsor of this bill, writes:

You probably will be quite surprised to know that one-fourth of California's public companies still have NO women directors. And that California companies average only 15.5% women directors, lagging behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%.

As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of 3,645 corporate directors, but only 565 of those seats are held by women, compared to 3,080 held by men. Among the counties in the state: Los Angeles, Orange County and San Diego Counties have the lowers percent of women directors (12%). Silicon Valley (Santa Clara County), which has been historically low, has 16%. And San Francisco County has the highest at 21%.

Senate Bill 826 would advance gender representation on corporate boards by requiring each publicly-held corporation with its principal executive offices in California to have at least one woman on its board of directors by the end of 2019.

California would lead the way as the first state in the union to have such a law. To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men. But research also says it will take 50 years to achieve parity unless something proactive is done! SB 826 is that crucial, proactive step.

2. <u>Constitutional considerations</u>

In its present form, this bill would mandate, as a matter of state law, that female directors occupy a gradually increasing number of private sector corporate board seats, commencing no later than December 31, 2019. Such a requirement potentially conflicts with a number of federal and state constitutional provisions. Since a statute cannot supersede constitutional mandates, if there are indeed conflicts, then this bill would be

unenforceable, at least to the degree of the conflict. If enacted, it is possible that this bill would face constitutional challenge in court.

a.  *Equal Protection Considerations*

Both the U.S. and California Constitutions contain an Equal Protection Clause. The federal Constitution says: [n]o State shall… deny to any person within its jurisdiction the equal protection of the laws." (U.S. Const., Amend. XIV, Sec. 1.) Very similarly, the state Constitution states that: "[a] person may not be… denied equal protection of the laws." (Cal. Const., Art. 1, Sec. 7(a).) Courts applying the constitutional concept of equal protection have ruled that laws drawing suspect classifications between people and treating them differently on that basis are subject to heightened judicial scrutiny.

Subdivision (a) makes a classification based on gender. The courts have held that, under the *federal* Equal Protection Clause, such gender classifications only have to meet intermediate scrutiny, meaning that the underlying statute "must serve important governmental objectives and must be substantially related to achievement of those objectives." (*Craig v. Boren* (1976) 429 U.S. 190, 197.)  By contrast, the courts have ruled that *California's* Equal Protection Clause is more demanding. Under the California Constitution, a law based on a classification by gender must meet strict scrutiny, meaning that such laws "may be upheld only if they are shown to be necessary for furtherance of a compelling state interest and they address that interest through the least restrictive means available." (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 33.) This is so whether or not "the intent behind the law is claimed to be benign or remedial." (*Id. at* 20-21.) Moreover, strict scrutiny applies regardless of what word the statute uses to express its aim; be it "goal," "quota," or, in the case of this bill, a minimum number of seats.

Strict scrutiny is even more rigorous than intermediate scrutiny. If this bill's provisions pass the test for strict scrutiny, therefore, they almost certainly pass the test for intermediate scrutiny. Bearing that in mind, the remainder of this Comment focuses only on whether this bill could meet the higher, state test.

To pass strict scrutiny, the government must show, first, that the statute is necessary to the furtherance of a compelling state interest and, second, that the statute uses the least restrictive means to further that interest.

With regard to the compelling state interest component of strict scrutiny, courts have set a high bar and warned that evidence must be marshalled in advance. (*Connerly*, *supra*, 92 Cal.App.4th 16, 37.) Conclusive statements about the government's interest are not enough; "governmental specificity and precision are demanded" and "simple legislative assurances of good intention cannot suffice." (*Id.* at 36.)

Remedying past discrimination can be a sufficiently compelling interest to pass strict scrutiny, but for that to be so, the government must meet two criteria. (*Connerly*, *supra*,

92 Cal.App.4th 16, 37.) First, the government must identify the discrimination to be remedied with some degree of specificity. (*Id.* at 38.) "A generalized assertion that there has been discrimination in a particular industry or region is insufficient and mere statistical anomalies, without more," will not suffice. (*Id.* at 38, internal citations omitted.) Second, the government must have strong evidence on which to conclude that the remedial action is necessary. It is not enough for the governmental entity in question to concede past discrimination and, while statistical analysis may be valuable evidence in some instances, statistical generalizations alone cannot meet the government's burden. (*Ibid.*)

This bill opens with an extensive set of findings and declarations. They are replete with statistics and citations to studies. While the strict scrutiny test sets a high bar, these finding and declarations go well beyond "conclusive statements" and "assurances of good intentions." They provide ample evidence, marshalled in advance, and articulating a case for why the Legislature believes, if this bill were enacted, it would serve a compelling government interest.

The author proposes to amend the bill, either in Committee or going forward, to further bolster these findings and declarations by more fully articulating the compelling state interest behind the bill. As its purpose is to remedy a long and well-documented history of discrimination depriving women of the equal opportunity (or, in many cases, any opportunity at all) to serve on corporate boards, the author proposes to elaborate on this more explicitly within the findings and declarations. Currently, the findings and declarations provide ample evidence of the vastly disproportionate underrepresentation of women on corporate boards – indeed, they point out that there is often no female representation at all. While it seems patently obvious that this must be the result of discrimination, the findings and declarations do not explicitly draw that link. Given the high bar set for meeting strict scrutiny, and court commentary on what sort of evidence of past discrimination will be required to meet it, the author is considering adding findings that point to specific forms of past or present gender discrimination that further justify, from a judicial point of view, enacting a remedial approach like the one proposed by the bill.

With regard to the component of strict scrutiny analysis that requires the government to show that it has employed the least restrictive means for furthering the state's interest, the courts have been equally demanding. Demonstrating that the chosen means are reasonable or efficient is not sufficient. (*Connerly*, *supra*, 92 Cal.App.4th 16, 37.) There must be a precise nexus between the justification for the statute and the classification used, the Legislature must consider gender-neutral alternatives, and the classification must be limited in scope and duration to that which is necessary to accomplish the legislative purpose. (*Ibid*). In addition, to pass strict scrutiny, use of the suspect classification must actually be remedial, meaning that the statute must be designed as nearly as possible to restore the victims of specific discriminatory conduct to the position they would have occupied in the absence of such conduct. (*Ibid*.)

While the least restrictive means test is demanding, a court reviewing this bill could conclude that it meets that high bar. It is self-evident that, in the absence of discrimination, women would currently occupy close to 50 percent of the seats on corporate boards, if not more. Still, given that courts applying strict scrutiny have indicated a desire to see a nexus between specific past discrimination and the remedial action proposed, the author may wish to set forth specific information about past discrimination against women in the findings and declarations.

In a similar vein, California has already tried a number of approaches to advancing gender diversity on corporate boards without much success. As detailed in the Background to this analysis, for example, California has had a registry of qualified board candidates since 1995, and, in 2013, the Legislature passed a resolution urging greater diversity on corporate boards. Neither attempt has had an appreciable effect on the problem. Bearing those efforts in mind, a court could conclude that California is turning to the remedial action proposed by this bill only after having exhausted alternative approaches, as strict scrutiny requires. Here again, the author proposes strengthening the bill through amendments to the findings and declarations that draw out the history of these past initiatives explicitly.

The bill's case for passing strict scrutiny review is further strengthened by the unique remedial structure it proposes. The bill calls for expansion of corporate boards if necessary in order to add the requisite female director or directors. Thus, the bill avoids a significant pitfall that has doomed other remedial policies under strict scrutiny review. Unlike a number of affirmative action programs that have been struck down because they required "displacement" of an individual of one race or gender in order to bring another individual of a different race or gender (*see*, e.g., *Wygant v. Jackson Bd. of Education* (1986) 476 U.S. 267 (white teachers with seniority let go to spare teachers of color with less seniority from personnel cuts)), this bill operates outside of that sort of zero-sum paradigm. Arguably, the bill does not discriminate against men since male directors suffer no negative consequence from merely adding female directors.

    *b.   California Constitution Article 1, Section 8 Considerations*

Section 8 of Article 1 of the California Constitution states that: "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

On its face, this bill does not appear to violate Section 8 of Article 1 in as much as it does not, alone, "disqualify" anyone from serving on a corporate board. It might also be debatable whether serving on a corporate board could appropriately be characterized as "entering or pursuing a business, profession, vocation, or employment."

At the same time, the California courts have construed Section 8 of Article 1 as articulating a general public policy against discrimination on the basis of gender (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 89-90), and a reviewing court might well find that general

policy to be applicable to this bill. Still, the case law interpreting Section 8 of Article 1 seems to suggest that it is, if anything, more permissive of gender based classifications than the strict scrutiny standard discussed above in relation to the state Equal Protection Clause.

Applying Section 8 of Article 1 in the context of alleged religious discrimination in the workplace, the California Supreme Court concluded that Section 8 of Article 1 "does not require full equality of treatment of all employees' religious practices under all circumstances, but does require whatever reduction of inequality of treatment is possible through reasonable steps that do not impose undue hardship on employers." (*Rankins v. Commission on Professional Competence* (1979) 24 Cal. 3d 167, 174.) Elaborating on this holding, one California Court of Appeal wrote that, as Section 8 of Article 1 "does not proscribe discriminatory practices resting on suitably cogent justifications, we infer that the policy against discrimination stated by section 8 also yields in some circumstances to competing concerns about the general welfare." (*Sistare-Meyer v. Young Men's Christian Ass'n* (1997) 58 Cal.App.4th 10, 16.)

In light of the foregoing, it seems likely that, if this bill passed the strict scrutiny test under the state Equal Protection Clause, it would also survive review under Section 8 of Article 1.

### c.   *California Constitution Article 1, Section 31 Considerations*

Section 31 of Article I of the California Constitution is frequently known by the ballot initiative from which it came: Proposition 209, passed by the California voters in 1996. The relevant part of Proposition 209 reads as follows:

> The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting.

In contrast to equal protection analysis, which permits classifications based on race or gender provided they can meet heightened scrutiny, Proposition 209 is a nearly absolute bar on the use of such classifications. Unless the federal Constitution *requires* the implementation of a remedial program that takes race or gender into account, Proposition 209 forbids it. (*Hi-Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 567.)

The provisions of this bill apply to *private* corporate boards. Since this bill does not affect the operation of *public* employment, *public* education, or *public* contracting, Proposition 209 is inapplicable to it.

SB 826 (Jackson)
Page 15 of 18

3.   Ability for corporations to comply

Under the timelines provided for in this bill, the affected corporations would have until the end of 2019 to ensure at least one board member is a female. They would then have an additional two years to meet the additional requirements based upon the size of their board of directors. Existing law provides that these impacted corporations should have yearly shareholder meetings, at which directors should be elected, by shareholder vote, to serve until the following annual meeting. (Corp. Code Sec. 301(a).) This suggests that some corporations would have annual voting to determine the membership of their board of directors. Corporations operating under these provisions would arguably be able to meet the 2019 requirement of one female member, because they would be re-electing their entire board of directors during that period. Thus, at least one female candidate should be able to be put forward for consideration.

However, existing law additionally provides for a corporation, through amendment of its articles or bylaws, to divide its board of directors into two or three classes that serve for terms of two or three years respectively. This suggests that some companies may not have any director seats up for election in time for meeting the requirements of this legislation. As such, these corporations would arguably be unable to comply with these requirements until their next election.

In this instance where no female director is elected, this bill would provide that a seat could simply be added to the board of directors to provide for space for a female member. However, the corporation's articles of incorporation, or by-laws if utilized, typically provide for the number of directors a corporation's board contains. Therefore, amending these provisions might require a vote of the shareholders, or action by the board, and may not be available until after the deadline imposed by this legislation.

On this issue, NAWBO California writes:

> [I]f there's not a retirement or other open seat in 2019, then the board must simply "add a seat for a woman director." Boards add or reduce seats whenever they choose. This solves the problem that open board seats rarely happen. Some board members serve "for life" even beyond the generally accepted board retirement age of 75. And when an opening is expected, male candidates are confidentially expecting their friends on the board to select them.
>
> From my experiences handling board searches, I assure you that being known to board members in advance of any opening is critical to being nominated. The whole process is very secretive, so that Wall Street isn't privy to who is being considered. Additionally, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on board with six or more directors. For any company that does not comply, the CA Secretary of state will be authorized to impose fines annually – an amount at least equal to the compensation that company pays its directors each year.

4. <u>Provision for fines</u>

Existing law requires publicly traded corporations to file with the SOS an annual statement disclosing the compensation paid to each of the members of the corporation's board of directors and its five most highly compensated executive officers who are not board members. The SOS is then required to make this information publicly available, as prescribed. (Corp. Code Secs. 1502.1, 2117.1.) Therefore, the SOS would have readily available information for use in determining the fines as provided by this bill. What does not seem as readily apparent is how greatly these fines might vary since they are based on the average annual cash compensation for the directors of the corporation. Thus, what one company's annual cash compensation is might vary greatly from another's, resulting in greatly different fines. As a matter of public policy, the Author may wish to consider this and ways to create a more equitable fining process.

5. <u>The issue of gender</u>

For the last several years, the Legislature has been introducing legislation that seeks to move our statutes to a place of increased inclusivity. Public discourse, and thus public policy, have begun to better recognize the impact sex and gender specific terminology in our statutes has on lesbian, gay, bisexual, transgender, gender nonconforming, or nonbinary Californians. In recent legislative sessions, we have seen this change throughout our family codes, with sex neutral terms, such as spouse, parent, and they/them/theirs pronouns being utilized over less inclusive language as we work to recognize what California's families actually look like. (*See* SB 1306 (Leno, Ch. 82, Stats. 2014), AB 2344 (Ammiano, Ch. 636, Stats. 2014).)

Additionally, in 2011, AB 887 (Atkins, Ch. 718, Stats. 2011) corrected the interchangeable use of gender and sex throughout many anti-discrimination codes by expressly defining "gender" to mean "sex, and includes a person's gender identity and gender expression. 'Gender expression' means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." These changes were necessary to ensure transgender or gender non-conforming individuals who are discriminated against based on those attributes received proper protection under existing anti-discrimination laws. Most recently, SB 179 (Atkins, Ch. 853, Stats. 2017) provided for a third gender category in California, nonbinary. Thus allowing Californians to list their gender as male, female, or nonbinary.

This bill would require that there be at least one female director on a corporation's board. This effort to provide gender diversity on our corporate boards is arguably leaving out nonbinary, gender nonconforming, and transgender Californians. Additionally, it is unclear what is meant by "female." Would this include an individual who was born with female sex characteristics, or someone who identifies that way, or both? Increased diversity on corporate boards, both in terms of gender and other categories, would arguably benefit California. The Author may wish to consider what is meant by "female."

6.  <u>Opposition Arguments</u>

The California Chamber of Commerce, on behalf of a coalition of organizations, writes in opposition:

>SB 826 conflicts with Corporations Code Section 2116 – Internal Affairs Doctrine:

>"Corporations Code section 2116 codifies the modern view of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation. With certain exceptions, the law of the state of incorporation applies." *Vaughn v. LJ Intern., Inc.*, 174 Cal.App.4th 213, 226-227 (2009) (internal citations omitted).

>"Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied. *Vaughn*, 174 Cal.App.4th at 226-227; *See* also *State Farm. Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434 (2003) (explaining internal affairs doctrine and application).

>SB 826 seeks to manage the directors of publicly traded corporations that have its principal executive offices in California yet are incorporated in another state. The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California. Such confusion and ambiguity will only lead to costly fines as proposed under the bill and potential litigation.

In response, the Author's office states:

>Although the US Supreme Court has taken a broad view of the internal affairs doctrine, stating that only one State should have the authority to regulate a corporation's internal affairs because otherwise a corporation could be faced with conflicting demands, California Corporations Code Section 2115 applies a full laundry list of California statutes to out-of-state corporations, notwithstanding the law applicable within their state of incorporation. In other words, the internal affairs doctrine does not overrule applicability of Section 2115 to out-of-state corporations. Unless exempt, an out-of-state corporation is subject to Section 2115 when specified shareholder and business tests are met.

Insofar as the author's office is aware, this existing California statute has not been nullified or limited by any court in California or in any federal court of the United States.

<u>Support</u>:  Alliance of Chief Executives, LLC; Bargas Environmental Consulting; Berkhemer Clayton, Inc.; Consumer Attorneys of California; Fraser Communications; NAWBO LA; Sagent Marketing; Sanrun

<u>Opposition</u>:  Brea Chamber of Commerce; California Ambulance Association; California Association of Winegrape Growers; California Business Properties Association; California Chamber of Commerce; California Grocers Association; California Manufacturers and Technology Association; California Restaurant Association; California Trucking Association; Camarillo Chamber of Commerce; Cerritos Chamber of Commerce; Garden Grove Chamber of Commerce; Gateway Chambers Alliance; Greater Coachella Valley Chamber of Commerce; Greater Riverside Chambers of Commerce; Murrieta Chamber of Commerce; North Orange County Chamber; Official Police Garages of Los Angeles; Personal Insurance Federation of California; Rancho Cordova Chamber of Commerce; Redondo Beach Chamber of Commerce; Santa Maria Valley Chamber of Commerce; South Bay Association of Chambers of Commerce; Wildomar Chamber of Commerce;


## **HISTORY**

<u>Source</u>:  National Association of Women Business Owners (NAWBO) California

<u>Related Pending Legislation</u>:  SB 984 (Skinner, 2018) would require each appointed state board and commission to be comprised of, at a minimum, 50 percent women. The bill would also require the office of the Governor to disclose on its Internet Web site the demographic information, including ethnicity, nationality, and gender, of each appointee made by the Governor and the demographic composition of each state board, commission, and task force appointed by the Governor, the Senate Rules Committee, and the Speaker of the Assembly. This bill will also be heard by this Committee on April 24th.

<u>Prior Legislation</u>:  SCR 62 (Jackson, Ch. 127, Stats. 2013) *See* background.

<u>Prior Vote</u>:  Senate Banking and Financial Institutions Committee (Ayes 5, Noes 1)


\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Exhibit 11

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Ricardo Lara, Chair
## 2017 - 2018  Regular  Session

**SB 826 (Jackson) - Corporations:  boards of directors**

**Version:** April 3, 2018        **Policy Vote:** B. & F.I. 5 - 1, JUD. 5 - 1,
                                                         JUD. 7 - 0, JUD. 5 - 2

**Urgency:** No                                   **Mandate:** No
**Hearing Date:** May 7, 2018           **Consultant:** Debra Cooper

**This bill meets the criteria for referral to the Suspense File.**

**Bill Summary:**  SB 826 would require a publicly held corporation, as defined, to have a minimum number of women on its board of directors, dependent on the size of its board. This bill would also require the Secretary of State (SOS) to review and issue reports regarding corporations' compliance with the bill's provisions and authorize SOS to impose fines for violations.

**Fiscal Impact:**
- Unknown, significant costs for SOS to collect data required to investigate corporations in order to produce an initial report and annual reports thereafter.
- Significant ongoing costs of approximately $600,000 annually for additional workload to develop regulations and to investigate and process violations.
- Unknown potential revenue from any fees imposed on corporations for violations.

**Background:**  There are currently 761 publicly traded corporations headquartered in California. According to the author, one-fourth of California's publicly held corporations have no female director on the board. In addition, California's public corporations have fewer female directors than elsewhere in the United States.

In 2013, SCR 62 (Jackson) encouraged equitable and diverse gender representation on corporate boards by December 2016. By December 2016, fewer than 20% of the corporations headquartered in California had the number of women directors that the resolution suggested. An August 2017 Senate Select Committee on Women, Work, and Families hearing on the topic of women on corporate boards suggested that despite existing law and the encouragement of SCR 62, not much has changed since 2013.

**Proposed Law:**  This bill would:
- Make various findings and declarations regarding gender diversity on corporate boards;
- Require, by December 31, 2019, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California to have a minimum of one female director on its board;
- Require, by December 31, 2021, a publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California, to have a minimum number of female directors on its board according to the size of the board, as specified;

- Require, by July 1, 2019, the SOS to publish a report on its Internet Web site documenting the number of domestic and foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California and who have at least one female director;

- Require, by March 1, 2020, and annually thereafter, the SOS to publish a report on its Internet Web site regarding, at a minimum, the number of corporations that were in compliance with these provisions during at least one point during the preceding calendar year, the number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year, and the number of publicly held corporations that were subject to these provisions during the preceding year, but are no longer publicly traded;

- Authorize SOS to adopt regulations to implement these provisions;

- Authorize SOS to impose fines for violations, as specified;

- Require fines collected to be available upon appropriation by the Legislature, for use by the Secretary of State to offset costs for administering these provisions;

- Define "publicly held corporation."

**Related Legislation:**

SB 984 (Skinner) would require the composition of state boards and commissions to be composed of at least 50% women and require the SOS to disclose the gender composition of each state board and commission on its Internet web site. This bill is pending in the Senate Appropriations Committee.

SCR 62 (Jackson, Chapter 127, Statutes of 2013) encouraged equitable and diverse gender representation on corporate boards, and urges that, within a three-year period from January 2014 to December 2016, inclusive, every publicly held corporation in California with nine or more director seats have a minimum of three women on its board, every publicly held corporation in California with five to eight director seats have a minimum of two women on its board, and every publicly held corporation in California with fewer than five director seats have a minimum of one woman on its board.

**Staff Comments:** In order to fulfill the provisions of the bill, the Secretary of State would need to access and evaluate information that the Secretary of State does not currently receive. For instance, the Secretary of State currently does not receive the U.S. Securities and Exchange Commission (SEC) 10-K filing nor does the Secretary of State receive notices when corporations' headquarters move in or out of California, or information on directors' compensation. Additionally, no SEC or Secretary of State filing currently requires a corporation to declare the gender composition of its Board of Directors. The Secretary of State would need additional resources to initially compile and subsequently update all of this information.

-- END --

# Exhibit 12

# SENATE COMMITTEE ON APPROPRIATIONS
## Senator Ricardo Lara, Chair
## 2017 - 2018  Regular  Session

**SB 826 (Jackson) - Corporations:  boards of directors**

| | |
|---|---|
| **Version:** April 3, 2018 | **Policy Vote:** B. & F.I. 5 - 1, JUD. 5 - 1, JUD. 5 - 2, JUD. 7 - 0 |
| **Urgency:** No | **Mandate:** No |
| **Hearing Date:** May 25, 2018 | **Consultant:** Debra Cooper |

**Bill Summary:**  SB 826 would require a publicly held corporation, as defined, to have a minimum number of women on its board of directors, dependent on the size of its board. This bill would also require the Secretary of State (SOS) to review and issue reports regarding corporations' compliance with the bill's provisions and authorize SOS to impose fines for violations.

# *********** ANALYSIS ADDENDUM – SUSPENSE FILE ***********
## The following information is revised to reflect amendments
## adopted by the committee on May 25, 2018

**Fiscal Impact:**
- Unknown, significant costs for SOS to collect data required to investigate corporations in order to produce an initial report and annual reports thereafter.
- Significant ongoing costs of approximately $600,000 annually for additional workload to develop regulations and to investigate and process violations.
- Unknown potential revenue from any fees imposed on corporations for violations.

**Committee Amendments:**  Define a "female" to mean an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

-- END --

Exhibit 13

**SENATE RULES COMMITTEE**                                             SB 826
Office of Senate Floor Analyses
(916) 651-1520    Fax: (916) 327-4478

---

THIRD READING

---

Bill No:    SB 826
Author:     Jackson (D) and Atkins (D), et al.
Amended:    5/25/18
Vote:       21

---

SENATE BANKING & F.I. COMMITTEE:  5-1, 4/18/18
AYES:  Bradford, Galgiani,  Hueso, Lara, Portantino
NOES:  Vidak
NO VOTE RECORDED:  Gaines

SENATE JUDICIARY COMMITTEE:  5-2, 4/24/18
AYES:  Jackson, Hertzberg, Monning,  Stern, Wieckowski
NOES:  Moorlach, Anderson

SENATE APPROPRIATIONS COMMITTEE: 5-2, 5/25/18
AYES:  Lara, Beall,  Bradford, Hill,  Wiener
NOES:  Bates, Nielsen

---

**SUBJECT:**  Corporations:  boards of directors

**SOURCE:**   National  Association of Women Business Owners -California

---

**DIGEST:**   This bill requires each publicly held corporation whose principal executive offices are located in California to have a minimum  number of women on its board of directors, as specified.  It further requires the Secretary of State to review and issue reports regarding corporations' compliance with the bill's provisions and to impose fines for violations  of the bill,  as specified.

**ANALYSIS:**

Existing  law:

1) Provides for the General Corporation Law (Corporations Code Section 100 et seq.).  Defines  a domestic corporation as a corporation formed under the laws of this state (Corporations Code Section 167).

2) Defines a foreign corporation as a corporation other than a domestic corporation (Corporations Code Section 171) but further provides that a foreign corporation, as used in Chapter 21 of the General Corporation Law, does not include a corporation chartered under the laws of the United States. Thus, for certain purposes, a foreign corporation is a corporation incorporated in another state, but for other purposes (specifically, for purposes of Chapter 21, which this bill proposes to amend), a foreign corporation is a corporation incorporated in another country.

3) Provides, pursuant to an extensive body of common law, that the board members of a corporation have a fiduciary duty to that corporation.

This bill:

1) Contains findings and declarations regarding the relative lack of women on corporate boards, the likelihood that this gender disparity will exist for at least the next forty to fifty years if proactive steps are not taken to achieve gender parity, and summarizes research which has found that adding women to corporate boards increases the effectiveness of those boards and the performance of those corporations.

2) Requires each publicly held, domestic or foreign corporation with its principal executive offices in California, according to the corporation's Securities and Exchange Commission 10-K form, to have at least one female director on its board, commencing December 31, 2019. Provides that if no board seat opens up on an all-male board before that date, a corporation must increase its authorized number of directors by one and must fill that seat with a woman.

3) Requires each publicly held, domestic or foreign corporation whose principal executive offices are located in California, and whose board contains more than four board members, to increase the number of female directors on its board, no later than the close of the 2021 calendar year, as follows:

   a) If the authorized number of directors is five, the corporation must have at least two female directors on its board.

   b) If the authorized number of directors is six or more, the corporation must have at least three female directors on its board.

4) Defines publicly held corporations as corporations with outstanding shares listed on a major United States stock exchange.

5) Defines female as an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

6) Provides that its provisions apply to a publicly held, foreign corporation to the exclusion of the law of the jurisdiction in which that foreign corporation is incorporated.

7) Requires the Secretary of State (SOS), no later than July 1, 2019, to publish a report on his or her Internet Web site, documenting the number of publicly held, domestic and foreign corporations whose principal executive offices are located in California, which have at least one female director on their boards.

8) Requires, further, the SOS, no later than March 1, 2020, and annually thereafter, to publish a report on his or her Internet Web site regarding all of the following, at a minimum:

   a) The number of corporations subject to the provisions of this bill, which were in compliance with the requirements of the bill during at least one point during the preceding calendar year.

   b) The number of publicly held corporations that moved their United States headquarters into California from another state, or that moved their United States headquarters out of California and into another state during the preceding calendar year.

   c) The number of publicly held corporations that were subject to this bill during the preceding year, which were taken private.

9) Authorizes the SOS to fine corporations for violating the provisions of this bill and provides that the money derived from those fines shall be used to offset the SOS's cost to administer the bill, subject to appropriation by the Legislature. Counts as a violation each director seat, which is required to be held by a female by the end of a calendar year, and which is not held by a female during at least a portion of that calendar year.

   a) For a first violation, the fine equals the average annual cash compensation of the corporation's directors.

   b) For a second or subsequent violation, the fine equals three times the average annual cash compensation of the corporation's directors.

**Background**

This bill is sponsored by the National Association of Women Business Owners-California (NAWBO-CA) and is intended to promote equitable and diverse gender representation on every corporate board.

According to the author and sponsor, one-fourth of California's publicly held corporations have no female directors on their boards. Further, California's public corporations have fewer female directors than public corporations elsewhere in United States. The author notes that, in California, only 15.5% of board seats are held by women, relative to 16.5% of board seats held by women in Russell 3000 companies and 19.8% of board seats held by women in Fortune 1000 firms. According to Equilar, a company founded to help serve the needs of corporate boards, women currently account for 21.3% of S&P 500 board seats, a figure that has increased by five percentage points in the last five years.

In 2013, this bill's sponsor and author teamed up to advance SCR 62 (Jackson, Resolution Chapter 127), which urged every publicly held corporation in California to name women to their boards by December 31, 2016. SCR 62 urged companies with nine or more director seats to have at least three female board members, companies with five to eight director seats to have at least two female board members, and companies with fewer than five director seats to have at least one female board member. As of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of women directors called for in the resolution. Senator Jackson and NAWBO-CA are proposing SB 826 as a follow-up to SCR 62, in light of studies that predict it will take more than 40 years for the boards of directors of California's publicly traded businesses to achieve gender parity, absent proactive measures like this bill.

**Comments**

There are currently 761 publicly traded companies headquartered in California, including 510 traded on NASDAQ, 216 traded on the NYSE, and 35 on AMEX (https://www.nasdaq.com/screening/companies-by-region.aspx?region=North+America&country=United+States&state=CA). The vast majority of these companies are corporations and would thus be subject to this bill's provisions.

**FISCAL EFFECT:**   Appropriation: No       Fiscal Com.: Yes          Local: No

According to the Senate Appropriations Committee, this bill will result in unknown, significant costs for the SOS to collect data required to investigate corporations in order to produce an initial report and annual reports thereafter and

significant ongoing costs of approximately $600,000 annually for additional workload to develop regulations and to investigate and process violations. These costs may be offset by an unknown potential revenue from any fees imposed on corporations for violations of the bill.

**SUPPORT:** (Verified 5/24/18)

National Association of Women Business Owners –California (source)
Alliance of Chief Executives
Anvaya Solutions
Barnard-Bahn Consulting & Coaching
Berkhemer Clayton, Inc.
Burleson Consulting
Chelette Enterprises
Consumer Attorneys of California
CR&A Custom
DG Consulting
DLC Consulting Services
Dr. Sandra's Sanctuary
Fraser Communications
Frieda's Specialty Produce
Garcia Realty
Hiland Consulting
Hollifield Creative
Hunter Hawk Inc.
Impact Sciences
Legislative Women's Caucus
Lentini Design & Marketing
NAWBO Los Angeles
NAWBO Ventura County
Posh Baban
Rose Policy Solutions
Schaub Insurance Agency
Small Business California
Sunrun
Toni's Kitchen
50 private individuals (female executives)

**OPPOSITION:** (Verified 5/24/18)

Biocom

Brea Chamber of Commerce
California Ambulance Association
California Association of Winegrape Growers
California Business Properties Association
California Chamber of Commerce
California Grocers Association
California Manufacturers and Technology Association
California Restaurant Association
California Trucking Association
Camarillo Chamber of Commerce
Cerritos Chamber of Commerce
Construction Employers' Association
Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce
Greater Riverside Chambers of Commerce
Lodi Chamber of Commerce
Long Beach Area Chamber of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
Simi Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Vacaville Chamber of Commerce
Wildomar Chamber of Commerce

**ARGUMENTS IN SUPPORT:** The National Association of Women Business
Owners-California, sponsor of this bill, writes, "California is the 5th largest
economy in the world and should set an example globally for enlightened business
practices. therefore, California has a responsibility to ensure that women are
included in board discussions and decisions that affect corporate actions and
profitability. Research shows that corporations with female directors outperform
companies that don't have women on boards. Yet, one-fourth of California's
public companies still have no women directors.

"California would lead the way as the first state in the union to have such a law.

To become a corporate board member is serious business – and it's a serious business issue.  Our state ranks No. 1 nationally  in the number of women-owned firms, who provide 1.9 million  jobs, and generate $318.2 Billion  in annual revenues.  Women business owners are CEOs who bring diversity of thought, represent the majority  of consumer purchasing power, and understand supplier/vendor relationships.  As directors, we would be role models for aspiring women leaders inside corporations."

**ARGUMENTS IN OPPOSITION:**  A coalition of over two dozen business groups led by the California  Chamber of Commerce opposes the bill on both policy and legal grounds.  The coalition notes, "Gender is an important aspect of diversity, as are the other protected classifications  recognized under our laws.  We are concerned that the mandate under SB 826 that focuses only on gender potentially  elevates it as a priority over other aspects of diversity. Many of our companies are making significant  efforts to address and improve diversity in the workforce by focusing on their hiring  practices, training  promotion, retention, etc.  Our companies are not focused on only one particular classification, but rather all classifications.  We believe  this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity."

The coalition also believes that SB 826 violates the equal protection clauses of the U.S. Constitution and the California Constitution, as well as the Unruh Civil Rights Law (Civil Code Section 51) and believes that the bill conflicts with Corporations Code Section 2116 (the internal affairs doctrine).  "SB 826 seeks to manage the directors of publicly traded corporations that have their principal executive offices in California yet are incorporated in another state.  The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California.  Such confusion and ambiguity will  only lead to costly fines as proposed under the bill and potential litigation."

Prepared by:  Eileen  Newhall  / B. & F.I. /
5/29/18 10:44:16

**\*\*\*\*  END  \*\*\*\***

Exhibit 14

Date of Hearing:  June 25, 2018

ASSEMBLY  COMMITTEE  ON  BANKING AND FINANCE
Monique  Limón,  Chair
SB 826 (Jackson) – As Amended May 25, 2018

**SENATE VOTE**: 22-11

**SUBJECT**:  Corporations:  boards of directors

**SUMMARY:**  Requires  each publicly  held corporation whose principal  executive offices  are located in California  to have a minimum  number  of females  on its board of directors.

Specifically,  **this bill**:

1) Defines "female" as an individual  who self-identifies  her gender as a woman,  without  regard to the individual's  designated  sex at birth.

2) Defines "publicly  held corporation"  as a corporation with  outstanding  shares listed  on a major United  States stock exchange.

3) By the end of calendar  year 2019, requires  each publicly  held corporation  whose principal executive  offices  are located in California  to have a minimum  of one female  director  on its board.

4) By the end of calendar  year 2021, requires  each publicly  held corporation  whose principal executive  offices  are located in California  to comply  with  the following:

   a. If its number  of directors  is six or more, the corporation shall have a minimum  of three  female  directors.
   b. If its number  of directors  is five, the corporation  shall have a minimum  of two female directors.
   c. If its number  of directors  is four or fewer, the corporation  shall have a minimum  of one female  director.

5) Requires  the Secretary  of State to report  on corporations  subject  to the requirements summarized  in #3 and #4 and those corporations'  compliance  with  the requirements.

6) Authorizes  the Secretary  of State to impose  fines  for violations  of the requirements  in #3 and #4 in amounts  based on the cash compensation  paid to directors  of the corporation.

7) Makes findings  and declarations  regarding  the underrepresentation  of women  on corporate boards of directors  and the benefits  of more equitable  representation  of women  on corporate boards.

**EXISTING LAW:**

1) Provides  for the General  Corporation  Law (Corporations  Code Section  100 et seq.).  Defines  a domestic  corporation  as a corporation  formed  under  the laws of this state (Corporations  Code Section  167).

2) Defines a foreign corporation as a corporation incorporated in another country (Corporations Code Section 171).

3) Provides that the board members of a corporation have a fiduciary duty to that corporation.

**FISCAL EFFECT**: According to the Senate Appropriations Committee, unknown, significant costs for Secretary of State (SOS) to comply with reporting requirement. Ongoing costs of about $600,000 annually for SOS to develop regulations and investigate violations. Unknown revenue from fines.

**COMMENTS:**

1) PURPOSE

This bill is sponsored by the National Association of Women Business Owners California (NAWBO-CA). The author states:

> *California women make up 52 percent of the state's population, but only about 28 percent of the directors of our public corporations...Research clearly shows that boards with women members perform better in the marketplace. By having such low participation rates for women in California's corporate leadership ranks, we effectively inhibit our own economic performance as a state. Senate Bill 826 takes the first step towards closing this gender gap.*

2) BACKGROUND

Women are significantly underrepresented on corporate boards of directors, relative to women's share of the population and share of the workforce. According to Pew Research Center, women comprised a 47% share of the labor force in 2015. Yet, only 16% of board seats are held by women.[1] The board of directors has the responsibility of hiring the company's chief executive officers (CEOs), and the gender disparity on boards may be a contributing factor to the even larger gender disparity at the CEO level – women hold less than 4% of CEO positions in the largest 3,400 companies worldwide.[2]

This disparity raises important questions and concerns related to structural discrimination and gender equity, but it also may be hindering the productivity and economic value of corporations based in California. Credit Suisse, a global investment bank and financial services company, has researched the impacts of gender diversity on business performance. Their research finds clear evidence that higher levels of gender diversity in decision-making roles lead to higher return on equity, even while maintaining less risky balance sheets.[3]

In 2013, the author and sponsor of this bill worked to pass Senate Concurrent Resolution (SCR) 62, which encouraged equitable and diverse gender representation on corporate boards. SCR 62

---

[1]
https://static1.squarespace.com/static/56e8489162cd944a6424f542/t/5a3215a40d9297f7991e7582/1513231783352/ California+Women+on+Boards+2017+Report.pdf
[2] http://publications.credit-suisse.com/tasks/render/file/index.cfm?fileid=5A7755E1-EFDD-1973-A0B5C54AFF3FB0AE
[3] Ibid.

urged public companies in California to have a minimum number of director seats held by women, based on the size of the companies' boards, by December 2016. Fewer than 20% of corporations complied with the targets encouraged by the Legislature, so the author and sponsor introduced this bill to provide impetus for action in closing the gender gap on corporate boards.

## 3)  BOARD MANDATES IN EUROPE

Ten years ago, Norway required publicly-traded companies to appoint women to at least 40% of their board seats. Subsequently, more than a dozen European countries established similar quotas with varying levels of enforceability. The result of these policies is a dramatic increase in female representation on corporate boards, as shown in the chart below.



According to The Economist, these policies were met with concerns that few women would be spread thin between boards and that underqualified women would be appointed to boards.[4] Those fears have not been realized. The incidence of board members serving on three or more boards does not significantly differ between male and female directors. A study on Italy's quota showed

---

[4] https://www.economist.com/business/2018/02/17/ten-years-on-from-norways-quota-for-women-on-corporate-boards

that the population of female board members after the policy change was actually more qualified than before the policy change.

On the other hand, The Economist article suggests that the quotas have not been as successful in generating additional benefits beyond more diverse boards. Empirical research has been inconclusive in showing positive benefits related to company performance, corporate decision-making, or beneficial effects on the representation of women in senior management.

4) RISK OF NEGATIVE UNINTENDED CONSEQUENCES UNCLEAR

If enacted into law, the requirements of this bill would likely result in a significant increase in demand for female board candidates by public corporations in California. This increase in demand may result in one or more of the following outcomes, some of which may be intended by the author and others which are likely not intended:

- Higher compensation for the most qualified female board candidates;

- A change, possibly an increase or decrease, in the diversity of boards when measured on other aspects besides gender;

- A decrease in board seats held by females at non-California corporations in the short-run as California corporations outbid non-California corporations for female directors;

- An increase in board seats held by females at non-California corporations in the long-run as more females build experience serving on boards in California, potentially widening and deepening the pool of female board candidates qualified to serve on boards of non-California corporations;

- A shortage of female board candidates who fit the qualifications desired by some California corporations, which may result in such a corporation paying a fine authorized by this bill, rather than comply with the mandate;

- In order to reduce the amount of fines authorized by this bill, corporations may decrease the cash compensation paid to directors and increase noncash forms of compensation.

- Publicly held corporations may move their principal offices from California to another state to avoid compliance with the law; however, it may be more costly to move their principal offices than to pay the fines authorized by this bill.

- The most qualified female board candidates serving simultaneously on three or more boards, which may negatively impact such a candidate's effectiveness on a given board.

5) CONCERNS RELATED TO CONSTITUTIONALITY WILL BE ADDRESSED BY ASSEMBLY JUDICIARY COMMITTEE

Opponents argue that provisions of this bill violate both the California and U.S. Constitutions. This bill is double-referred to this committee and the Assembly Judiciary Committee. Constitutional issues and related case law that apply to this bill will be discussed in the analysis written by the Assembly Judiciary Committee, if this bill passes the Assembly Banking Committee.

**REGISTERED SUPPORT / OPPOSITION:**

**Support**

National Association of Women Business Owners –California (source)
Alliance of Chief Executives
Anvaya Solutions
Barnard-Bahn Consulting & Coaching
Berkhemer Clayton, Inc.
Burleson Consulting
Chelette Enterprises
Consumer Attorneys of California
CR&A Custom
DG Consulting
DLC Consulting Services
Dr. Sandra's Sanctuary
Fraser Communications
Frieda's Specialty Produce
Garcia Realty
Hiland Consulting
Hispanas Organized For Political Equality (Hope)
Hollifield Creative
Hunter Hawk Inc.
Impact Sciences
Legislative Women's Caucus
Lentini Design & Marketing
NAWBO Los Angeles
NAWBO Ventura County
Posh Baban
Rose Policy Solutions
Schaub Insurance Agency
Small Business California
Sunrun
Toni's Kitchen
50 private individuals (female executives)

**Opposition**

Biocom
Brea Chamber of Commerce
California Ambulance Association
California Association of Winegrape Growers
California Business Properties Association
California Chamber of Commerce
California Grocers Association
California Manufacturers and Technology Association
California Restaurant Association
California Trucking Association
Camarillo Chamber of Commerce

Cerritos Chamber of Commerce
Construction Employers' Association
Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce
Greater Riverside Chambers of Commerce
Lodi Chamber of Commerce
Long Beach Area Chamber of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
Simi Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Vacaville Chamber of Commerce
Wildomar Chamber of Commerce

**Analysis Prepared by:** Michael Burdick / B. & F. / (916) 319-3081

Exhibit 15

Date of Hearing:   June 26, 2018

ASSEMBLY  COMMITTEE  ON JUDICIARY
Mark Stone, Chair
SB 826 (Jackson and Atkins) – As Amended May 25, 2018

**SENATE VOTE**: 22-11

**SUBJECT**:  CORPORATIONS: BOARDS OF DIRECTORS

**KEY ISSUES**:

1)  SHOULD A CORPORATION HEADQUARTERED  IN CALIFORNIA HAVE AT LEAST
    ONE WOMAN ON ITS BOARD BY DECEMBER  31, 2019, AND HAVE BETWEEN
    ONE AND THREE WOMEN, DEPENDING  UPON THE SIZE OF THE BOARD, BY
    DECEMBER  31, 2021?

2)  SHOULD THE SECRETARY  OF STATE PUBLISH REPORTS  DISCLOSING
    INFORMATION ABOUT THE NUMBER OF CORPORATIONS SUBJECT  TO THE
    PROVISIONS OF THIS BILL  AND THE EXTENT TO WHICH THEY ARE IN
    COMPLIANCE?

**SYNOPSIS**

*This bill would require all corporations that have headquarters in this state to have at least one
woman on their board of directors by the end of 2019, and to have between one and three women
on the board, depending upon the size of the board, by the end of 2021.  This bill is a follow up
to the author's SCR 62 (Res. Chap. 127, Stats. 2013) which urged corporations to diversify their
corporate boards by increasing the number of women over a three-year period from January
2014 to December 2016.  The minimum numbers urged in SCR 62 are similar to the numbers
required by this bill.  The aspirational goals of SCR 62 apparently went unrealized.  Therefore,
this bill would require corporations to place women on their boards of directors or face fines
developed and administered by the Secretary of State.  The bill would also require the Secretary
of State to post information on its Internet Web site disclosing the number of corporations
subject to the provisions of this bill and extent to which they are in compliance.  According to the
author and sponsor, women remain grossly under-represented on corporate boards, even though
many studies demonstrate that corporations that have a certain threshold of female board
members perform better than companies with all-male boards.  As noted in the analysis, this bill,
while certainly laudable and well-intended, raises considerable constitutional questions as well
as more practical questions of implementation.  The bill is supported by a broad coalition of
women's groups and is sponsored by the California Chapter of the National Association of
Women Business Owners (NAWBO).  The bill is opposed by several business groups,
spearheaded by the California Chamber of Commerce.  The bill will be heard by the Assembly
Banking & Finance Committee the day before it is heard in this Committee.*

**SUMMARY:** Requires that publicly held companies have at least one woman on their board of
directors by December 31, 2019 with increasing  numbers required, depending upon the size of
the board, by December 31, 2021. Specifically, **this bill**:

**SB 826**
Page 2

1) Requires that, by December 31, 2019, all publicly held domestic or foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California shall have a minimum of one female director on its board.

2) Requires that, by December 31, 2021, the number of female directors on the board for subject corporations shall be as follows:

   a) If the number of directors is six or more, a minimum of three female directors.

   b) If the number of directors is five, a minimum of two female directors.

   c) If the number of directors is four or fewer, a minimum of one female director.

3) Provides that a corporation may increase the number of directors on its board in order to comply with the required number of female directors.

4) Mandates that, no later than July 1, 2019, the Secretary of State shall publish a report on its Internet Web site documenting the number of domestic and foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California and who have at least one female director.

5) Requires that no later than March 1, 2020, and annually thereafter, the Secretary of State shall publish a report on its Internet Web site regarding, at a minimum, all of the following:

   a) The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.

   b) The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.

   c) The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

6) Authorizes the Secretary of State to adopt regulations to implement this section and permits specified fines for violations and provides that fines collected pursuant to this bill shall be available, upon appropriation by the Legislature, for use by the Secretary of State to offset the cost of administering this section.

7) Defines "female" as an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

8) Defines "publicly held corporation" to mean a corporation with outstanding shares listed on a major United States stock exchange.

9) Makes legislative findings and declarations related to the current state of women's representation on corporate boards of directors and the related benefits of such representation.

**EXISTING LAW**:

1) Provides that, unless otherwise specified, the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board and that the board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person. (Corportations Code Section 300 (a). All further references are to the Corporations Code unless otherwise stated.)

2) Specifies that at the annual shareholder meeting of a corporation, directors shall be elected to hold office until the next annual meeting. (Section 301 (a).)

3) Provides that a corporation may adopt provisions to split its board of directors in two or three classes to serve for terms of three years respectively, or to eliminate cumulative voting, or both. (Section 301.5 (a).)

4) Defines a "listed corporation" as one with outstanding shares listed on the New York Stock Exchange, the NYSE Amex, the NASDAQ Global Marker, or the NASDAQ Capital Market. (Section 301.5 (d).)

5) Allows a board to declare vacant the office of a director who has been declared of unsound mind by order of a court or who is convicted of a felony. (Section 302.)

6) Provides that shareholders may elect a director at any time to fill any vacancy not filled by the directors, through a majority vote of the outstanding shares entitled to vote, unless the vacancy was created by removal, then a unanimous consent vote is required. (Section 305 (b).)

7) Tasks the Secretary of State to develop and maintain a registry of distinguished women and minorities who are available to serve on corporate boards of directors and specifies "minority" to mean an ethnic person of color including American Indians, Asians (including, but not limited to, Chinese, Japanese, Koreans, Pacific Islanders, Samoans, and Southeast Asians), Blacks, Filipinos, and Hispanics. (Section 318 (a).)

8) Requires that at least once in each three-year period during which the registry is available for corporate use, the Secretary of State, in consultation with the Senate Commission on Corporate Governance, Shareholder Rights, and Securities Transactions, shall report to the Legislature on the extent to which the registry has helped women and minorities progress toward achieving parity in corporate board appointments or elections. (Section 318 (s).)

9) Provides, through the United States Constitution, that no State shall deny any person within its jurisdiction the equal protection of the laws. (U.S. Const., art. XIV, Section 1.)

10) Prohibits under the California State Constitution that a person may not be denied equal protection of the laws. (Cal. Const., art. I, Section 7 (a).)

**FISCAL EFFECT**: As currently in print this bill is keyed fiscal.

**COMMENTS**: According to the author, SB 826 will ensure "a greater role for women in corporate boardrooms and would make California the first in the nation to require the proactive change needed to fully realize gender equality throughout society."

*Stunted Progress:* As noted in the legislative findings and declarations for this measure, women in the U.S. are underrepresented on corporate boards of directors.  The dearth of women in the board room mirrors a larger pattern of gender inequity in leadership roles across the private and public sectors.  A 2017 report from the Center for American Progress notes that "the United States ranks first in women's educational attainment on the World Economic Forum's 2016 Global Gender Gap Index of 144 countries.  But it it ranks 26th in women's economic participation and opportunity and 73rd in women's political empowerment."  (Judith Warner and Danielle Corley, The Women's Leadership Gap, Center for American Progress (May 21, 2017) (www.americanprogress.org/issues/women/reports/2017/05/21/432758/womens-leadership-gap).)

In terms of women's lack of representation in private sector leadership roles, according to a 2015 news article, there are more men named "John" than there are women amongst CEOs of S&P 1500 companies.  (Justin Wolfers, *Fewer Women Run Big Companies than Men Named John,* New York Times (March 2, 2015) (https://www.nytimes.com/2015/03/01/upshot/fewer-women-run-big-companies-than-men-named-john.html).)  Likewise, in the political sphere women are greatly outnumbered by men – out of the 120 California State legislators who started the 2017-2018 legislative session, only 22 percent were women. (Matt Levin, *California legislators: just like you?,* CALmatters (January 6, 2017) (https://calmatters.org/articles/new-california-legislators-just-like-you).)

While there are many policies that could be used to advance the representation of women in leadership roles, this measure takes the approach of setting requirements for the number of women who sit on corporate boards of directors for publicly traded companies.  Companies which do not comply with the requirement would be subject to a fine.

Yet another approach to promoting women's representation in corporate boards can be seen in Section 318 of the Corporations Code. Under Section 318, the Secretary of State is tasked with maintaining a list of women and minority individuals who are available to serve on corporate boards of directors – with the logic that companies may use the registry in order to find diverse candidates for boards. While that statute mandates that a report should be issued every three years that the registry is in existence to document the extent to which the registry has led to greater representation of women and minorities on boards, no such report appears to have been issued since the statute was enacted in 1995.

To understand the specific issue of women's representation on corporate boards in California, the National Association of Women Business Owners (NAWBO) California writes in support of the measure:

> You probably will be quite surprised to know that one-fourth of California's public companies still have NO women directors.  And that California companies average only 15.5% women directors, lagging behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%.

> As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of 3,645 corporate directors, but only 565 of those seats are held by women, compared to 3,080 held by men.  Among the counties in the state: Los Angeles, Orange County and San Diego Counties have the lowers percent of women directors (12%). Silicon Valley (Santa Clara County), which has been historically low, has 16%. And San Francisco County has the highest at 21%.

***Outcomes related to more equitable gender representation on corporate boards.*** Numerous studies have looked at the association between women's representation on corporate boards and the performance of firms. In particular, research cited in the legislative findings and declarations for this measure has shown that companies with a greater share of women serving on the board of directors tend to have higher profits and take fewer risks. While these studies establish a relationship between the proportion of women on corporate boards and these outcomes, it is important to note that such studies are observational in nature and do not necessarily provide evidence for a causal relationship. In other words, while company profits tend to go up when women are better represented on the board, it is possible that factors other than women's representation on the board could also explain variability in corporate performance measures. For example, corporations which are likely to elect women to the board of directors may also have more effective management personnel or better customer service – both of which could plausibly explain the increased performance of these companies.

***Problems of implementation and the "internal affairs" doctrine.*** As suggested above, there are many strong policy arguments for increasing the number of women who sit on corporate boards of directors. Given the strides that women have made in professions like medicine and law – in 2016 the *New York Times* reported that for the first time women made up over 50 percent of first year law students– they remain conspicuously and grossly underrepresented in corporate board rooms. This bill provides a seemingly straightforward solution: require by law that corporate boards have a minimum number of women. The author believes that this could be done easily and without displacing any male board members. If a company needed to, it could simply create additional seats in order to meet the minimum requirements.

Unfortunately, the manner in which boards are elected or appointed are determined by the laws of the state of incorporation and by corporate by-laws, which in turn must be consistent with the laws of the state of incorporation. Although the method varies according to state laws and corporate by-laws, as a general rule directors are elected to the board by shareholders. Clearly, California law cannot dictate how individual shareholders must vote. While this analysis, like those prepared for this bill by prior committees, cites provisions of California's Corporations Code governing the election, appointment, and replacement of board members, these statutes are only relevant for corporations that are *incorporated* in California. As for companies incorporated in other states – which would most likely be the vast majority of publicly-traded companies headquartered in California – the election, appointment, and replacement of board members will be governed by the laws of those states. Whatever the state of incorporation, however, the author correctly points out that, at least initially, a corporation could comply with the bill by adding another seat. However, this may require a change in the corporate by-laws, which most likely will require a vote of the shareholders. At some point – again depending on the laws in the state of incorporation and the particular provisions of the corporate by-laws – the newly-created seat will be up for re-election. In order to ensure compliance, the board would need to place only female candidates before voting shareholders, which would mean that the nominating process could only consist of female candidates. This is not to say that by-laws could not be changed and future elections could not be structured in ways that would ensure a minimum number of female board members; it is merely to suggest that compliance will not be a simple matter of adding another seat to the board.

Another question raised by opponents concerns the extent to which California can dictate the internal affairs of companies incorporated in another state. To be sure, California's police powers allow it to regulate any business that operates within its borders, regardless of where the

**SB 826**
Page 6

business is incorporated.  If this were not the case, the state's labor laws, health and safety codes, business regulations, anti-discrimination laws, and more, would not apply to most of the publicly-traded companies that operate within in the state, since most are incorporated elsewhere. However, those laws regulate the activities of those corporations while operating within the state; they do not regulate what the courts refer to as the "internal affairs" of the corporation. According to the "internal affairs doctrine," those matters are regulated by the laws of the state of incorporation.

As described by the United States Supreme Court, the "internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands."  (*Edgar v. MITE Corp.* (1982) 457 U.S. 624, citing *Havlicek v. Coast-to-Coast Analytical Services, Inc.* (1995) 39 Cal.App.4th 1844; *see also Atherton v. FDIC* (1997) 519 U.S. 213, 224 (holding that states normally look to the state of incorporation for the law that provides the relevant corporate governance general standard of care).)  California is said to have codified this doctrine in Corporations Code Section 2116. However, this rule is apparently not absolute.  For example, the *Witkin* treatise notes that the internal affairs doctrine is sometimes ignored where, despite foreign [i.e. another state] incorporation, a business's books, records and principal operations are located in California. (Witkin, *Summary of Cal. Law*, Corporations, Section 239, p. 1006; quoted in *Vaughn v. LJ Ineternat* (2009) 174 Cal.App.4th 213).)  Whether or not a court would find that this bill violates the internal affairs doctrine is open to question, but it is reasonable to assume that were this bill to become law it could be challenged under that doctrine.

***Constitutional questions: equal protection.***  Because this bill creates an express gender classification, it would be subjected to heightened scrutiny under the equal protection clause of the 14th Amendment of the U.S. Constitution and Article I, Section 7 of the California Constitution.  Because all government classifications "discriminate" (that is, draw distinctions) between persons or groups of persons in some way, they create a potential equal protection problem.  Government classifications, therefore, must be justified by some sufficient government interest.  Most classifications, such as those based on age or type of business enterprise, are subject to a "rational basis test," meaning that the classification only needs to serve a "legitimate" government purpose and the means used to achieve that purpose must be "reasonably related" to that purpose.  The rational basis test is highly deferential, and the courts will generally uphold the classification so long as it is not completely arbitrary.

However, some statutory classifications are deemed "suspect" – most notably race and gender – and are therefore subject to heightened scrutiny.  Under federal law, racial classifications are subject to "strict scrutiny," meaning that the classification is only justified by a "compelling government interest" and the means used to achieve that interest must be "narrowly tailored," meaning that they must be the "least restrictive" or "least discriminatory" means of achieving the interest.  Beginning in the 1970s the U.S. Supreme Court began to subject gender classifications to heightened scrutiny, though it turned out to be something less than the "strict scrutiny" applied to racial classifications.  By 1976 the Court and commentators had labeled this new level "intermediate scrutiny."  Under this test, the government must justify the classification by showing an "important" government interest (rather than "compelling") that is "substantially related" (rather than "narrowly tailored") to that interest.  (*Craig v. Boren* (1976) 429 U.S. 190, 197.)  In *United States v. Virginia* (1996) 581 U.S. 515, Justice Ginsburg seemingly raised the

test for gender discrimination by requiring an "exceedingly persuasive justification," which presumably lies somewhere between "compelling" and "important." The California courts, perhaps wisely, reject the federal race-gender distinction and apply "strict scrutiny" to classifications based on race or sex, as well as sexual orientation, on the theory that all are "immutable" characteristics that are not chosen and cannot be easily changed. (*In Re Marriage Cases* (2008) 43 Cal. 4th 757.) Therefore, whether the gender classification in this bill is subject to strict or intermediate scrutiny may depend upon whether a challenge is filed in state or federal court.

***Gender classifications that benefit women***. Many of the earliest equal protection cases considering gender classification involved laws that limited or restricted women's activities or, to the extent they "benefitted" women – such as protective labor laws or exemptions from civic duties like jury service – were based on stereotypes about women's "natural" domestic roles, physical weakness, or forced economic dependence upon men. (*See, e.g., Bradwell v. Illinois* (1873) 83 U.S. 130, upholding a state law that prohibited women from practicing law on the grounds that a woman's "paramount destiny" was to be a "wife and mother"; *Muller v Oregon* (1908) 208 U.S. 412, upholding a state maximum hours law for women; *Hoyt Florida* (1961) 368 U.S. 57, upholding a state law exempting women from jury service.)

In more recent decades, equal protection cases involving gender and racial classification have involved affirmative action programs that have sought to promote gender and racial diversity or remedy past discrimination. For example: Can public universities use "quotas" or race as a "factor" in the admissions process in order to diversify their student body? Can state or local governments set aside a certain number of contracts for women-owned or minority-owned businesses, or otherwise favor women or minorities in the public employment or public contracting? On the first question, the prevailing view of the courts is still the *Bakke* rule that using race as a "factor" to reap the benefits of diversity is permissible, but using a "quota," or anything like it, is not a narrowly tailored means. (*Regents of University of California v. Bakke* (1978) 438 U.S. 265; *Grutter v Bollinger* (2003) 539 U.S. 306; *Gratz v Bollinger* (2003) 539 U.S. 244.) On the second question, courts have looked askance at contractual "set asides" for women and minorities, and in California the use of race and gender as a factor in public education, public employment, and public contracting was prohibited by Proposition 209. (*City of Richmond v J.A. Croson* (1989) 488 U.S. 469.) However, this bill differs from the affirmative action decisions because those programs usually involved government imposing the classification on *itself* – that is, in public agencies or institutions. This bill, however, would create what is essentially a quota system for *private* corporate boards. Should this bill be challenged, the State would confront a difficult challenge in showing a compelling *government* interest in requiring a gender-based quota system for a *private* corporation.

***Classification, the meaning of "discrimination," and remedying past wrongs***. Critics of the courts' treatment of laws that benefit women and minorities as forms of "discrimination" demanding heightened scrutiny persuasively argue that there is a fundamental moral and political difference between discriminatory laws that seek to exclude groups of people (such as laws prohibiting women from the legal profession or racial segregation laws) on the one hand, and, on the other hand, "benign" classifications that seek to redress past discrimination by making the centers of economic and political privilege more accessible to those who have been historically excluded. (*See, e.g.,* Richard Lempert, "The Force of Irony: On the Morality of Affirmative Action and United Steelworks v. Weber," 95 *Ethics* 86-89 (1984); John Hart Ely, "The Constitutionality of Reverse Racial Discrimination," 41 *U. Chi. L. Rev* 723 (1974).) In the

courts, this debate has often taken the form of whether "strict scrutiny" should apply to affirmative action programs that attempt to address historically-based inequality. For example, in *Gratz v. Bollinger* (2003) 539 U.S. 244, the U.S. Supreme Court invalidated a race-based preference at the University of Michigan graduate program. In her dissenting opinion, however, Justice Ginsburg criticized the Court's equal protection jurisprudence for failing to appreciate that the court began applying "strict scrutiny" to racial classifications not because race is an inherently "suspect" category, but because historically racial classifications were always drawn for maintaining racial inequality. Ginsburg wrote that, "Where race is considered for 'the purpose of achieving equality,' no automatic proscription is in order." (*Id.* at 301, quoting from *Norwalk C.O.R.E. v. Norwalk Redevelopment Agency* (1968) 395 F. 2d 921.) Notwithstanding Justice Ginsburg's dissent, the Court majority continues to maintain that all suspect classifications are subject to heightened scrutiny whether they are benign or not, since one person's "benign discrimination" is another person's "reverse discrimination."

Closely related to the question of the appropriate level of scrutiny for benign discrimination is the extent to which remedying past discrimination is a sufficiently compelling or important justification for affirmative action or, in the case of this bill, whether laws that benefit women can be justified as a remedy to past discrimination and differences in opportunity. While the courts have held that in certain cases remedying past discrimination may be a valid justification for both race and gender classifications, they have generally construed this very narrowly. That is, the courts have generally not accepted broad assertions of generalized discrimination that permeate society at large; rather, race- or gender-conscious preferences are only justified, if at all, where they address specific examples of discrimination in specific industries or government institutions. (*See e.g.* Erwin Chemerinsky, *Constitutional Law: Principles and Policies,* 3d ed., pp. 760-765.) To defend the constitutionality of this bill, it would not appear to be enough to simply cite statistics showing that women are grossly underrepresented on corporate boards. The defenders of the bill would most likely need to show specific evidence of discriminatory behavior, rather than simply inferring discrimination from the disproportionate numbers. Nonetheless, because courts have held in some cases that past discrimination and differences in opportunity, when demonstrated with specificity, can justify gender classification, this may be a potentially promising strategy for supporters of this measure.

As the discussion above suggests, SB 826 would likely be challenged on equal protection grounds and the means that the bill uses, which is essentially a quota, could be difficult to defend. But if governments refrained from enacting laws because of the possibility that such laws might be deemed unconstitutional, constitutional law would never change because there would be no laws that tested constitutional boundaries or challenged constitutional orthodoxies. Constitutional traditionalists might favor this timid approach because they believe that those boundaries were fixed in 1787 (or 1868 for the 14th Amendment) and should not be changed absent a constitutional amendment. However, the author does not appear to be a constitutional traditionalist.

***ARGUMENTS IN SUPPORT:*** According to the author: "California women make up 52 percent of the state's population, but only about 28 percent of the directors of our public corporations. So, roughly 70 percent of the state's corporations are operating without the benefit of the experience, perspective and tools that women bring with them to the corporate setting. Research clearly shows that boards with women members perform better in the marketplace. By having such low participation rates for women in California's corporate leadership ranks, we effectively inhibit our own economic performance as a state. Other nations have previously acknowledged

the financial benefits and require a percentage of board membership to be female – thus representing the experience, expertise and wisdom of half of the population. Senate Bill 826 takes the first step towards closing this gender gap. SB 826 increases gender diversity on corporate boards by requiring each publicly-held corporation headquartered in California to have at least one woman on its board of directors by the end of 2019. Further, beginning in July 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with six or more directors."

The National Association of Women Business Owners (NAWBO) California – the sponsor of SB 826 – argues that "California is the 5[th] largest economy in the world and should set an example globally for enlightened business practice." Therefore, NAWBO believes, "California has a responsibility to ensure that women are included in the board discussions and decisions that affect corporate actions and profitably." NAWBO claims that "research shows that corporations with female directors outperform companies that don't have women on the boards. Yet one-fourth of California's public companies still have no women directors. "

*ARGUMENTS IN OPPOSITION:* The California Chamber of Commerce and several other business groups oppose this bill. They make three central arguments.

First, opponents argue that SB 826 is flawed because it considers "only one element of diversity." The opposition writes: "Gender is an important aspect of diversity, as are the other protected classifications recognized under our laws. We are concerned that the mandate under SB 826 that focuses only on gender potentially elevates it as a priority over other aspects of diversity. Many of our companies are making significant efforts to address and improve diversity in the workforce by focusing on their hiring practices, training promotion, retention, etc. Our companies are not focused on only one particular classification, but rather all classifications. We believe this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity." [It is not clear that the opposition would support a measure that required racial and ethnic diversity, as well as gender diversity.]

Second, the opposition argues that SB 826 violates the U.S. Constitution, the California Constitution, and civil rights law by subjecting corporations to civil penalties if they fail to achieve the phased-in, but mandatory requirement to have a minimum number of female directors by the dates set forth in the bill. Opponents believe that this will require them to discriminate against males who wish to serve on corporate boards. While the author contends that corporations could meet the requirements of this bill by simply adding another seat to the board, and thereby avoiding the need to displace a male member, opponents point out that where there are two qualified candidates for an open board seat, one female and one male, if the open seat must be filled by a female to maintain the minimum number, then the company would be required to select the female candidate and reject the male candidate. Also, opponents point out that if shareholders do not approve an additional seat on the board, the company would have no choice but to replace a male board member with a female board member, or pay a fine. The opponents believe that in making these decisions, the company would be liable for violating the Unruh Civil Rights Act.

Finally, opponents argue that this bill conflicts with Corporations Code Section 2116 and the internal affairs doctrine which holds that the internal affairs of a corporation should be governed by the state law in which the company is incorporated.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

National Association of Women Business Owners – California (sponsor)
Alliance of Chief Executives
Anvaya Solutions
Barnard-Bahn Consulting & Coaching
Berkhemer Clayton, Inc.
Burleson Consulting
Chelette Enterprises
Consumer Attorneys of California
CR&A Custom
DG Consulting
DLC Consulting Services
Dr. Sandra's Sanctuary
Fraser Communications
Frieda's Specialty Produce
Garcia Realty
Hiland Consulting
Hispanas Organized For Political Equality (Hope)
Hollifield Creative
Hunter Hawk Inc.
Impact Sciences
Legislative Women's Caucus
Lentini Design & Marketing
Loza and Loza
NAWBO Los Angeles
NAWBO Ventura County
Plan the World
Posh Baban
Rose Policy Solutions
Sagent
Schaub Insurance Agency
Small Business California
Sunrun
Toni's Kitchen
Unisource
Several private individuals

**Opposition**

Brea Chamber of Commerce
California Ambulance Association
California Association of Winegrape Growers
California Business Properties Association
California Chamber of Commerce
California Grocers Association
California Manufacturers and Technology Association

California  Restaurant  Association
California  Trucking  Association
Camarillo  Chamber  of Commerce
Cerritos  Chamber  of Commerce
Garden Grove Chamber of Commerce
Gateway  Chambers  Alliance
Greater Coachella  Valley  Chamber  of Commerce
Greater Riverside  Chambers  of Commerce
Murrieta  Chamber  of Commerce
North Orange  County  Chamber
Official  Police  Garages  of Los  Angeles
Personal Insurance  Federation  of California
Rancho  Cordova Chamber  of Commerce
Redondo  Beach Chamber  of Commerce
Santa Maria Valley  Chamber  of Commerce
South Bay Association  of Chambers  of Commerce
Wildomar  Chamber  of Commerce

**Analysis  Prepared  by**:  Thomas  Clark  and  Sandra  Nakagawa  /  JUD.  /  (916)  319-2334

Exhibit 16

Date of Hearing:  August  8, 2018

ASSEMBLY  COMMITTEE  ON  APPROPRIATIONS
Lorena  Gonzalez  Fletcher,  Chair
SB 826 (Jackson) – As Amended  May 25, 2018

| Policy  Committee: | Banking  and Finance | Vote: | 8 - 0 |
|---|---|---|---|
|  | Judiciary |  | 7 - 1 |

Urgency:  No          State Mandated Local Program:  No          Reimbursable:  No

**SUMMARY**:

This bill requires each publicly  held corporation whose principal  executive  offices are located in California  (corporation) to have a minimum  number of females  on its board of directors. Specifically,  this bill:

1) Requires,  by December  31, 2019, a corporation to have at least one female  director  on its board and, by December  31, 2021, at least three female  directors on a board with six directors,  at least two female  directors on a board with five  directors,  and at least one female director  on a board with  four or fewer directors.

2) Authorizes  the Secretary of State (SOS) to impose  specified  fines for violations  and adopt regulations  to implement  this bill's provisions.

3) Requires,  by July 1, 2019, SOS to post an online  report documenting  the number of corporations  covered  by this bill with at least one female  director  and, by March 1, 2020, and annually  thereafter,  a report with specified  data related to compliance  with this bill's requirements.

**FISCAL  EFFECT**:

1) Ongoing  General  Fund costs of approximately  $500,000 each year for the SOS to develop regulations,  investigate  claims,  and enforce  the violations  of this bill's provisions.

2) Unknown  additional  costs for SOS related to production  of the annual  report, including  the collection  of required  data and determining  headquarter  addresses.

**COMMENTS**:

1) **Background.** Women are significantly  underrepresented  on corporate boards of directors relative  to their share of the population  and share of the workforce. A 2017 Pew Research Center report found that women comprised  47% of the labor force in 2015 but only 16% of board seats. Moreover,  women hold less than 4% of chief executive  officer  (CEO) positions in the largest  3,400 companies  worldwide.

2) **Purpose**. According  to the bill's  sponsor the National Association  of Women Business Owners California,  SB 826 will take a first step towards closing  the gender gap on corporate boards and help improve  California's  economic  performance.

3) **Enforcement costs**. A key cost driver for SB 826 is the lack of easily retrievable data on the makeup of corporate boards or a way for SOS to quickly identify corporations for which the bill's provisions apply. The SEC 10-K form – which allows the SOS to identify corporations with principal executive offices located in California – does not provide demographic information about directors, nor are companies operating in California required to submit the form to SOS. As a result, any adequate enforcement of this bill's provisions will require staff to manually review SEC 10-K forms and conduct follow-up investigations about board composition, as needed.

4) **Related legislation**. SB 984 (Skinner), of the 2017-18 Legislative Session, requires a minimum percentage or number of women to serve on each state board or commission beginning on January 1, 2024. SB 984 is also being heard today in this committee.

**Analysis Prepared by**: Luke Reidenbach / APPR. / (916) 319-2081

Exhibit 17

SENATE THIRD READING
SB 826 (Jackson and Atkins)
As Amended  August  20, 2018
Majority  vote

SENATE VOTE:  22-11

| Committee | Votes | Ayes | Noes |
|---|---|---|---|
| **Banking** | 8-0 | Limón,  Burke, Gloria,  Gabriel, Gonzalez Fletcher, Grayson, Mark Stone, Weber | |
| **Judiciary** | 7-1 | Mark Stone, Chau, Chiu, Holden, Kalra, Reyes, Gabriel | Kiley |
| **Appropriations** | 12-0 | Gonzalez Fletcher,  Bloom, Bonta, Calderon, Carrillo, Chau, Eggman,  Friedman, Eduardo Garcia, Nazarian, Quirk, Reyes | |

**SUMMARY**: Requires each publicly  held corporation  whose principal  executive  offices  are located in California  to have a minimum  number of females  on its board of directors.

Specifically,  **this bill**:

1) Defines  "female" as an individual  who self-identifies  her gender as a woman, without  regard to the individual's  designated  sex at birth.

2) Defines  "publicly  held corporation"  as a corporation  with  outstanding  shares listed on a major United  States stock exchange.

3) By the end of calendar year 2019, requires  each publicly  held corporation  whose principal executive  offices  are located in California  to have a minimum  of one female  director on its board.

4) By the end of calendar year 2021, requires  each publicly  held corporation  whose principal executive  offices  are located in California  to comply  with  the following:

   a) If its number of directors  is six or more, the corporation  shall  have a minimum  of three female  directors.

   b) If its number of directors  is five, the corporation  shall  have a minimum  of two female directors.

   c) If its number of directors  is four or fewer, the corporation  shall  have a minimum  of one female  director.

5) Requires  the Secretary of State to report on corporations  subject to the requirements summarized  in 3) and 4), above and those corporations'  compliance  with  the requirements.

6) Authorizes the Secretary of State to impose fines of $100,000 for the first violation and $300,000 for subsequent violations of the requirements in #3 and #4, and a fine of $100,000 for failure to timely file board member information with the Secretary of State.

7) Makes findings and declarations regarding the underrepresentation of women on corporate boards of directors and the benefits of more equitable representation of women on corporate boards.

**FISCAL EFFECT**: According to the Assembly Appropriations Committee,

1) Ongoing General Fund costs of approximately $500,000 each year for the Secretary of State (SOS) to develop regulations, investigate claims, and enforce the violations of this bill's provisions.

2) Unknown additional costs for SOS related to production of the annual report, including the collection of required data and determining headquarter addresses.

**COMMENTS**:

1) PURPOSE

This bill is sponsored by the National Association of Women Business Owners California (NAWBO-CA). The author states:

*California women make up 52 percent of the state's population, but only about 28 percent of the directors of our public corporations...Research clearly shows that boards with women members perform better in the marketplace. By having such low participation rates for women in California's corporate leadership ranks, we effectively inhibit our own economic performance as a state. Senate Bill 826 takes the first step towards closing this gender gap.*

2) BACKGROUND

Women are significantly underrepresented on corporate boards of directors, relative to women's share of the population and share of the workforce. According to Pew Research Center, women comprised a 47% share of the labor force in 2015. Yet, only 16% of board seats are held by women.[1] The board of directors has the responsibility of hiring the company's chief executive officers (CEOs), and the gender disparity on boards may be a contributing factor to the even larger gender disparity at the CEO level – women hold less than 4% of CEO positions in the largest 3,400 companies worldwide.[2]

In 2013, the author and sponsor of this bill worked to pass SCR 62 (Jackson), Resolution Chapter 127, Statutes of 2013, which encouraged equitable and diverse gender representation on corporate boards. SCR 62 urged public companies in California to have a minimum

---

[1]
https://static1.squarespace.com/static/56e8489162cd944a6424f542/t/5a3215a40d9297f7991e7582/1513231783352/California+Women+on+Boards+2017+Report.pdf
[2] http://publications.credit-suisse.com/tasks/render/file/index.cfm?fileid=5A7755E1-EFDD-1973-A0B5C54AFF3FB0AE

number of director seats held by women, based on the size of the companies' boards, by December 2016. Fewer than 20% of corporations complied with the targets encouraged by the Legislature, so the author and sponsor introduced this bill to provide impetus for action in closing the gender gap on corporate boards.

3) BOARD MANDATES IN EUROPE

Ten years ago, Norway required publicly-traded companies to appoint women to at least 40% of their board seats. Subsequently, more than a dozen European countries established similar quotas with varying levels of enforceability. According to The Economist, these policies were met with concerns that few women would be spread thin between boards and that underqualified women would be appointed to boards.[3] Those fears have not been realized. The incidence of board members serving on three or more boards does not significantly differ between male and female directors. A study on Italy's quota showed that the population of female board members after the policy change was more qualified than before the policy change.

On the other hand, The Economist article suggests that the quotas have not been successful in generating additional benefits beyond more diverse boards. Empirical research has been inconclusive in showing positive benefits related to company performance, corporate decision-making, or beneficial effects on the representation of women in senior management.

4) RISK OF NEGATIVE UNINTENDED CONSEQUENCES UNCLEAR

If enacted into law, the requirements of this bill would likely result in a significant increase in demand for female board candidates by public corporations in California. This increase in demand may result in one or more of the following outcomes, some of which may be intended by the author and others which are likely not intended:

a) A change, possibly an increase or decrease, in the diversity of boards when measured on other aspects besides gender;

b) A decrease in board seats held by females at non-California corporations in the short-run as California corporations outbid non-California corporations for female directors;

c) An increase in board seats held by females at non-California corporations in the long-run as more females build experience serving on boards in California, potentially widening and deepening the pool of female board candidates qualified to serve on boards of non-California corporations;

d) A shortage of female board candidates who fit the qualifications desired by some California corporations, which may result in such a corporation paying a fine authorized by this bill, rather than complying with the mandate;

e) Publicly held corporations may move their principal offices from California to another state or choose not to locate in California in the first place to avoid compliance with the

---

[3] https://www.economist.com/business/2018/02/17/ten-years-on-from-norways-quota-for-women-on-corporate-boards

law; however, it may be more costly to move their principal offices than to pay the fines authorized by this bill.

## 5)  SIGNIFICANT RISK OF LEGAL CHALLENGES

As discussed in the Assembly Judiciary Committee analysis, this bill, if enacted into law, would likely be challenged on equal protection grounds. This bill creates an express gender classification, which subjects the proposed law to heightened scrutiny under the equal protection clause of the 14th Amendment of the United States Constitution and California Constitution Article 1, Section 7. The use of a quota-like system, as proposed by this bill, to remedy past discrimination and differences in opportunity may be difficult to defend.

In addition to equal protection concerns, this bill may conflict with the internal affairs doctrine. As described by the United States Supreme Court, the "internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands." California is said to have codified this doctrine in Corporations Code Section 2116. However, this rule is apparently not absolute. For example, the *Witkin* treatise notes that the internal affairs doctrine is sometimes ignored where, despite foreign [i.e. another state] incorporation, a business' books, records and principal operations are located in California. (Witkin, *Summary of Cal. Law*, Corporations, Section 239, p. 1006; quoted in *Vaughn v. LJ Ineternat* (2009) 174 Cal.App.4th 213).) Whether or not a court would find that this bill violates the internal affairs doctrine is open to question, but it is reasonable to assume that were this bill to become law it could be challenged under that doctrine.

**Analysis Prepared by**: Michael Burdick / B. & F. / (916) 319-3081          FN: 0004503

Exhibit 18

**SENATE RULES COMMITTEE**                                    SB 826
Office of Senate Floor Analyses
(916) 651-1520   Fax: (916) 327-4478

---

UNFINISHED BUSINESS

---

Bill No:    SB 826
Author:     Jackson (D) and Atkins (D), et al.
Amended:    8/20/18
Vote:       21

---

SENATE BANKING & F.I. COMMITTEE: 5-1, 4/18/18
AYES: Bradford, Galgiani, Hueso, Lara, Portantino
NOES: Vidak
NO VOTE RECORDED: Gaines

SENATE JUDICIARY COMMITTEE: 5-2, 4/24/18
AYES: Jackson, Hertzberg, Monning, Stern, Wieckowski
NOES: Moorlach, Anderson

SENATE APPROPRIATIONS COMMITTEE: 5-2, 5/25/18
AYES: Lara, Beall, Bradford, Hill, Wiener
NOES: Bates, Nielsen

SENATE FLOOR: 22-11, 5/31/18
AYES: Allen, Atkins, Beall, Bradford, De León, Dodd, Galgiani, Hernandez, Hill,
  Hueso, Jackson, Lara, Leyva, McGuire, Mitchell, Monning, Pan, Portantino,
  Roth, Skinner, Stern, Wiener
NOES: Anderson, Berryhill, Cannella, Gaines, Moorlach, Morrell, Nguyen,
  Nielsen, Stone, Vidak, Wilk
NO VOTE RECORDED: Bates, Fuller, Glazer, Hertzberg, Newman, Wieckowski

ASSEMBLY FLOOR: Not available

---

**SUBJECT:** Corporations: boards of directors

**SOURCE:** National Association of Women Business Owners – California

---

**DIGEST:** This bill requires each publicly held corporation whose principal

executive offices are located in California to have a minimum number of women on its board of directors, as specified. It further requires the Secretary of State (SOS) to review and issue reports regarding corporations' compliance with the bill's provisions and to impose fines for violations of the bill, as specified.

*Assembly Amendments* make minor changes to the bill's findings and declarations, add a fine for failing to timely file board member information with the SOS, modify the dollar amounts of the fines imposed for first and subsequent violations of the bill, and clarify that a female director that holds a board seat for at least a portion of the year shall not represent a violation of the bill.

## ANALYSIS:

Existing law:

1) Provides for the General Corporation Law (Corporations Code Section 100 et seq.). Defines a domestic corporation as a corporation formed under the laws of this state (Corporations Code Section 167).

2) Defines a foreign corporation as a corporation other than a domestic corporation (Corporations Code Section 171) but further provides that a foreign corporation, as used in Chapter 21 of the General Corporation Law, does not include a corporation chartered under the laws of the United States. Thus, for certain purposes, a foreign corporation is a corporation incorporated in another state, but for other purposes (specifically, for purposes of Chapter 21, which this bill proposes to amend), a foreign corporation is a corporation incorporated in another country.

3) Provides, pursuant to an extensive body of common law, that the board members of a corporation have a fiduciary duty to that corporation.

This bill:

1) Contains findings and declarations regarding the relative lack of women on corporate boards, the likelihood that this gender disparity will exist for at least the next forty to fifty years if proactive steps are not taken to achieve gender parity, and summarizes research which has found that adding women to corporate boards increases the effectiveness of those boards and the performance of those corporations.

2) Requires each publicly held, domestic or foreign corporation with its principal executive offices in California, according to the corporation's Securities and Exchange Commission 10-K form, to have at least one female director on its

board, commencing December 31, 2019.  Provides that if no board seat opens up on an all-male board before that date, a corporation must increase its authorized number of directors by one and must fill that seat with a woman.

3) Requires each publicly held, domestic or foreign corporation whose principal executive offices are located in California, and whose board contains more than four board members, to increase the number of female directors on its board, no later than the close of the 2021 calendar year, as follows:

   a) If the authorized number of directors is five, the corporation must have at least two female directors on its board.

   b) If the authorized number of directors is six or more, the corporation must have at least three female directors on its board.

4) Defines publicly held corporations as corporations with outstanding shares listed on a major United States stock exchange.

5) Defines female as an individual who self-identifies her gender as a woman, without regard to the individual's designated sex at birth.

6) Provides that its provisions apply to a publicly held, foreign corporation to the exclusion of the law of the jurisdiction in which that foreign corporation is incorporated.

7) Requires the SOS, no later than July 1, 2019, to publish a report on his or her Internet Web site, documenting the number of publicly held, domestic and foreign corporations whose principal executive offices are located in California, which have at least one female director on their boards.

8) Requires, further, the SOS, no later than March 1, 2020, and annually thereafter, to publish a report on his or her Internet Web site regarding all of the following, at a minimum:

   a) The number of corporations subject to the provisions of this bill, which were in compliance with the requirements of the bill during at least one point during the preceding calendar year.

   b) The number of publicly held corporations that moved their United States headquarters into California from another state, or that moved their United States headquarters out of California and into another state during the preceding calendar year.

c) The number of publicly held corporations that were subject to this bill during the preceding year, which were taken private.

9) Authorizes the SOS to fine corporations for violating the provisions of this bill and provides that the money derived from those fines shall be used to offset the SOS's cost to administer the bill, subject to appropriation by the Legislature. Counts as a violation each director seat, which is required to be held by a female by the end of a calendar year, and which is not held by a female during at least a portion of that calendar year. Sets the fines at $100,000 for a first violation, $300,000 for a second or subsequent violation, and $100,000 for failure to timely file board member information with the SOS.

## Background

This bill is sponsored by the National Association of Women Business Owners-California (NAWBO-CA) and is intended to promote equitable and diverse gender representation on every corporate board.

According to the author and sponsor, one-fourth of California's publicly held corporations have no female directors on their boards. Further, California's public corporations have fewer female directors than public corporations elsewhere in United States. The author notes that, in California, only 15.5% of board seats are held by women, relative to 16.5% of board seats held by women in Russell 3000 companies and 19.8% of board seats held by women in Fortune 1000 firms. According to Equilar, a company founded to help serve the needs of corporate boards, women currently account for 21.3% of S&P 500 board seats, a figure that has increased by five percentage points in the last five years.

In 2013, this bill's sponsor and author teamed up to advance SCR 62 (Jackson, Resolution Chapter 127), which urged every publicly held corporation in California to name women to their boards by December 31, 2016. SCR 62 urged companies with nine or more director seats to have at least three female board members, companies with five to eight director seats to have at least two female board members, and companies with fewer than five director seats to have at least one female board member. As of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of women directors called for in the resolution. Senator Jackson and NAWBO-CA are proposing SB 826 as a follow-up to SCR 62, in light of studies that predict it will take more than 40 years for the boards of directors of California's publicly traded businesses to achieve gender parity, absent proactive measures like this bill.

## Comments

There are currently 761 publicly traded companies headquartered in California, including 510 traded on NASDAQ, 216 traded on the NYSE, and 35 on AMEX (https://www.nasdaq.com/screening/companies-by-region.aspx?region=North+America&country=United+States&state=CA).  The vast majority of these companies are corporations and would thus be subject to this bill's provisions.

**FISCAL EFFECT:** Appropriation:  No   Fiscal Com.:  Yes   Local:  No

According to the Assembly Appropriations Committee, this bill will have ongoing General Fund costs of approximately $500,000 each year for the SOS to develop regulations, investigate claims, and enforce the violations of this bill's provisions and unknown additional costs for SOS related to production of the annual report, including the collection of required data and determining headquarter addresses.

**SUPPORT:** (Verified  5/24/18 – unable to reverify at time of writing)

National Association of Women Business Owners – California (source)
Alliance of Chief Executives
Anvaya Solutions
Barnard-Bahn Consulting & Coaching
Berkhemer Clayton, Inc.
Burleson Consulting
Chelette Enterprises
Consumer Attorneys of California
CR&A Custom
DG Consulting
DLC Consulting Services
Dr. Sandra's Sanctuary
Fraser Communications
Frieda's Specialty Produce
Garcia Realty
Hiland Consulting
Hollifield Creative
Hunter Hawk Inc.
Impact Sciences
Legislative Women's Caucus
Lentini Design & Marketing
NAWBO Los Angeles
NAWBO Ventura County

Posh Baban
Rose Policy Solutions
Schaub Insurance Agency
Small Business California
Sunrun
Toni's Kitchen
50 private individuals (female executives)

**OPPOSITION:** (Verified  5/24/18 – unable to reverify at time of writing)

Biocom
Brea Chamber of Commerce
California Ambulance Association
California Association of Winegrape Growers
California Business Properties Association
California Chamber of Commerce
California Grocers Association
California Manufacturers and Technology Association
California Restaurant Association
California Trucking Association
Camarillo Chamber of Commerce
Cerritos Chamber of Commerce
Construction Employers' Association
Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce
Greater Riverside Chambers of Commerce
Lodi Chamber of Commerce
Long Beach Area Chamber of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
Simi Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Vacaville Chamber of Commerce
Wildomar Chamber of Commerce

**ARGUMENTS IN SUPPORT:** The National Association of Women Business Owners-California, sponsor of this bill, writes, "California is the 5th largest economy in the world and should set an example globally for enlightened business practices. therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. Research shows that corporations with female directors outperform companies that don't have women on boards. Yet, one-fourth of California's public companies still have no women directors.

"California would lead the way as the first state in the union to have such a law. To become a corporate board member is serious business – and it's a serious business issue. Our state ranks No. 1 nationally in the number of women-owned firms, who provide 1.9 million jobs, and generate $318.2 Billion in annual revenues. Women business owners are CEOs who bring diversity of thought, represent the majority of consumer purchasing power, and understand supplier/vendor relationships. As directors, we would be role models for aspiring women leaders inside corporations."

**ARGUMENTS IN OPPOSITION:** A coalition of over two dozen business groups led by the California Chamber of Commerce opposes the bill on both policy and legal grounds. The coalition notes, "Gender is an important aspect of diversity, as are the other protected classifications recognized under our laws. We are concerned that the mandate under SB 826 that focuses only on gender potentially elevates it as a priority over other aspects of diversity. Many of our companies are making significant efforts to address and improve diversity in the workforce by focusing on their hiring practices, training promotion, retention, etc. Our companies are not focused on only one particular classification, but rather all classifications. We believe this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity."

The coalition also believes that SB 826 violates the equal protection clauses of the U.S. Constitution and the California Constitution, as well as the Unruh Civil Rights Law (Civil Code Section 51) and believes that the bill conflicts with Corporations Code Section 2116 (the internal affairs doctrine). "SB 826 seeks to manage the directors of publicly traded corporations that have their principal executive offices in California yet are incorporated in another state. The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California. Such confusion

SB 826
Page 8

and ambiguity will only lead to costly fines as proposed under the bill and potential litigation."

Prepared by: Eileen Newhall / B. & F.I. /
8/30/18 0:06:03

**\*\*\*\* END \*\*\*\***

# Exhibit 19

**BACKGROUND INFORMATION REQUEST**

**TO:**      **Bethany Renfree**
**FROM:**    **SENATE BANKING AND FINANCIAL INSTITUTIONS COMMITTEE**

**SUBJECT:   SB 826**

**DATE SENT: 1-17-2018**

This bill has been referred to the Senate Banking and Financial Institutions, Committee. Please e-mail or hand-carry the background information to the Committee, in Room 405 of the Capitol. Your bill will not be set for a hearing until the Committee has received **two** copies of the background information. Please call the Committee Assistant at 651-4102 if you have any questions about this request.

1.     **IN A FEW SENTENCES, DESCRIBE THE PURPOSE OF YOUR BILL.**

This bill promotes equitable and diverse gender representation on every corporate board by requiring every publicly-held corporation in California to have a minimum of one woman on its board of directors by the end of 2019. Beginning July 2021 would require a minimum of two women directors on boards with five independent directors and at least three women on boards with six or more independent directors.

2.     **WHAT PROBLEM(S) PROMPTED THE BILL? WHY IS THIS BILL NEEDED?**

One-fourth of California's publicly-held corporations have no women directors on their boards. California's public corporations have fewer women directors than the rest of the country, with only 15.5% of board seats held by women, lower than the Russell 3000 index nationally at 16.2%, and significantly lower than the Fortune 1000 list at 19.8%.

2

As of 2017, California has 445 companies in the Russell 3000 with a total of 3,645 corporate directors. Only 565 of these seats are held by women, compared to 3,080 held by men. Among the counties in the state, Los Angeles, Orange County and San Diego Counties have the lowest percentage of women directors (12%). Silicon Valley (Santa Clara County), which has been historically low, has 16%. San Francisco County has the highest at 21%.

Change has not happened organically through general pressure. In 2013, Senate Concurrent Resolution 62 (Jackson) was a first step, and five other states followed suit. Senate Concurrent Resolution 62, sponsored by the National Association of Women Business Owners (NAWBO), was an important resolution that encourages equitable and diverse gender representation on corporate boards of California's publicly held corporations.  The resolution specifically urges that every publicly held corporation in California:

- With nine or more director seats have a minimum of three women on its board.
- Boards with five to eight director seats should have a minimum of two women on its board, and
- boards with fewer than five director seats should have a minimum of one woman on its board

SCR 62 was about starting the conversation of women's roles in corporations and the lack of parity for women in the boardroom and why that is relevant and important in 21st Century society.

**According to NAWBO-CA,** more Women Directors serving on Boards of publicly held corporations will: --boost the California economy, --improve opportunities for women in the workplace, --and protect investments of California taxpayers, shareholders and retirees— including retired California state employees and teachers whose pensions are managed by CalPERS and CalSTRS. Yet studies predict it will take more than 40 years to achieve gender parity, if something is not done proactively. (b) In September 2013, the Senate Concurrent Resolution SCR 62 urged that by December 31, 2016, all public companies in California to increase numbers of women on their boards of directors ranging from one to three, depending upon the size of their boards. California was first in the U.S. to adopt such a resolution, followed by five other states that passed similar Resolutions urging more women directors on corporate boards in their states. However, as of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of female directors called for in the Resolution.

### 3.     HOW DOES YOUR BILL SOLVE OR ADDRESS THE PROBLEM(S) DESCRIBED IN NUMBER 2 ABOVE?  PLEASE BE AS SPECIFIC AS POSSIBLE.

**According to NAWBO-CA,** numerous independent studies have concluded that publicly-held companies perform better when women serve on their boards of directors: (1) A 2017 study by MSCI found that U.S. companies which began the five-year period from 2011-2016 with three or more female directors reported earnings per share which was 45% higher than those companies with no female directors at the beginning of the period. (2) In 2014, Credit Suisse found that companies with at least one woman on the board had an average Return on Equity (ROE) of 12.2 percent, compared to 10.1 percent for companies with no female directors. Additionally, the price-to-book value of these firms was greater for those with women on their boards: 2.4 times

the value in comparison to 1.8 times the value for zero-women boards. (3) A 2012 University of California Berkeley study called "Women Create a Sustainable Future" found that companies with more women on their boards are more likely to "create a sustainable future" by, among other things, instituting strong governance structures with a high level of transparency. (4) Credit Suisse conducted a six-year global research study from 2006 to 2012, with more than 2,000 companies worldwide, showing that women on boards improve business performance by key metrics, including stock performance. For companies with a market capitalization of more than $10 billion, those with women directors on boards outperformed shares of comparable businesses with all-male boards by 26 percent; (5) The Credit Suisse report included: (i) there has been a greater correlation between stock performance and the presence of women on a board since the financial crisis in 2008, (ii) companies with women on their boards of directors significantly outperformed others when the recession occurred, (iii) companies with women on their boards tend to be somewhat risk averse and carry less debt, on average, and (iv) net income growth for companies with women on their boards averaged 14 percent over a six-year period, compared with 10 percent for companies with no women directors.

4.   **DESCRIBE EXISTING LAW RELEVANT TO THE ISSUE(S) ADDRESSED BY THE BILL, CITING SPECIFIC CODE SECTIONS.**

Corporations Code §300 provides that the business and affairs of a California corporation shall be managed and all corporate powers shall be exercised by or under the direction of a board of directors; vests the board with specified powers and duties; and sets forth the procedures for appointing, electing, and removing board members.

5.   HAS A **SIMILAR BILL** BEEN INTRODUCED EITHER THIS SESSION OR DURING A PREVIOUS LEGISLATIVE SESSION? _____ IF YES, PLEASE IDENTIFY THE BILL, THE LEGISLATIVE SESSION, AND THE BILL'S DISPOSITION, AND INCLUDE ANY BILL ANALYSES RELATED TO THE PRIOR LEGISLATION.

SCR 62 - Corporations: boards of directors: representation: women. Chaptered by Secretary of State. Res. Chapter 127, Statutes of 2013. SCR 62 in 2013 was the first step. If California enacted SB 826, we would be the first in the nation to enact such a law.

Other countries have addressed the lack of gender diversity on corporate boards by instituting quotas mandating 30% to 40% seats to be held by women directors. Germany is the largest economy to mandate a quota requiring that 30% of public company board seats be held by women. In 2003, Norway was the first country to legislate a mandatory 40% quota for female representation on corporate boards. Since then, other European nations that have legislated similar quotas include France, Spain, Iceland and the Netherlands.

6.   HAS THERE BEEN AN **INTERIM COMMITTEE HEARING/REPORT** ON THE BILL OR ON THE TOPIC OF THE BILL? _____ IF YES, PLEASE PROVIDE THE HEARING TRANSCRIPT AND /OR REPORT.

On August 29, 2017 the Senate Select Committee on Women, Work and Families held a hearing on the topic of "A Seat at the Table: Why More Women on Corporate Boards Protects Workers,

Families, Employees and Shareholders". The hearing materials are attached and the hearing video and materials can be found on the Select Committee website: http://womenworkandfamilies.senate.ca.gov/2017-hearings

7.      DOES THIS BILL HAVE A **SPONSOR**? IF SO, PLASE PROVIDE A SPONSOR CONTACT AND PHONE NUMBER.

NAWBO-CA, Sponsor (National Association of Women Business Owners)

Lori Kammerer
Kammerer & Company, Inc.
Government Relations
1215 K Street, 17th FL
Sacramento, CA 95814
Ofc: (916) 441-5674
Cell: (916) 716-5674
LoriKammerer@gmail.com


Betsy Berkhemer-Credaire
Chief Executive Officer
Berkhemer Clayton Retained Executive Search
241 S. Figueroa Street, Suite 300
Los Angeles, CA 90012
(213) 621-2300 x 123.
betsy@berkhemerclayton.com
*Author of "The Board Game--How Smart Women Become Corporate Directors"*
*Available on Amazon or*www.WinningTheBoardGame.com
Co-chair, Los Angeles/Orange County 2020 Women On Boards, November, 2018


8.      PLEASE PROVIDE THE NAME AND PHONE NUMBER OF YOUR **LEGISLATIVE STAFF CONTACT** FOR THIS BILL.

Nora Lynn ~~and Bethany Renfree~~

**Bethany Renfree** | Consultant
*Senate Select Committee on Women, Work and Families*
Office of Senator Hannah-Beth Jackson, SD 19
State Capitol, Room 2032
Sacramento, CA 95814
916-651-4019 (office)
Website | Facebook | Twitter | Instagram | E-Updates

5



9.   PLEASE PROVIDE ALL **LETTERS OF SUPPORT AND OPPOSITION** TO THE BILL. *(SUPPORT AND OPPOSITION LETTERS ARE DUE IN THE COMMITTEE OFFICE BY 5 P.M. ON WEDNESDAY OF THE WEEK PRECEDING THE HEARING DATE.* SUPPORT AND OPPOSITION LETTERS MAY ALSO BE FAXED TO THE COMMITTEE AT 327-7093

_____
_____

10.   WILL THE AUTHOR BE OFFERING ANY **AMENDMENTS** PRIOR TO THE COMMITTEE HEARING? _NO__ IF YES, PLEASE DESCRIBE THE AMENDMENTS.

_____
_____
_____

### COMMITTEE POLICY ON AUTHOR'S AMENDMENTS

AUTHOR'S AMENDMENTS MUST BE SUBMITTED IN LEGISLATIVE COUNSEL FORM TO THE COMMITTEE ASSISTANT NO LATER THAN **NOON ON THE MONDAY OF THE WEEK BEFORE** THE SCHEDULED COMMITTEE HEARING IN ORDER TO BE REFLECTED IN THE BILL ANALYSIS.

IF THIS DEADLINE IS NOT MET BY THE AUTHOR, YOUR BILL WILL BE PUT OVER TO ALLOW THE COMMITTEE MEMBERS AND THE PUBLIC SUFFICIENT TIME TO REVIEW AN ANALYSIS THAT REFLECTS THE AMENDED VERSION OF THE BILL. THIS BILL "SET" WILL COUNT AGAINST THE AUTHOR'S LIMIT OF THREE "SETS." THE AUTHOR WILL BE RESPONSIBLE FOR OBTAINING ANY NECESSARY RULE WAIVERS TO HEAR THE BILL AT A SUBSEQUENT HEARING.

### PLEASE RETURN THIS COMPLETED FORM AND REQUESTED ATTACHMENTS TO:

SENATE BANKING AND FINACIAL INSTITUTIONS COMMITTEE
STATE CAPITOL, ROOM 405
651-4102



## Brief Responsibilities of Board Members on Publicly Held Company Boards:

1) Serve as "Independent" Directors (not working for the company nor having any family ties to management), who represent the interests of the shareholders and investors on the corporate board;

2) To Advise, Manage, Review, Hire and Fire the Chief Executive Officer;

3) To Determine the Compensation of the CEO and Senior Executives, indirectly influencing the framework for compensation of all employees;

4) To plan strategic growth, audit financial results, anticipate enterprise risk.

## SITUATION AND TIMING ARE CRITICAL:

(a) More Women Directors serving on Boards of publicly held corporations will:
--boost the California economy,
--improve opportunities for women in the workplace,
--and protect investments of California taxpayers, shareholders and retirees—including retired California state employees and teachers whose pensions are managed by CalPERS and CalSTRS.

**Yet studies predict it will take more than 40 years to achieve gender parity, if something is not done proactively.**

(b) In **September 2013, the Senate Concurrent Resolution SCR 62** urged that by December 31, 2016, all public companies in California to increase numbers of women on their boards of directors ranging from one to three, depending upon the size of their boards. California was first in the U.S. to adopt such a resolution, followed by five other states that passed similar Resolutions urging more women directors on corporate boards in their states. However, as of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of female directors called for in the Resolution.

7

(c) **Numerous independent studies have concluded that publicly-held companies perform better when women serve on their boards of directors:**

(1) A 2017 study by MSCI found that U.S. companies which began the five-year period from 2011-2016 with three or more female directors reported earnings per share which was 45% higher than those companies with no female directors at the beginning of the period.

(2) In 2014, Credit Suisse found that companies with at least one woman on the board had an average Return on Equity (ROE) of 12.2 percent, compared to 10.1 percent for companies with no female directors. Additionally, the price-to-book value of these firms was greater for those with women on their boards: 2.4 times the value in comparison to 1.8 times the value for zero-women boards.

(3) A 2012 University of California Berkeley study called "Women Create a Sustainable Future" found that companies with more women on their boards are more likely to "create a sustainable future" by, among other things, instituting strong governance structures with a high level of transparency.

(4) Credit Suisse conducted a six-year global research study from 2006 to 2012, with more than 2,000 companies worldwide, showing that women on boards improve business performance by key metrics, including stock performance. For companies with a market capitalization of more than $10 billion, those with women directors on boards outperformed shares of comparable businesses with all-male boards by 26 percent;

(5) The Credit Suisse report included: (i) there has been a greater correlation between stock performance and the presence of women on a board since the financial crisis in 2008, (ii) companies with women on their boards of directors significantly outperformed others when the recession occurred, (iii) companies with women on their boards tend to be somewhat risk averse and carry less debt, on average, and (iv) net income growth for companies with women on their boards averaged 14 percent over a six-year period, compared with 10 percent for companies with no women directors;

OTHER COUNTRIES HAVE MANDATED QUOTAS:

**Other countries have addressed the lack of gender diversity on corporate boards by** instituting quotas mandating 30% to 40% seats to be held by women directors. Germany is the largest economy to mandate a quota requiring that 30% of public company board seats be held by women. In 2003, Norway was the first country to legislate a mandatory 40% quota for female representation on corporate boards. Since then, other European nations that have legislated similar quotas include France, Spain, Iceland and the Netherlands.

## CALIFORNIA STATISTICS

**There are 446 public companies included in the Russell 3000 Index and headquartered in California, representing nearly $5 trillion in market capitalization:**

2

--One-fourth of California's public companies in the Russell 3000 have NO women on their boards of directors (more than 100);

--Women hold only 15.5% of the board seats in California.

--A 2017 report being prepared by Board Governance Research LLC, conducted by University of San Diego professor Annalisa Barrett, as of June 2017 showed:

(1) Women directors hold only 566 seats (15.5%) while men hold 3,089 (84.5%);

(2) More than one-quarter, numbering 117 (26 of these companies have NO women directors serving on their boards;

(3) Only 54 (12%) of these companies have three or more women directors on their boards;

Smaller companies are much more likely to lack female directors. Among the 50 California-based companies with the lowest revenues, only 8.4% of the director seats are held by women. Nearly half (48%) of these companies have NO women directors. At the other extreme, the 50 highest-revenue California companies all have at least one woman director and, 23.5% of the director seats are held by women.

(d) If measures are not taken to proactively increase the numbers of women serving on corporate boards, studies have shown that it will take decades—as many as 40 years—to achieve gender parity among directors:

(1) A 2015 study conducted by the U.S. Government Accountability Office estimated it    could take more than 40 years for the numbers of women on corporate boards to match    men.

(2) The 2017 Equilar Gender Diversity Index (GDI) revealed that it will take nearly 40 years for the boards of Russell 3000 companies nationwide to reach gender parity—the year 2055!

(3) Fewer than half the 75 largest IPOs from 2014 to 2016 went public with NO    women on their boards. Many technology companies in California have gone        public with no women on their boards, according to 2017 national study by the     nonprofit 2020 Women on Boards.

(e) Further, several studies have concluded that having <u>three</u> women on the board, rather than just one or none, increases the effectiveness of boards:

(1) According to the study entitled "Women Directors on Corporate Boards: From Tokenism to Critical Mass" (M Torchia, A Calabrò, M Huse, Journal of Business Ethics, 2011) and a report entitled, "Critical Mass on Corporate Boards: Why Three or More Women Enhance Governance," attaining critical mass--going from one or two women directors to at least three women directors--creates an environment where women are no longer seen

3

9

as outsiders and are able to influence the content and process of board discussions more substantially.

Boards of directors need to have at least three women to enable them to interact and exercise an influence on the working style, processes, and tasks of the board, in turn positively affecting the level of organizational innovation within the firm they govern.

(2) A 2016 McKinsey and Company study entitled "Women Matter" showed nationwide, that companies where women are most strongly represented at board or top-management levels are also the companies that perform the best, in profitability, productivity, and workforce engagement.

Companies with three or more women in senior management functions score even more highly, on average, on the organizational performance profile, than companies with no women on boards or in the executive ranks. When there are at least three women on corporate boards with an average membership of 10 directors, performance increases significantly.

---

4

# Women on Boards in California

## Testimony to the Senate Select Committee on Women, Work and Families
### August 29, 2017

**Annalisa Barrett**
**Clinical Professor of Finance**
University of San Diego School of Business

Founder & CEO
Board Governance Research LLC
Annalisa@boardgovernanceresearch.com



University of San Diego
**SCHOOL OF BUSINESS**

# The Role of the Board of Directors

- Serve as fiduciaries and act in the best interests of the shareholders of the corporation

- Hire, evaluate, incentivize, compensate and plan for the succession of the CEO

- Oversee the development of corporate strategy and its execution

- Monitor management's risk management process

- Oversee financial reporting and the auditor

- Establish the appropriate "tone at the top"

- Approve significant transactions



University of San Diego
SCHOOL OF BUSINESS

# Research Supporting Increased Gender Diversity in the Boardroom

- Academic studies have found that boards with female directors have been found to:
  - Have better board governance and risk management practices
  - Have better attendance at board meetings
  - Be better at holding CEOs accountable for poor stock performance
  - are more likely to "create a sustainable future" by, among other things, instituting strong governance structures with a high level of transparency
- A study by The Conference Board found that adding women to the board:
  - Improved the quality of board deliberation and decision-making
  - Broke down cronyism amongst board members and group-think in the boardroom
  - Increased the attention paid to stakeholders


University of San Diego®
SCHOOL OF BUSINESS

# Research Supporting Increased Gender Diversity in the Boardroom

- **Companies perform better financially when there are women on the board:**

  - Credit Suisse has conducted studies of women on boards and found that companies with at least one woman on the board:

    - Had **stock price performance 26% higher and average Return on Equity 2.1% higher** than companies with all male boards

  - Companies with female directors tend to be somewhat **risk averse and carry less debt**, on average

  - Companies with women on their boards of directors significantly **outperformed others when the recession occurred**

  - An MSCI study found that U.S. companies with 3 or more female directors reported **earnings per share (EPS) 45% higher** than those companies with no female directors, over a 5 year period.

University of San Diego®
SCHOOL OF BUSINESS

14





## Number of Women on Boards

| | No Women | 1 Woman | 2 Women | 3 Women | More than 3 Women |
|---|---|---|---|---|---|
| Russell 3000 Companies (n=2,939) | 23% | 35% | 26% | 12% | 4% |
| California Companies (n=445) | 26% | 38% | 24% | 9% | 4% |

☑ Russell 3000 Companies (n=2,939)   ☑ California Companies (n=445)

- Companies headquartered in CA are more likely to have no women on their boards when compared to the companies in the Russell 3000 Index, which includes the vast majority of U.S. publicly-traded companies



University of San Diego®
SCHOOL OF BUSINESS

15

## Number of Women on Boards of CA Companies
### Comparison by Company Size



No Women: 58%, 0%
1 Woman: 20%, 24%
2 Women: 42%, 14%
3 Women: 24%, 4%
More than 3 Women: 6%, 0%

■ Largest 50 CA Companies*   ■ Smallest 50 CA Companies*
* Among companies in the Russell 3000 Index and headquartered in California; size measured by Market Cap

## Smaller companies are more likely to have all male boards

- More than half (58%) of the smallest 50 California companies have no women on their boards; while all of the largest 50 California companies have at least one female director



University of San Diego®
SCHOOL OF BUSINESS

16

## % of Directors in Industry who are Female



| Industry | % |
|---|---|
| Utilities (n=7) | 28% |
| Consumer Discretionary (n=46) | 19% |
| Consumer Staples (n=10) | 18% |
| Materials (n=7) | 17% |
| Industrials (n=29) | 17% |
| Information Technology (n=142) | 16% |
| Financials (n=46) | 15% |
| Real Estate (n=28) | 13% |
| Health Care (n=124) | 13% |

There are too few CA companies the Aerospace & Defense, Energy, and Telecom Services Industries for analysis.

- The industries with the lowest percentage of female directors are Real Estate and Healthcare

  • Bio-tech companies comprise half of the CA Healthcare companies

- The 7 investor-owned utilities in CA have the highest percentage of women, led by the Sempra Energy board, which has 5 female directors



University of San Diego
SCHOOL OF BUSINESS

17

## % of Directors in Region that are Female



18%
Bay Area
(n=244)

15%
Central Coast &
Valley (n=20)

13%
Southern
California
(n=181)

- Regions were determined by the location of corporate headquarters for all California companies in the Russell 3000 Index
- Companies head-quartered in Southern California are the least likely to have female directors
  - Nearly 1/3 of Southern California company boards have no women



University of San Diego
SCHOOL OF BUSINESS

# Current Compliance with SCR 62



CA Company Boards with More than 8 Directors
n=183

- No Women: 15
- 1 Woman: 62
- 2 Women: 60
- 3 or More Women: 46

CA Company Boards with Between 5 and 8 Directors
n=257

- No Women: 96
- 1 Woman: 105
- 2 Women: 48
- 3 or More Women: 8

- **The green bars indicate the number of companies which currently have the number of female directors called for under SCR 62**

  - There are only five CA companies with fewer than five directors; only one of these companies meets the standards set forth in SCR 62



University of San Diego®
SCHOOL OF BUSINESS

19

# Prognosis for Women on Boards

- Nearly half of the 75 largest IPOs from 2014 to 2016 went public with women on their boards, according to a national study by 2020 Women on Boards.

  - Many technology companies in California have gone public with no women on their boards.

- Studies have shown that it will take decades for corporate boardrooms to reach gender parity

  - A 2015 study conducted by the U.S. Government Accountability Office estimated it could take more than 40 years for the numbers of women on corporate boards to match men.

  - The 2017 Equilar Gender Diversity Index (GDI) also found that it will take nearly 40 years for the boards of Russell 3000 companies to reach gender parity.



University of San Diego®
SCHOOL OF BUSINESS

20

# CalSTRS Corporate Governance at a Glance 

## Program Description



- Established in 1978 to protect assets through good governance and operational accountability. The Corporate Governance Program includes proxy voting, portfolio company engagements, filing of shareholder proposal initiatives and portfolio management.

- Program benchmark: Russell 3000 Index ex-Tobacco ex-Firearms (U.S. Equity), MSCI World Index/MSCI ACWI ex-U.S. Index ex-Tobacco ex-Firearms (Non-U.S. Equity).

- Nine Corporate Governance external managers, two Sustainability Managers and multiple side-by-side co-investments. Selection is biased toward firms with experienced and stable management teams with a strong track record of engaging boards and management to undertake changes to increase long-term shareholder value.

## Activist Fund Managers

|  | Country-based | Inception Date | Committed Amount | Market Cap Focus |
|---|---|---|---|---|
| Blue Harbour Group | US | 11/1/11 | $500 million | Small |
| Starboard Value | US | 3/1/13 | $100 million | Small |
| Legion Partners | US | 1/1/14 | $200 million | Small |
| Red Mountain | US | 2/1/15 | $100 million | Small |
| New Mountain | US | 1/1/09 | $1.0 billion | Mid/Large |
| Trian Partners | US | 4/1/11 | $800 million | Mid/Large |
| Cartica Investors | Non-US | 11/1/13 | $300 million | Small |
| Governance for Owners LLP | Non-US | 6/1/08 | $350 million | Small/Mid |
| Knight Vinke | Non-US | 3/1/10 | $162 million | Large |

## Corporate Governance Coalitions

- Council of Institutional Investors
- International Corporate Governance Network
- Asian Corporate Governance Association
- Diversity partners – Thirty Percent Coalition, NACD & NASP

## Portfolio Engagement Efforts

CalSTRS engaged 106 companies on shareholder rights, 14 companies on sustainability and 6 companies on diversity. Additionally, 12 shareholder rights proposals and 4 sustainability proposals filed by CalSTRS went to a vote. The following chart shows CalSTRS success in 2015-16 by objectives.

**Success in 2015-2016 by Objectives**



- Diversity (6)
- Sustainability (14)
- Shareholder Rights (106)

## Sustainability Risk Management

Corporate Governance also directs the CalSTRS sustainability risk management program. This initiative seeks to identify environmental and social risks that could affect the value of CalSTRS portfolio holdings and then to develop and implement action plans to mitigate these risks.

- Specific areas of focus include air emissions, water use and disposal, land use, mineral extraction, safety practices and labor policies.

- CalSTRS works collaboratively with other investors, government representatives and regulatory officials.

- CalSTRS supports organizations, such as the CDP, the PRI and CERES, that facilitate investor communication and action on the various sustainability issues on which CalSTRS is focused.

- Corporate Governance manages the Public Equity sustainable manager portfolio. The goals of this portfolio are financial and sustainable outperformance. Currently there are two managers in the portfolio.

*Revised 8-2016*

## Sustainable Fund Managers

| | Country-based | Inception Date | Assets Under Management | Market Cap Focus |
|---|---|---|---|---|
| Generation | Non-US | 6/1/07 | $577 million | Large |
| AGF Investments | Non-US | 8/1/07 | $244 million | Small / Mid |

## Diversity

Corporate Governance continues to lead efforts to diversity corporate boards.

- Engage companies on their efforts to build diverse pipelines of its most valuable resource, its human capital through our Enhanced Diversity Initiative.

- Petitioned the SEC through regulatory efforts to require improved proxy disclosures to include board nominees' gender, racial and ethnic diversity along with company specific skill-sets.

- Filed 47 shareholder proposals since 2009, with 29 women appointed to 25 company boards.

- Engaged 131 Calif. Companies since 2014, with 32 women appointed to 25 companies.

## Executive Compensation Issues

Corporate Governance is very active in monitoring and engaging companies on their executive compensation practices. Given the complex nature of executive compensation, CalSTRS continues to engage portfolio companies on compensation issues related to disclosure, structure, and magnitude.

## Proxy Voting

Corporate Governance staff fulfills the CalSTRS fiduciary duty to manage its corporate actions, including proxy voting, in the same manner it manages its other plan assets. Proxy votes are posted up to two weeks prior to a meeting at CalSTRS.com.

### Total Meetings Voted in 2015-16 (7,932)



- U.S. Meetings (3,010)
- Non-U.S. Meetings (4,922)

## Geo-Political Issues

Corporate Governance is responsible for the implementation of the state of California's Iran and Sudan Divestment Laws (AB

221–Anderson and AB 2491–Koretz). CalSTRS applies the Teachers' Retirement Board's 21 Risk Factors Geo-Political Risk Policy as a guide to address the legislation. CalSTRS maintains multiple data vendors relating to geo-political risk issues, monitors CalSTRS holdings, engages companies, and collaborates with other institutional investors, the UNPRI, and NGO's such as the Genocide Intervention Network.

## Corporate Governance Investment Team

| Name | Title | Areas of Focus | Joined CalSTRS |
|---|---|---|---|
| Anne Sheehan | Director | Director | 2008 |
| Brian Rice | Portfolio Manager | Sustainable Mgrs. & Sustainability | 2003 |
| Aeisha Mastagni | Portfolio Manager | Activist Mgrs. & Executive Compensation | 2009 |
| Philip Larrieu | Associate Portfolio Manager | Activist Mgrs. & Geo-Political Issues | 2005 |
| Eric Kwong | Investment Officer | Operations & Contracts | 1989 |
| Ly Van | Investment Officer | Proxy Voting | 2007 |
| Travis Antoniono | Investment Officer | Sustainability | 2011 |
| Mary Morris | Investment Officer | Diversity | 2016 |
| Douglas Chen | Investment Officer | Executive Compensation | 2016 |
| Daniel Bain | Investment Officer | Proxy Voting | 2016 |
| Kathleen Hawkins | Executive Assistant | Director Support | 2009 |
| Laurie Winston | Executive Assistant | Director Support | 1998 |

## Transparency and Public Information Requests

CalSTRS strives to be a leader in corporate governance best practices, including transparency. For more information on the Corporate Governance program and its managers, visit CalSTRS.com.

## CalSTRS Portfolio*

Total Value as of June 30, 2016: **$188.3 billion**



- Real Estate 13.7%
- Inflation Sensitive 1%
- Cash 2.5%
- Global Equity 55.1%
- Fixed Income 17.2%
- Private Equity 8.8%
- RMS 1.8%

*See *Investments, Current Investment Portfolio* on calstrs.com.

*Revised 8-2016*

# California Insurance Commissioner Dave Jones



Dave Jones is California's Insurance Commissioner. He was first elected Insurance Commissioner on November 2, 2010 and re-elected on November 4, 2014. Jones leads the California Department of Insurance and regulates the California insurance market. Insurers collect $288 billion a year in premiums in California, making it the nation's largest insurance market.

In 2011, Commissioner Jones established the Insurance Diversity Initiative (IDI) at the California Department of Insurance. The Initiative aims to increase procurement from diverse suppliers and increase governing board diversity in California's $288 billion insurance industry. Since inception, procurement from diverse California businesses has increased 83% (from $930 million to $1.7 billion). Governing board diversity remains a challenge. In 2016, 80% of insurance company governing board seats were reported held by men, 96 insurance companies reported zero women on their governing boards, and 273 insurance companies reported zero persons of color on their governing boards.

The initiative is focused on transparency, as "what gets measured, gets done."

## ABOUT THE INSURANCE DIVERSITY INITIATIVE

The Insurance Diversity Initiative has three major components:

- Conducting surveys of insurance company supplier diversity and governing board diversity.
- Hosting the Annual Diversity Summit, that facilitates business matchmaking to increase contracting opportunities for California's diverse businesses with the nation's leading insurers and recognizes insurance industry leaders and stakeholders for achievements in diversity
- Established the Insurance Diversity Task Force comprised of insurers, diverse suppliers, stakeholders, and experts in this field to advise on issues of diversity.

### CALIFORNIA INSURER SUPPLIER DIVERSITY RESULTS

| | |
|------|-------------|
| 2012 | $930 Million |
| 2013 | $1.3 Billion |
| 2014 | $1.5 Billion |
| 2015 | $1.7 Billion |

More than 200 California companies met the $100 million premium threshold to report in 2015, representing approximately 47% of the national insurance market.

In addition to his groundbreaking work on supplier and governing board diversity, Jones has secured crucial victories for consumers, including:

- Saved California consumers and businesses over $2.66 billion in premiums by regulating rates for auto, homeowners and other property and casualty insurance;
- Implementing healthcare reform, including market reforms to protect consumers and expand access to health insurance;

26

- Issued emergency regulations establishing stronger requirements for health insurers to create and maintain sufficient medical provider networks to provide timely access to medical care;
- Saved California consumers $357 million through the review of health insurance rates;
- Recovered more than $359 million for consumers from consumer complaints and market conduct exams;
- Sponsored successful  legislation to give small employers more time to comply with the Affordable Care Act;
- Reduced medical malpractice insurance rates, saving medical providers $64 million;
- Required health insurance companies to cover an essential treatment for autism;
- Protected California's seniors with new laws on the sale of annuities;
- Obtained insurance company investments in low and moderate income communities;
- Investigating insurance fraud, which has led to nearly 4,626 arrests to date;
- Won a major anti-fraud lawsuit combating healthcare provider fraud, which costs consumers hundreds of millions of dollars;
- Led a national investigation of life insurance companies and secured payment of hundreds of millions in unpaid benefits and strict business reforms to ensure companies end decades-long practice of improperly holding onto life insurance benefits;
- Established first in the nation insurance diversity initiative increasing procurement from diverse suppliers by $587 million.

The Daily Journal, the state's largest legal newspaper, in 2011 named him one of California's Top 100 Lawyers. The Greenlining Institute gave Jones their "2012 Big Heart Award" for his work promoting insurance industry diversity. Jones received the 2012 Distinguished Advocate Award from Autism Speaks.

Jones served in the California State Assembly from 2004 through 2010, where he chaired the Assembly Health Committee, the Assembly Judiciary Committee and the Budget Subcommittee on Health and Human Services. Named "Consumer Champion" by the California Consumer Federation, Jones was also awarded the "Leadership Award" by the Western Center on Law and Poverty. Planned Parenthood, Environment California, the Urban League, Preschool California and CalPIRG have all honored his work. Capitol Weekly named Jones California's "most effective legislator" other than the Assembly Speaker and the Senate President Pro Tempore. The American Psychiatric Association awarded Jones its prestigious Jacob K. Javits Public Service Award in 2015 for his work on mental health parity. In addition, Jones received the Phillip Burton Award for Courage from the Orange County Labor Federation on April 23, 2015.

Jones began his career as a legal aid attorney, providing free legal assistance to the poor with Legal Services of Northern California from 1988 to 1995. In 1995, Jones was one of only 13 Americans awarded the prestigious White House Fellowship. He served in the Clinton Administration for three years as Special Assistant and Counsel to U.S. Attorney General Janet Reno. Jones served on the Sacramento City Council from 1999 to 2004.

Jones graduated with honors from DePauw University, Harvard Law School and Harvard University's Kennedy School of Government. He and his wife, Kim Flores, have two children, Isabelle and William.



More Women Directors serving on Boards of Directors of publicly held corporations will boost the California economy, improve opportunities for women in the workplace, and protect California taxpayers, shareholders and retirees—including retired California state employees and teachers whose pensions are managed by CalPERS and CalSTRS.

**Yet studies predict it will take more than 40 years to achieve gender parity, if something is not done proactively.**

In September 2013, the Senate Concurrent Resolution SCR 62 urged that by December 31, 2016, all public companies in California to increase numbers of women on their boards of directors ranging from one to three, depending upon the size of their boards. California was first in the U.S. to adopt such a resolution, followed by five other states that passed similar Resolutions urging more women directors on corporate boards in their states. However, as of the cut-off date of December 31, 2016, fewer than 20% of the companies headquartered in California had the number of female directors called for in the Resolution.

**Numerous independent studies have concluded that publicly-held companies perform better when women serve on their boards of directors:**

(1) A 2017 study by MSCI found that U.S. companies which began the five-year period from 2011-2016 with three or more female directors reported earnings per share which was 45% higher than those companies with no female directors at the beginning of the period.

(2) In 2014, Credit Suisse found that companies with at least one woman on the board had an average Return on Equity (ROE) of 12.2 percent, compared to 10.1 percent for companies with no female directors. Additionally, the price-to-book value of these firms was greater for those with women on their boards: 2.4 times the value in comparison to 1.8 times the value for zero-women boards.

(3) A 2012 University of California Berkeley study called "Women Create a Sustainable Future" found that companies with more women on their boards are more likely to "create a sustainable future" by, among other things, instituting strong governance structures with a high level of transparency.

(4) Credit Suisse conducted a six-year global research study from 2006 to 2012, with more than 2,000 companies worldwide, showing that women on boards improve business performance by key metrics, including stock performance. For companies with a market capitalization of more than $10 billion, those with women directors on boards outperformed shares of comparable businesses with all-male boards by 26 percent;

1

(5) The Credit Suisse report included: (i) there has been a greater correlation between stock performance and the presence of women on a board since the financial crisis in 2008, (ii) companies with women on their boards of directors significantly outperformed others when the recession occurred, (iii) companies with women on their boards tend to be somewhat risk averse and carry less debt, on average, and (iv) net income growth for companies with women on their boards averaged 14 percent over a six-year period, compared with 10 percent for companies with no women directors;

**Other countries have addressed the lack of gender diversity on corporate boards by** instituting quotas mandating 30% to 40% seats to be held by women directors. Germany is the largest economy to mandate a quota requiring that 30% of public company board seats be held by women; In 2003, Norway was the first country to legislate a mandatory 40% quota for female representation on corporate boards. Since then, other European nations that have legislated similar quotas include France, Spain, Iceland and the Netherlands.

**One-fourth of California's public companies in the Russell 3000 have NO women on their boards of directors; and, women hold only 15.5% of the board seats in California. A 2017 report being prepared by Board Governance Research LLC, conducted by University of San Diego professor Annalisa Barrett, examined the board composition as of June 2017 of 446 companies included in the Russell 3000 Index and headquartered in California, representing nearly $5 trillion in market capitalization, and found the following:**

(1) Women directors held only 566 seats (15.5%) while men held 3,089 (84.5%);

(2) More than one-quarter, numbering 117 (26of these companies have NO women directors serving on their boards;

(3) Only 54 (12%) of these companies have three or more female directors on their boards;

Smaller companies are much more likely to lack female directors. Among the 50 California-based companies with the lowest revenues, only 8.4% of the director seats are held by women. Nearly half (48%) of these companies have NO women directors. At the other extreme, the 50 highest-revenue California companies all have at least one woman director and, 23.5% of the director seats are held by women.

**If measures are not taken to proactively increase the numbers of women serving on corporate boards, studies have shown that it will take decades—as many as 40 years—to achieve gender parity among directors:**

(1) A 2015 study conducted by the U.S. Government Accountability Office estimated it could take more than 40 years for the numbers of women on corporate boards to match men.

(2) The 2017 Equilar Gender Diversity Index (GDI) revealed that it will take nearly 40 years for the boards of Russell 3000 companies nationwide to reach gender parity—the year 2055.

2

(3) Fewer than half the 75 largest IPOs from 2014 to 2016 went public with NO women on their boards. Many technology companies in California have gone public with no women on their boards, according to 2017 national study by 2020 Women on Boards.

**Further, several studies have concluded that having <u>three</u> women on the board, rather than just one or none, increases the effectiveness of boards:**

(1) According to the study entitled "Women Directors on Corporate Boards: From Tokenism to Critical Mass" (M Torchia, A Calabrò, M Huse, Journal of Business Ethics, 2011) and a report entitled, "Critical Mass on Corporate Boards: Why Three or More Women Enhance Governance," attaining critical mass--going from one or two women directors to at least three women directors--creates an environment where women are no longer seen as outsiders and are able to influence the content and process of board discussions more substantially.

Boards of directors need to have at least three women to enable them to interact and exercise an influence on the working style, processes, and tasks of the board, in turn positively affecting the level of organizational innovation within the firm they govern.

(2) A 2016 McKinsey and Company study entitled "Women Matter" showed nationwide, that companies where women are most strongly represented at board or top-management levels are also the companies that perform the best, in profitability, productivity, and workforce engagement.

Companies with three or more women in senior management functions score even more highly, on average, on the organizational performance profile, than companies with no women on boards or in the executive ranks. When there are at least three women on corporate boards with an average membership of 10 directors, performance increases significantly.

3



# RESEARCH BRIEF

**California Research Bureau**      **California State Library**

# Women on Corporate Boards
## Increasing in California but Still Underrepresented

*By Amanda Kimball and Tonya D. Lindsey, Ph.D.
January 13, 2016*

Organizations and governments across the world employ a variety of voluntary, regulatory and legislative means to increase the number of women directors on corporate boards. From media campaigns asking companies to hire more women directors to enacting laws requiring it, worldwide interest in board diversity has led to initiatives aimed at addressing disparities. These initiatives result from the disproportionately small number of women serving on corporate boards across the globe. In the United States, for example, only 19.2 percent of board directors were women in 2014.[1] In California, which accounts for 13 percent of the national economy,[2] the UC Davis Graduate School of Management has tracked data about the status of women directors in the state's largest 400 publicly traded firms since 2005.[3] This annual research

demonstrates that the continued underrepresentation of women on California boards is ubiquitous although it varies significantly across locations and industries (Figure 1).

In response to this and other reports, local and state leaders have asked for a number of voluntary efforts and goals. In 2008, then State Controller John Chiang asked CalPERS and CalSTRS, two of the largest pension funds in the country, to amend their governance policies and identify best practices to address corporate board diversity.[4] As State Treasurer, Chiang recently followed up, requesting that the two funds continue focusing on board diversity in corporations where they invest.[5] Also in 2008, San Francisco's Department on the Status of Women launched a Gender Equality Principles Initiative that encourages participating companies to recruit and appoint women to boards of directors.[6] More recently, the California Senate passed

Figure 1. California director positions held by women reached 13.3 percent at the end of 2014.[10]



Concurrent Resolution (SCR) 62 (Jackson) in 2013.[7] This resolution represents the first set of goals advanced by California's legislature, and it urges California's publicly traded companies to meet certain goals by December 2016. The resolution created three benchmarks for California's publicly traded companies that depend on the size of the board: three women directors for companies with nine or more directors, two women for companies with five to eight directors and at least one woman on company boards with fewer than five directors. These benchmarks broadly reflect prior research cited in the resolution, prompting the conclusion that "[large] boards of directors need to have at least three women to enable them to interact and exercise an influence on the working style, processes, and tasks of the board, in turn positively affecting the level of organizational innovation within the firm."[7] Research also finds,"[f]irm innovation is one of the most important predictors of firm performance, helping firms gain competitive advantage and increase their performance."[8]

## WOMEN ON BOARDS, PAST AND PRESENT

Using historical data from the annual UC Davis study, which largely reflect time periods prior to the resolution, we analyze gender representation on California's 400 largest company boards over time and assess whether they are likely to meet the resolution's goals by December 2016. Between 2005 and 2014, there was a 133 percent increase in the percentage of companies meeting the resolution's benchmarks, from 7.5 percent (30) in 2005 to 17.5

percent (70) in 2014 (Figure 2; See also Appendix Table 1). The two largest increases were from 2006 to 2007 (39.4 percent) and from 2012 to 2013 (28.6 percent). However, companies are not adding women to their boards quickly enough to meet the resolution's benchmarks by 2016. To meet this goal, 83 percent (330) of the firms would have to fill 533 more director positions with women by the end of 2016.

It is difficult to make projections about how quickly women will join boards in the future. The U.S. Government Accountability Office recently released a report about women board directors nationally. They project it will take until roughly 2024 for women to comprise 30 percent of boards and more than 40 years for women to reach parity in representation with men.[9]

Finally, while the number of women board directors is small, women of color represent an even smaller number of board directors. In the Fortune 1000 companies studied (90) by UC Davis with 2014 data, 89.5 percent of the women directors were white.[10] Government leaders, organizations and stakeholders also may want to be cognizant of how women's race and ethnic category bear on the diversity of corporate boards as they seek solutions.

## A SNAPSHOT OF INDUSTRIES

California's 400 largest publicly traded companies together had 3,260 director positions in 2014. Board sizes averaged eight directors and ranged from four

**Figure 2. The percentage of California companies meeting the benchmarks has been on the rise since UC Davis began collecting data in 2005. N=400**





Figure 3. A much larger percentage of utility industry firms met the benchmarks. (N=400)

of companies meeting the benchmarks (27.3 percent or 12 companies). In all other industries, less than 25 percent of companies successfully met the resolution's benchmarks.

## NATIONAL AND INTERNATIONAL EFFORTS TO INCREASE WOMEN ON CORPORATE BOARDS

Increasing board diversity is also recognized as a national and international goal with solutions ranging from voluntary efforts led by nongovernmental organizations to legislation requiring compliance. Though there is no federal legislation or regulation in the United States aimed at closing the gender "leadership gap,"[12] nonprofit organizations have formed to increase women's board representation (e.g., 2020 Women on Boards, U.S. chapter of the 30% Club, Alliance for Board Diversity, Catalyst).[13] Internationally, the European Parliament voted in 2013 in support of a proposal to increase women's board membership to 40 percent in European Union member-countries.[14] Australia, Canada and Finland adopted voluntary goals and actions to increase women's board membership in companies headquartered there. These solutions rely on different incentives to affect voluntary compliance. For example, Australia's model creates transparency by requiring disclosure of board and workforce gender compositions while Finland uses an endorsement system where business leaders and studies publicly affirm women's value and capabilities.[12] Beginning with Norway in 2003, at least 13 additional countries have enacted laws requiring companies with their headquarters in the country to include women on boards of directors. These laws vary; one country asks for just one woman per board while others specify that women comprise 50 percent of the directors.[15]

to 16 director positions. Women held 13.3 percent of all board seats. While women are represented on boards in every industry, there are large differences across industries (see Appendix Table 2).[11] On the low end, women held 6.9 percent (20) of board seats in the semiconductor industry and only held 8.3 percent (1) of seats in the telecommunications industry in 2014. The utility industry had the largest percentage of women directors at 27.5 percent (19), and the technology software industry had the largest number (82) of women directors.

Rather than being concentrated in one or two companies within an industry, women directors are fairly evenly distributed across companies in each industry. That is, industries with a larger share of companies meeting benchmarks often have a larger percentage of women directors; the percentage of companies meeting benchmarks is 87 percent correlated with the percent of women directors between 2005 and 2014. Notably, and different from all other industries, all 37 semiconductor companies as well as both telecommunications companies in the study fell short of the benchmarks (Figure 3). The 34 real estate and 34 energy, materials and industrials companies had the next smallest percentage of companies meeting benchmarks at 11.8 percent each. And, just as the seven utility companies had the largest percentage of women-held directorships, they also had the largest percent of companies meeting the benchmarks, 85.7 percent (6). The technology hardware industry had the second largest percentage

The history, studies and results of these initiatives differ, with Norway among the most studied. In Norway, legislated efforts initially called for publicly traded companies to voluntarily increase the number of women serving as board directors. When many did not, mandatory quotas went into effect and a reported 384 companies became private presumably to avoid compliance.[16] For the remaining companies, quotas have been effective at increasing the number of women directors, and one recent study found that

45

the newly appointed women had higher education levels than women appointed prior to the quotas.[17] This same study also provided evidence that having more women directors increases the likelihood of a woman holding one of the five top-paying positions in a company. However, researchers did not find an observable change in the gender wage gap or in women's representation in other high-paying positions. One study done after Norway implemented its quota system demonstrates an initial drop in companies' overall value, and in an interview the author attributed the result to hiring less-experienced directors.[18] To address the issue of finding experienced women, Norway created a database of eligible and interested women. Perhaps as a result, companies are at times hiring the same women onto multiple boards – a practice cited by one researcher as a drawback to quotas because it limits the total number of qualified women who serve on boards.[19] Other countries' uses of transparency and endorsements to increase representation are also strategies to improve women's representation on boards, though the impact remains understudied.

## POLICY OPTIONS

California decision-makers, organizations, companies and other stakeholders who want to increase boardroom diversity can consider a number of options that build on current efforts:

### Expand Outreach and Increase Awareness

- Many California government leaders and entities, higher-education institutions and organizations are already working to increase the number of women board directors. The state could convene leaders to discuss goals and to align strategies. The California Commission on the Status of Women and Girls could work with local women's commissions and non-profit groups to inform business leaders about information and strategies aimed at increasing the number of women board directors. Starting with those counties where the largest companies are located is one way to focus available resources (see Appendix Table 3). Most of California's large companies are located in Alameda, Los Angeles, Orange, San Diego, San Francisco, San Mateo and Santa Clara counties. (See Figure 4).
- Stakeholders could build on CalSTRS' Diverse Directors database of qualified people interested in board appointments.[5, 20]
- Lawmakers could request or require all publicly traded firms to make board diversity information readily available or report the information to an agency, like the California

Figure 4. Over 90 percent (372) of the firms represented in the study are from seven counties.*



*The map represents the number of the largest 400 companies headquartered in each county.

Secretary of State, that will publish it.[21]
- Watermark, a non-profit organization in the Bay Area, used the UC Davis data to create an index of local publicly traded companies in which women hold at least 30 percent of board seats and the top five compensated positions.[22] Other organizations could replicate this index for companies in their region. They might consider highlighting companies that meet the SCR benchmarks and those that do not.

### Improve proxy access and change director tenure.

- CalPERS and CalSTRS staff are working on an initiative requesting corporate boards adopt proxy access, which would result in companies adopting by-laws allowing shareholders to nominate board directors. Treasurer Chiang also asked both funds to consider specifying tenure length for board directors to create more open seats – along with comply or explain disclosures.[23] Stakeholders could encourage a California-centric effort to accomplish these same goals.

### Evaluate strategies from successful industries:

- Since there are only seven utility companies in our analysis, we caution against generalizing

about the industry. However, six of those seven companies meet benchmarks. The state could examine which strategies are being employed in this industry. Most of the large utility companies already meet the resolution's goals. The California Public Utilities Commission works closely with the California Utilities Diversity Council, which promotes diversity in governance, among other issues, within California's public utilities through such activities as reporting and outreach.[24,25] This council might serve as a model for improving diversity in other industries.

- The most rapid progress comes from the technology software industry, which increased its proportion of women directors by 91 percent between 2005 (8.1 percent) and 2014 (15.5 percent). This industry now has the second highest percentage of women directors, behind only the seven utility companies. Software companies could share their best practices and take the lead in encouraging other companies to follow suit.

### Require companies to meet benchmarks

- As the experience in Norway demonstrates (see page 3), creating mandatory benchmarks increases the number of women on boards, but businesses may also leave the jurisdiction or withdraw their public status. Such an effort has never been tried in the United States and were legislation approved to do so, it could face legal challenges.

### ENDNOTES

1. 2014 Catalyst Census: Women Board Directors. (2015). Catalyst. Retrieved from http://www.catalyst.org/knowledge/2014-catalyst-census-women-board-directors. Accessed on January 7, 2016.

2. CAL FACTS: December 2014. (2014). Legislative Analyst's Office. Retrieved from http://www.lao.ca.gov/reports/2013/calfacts/calfacts_010213.pdf. Accessed on January 7, 2016.

3. We exclude data from 2004 because UC Davis included only the largest 200 companies in their first annual study. UC Davis released this study in February 2006. The companies included in the UC Davis study each year change according to their market capitalization value. Roughly 80 percent of the companies remain among the largest 400 companies headquartered in California by market capitalization from any given year to the next. One hundred and seventy companies were in all 10 years of the data. These companies exhibited a larger percentage increase in their average percentage of women directors than the overall sample of 400 companies. Thus, year-

over-year changes are not due to sample selection but rather are tempered by sample selection. UC Davis purchases company financial data from Wharton Research Data Services' Compustat database.

4. Chiang Urges CalPERS and CalSTRS to Address Diversity on Corporate Boards. (2006, February 6) Retrieved from http://www.sco.ca.gov/Press-Releases/2008/pr08011.pdf. Accessed on December 22, 2015.

5. Retrieved from http://www.treasurer.ca.gov/news/releases/2015/20150219_letter.pdf. Accessed on December 22, 2015.

6. Gender Equality Principles. Retrieved from http://genderprinciples.org/principles.php#management. Accessed on December 22, 2015.

7. California Senate Concurrent Resolution 62 (Jackson et al.) 2013. Retrieved from http://www.leginfo.ca.gov/pub/13-14/bill/sen/sb_0051-0100/scr_62_bill_20130920_chaptered.htm. Accessed on December 22, 2015.

8. Torchia, Mariateresa, Andrea Calabrò, and Morten Huse. 2011. "Women Directors on Corporate Boards: From Tokenism to Critical Mass." Journal of Business Ethics, 102 (2): 299-317.

9. Corporate Boards: Strategies to Address Representation of Women Include Federal Disclosure Requirements. (2015, December). U.S. Government Accountability Office. Retrieved from http://www.gao.gov/products/GAO-16-30. Accessed on January 6, 2016.

10. Kimball, Amanda. 2015. UC Davis Study of California Women Business Leaders: 2015-2016. UC Davis Graduate School of Management.

11. Following UC Davis report methodology, we use the Global Industry Classification Standard to create industry categories. More information about the classification schema is available upon request.

12. Sweigart, Anne. 2012. "Women on Board for Change: The Norway Model of Boardroom Quotas as a Tool for Progress in the United States and Canada." Northwestern Journal of International Law and Business, 32 (4): 81A-105A. Retrieved from http://scholarlycommons.law.northwestern.edu/cgi/viewcontent.cgi?article=1007&context=njilb. Accessed on December 22, 2015.

13. 2020 Women on Boards. Retrieved from https://www.2020wob.com/. 30% Club. Retrieved from http://30percentclub.org/about/chapters/united-states. Alliance for Board Diversity. Retrieved from http://theabd.org/. Accessed on December 22, 2015.

14. Cracking Europe's Glass Ceiling: European Parliament backs Commission's Women on Boards Proposal. (Nov. 2013) Retrieved from http://europa.eu/rapid/press-release IP-13-1118 en.htm. Accessed on December 22, 2015.

Also see Improving the Gender Balance in Company Boardrooms. (2014, June). Retrieved from http://ec.europa.eu/justice/gender-equality/files/gender balance decision making/boardroom factsheet en.pdf. Accessed on December 22, 2015.

15. Catalyst. Retrieved from http://www.catalyst.org/legislative-board-diversity. Accessed on December 22, 2015.

16. Miller, Claire, C. (2014, June 19). Women on the Board Quotas Have Limited Success. The New York Times. Retrieved from http://www.nytimes.com/2014/06/20/upshot/women-on-the-board-quotas-have-limited-success.html. Accessed on December 22, 2015.

17. Bertrand, Marianne, Sandra E. Black, Sissel Jensen, and Adriana Lleras-Muney. 2014. "Breaking the Glass Ceiling: The Effect of Board quotas on Female Labor Market Outcomes in Norway." National Bureau of Economic Research working paper 20256.

18. Dittmar, Amy. (2010, March 22). The Norway Numbers. Response to Using Quotas to Raise the Glass Ceiling. The New York Times. Retrieved from http://roomfordebate.blogs.nytimes.com/2010/03/22/using-quotas-to-raise-the-glass-ceiling/. Accessed on December 22, 2015.

Also see Nygaard, Knut. 2011. "Forced Board Changes." 24th Australasian Finance and Banking Conference 2011 Paper, which does not find a drop in companies' overall value after the quota but instead finds that companies with less insider information experienced an increase in value. http://papers.ssrn.com/sol3/papers.cfm?abstract id=1793227##. Accessed on January 11, 2016.

19. Seierstad, Catherine and Tore Opsahl. 2010. "For the Few Not the Many? The Effect of Affirmative Action on Presence, Prominence, and Social Capital of Women Directors in Norway." Scandinavian Journal of Management, 27 (1): 1-21.

20. Diverse Directors DataSource. Retrieved from http://www.calstrs.com/diverse-director-datasource. Accessed on December 22, 2015.

21. See Publicly Traded Disclosure Search. Retrieved from http://www.ptsearch.ss.ca.gov/app/basic search.html. Accessed on December 22, 2015.

22. Watermark Index. Retrieved from https://www.wearewatermark.org/watermark-index. Accessed on December 22, 2015. Watermark has partnered with UC Davis' Graduate School of Management since 2005 to promote the annual report discussed in this brief.

23. For example see http://www.dentons.com/en/insights/alerts/2015/october/16/women-on-boards-review-and-discussion-of-new-comply-or-explain-disclosure-requirements. Accessed on December 31, 2015.

24. California Utilities Diversity Council. Retrieved from http://www.cudc.biz/. Accessed on December 22, 2015.

25. CUDC Charter Document. (2004, December 13). Retrieved from http://www.cudc.biz/page9.html. Accessed on December 22, 2015.

**APPENDIX**

Table 1. 17.5 percent of companies studied met the resolution's benchmarks in 2014.*

| Calendar Year Studied | All Boards | | | Nine or More Board Members (At Least Three Women) | | | Five to Eight Board Members (At Least Two Women) | | | Fewer than Five Board Members (At Least One Woman) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Total Companies | Meeting Benchmark | | Change | Total Companies | Meeting Benchmark | | Total Companies | Meeting Benchmark | | Total Companies | Meeting Benchmark | |
| | N | N | % | % | N | N | % | N | N | % | N | N | % |
| 2005 | 400 | 30 | 7.5% | -- | 154 | 12 | 7.8% | 238 | 18 | 7.6% | 8 | 0 | 0.0% |
| 2006 | 400 | 33 | 8.3% | 10.0% | 159 | 13 | 8.2% | 238 | 20 | 8.4% | 3 | 0 | 0.0% |
| 2007 | 400 | 46 | 11.5% | 39.4% | 154 | 16 | 10.4% | 240 | 29 | 12.1% | 6 | 1 | 16.7% |
| 2008 | 400 | 45 | 11.3% | -2.2% | 153 | 15 | 9.8% | 244 | 30 | 12.3% | 3 | 0 | 0.0% |
| 2009 | 400 | 43 | 10.8% | -4.4% | 160 | 15 | 9.4% | 237 | 28 | 11.8% | 3 | 0 | 0.0% |
| 2010 | 400 | 45 | 11.3% | 4.7% | 146 | 17 | 11.6% | 252 | 28 | 11.1% | 2 | 0 | 0.0% |
| 2011 | 400 | 52 | 13.0% | 15.6% | 139 | 20 | 14.4% | 257 | 31 | 12.1% | 4 | 1 | 25.0% |
| 2012 | 400 | 49 | 12.3% | -5.8% | 153 | 18 | 11.6% | 244 | 31 | 12.7% | 3 | 0 | 0.0% |
| 2013 | 400 | 63 | 15.8% | 28.6% | 150 | 23 | 15.3% | 242 | 38 | 15.7% | 8 | 2 | 25.0% |
| 2014 | 400 | 70 | 17.5% | 11.1% | 155 | 31 | 20.0% | 242 | 39 | 16.1% | 3 | 0 | 0.0% |

*These are California's top 400 publicly traded companies by market capitalization.

Table 2. No large semiconductor or telecommunications industry companies met the benchmarks.

| Industry | Total Companies | Companies Meeting SCR-62 Benchmarks | | Total Director Positions | Women-held Director Positions | |
|---|---|---|---|---|---|---|
| | N | N | % | N | N | % |
| Consumer Goods | 47 | 9 | 19.1% | 404 | 58 | 14.4% |
| Energy, Materials & Industrials | 34 | 4 | 11.8% | 289 | 37 | 12.8% |
| Financial Services | 29 | 4 | 13.8% | 277 | 37 | 13.4% |
| Health Care | 33 | 5 | 15.2% | 248 | 32 | 12.9% |
| Pharmaceuticals | 68 | 14 | 20.6% | 518 | 68 | 13.1% |
| Real Estate | 34 | 4 | 11.8% | 267 | 29 | 10.9% |
| Semiconductors | 37 | 0 | 0.0% | 291 | 20 | 6.9% |
| Technology Hardware | 44 | 12 | 27.3% | 356 | 49 | 13.8% |
| Technology Software | 65 | 12 | 18.5% | 529 | 82 | 15.5% |
| Telecommunications | 2 | 0 | 0.0% | 12 | 1 | 8.3% |
| Utilities | 7 | 6 | 85.7% | 69 | 19 | 27.5% |
| Total | 400 | 70 | 17.5% | 3,260 | 432 | 13.3% |

**Table 3. Many counties are home to fewer than 10 companies represented in the study. These companies could lead the way in those jurisdictions by increasing the number of women directors on their boards.**

| Legend County | Total Companies | Representation in Top 400 | Companies Meeting SCR-62 Benchmarks | | Total Director Positions | Women-held Director Positions | |
|---|---|---|---|---|---|---|---|
| | N | % | N | % | N | N | % |
| 1 Marin | 7 | 1.8% | 3 | 42.9% | 61 | 13 | 21.3% |
| 2 Contra Costa | 5 | 1.3% | 2 | 40.0% | 40 | 8 | 20.0% |
| 3 San Francisco | 32 | 8.0% | 11 | 34.4% | 287 | 58 | 20.2% |
| 4 Santa Barbara | 3 | 0.8% | 1 | 33.3% | 21 | 5 | 23.8% |
| 5 San Diego | 39 | 9.8% | 9 | 23.1% | 308 | 41 | 13.3% |
| 6 San Mateo | 42 | 10.5% | 9 | 21.4% | 323 | 44 | 13.6% |
| 7 Ventura | 6 | 1.5% | 1 | 16.7% | 61 | 10 | 16.4% |
| 8 Santa Clara | 104 | 26.0% | 16 | 15.4% | 851 | 108 | 12.7% |
| 9 Los Angeles | 82 | 20.5% | 11 | 13.4% | 675 | 78 | 11.6% |
| 10 Alameda | 31 | 7.8% | 4 | 12.9% | 245 | 32 | 13.1% |
| 11 Orange | 37 | 9.3% | 3 | 8.1% | 285 | 30 | 10.5% |
| 12 Butte | 1 | 0.3% | 0 | 0.0% | 12 | 1 | 8.3% |
| 13 Kern | 1 | 0.3% | 0 | 0.0% | 11 | 0 | 0.0% |
| 14 Riverside | 1 | 0.3% | 0 | 0.0% | 10 | 1 | 10.0% |
| 15 Sacramento | 1 | 0.3% | 0 | 0.0% | 8 | 0 | 0.0% |
| 16 San Bernardino | 2 | 0.5% | 0 | 0.0% | 16 | 1 | 6.3% |
| 17 San Joaquin | 1 | 0.3% | 0 | 0.0% | 7 | 0 | 0.0% |
| 18 Santa Cruz | 3 | 0.8% | 0 | 0.0% | 23 | 1 | 4.3% |
| 19 Sonoma | 2 | 0.5% | 0 | 0.0% | 16 | 1 | 6.3% |
| Total | 400 | 100.0% | 70 | 17.5% | 3,260 | 432 | 13.3% |

The California Research Bureau provides research and nonpartisan public policy analysis to the State Legislature, Governor and Constitutional Officers.

The California Commission on the Status of Women and Girls requested this report.

Authors: Amanda Kimball is a Research Specialist at UC Davis Graduate School of Management. Tonya D. Lindsey, Ph.D., is a Senior Policy Analyst at the California Research Bureau.

For questions or comments: crb@library.ca.gov or (916) 653-7843.







**CALSTRS** CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM

# Senate Select Committee on Women, Work, & Families

August 29, 2017

Anne Sheehan
Director of Corporate Governance
CalSTRS

## CALSTRS    Better Financial Performance = Better Returns

### 2015 McKinsey Diversity Study

Having women on your board is good for your bottom line.

- Women make up 50% of the Workforce
- Women earn 57% of bachelor's degrees
- Over 62% of master's degrees
- Over 53% of PhDs, medical degrees & law degrees in the US

**How diversity correlates with better financial performance**
Likelihood of financial performance above industry median, by diversity quartile



**35%**
more likely
to outperform

Ethnically diverse companies



**15%**
more likely
to outperform

Gender-diverse companies

52

# CALSTRS

# Diversity Engagements

## 2016-17 Major Initiatives

### Partnership Engagements









### Speaking Engagements



Stanford

Ctr. for Advancement
Women's Leadership

Clayman Institute
for Gender Research

Thirty Percent Coalition
- 81 engagement letters
- 23 companies appointed 24 women

4 Coalition
- 61 engagement letters
- Board effectiveness, Refreshment
  & Search Process

California
- 87 engagement letters
- 20 companies appointed 22 women

Enhanced Diversity
- Engaged 10 companies on
  human capital



CALSTRS   State Street Global Advisors – SHE Index



55

# CALSTRS   Diversity – Long-term Sustainable Value



SSGA – Fearless Girl on Wall Street

"CalSTRS has a long-standing diversity initiative in place because we believe diversity is not simply a social issue. It is about mitigating risk, improving accountability and enhancing the long-term sustainable value and company performance for shareholders."

56





CalSTRS.com

*California Department of Insurance*
*Office of Insurance Commissioner Dave Jones*



## INSURANCE DIVERSITY INITIATIVE:  PROGRAM OVERVIEW + FACT SHEET

### EXECUTIVE SUMMARY

The Insurance Diversity Initiative (IDI) was established by Insurance Commissioner Dave Jones in 2011 to increase procurement from diverse suppliers and increase governing board diversity in California's $288 billion insurance industry. Since inception, procurement from diverse California businesses has increased 83% (from $930 million to $1.7 billion). Governing board diversity remains a challenge; in 2016, 80% of insurance company governing board seats were reported held by men, 96 insurance companies reported zero women on their governing boards, and 273 insurance companies reported zero persons of color on their governing boards. The initiative is focused on transparency, as "what gets measured, gets done."

### ABOUT THE INSURANCE DIVERSITY INITIATIVE

The Insurance Diversity Initiative has three major components:

- surveys of insurance company supplier diversity and governing board diversity;
- a first in the nation Annual Diversity Summit which facilitates business matchmaking to increase contracts for California's diverse businesses with the nation's leading insurers and awards insurance industry leaders and stakeholders for achievements in diversity; and
- an Insurance Diversity Task Force comprised of industry leaders.

In 2011, Insurance Commissioner Jones asked insurance companies to participate in a voluntary survey regarding supplier diversity and governing board diversity, but only 29% of companies responded[1]. In early 2012, the Commissioner directed the Department to prepare to issue a mandatory survey. Also in 2012, AB 53 was enacted to codify the supplier diversity survey so future commissioners would implement it as well.

Insurance Commissioner Dave Jones continued to implement the supplier diversity and governing board diversity surveys, and in 2016 California partnered with other states (District of Columbia, Minnesota, New York, Oregon, and Washington) to launch a national insurance supplier and governing board diversity survey called the Multistate Insurance Diversity Survey (MIDS).

### CALIFORNIA INSURER SUPPLIER DIVERSITY RESULTS [2]

Diverse procurement in California

| 2012 | $930 Million |
|------|--------------|
| 2013 | $1.3 Billion |
| 2014 | $1.5 Billion |
| 2015 | $1.7 Billion |

- **83% increase in the amount of goods and services insurance companies procured from California diverse owned businesses (2012-2015)**

Diverse Procurement by Certification
- Women Business Enterprises
  - 2012 ($153 Million), 2013 ($433 Million), 2014 ($558 Million), 2015 ($537 Million)
- Minority Business Enterprises

- o   2012 ($241 Million), 2013 ($618 Million), 2014 ($729 Million), 2015 ($964 Million)
- Disabled Veteran Business Enterprises
    - o   2012 ($1 Million), 2013 ($83 Million), 2014 ($89 Million), 2015 ($92 Million)
- LGBT Business Enterprises
    - o   2012 ($104,000), 2013 ($6 Million), 2014 ($5 Million), 2015 ($6.6 Million)

Diverse Procurement by Ethnicity
- African-American
    - o   2013 ($154 Million), 2014 ($173 Million), 2015 ($157 Million)
- American Indian
    - o   2013 ($42 Million), 2014 ($39 Million), 2015 ($87 Million)
- Asian/Pacific Islander
    - o   2013 ($277 Million), 2014 ($330 Million), 2015 ($576 Million)
- Latino/Hispanic
    - o   2013 ($111 Million), 2014 ($146 Million), 2015 ($145 Million)

GOVERNING BOARD DIVERSITY SURVEY: RESULTS [3]
Total number of insurance company governing board members: 2,348
- **20% reported as women**
- **12% reported as persons of color**
    - o   6% African-American
    - o   3% Hispanic / Latino
    - o   2% Asian Pacific Islander
    - o   1% Multi-Ethnic
    - o   0% American Indian
- **10% of board members reported as "other"**

- 3 board members identify as a disabled veteran
- 12 board members publicly identified as LGBT
- 96 companies reported zero women on their governing boards
- 273 companies reported zero persons of color on their governing boards

---

[1] Prior to AB 53, 58 of 203 companies (29%) responded to the 2011 Voluntary Survey regarding supplier diversity and governing board diversity (see http://www.insurance.ca.gov/diversity/05-gbd/2011-VoluntarySurvey/index.cfm). The companies that responded were largely those that already had a program in place; many of the top 200 insurance companies did not have a program in place prior to the Insurance Diversity Initiative.

[2] More than 200 California companies met the threshold to report from 2013-2015, representing 47% of the national insurance market.

[3] More than 600 companies were requested to submit a survey as part of the national Multistate Insurance Diversity Survey (2016), representing 70% of the national insurance market. The 2014 Governing Board Diversity Survey of California's top 200 insurers yielded nearly identical results.

NOTE: All data is self-reported by the respondents. All analysis is a direct result from the data contained in the submitted reports. Results reflect procurement and diversity statistics for the year prior to the survey year (i.e. 2014 data was reported during the 2015 reporting period). All data is based on public identification and self-identifying reporting.



**CALIFORNIA STATE TEACHERS' RETIREMENT SYSTEM**                                **Fact Sheet**

# Human Capital Management and Diversity: A Company's Most Important Assets

## Why are Human Capital Management and Diversity Important?

- Human Capital Management and diversity are both critical components of a company's DNA and have been shown to positively contribute to corporate sustainability, increased performance and long-term value creation.
- Diversity is at the core of CalSTRS as an organization and who we represent: more than 914,000 California educators, each with different ideas, strengths, interests, cultural backgrounds, etc.
- In today's global economy, it is vital that boards and companies include diversity of thoughts and perspectives to avoid being affected by "group think."
- Proven research by McKinsey & Company confirms that companies with diversity in their management staff and on their corporate boards deliver better financial results on average than companies that do not. Gender-diverse companies and ethnically diverse companies are 15 percent and 35 percent more likely to outperform their industry (see below chart).
- Recent empirical research demonstrating the correlation between strong HCM and shareholder returns supports this approach. A company that subverts the law or widely adopted international standards for HCM is exposed to operational, legal, regulatory, and reputational risks that may create roadblocks for both its existing operations as well as efforts to expand to other markets.

### How diversity correlates with better financial performance
*Likelihood of financial performance above industry median, by diversity quartile*

**15%**
more likely
to outperform

**35%**
more likely
to outperform

Gender-diverse companies          Ethnically diverse companies

*Source: 2015 "Why Diversity Matters" by McKinsey & Company, www.mckinsey.com*

## Affinity Group Overview and Engagement Results:

- **Human Capital Management Coalition:**
  This group of 27 institutional investors, representing over $2.6 trillion in assets, engages capital market participants and other stakeholders on the importance of investing in human capital as a driver of long-term performance to increase shareholder value through risk-adjusted sustainable returns.
  - > The HCM Coalition views human capital management as encompassing a broad range of corporate practices related to the development and management of a diverse workforce, employee engagement, training, compensation and a desired company culture of both diversity and inclusion.

- **Enhanced Diversity Initiative:**
  CalSTRS' "Enhanced Diversity Initiative" engages a select number of companies to understand their diversity programs and efforts to diversify executive staff and increase the pipeline of diverse board candidates.
  - > In December 2016, staff engaged with 10 financial and technology portfolio companies to encourage organizational diversity. These companies were identified due to historical trends within these industry sectors for ethnic and gender diverse individuals to be underrepresented in executive positions.

## Affinity Group Overview and Engagement Results (continued from page 1):

- **Thirty Percent Coalition:**
  CalSTRS and 20 large institutional investors are currently engaging 81 companies to foster greater board diversity by strengthening nominating and corporate governance policies and charters by embedding a commitment to diversity inclusive of gender, race, ethnicity and more; committing to include women and underrepresented minority candidates in every pool from which board nominees are chosen: expanding board director searches to include nominees from both corporate positions beyond the executive suite and nontraditional environments, including government, academia and non-profit organizations; and reporting on progress and any challenges experienced along the way.

  > As a result of the coalition's work in 2016, 18 companies did one or more of the following: appointed one or more women to their board; amended the company's corporate governance policies or charter to commit to diversity of gender, race and ethnicity; and expanded search and nominating processes to include women and underrepresented minority candidates.

- **California Initiative:**
  The California Initiative began after the Graduate School of Management at the University of California, Davis, in partnership with Watermark, published its 11th annual study: *California Women Business Leaders: A Census of Women Directors and Highest-Paid Executives.* CalSTRS, in conjunction with CalPERS, continues to use this study to engage California companies with no women directors.

  > In mid-2016, 87 companies were engaged, resulting in 12 doing one or more of the following:
    - Appointed one or more women to their board;
    - Amended the company's corporate governance policies or charter to commit to diversity of gender, race & ethnicity; and/or
    - Expanded their search and nominating processes to income women and underrepresented minority candidates.

- **Coalition of Four:**
  In November 2016, CalSTRS, along with two international institutional investors and a U.S.-based pension fund, collectively representing assets under management of more than $2.5 trillion, wrote letters to 61 S&P 500 companies to gain a better understanding of their various practices to ensure maximum board effectiveness and promote diversity. These companies either had no women on their board or only one woman, while also having a significant proportion of their directors serving on the board for lengthy periods of time. The companies with no women on their boards are outliers in the S&P 500, where more women are being appointed to boards on a regular basis.

  > Staff is currently receiving responses and plans to engage these companies, not only on board diversity, but to learn how they promote diversity at senior management levels and throughout their organization. It is imperative that companies invest today to develop a diverse pipeline of talent.

- **Diverse Director DataSource — 3D:**
  Developed in 2011 by CalSTRS and CalPERS, the Diverse Director DataSource, known as 3D, offers shareholders, companies and other organizations a resource to locate and recruit diverse individuals whose experience, skills and knowledge qualify them to be a candidate for a director's seat.

  > Recently, CalSTRS and CalPERS announced that 3D will now be available through the Equilar Diversity Network. Launching 3D on Equilar's Diversity Network showcases the depth and availability of qualified, diverse directors. The Diversity Network is designed to connect candidates from various diversity organizations with corporate boards. Moving 3D to Equilar comes as CalPERS and CalSTRS continue to make strides in exercising their shareholder positions to strongly reinforce corporate board diversity. Sourcing candidates from multiple Equilar databases, including 3D, should further expand outreach and consideration of diverse candidates.

## Regulatory Engagement:

- Regulatory engagement is an ongoing focus with continuous engagement with the SEC regarding a rulemaking petition to require board member disclosures in a company's proxy to evaluate the nominees' gender, racial and ethnic diversity, and skillsets to oversee the company's long-term business strategy.



California State Teachers' Retirement System | P.O. Box 15275 | Sacramento, CA 95851-0275 | CalSTRS.com                   5/25/17

# BOARD GOVERNANCE RESEARCH

## WOMEN ON BOARDS OF PUBLIC COMPANIES HEADQUARTERED IN CALIFORNIA 2017 REPORT

### Introduction

Corporate board diversity has garnered much attention in recent years as investors and the broader public have become aware of the benefits of having a diverse board. Studies have shown that companies with higher levels of gender diversity have stronger financial performance[i][ii], stronger governance practices and a more engaged workforce[iii]. Investors of all types have been putting pressure on corporate boards to increase the number of women on their boards through numerous avenues, including letter-writing campaigns, direct conversations with board members, and the submission of shareholder proposals.

While other countries have mandated specific percentages of board seats that must be held by women, the United States has not done so. However, California took the lead on this front in 2013 as the first state to pass a resolution calling on boards of publicly-traded companies based in the state to increase the level of gender diversity among the members of their boards of directors by passing Senate Concurrent Resolution No. 62 in 2013. The non-binding resolution encouraged companies based in California to have a specified number of female directors—from one to three women directors—depending on the size of the board, within the following three years. Although only about 20% of the companies headquartered in California met the goals set forth in the resolution, it achieved at least three goals by: 1) encouraging discussion regarding board diversity among corporate directors and other leaders; 2) supporting institutional investors' initiatives targeting companies lacking board diversity; and 3) setting an example for other state legislatures to call on companies based in their states to improve board diversity.

This report supports these important goals by presenting the current state of gender diversity on the boards of those publicly-traded companies which are included in the Russell 3000 Index and headquartered in California.

1

## Methodology and Study Companies

This report presents the findings of an analysis, current as of June 30, 2017, of the gender diversity of the boards of directors of the 445 publicly-traded companies headquartered in California in the Russell 3000 Index[1]. Throughout this report we refer to these companies as the "California companies". These 445 companies had 3,645 board seats.

The analysis was conducted by Board Governance Research LLC, a research firm focused on corporate board practices and director demographics. The data analyzed is based on information filed by the companies with the Securities Exchange Commission as of June 30, 2017, and was provided by Equilar Inc., an executive compensation and corporate governance data firm.

---

[1] The Russell 3000 Index is maintained by FTSE Russell and it includes roughly 98% of the value of the US stock market. The number of Russell 3000 companies as of June 30, 2016 used in this report is under 3000 due to mergers, acquisitions, bankruptcies, going-private transactions, etc.

## Gender Diversity of California Company Boards

Companies headquartered in California lag behind companies across the United States when it comes to gender diversity in the boardroom. Only 15.5% of California company board seats are held by women, while 16.2% of board seats in the Russell 3000 Index are held by women.

California companies are more likely to have no women on their boards when compared to the companies in the Russell 3000 Index. As shown in the chart below, more than one-quarter (26.1%) of California companies have no women directors serving on their boards. California companies are also less likely to have two or more female directors.

### Number of Women on Boards



☑ Russell 3000 Companies (n=2,815)    ☑ California Companies (n=445)

3

63

## Comparison by Company Size

Smaller companies are more likely to lack female directors. Among the 50 California companies with the lowest revenues, only 8% of the board seats are held by women. Nearly half (48%) of these smaller companies have no female directors.  On the other hand, all of the 50 California companies with the highest revenues have at least one female director and 23% of their board seats are held by women.

### Number of Women on Boards
#### Comparison by Company Size*



■ Largest 50 CA Companies     ■ Smallest 50 CA Companies
* As measured by 2015 revenues

In general, larger companies are often the first to adopt changes in corporate governance practices, and that has been the case with gender diversity in the boardroom.   The difference in the number of female directors based on board size may also be driven by the fact that the larger companies are more likely to receive pressure from shareholders to increase board diversity.

4

## Comparison by Board Size

Larger boards are more likely to have more female directors. While some may argue that the higher number of board seats available on larger boards leads to more opportunities for women to serve, others argue that women should be present in every boardroom – no matter the number of directors.

As shown in the charts below, California companies follow the pattern of larger boards having more female directors. In fact, fewer than one in ten (7.7%) of the directors serving on California company boards with five or fewer directors are women. Furthermore, smaller boards are much more likely to have no women on their boards, with more than two-thirds (68.8%) of the smallest California company boards having no female directors.

### % of Directors who are Female
#### Comparison by Board Size



### % of Boards with No Female Directors
#### Comparison by Board Size



5

65

## Comparison by Industry[2]

Since women make the majority of consumer spending decisions in the U.S., it can be argued that the all of the companies in this the Consumer Discretionary industry should have female voices in the boardroom. However, many experts say that companies in all industries benefit from having women on their boards. In fact, the Consumer Discretionary industry does have the highest percentage of female directors at 18.6%. These companies are also more likely to have more women serving on each board. Nearly one-quarter (24%) of these companies have three or more female directors.

The California companies in the Health Care industry, one of the dominant industries in the state, have the lowest percentage of female directors. Only 12.8% of the board seats of these companies are held by women. Furthermore, about one-third (33.9%) of these companies have no women on their boards. These low numbers are driven by the fact that 40% of Biotechnology companies - which comprise half of the California Health Care companies - have no female directors.

The most dominant industry among California companies, Information Technology, is also lacking in board diversity. Only 16.3% of the board seats of California Information Technology companies are held by women. Furthermore, almost one-quarter (23.2%) of the Information Technology companies headquartered in California have no female directors.

---

[2] The company industries were determined using the Global Industry Classification Standard (GICS), which was developed by MSCI, Inc. and Standard & Poor's to categorize all major public companies.

6

## % of Directors in Industry who are Female
### Comparison by Industry



Real Estate (n=28) — 13.5%
Information Technology (n=142) — 16.3%
Industrials (n=29) — 17.1%
Health Care (n=124) — 12.8%
Financials (n=46) — 14.8%
Consumer Staples (n=10) — 17.7%
Consumer Discretionary (n-46) — 18.6%

## % of Boards with No Female Directors
### Comparison by Industry



Real Estate (n=28) — 25.0%
Information Technology (n=142) — 23.2%
Industrials (n=29) — 27.6%
Health Care (n=124) — 33.9%
Financials (n=46) — 28.3%
Consumer Staples (n=10) — 10.0%
Consumer Discretionary (n-46) — 17.4%

7

## Comparisons by Region

The companies in the three regions of California (Bay Area, Central Coast & Central Valley, and Southern California) were analyzed to determine if the prevalence of female directors is different throughout the state.  As shown in the chart below, the companies in the Bay Area have the highest percentage of board seats held by women, at 17.6%.

Southern California is the region with the lowest prevalence of female directors. In fact, one-third (33%) of the California companies headquartered in Southern California have no female directors.



### % of Directors who are Female
Comparison by Region



### % of Boards with No Female Directors
Comparison by Region

8

68

## Comparisons by County

To provide a more detailed analysis, the California companies were broken down by the county where their headquarters are located. The chart below presents those counties in which at least ten California companies are headquartered.

The California companies headquartered in San Francisco have the highest prevalence of female directors, at 21.2%. The companies headquartered in Orange, Los Angeles and San Diego companies have the lowest percentage of board seats held by women. Only approximately 12% of board seats in each of these counties are held by women.

The county of San Diego, where a large portion (42.9%) of the companies studied are in the Biotechnology industry, has the highest percentage of companies with no female directors. In fact, 40.8% of companies headquartered in San Diego County have no female directors.

### % of Directors who are Female
#### Comparison by County

| County | % |
|---|---|
| San Francisco (n=32) | 21.2% |
| Santa Clara (n=100) | 16.9% |
| San Mateo (n=56) | 16.9% |
| Alameda (n=36) | 15.4% |
| San Diego (n=49) | 12.9% |
| Los Angeles (n=84) | 12.7% |
| Orange (n=44) | 12.4% |

9



10

70

## About the Author

**Annalisa Barrett** is the founder and CEO of Board Governance Research LLC, which provides independent research on corporate governance practices, board composition and director demographics. Ms. Barrett has nearly 20 years of experience in the field of corporate governance. She is the author of numerous reports and articles on corporate governance topics and is invited to speak on governance matters at national conferences throughout the year. She has been quoted in numerous periodicals and her research has been featured on the front page of the Wall Street Journal.

Ms. Barrett is also a full-time Clinical Professor of Finance at the University of San Diego's School of Business. She teaches graduate courses in Corporate Governance and undergraduate courses in Financial Statement Analysis and Personal Finance. In addition, she is a Senior Advisor for ValueEdge Advisors, which was founded by corporate governance leaders Richard Bennett, Robert AG Monks and Nell Minow to advise institutional investors regarding effective corporate governance engagement to preserve portfolio value and diminish risk.

Previously, Ms. Barrett was Vice President and Senior Research Associate at The Corporate Library, where she led the firm's research on the effectiveness of the board of directors. Before joining The Corporate Library, Ms. Barrett was a Research Consultant at Towers Perrin (now Willis Towers Watson). Prior to that, she spent several years in the Family Wealth Planning practice of Arthur Andersen.

In 2008, Ms. Barrett was named a Millstein Rising Star in Corporate Governance. She holds an MBA, with distinction, from the Ross School of Business at the University of Michigan. She, her husband and their two children live in San Diego, California.

*For more information contact:*
Annalisa Barrett
Founder & CEO
Board Governance Research LLC
annalisa@boardgovernanceresearch.com
www.BoardGovernanceResearch.com
@Annalisa_BGR

# Endnotes

[i] Eastman, M., Rallis, D. & Mazzucchelli, G. (2016). *The Tipping Point: Women on Boards and Financial Performance*. MSCI ESG Research LLC, retrieved from MSCI website: https://www.msci.com/www/blog-posts/the-tipping-point-women-on/0538249725

[ii] Dawson, J., Kersley, R., & Natella, S. Credit Suisse Research Institute, (2014). *The CS Gender 3000: Women in senior management*. Retrieved from Credit Suisse AG website: https://publications.credit-suisse.com/tasks/render/file/index.cfm?fileid=8128F3C0-99BC-22E6-838E2A5B1E4366DF; See also: Dawson, J., Kersley, R., & Natella, S. Credit Suisse Research Institute, (2016). *The CS Gender 3000: The Reward for Change*. Retrieved from Credit Suisse AG website http://publications.credit-suisse.com/tasks/render/file/index.cfm?fileid=5A7755E1-EFDD-1973-A0B5C54AFF3FB0AE

[iii] McElhaney, K. A., & Mobasseri, S. (2012). Women create a sustainable future. Research sponsored by KPMG with Women Corporate Directors, Center for Responsible Business, Haas School of Business, University of California, Berkeley. Berkeley, CA.

12

# SENATE COMMITTEE ON INSURANCE, BANKING AND FINANCIAL INSTITUTIONS
### Senator , Chair
### 2017 - 2018 Regular

| | | | |
|---|---|---|---|
| **Bill No:** | SB 826 | **Hearing Date:** | |
| **Author:** | Jackson | | |
| **Version:** | January 3, 2018   Introduced | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | Eileen Newhall | | |

### Subject: Corporations: boards of directors

**SUMMARY**   Requires publicly held corporations with their principal places of business located in California to have at least one woman on its board of directors as of December 31, 2019 and to have a least two women on its board (if the corporation has five directors) or at least three women on its board (if the corporation has six or more directors), effective July 1, 2021.  Beginning July 1, 2019, requires the Secretary of State to review these corporations to determine the number of women currently serving on their boards and to impose fines for violations of the bill, as specified.

## DIGEST

Existing law

1) Provides for the General Corporation Law (Corporations Code Section 100 et seq.). Defines a domestic corporation as a corporation formed under the laws of this state (Corporations Code Section 167) and as a foreign corporation as a corporation other than a domestic corporation (Corporations Code Section 171).

2) Further provides that a foreign corporation, as used in Chapter 21 of the General Corporation Law, does not include a corporation chartered under the laws of the United States.  Thus, for certain purposes, a foreign corporation may be a corporation formed under the laws of another state, but for other purposes (specifically, for purposes of Chapter 21, which this bill proposes to amend), a foreign corporation refers to a corporation incorporated in another country.

3) Provides, pursuant to an extensive body of common law, that the board members of a corporation have a fiduciary duty to that corporation.

This bill

1) Contains findings and declarations regarding the relative lack of women on corporate boards, the likelihood that this gender disparity will exist for at least the next forty to fifty years if proactive steps are not taken to achieve gender parity, and findings that adding women to corporate boards increases the effectiveness of those boards and the performance of those corporations.

2) Requires each publicly held corporation with its principal place of business in California, including foreign corporations that are publicly held corporations, to have

at least one woman director, commencing December 31, 2019, and provides that if no director retires from the board before December 31, 2019, or an open seat does not otherwise occur before this date, the board shall increase its authorized number of directors by one, and that seat shall be filled by a woman.

3) Defines publicly held corporations as corporations with outstanding shares listed on the New York Stock Exchange, NYSE Amex, NASDAQ Global Market, or NASDAQ Capital Market.

4) Commencing July 1, 2021, increases the required number of female board members for corporations with more than four board members, as follows:

    a) If the authorized number of directors is six or more, the corporation must have at least three female directors;

    b) If the authorized number of directors is five, the corporation must have at least two female directors.

5) Provides that its provisions apply to a publicly held, foreign corporation to the exclusion of the law of the jurisdiction in which that foreign corporation is incorporated.

6) Requires the Secretary of State (SoS) to review publicly held corporations subject to the provisions of the bill annually, beginning on July 1, 2019, to determine the number of women serving on their boards and note changes in that number since the prior fiscal year.

7) Authorizes the SoS to impose fines for violating the provisions of this bill as summarized below and to use the fines collected to offset the cost of administering the bill, subject to appropriation by the Legislature:

    a) For a first violation, an amount equal to the average annual cash compensation of the corporation's directors.

    b) For a second or subsequent violation, an amount equal to three times the average annual cash compensation of the corporation's directors.

## COMMENTS

1) Purpose of the bill: >


2) Background: According to NASDAQ, there are currently 761 publicly traded companies headquartered in California, including 510 traded on NASDAQ, 216 traded on the NYSE, and 35 on AMEX (https://www.nasdaq.com/screening/companies-by-region.aspx?region=North+America&country=United+States&state=CA).

**SB 826** (Jackson)                                                    Page **3** of **3**

3) Would An Alternate Approach Be Preferable?

4) Support >

5) Opposition >

6) Amendments

    a. Would be helpful for the SoS to document the number of corporations that move their headquarters out of state following enactment of the bill.

    b. Not clear to which foreign corporations the bill applies. Although there were 499 foreign companies traded on the NYSE and AMEX as of February 28, 2018, it is unclear how many of these have their principal places of business located in California. It is also unclear whether California can regulate these companies "corporation to the exclusion of the law of the jurisdiction in which that foreign corporation is incorporated," as this bill purports to do.

    c. Not clear how violations are counted. If a corporation is required to have a female director as of December 31, 2019 and fails to have one as of January 1, 2021, does that count as one violation (failure to have one required director) or as two violations (failure to have a required director in each of two different fiscal years).

7) Prior and Related Legislation

    a. SB 984 (Skinner): Requires the composition of state boards and commissions to be comprised of at least 50% women and requires the SoS to disclose the gender composition of each state board and commission on its Internet web site. Double-referred to

**POSITIONS**

Support

>

Oppose

>

-- END --



March 13, 2018
Senator Hannah-Beth Jackson
State Capitol, Room 2032
Sacramento, CA 95814

**Re: Senate Bill 826 (Jackson and Atkins) – SUPPORT**

Dear Senator Jackson:

As chief executive officer and co-founder of Sunrun Inc., I write to express my support for SB 826 and to personally try to help advance this bill. Sunrun is the largest dedicated residential solar, storage and energy services company in the United States. We are proudly headquartered in California, where many of our customers and employees reside.

I am committed to ensuring that diversity and inclusion are core values at Sunrun. I encourage equal opportunity for women in boardrooms and believe that California should lead the nation in gender equality. Sunrun applauds your vision and leadership to create the structural changes needed to realize equal rights for women in the workplace and throughout society.

As one of the few female CEOs in the energy industry, I recognize the challenges many women must overcome as they try to grow in their careers, despite having equivalent - and sometimes superior - capacity for success as men. Like many other women, I have worked diligently to advance along the way. Before Sunrun, I worked at Summit Partners, where, as one of few female venture capitalists, I completed investments with an aggregate market value of over $900 million in the financial services and technology sectors. I was named one of *Fast Company's* Most Creative People in Business in 2013 and *Forbes'* Women to Watch in 2015.

With Sunrun co-founder Ed Fenster, I have seen my hard work pay off. We invented the "solar as a service" business model that unlocked consumer demand for clean, affordable energy direct from residential rooftops. Today with more than $3 billion in installed solar systems across 22 states and the District of Columbia, Sunrun is revolutionizing how consumers get electricity, and as of 2017, we have added energy storage to the products we offer in California. I'm incredibly proud of all of these achievements.

In addition to these personal career milestones, I am also grateful that at Sunrun, women are paving the way for future generations. Working women and those returning to the workforce have a purpose and place here. In 2017, *Comparably* rated Sunrun as a Best Company for Women to work. I am also happy to report that Sunrun has four women on its nine member board, exceeding the minimum requirements that SB 826 would set. Having gender diversity on our board and in our workforce has fueled our innovation and helped us make better decisions.

For all these reasons and more, I am proud to offer Sunrun's support for SB 826. We celebrate your dedicated advocacy for women and hope that this legislation will increase female representation on boards for companies like Sunrun.

In solidarity,

Lynn Jurich
Chief Executive Officer

595 Market Street, 29th Floor · San Francisco, CA 94105



# CONSUMER ATTORNEYS OF CALIFORNIA

## *Seeking Justice for All*

| President | CEO • Chief Lobbyist | Legislative Director | Legislative Counsel | Staff Counsel | Political Director |
|---|---|---|---|---|---|
| Lee S. Harris | Nancy Drabble | Nancy Peverini | Jacqueline Serna | Saveena K. Takhar | Lea-Ann Tratten |

March 19, 2018

TO:   SENATOR HANNAH-BETH JACKSON

FR:   CONSUMER ATTORNEYS OF CALIFORNIA
        ADVOCATE CONTACT:  NANCY PEVERINI

RE:   <u>SB 826 (Jackson) SUPPORT</u>

The Consumer Attorneys of California supports SB 826, which is scheduled to be heard before the Senate Banking and Financial Institutions Committee on April 4, 2018.  SB 826 would require every publicly-held corporation in California, as specified, to have a minimum of one woman on its board of directors by the end of 2019. Beginning July 2021, SB 826 would additionally require a minimum of two women directors on boards with five independent directors and at least three women on boards with six or more independent directors.

Several recent studies, including a 2017 study by MSCI entitled *"Women on Boards"*, have revealed the significant economic benefits of gender equity and diversity on corporate boards. Despite these major economic benefits, which range from increased profits to more sustainable organizational structures, one-fourth of California's publically-held corporations still have no women on their board of directors. Women only hold 15.5% of board director seats in California's publically-held corporations, which is below the national average of corporations traded on the Fortune 1000 and Russell 3000 indexes.

SB 826 is a good first step to establishing gender equity in corporate boardrooms, thereby providing California and it's corporations with a host of economic benefits.

If you or a member of your staff would like to discuss this further, please contact us.

cc: Senate Banking and Financial Institutions Committee

## Legislative Department

770 L Street • Suite 1200 • Sacramento • CA 95814 • T (916) 442-6902 • F (916) 442-7734 • www.caoc.org

Pri Ind 1.

April 12, 2018

**Susanne Meline**
1453 Third Street Promenade, Suite 470
Santa Monica, CA  90401
smeline@francis4.com
310-260-9594

The Honorable Senator Steven Bradford
Chair, Senate Banking Committee
Inglewood, San Pedro

<u>Re: Support for SB 826 (Jackson, Atkins, Leyva)</u>
<u>Gender Diversity - Women on Corporate Boards</u>

Dear Senator Bradford:

California is famous for being ahead and not behind.  I was surprised to learn from the
National Association of Women Business Owners (NAWBO) that California publicly
traded companies lag national averages with respect to representation of women
serving on their boards of directors.  A quarter of California's public companies have no
women directors at all.  On average, California boards have only 15.5% women
directors, which lags behind the national Russell 3000 average of 16.5%, and
significantly behind the Fortune 1000 at 19.8%.

I'm sure that you are very familiar with this research, but it bears repeating that,
according to a recent study by management consulting firm McKinsey, "companies
where women are most strongly represented at board or top-management levels are
also businesses that perform the best in profitability, productivity, innovation,
governance, better performance and workforce engagement."  In The recent Credit
Suisse research report entitled "*CS Gender 3000: Progress in the Boardroom*" also
reaffirmed the leadership link between gender diversity and better results.  Since
California has a population that is 8 times the size of Norway and is the 5th largest
economy in the world, there is no state in which leveraging talented women would have
such a major impact.  California employees deserve to work at companies that are the
best they can be.  California retirees and other shareholders deserve to have the
businesses in which their monies are invested generate the best performance possible.
Our entire state benefits when innovation happens in an environment that is
simultaneously respectful of governance.

Notwithstanding the droves of highly educated and experienced women in California
who are well-qualified to serve as corporate directors, getting more women on boards of
directors is difficult.  Getting a board seat often means getting a board seat for life with
little turnover.  Even if a vacancy finally occurs, "[w]omen on the whole are outside the
trusted networks of public company boards," according to a February 2018 Wall Street

Journal article entitled *"Why Breaking into the Boardroom is Harder for Women"*. Taking into account the low rate of board turnover and the rate at which women are appointed to fill any such vacancies, it is expected to take over 50 years or two full generations for boards to reach gender parity. That is too long for California shareholders, employees and other constituents to wait in order to benefit from the incredible and underutilized human resource of women on boards.

Senate Bill 826 would advance gender representation on corporate boards by requiring each publicly-held corporation with its principal executive offices in California to have at least one woman on its board of directors by the end of 2019. If there's not a retirement or other open seat in 2019, then the board must simply "add a seat for a woman director." Boards add or reduce seats whenever they choose. This solves the problem that open board seats rarely happen. I myself was able to get my first board seat when the company added a 5th seat to its board of directors.

In addition, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with six or more directors. For any company that does not comply, the California Secretary of State will be authorized to impose fines annually - an amount at least equal to the compensation that company pays its directors each year.

The immediate impact of Senate Bill 826 would be that the approximately 100 California companies that currently have no women directors would have to add a women director by 2019. There are ample qualified candidates to fill these roles, including me. I have experience sitting on the board of directors of a publicly traded Clean Technology company as well as on the board of a private Financial Technology company. I co-founded an investment advisory firm that specializes in value-based investing. I previously worked as an investment banker with Houlihan Lokey, a global investment bank serving corporations, institutions, and governments worldwide and practiced law in the corporate group of Jones Day - an international law firm that provides legal advisory services across multiple disciplines and jurisdictions. I am a Certified Director through the UCLA Anderson School of Management and a member of the National Association of Corporate Directors. I received my entire education through the California public school system having obtained a B.A from UCLA and a J.D. from the UC Hastings College of the Law.

It is rare to see proposed legislation that would benefit so many people and that has no downside. For this reason, those stated above and many others, I support SB 826. I urge you to pass this important legislation.

Sincerely,

*Susanne Meline*

Susanne Meline
Co-Founder, Francis Capital Management, LLC

pvt indiv

333 Hayes Street, Suite 203
San Francisco, CA 94102
415-864-3235
Fax: 415-864-0320
E-Mail: maypon@bbatax.com

M. Butterfield-Brown & Associates, Ltd.

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento CA 95816

RE:   SB 826 (Jackson/Atkins, Co-Author Leyva)
      Gender Diversity - Women on Corporate Boards - SUPPORT

Dear Senator Lara:

I am writing to respectfully request that you pass SB 826 (Jackson/Atkins, Co-Author Leyva) from the
Suspense File.

SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in
California.  Research shows that companies with women on their boards are significantly more profitable
and more productive than companies with all-male boards.

I write in support of the many California women business owners who are experienced and capable leaders
and who will make excellent candidates to serve on corporate boards.

Please allow SB 826 to proceed to the Senate Floor.  Please help pass SB 826 on for the Senate floor vote.

Respectfully,

M Butterfield-Brown & Associates Ltd.

May Pon
President

cc:    The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

Enrolled to represent taxpayers
before the Internal Revenue Service

put indiv.

 **SAFEWORK CM**

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards -- SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates. Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,
SAFEWORK,CM

Rebecca Jones
President and CEO

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

20750 Ventura Blvd. Suite 330
Woodland Hills, CA 91364
818 716 0384   818 703 6486 fax
Safework@safeworkinc.com

105



a california *health* center

pvt ndiv.

2020 J Street, Sacramento, CA 95811
**Phone** 916.341.0575 Fax 916.498.9040
www.snahc.org

Thursday, May 24, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA  95816

**RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards
– SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense
File.  SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in
California.

The estimated costs of implementation were highly inflated by your staff.  We know that the costs to
implement SB 826 will be minimal and will be offset by fines or penalties collected for
noncompliance.  SB 826 is a very important bill to increase gender participation on the boards of publicly
traded corporations by adding a seat for a woman director.  SB 826 does not unseat male directors who
currently hold existing seats, but requires public companies whose primary headquarters are in the State
of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during
that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable
women leaders.  Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor.  California would be the first state in the nation to
require gender diversity on public company boards. Other states will follow.  California also has the
responsibility to shareholders and retirees because research shows that companies with women on their
boards are actually significantly more profitable and more productive than companies with all-male
boards.  Please pass SB 826 on for the Senate floor vote.  Thank you.

Respectfully,

Britta Guerrero
Chief Executive Officer

cc:      The Honorable Hanna-Beth Jackson
         The Honorable Toni Atkins, Joint Author
         The Honorable Connie Leyva, Co-Author

pvt indiv.

**Markoff Investments, LLC**
808 Wall Street
Los Angeles, CA 90014

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

May 24, 2018

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Linda Becker*

Linda Becker
Partner
Markoff Investments, LLC

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author



Simple Impact LLC

pvt indiv.

May 24, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards –
SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB
826 would add a seat for a woman director onto the boards of all publicly traded corporations headquartered
in California that don't currently have women directors. SB 826 does not unseat male directors who currently
hold existing seats, but requires public companies whose primary headquarters are located in the State of
California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that
year, then the board must elect a woman director of their choice for that open seat. .

The staff of the Appropriations Committee erroneously added inflated costs to SB 826, which may be the
reason the bill is stalled. Experts testified at the hearing May 7th that the costs to implement SB 826 will be
minimal and will be offset by fines or penalties collected for noncompliance. The pipeline of qualified women
candidates for boards is overflowing with experienced and capable women leaders. Many women business
owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require
gender diversity on public company boards. Other states will follow. California also has the responsibility to
shareholders and retirees because research shows that companies with women on their boards are actually
significantly more profitable and more productive than companies with all-male boards. Please pass SB 826
on for the Senate floor vote. Thank you in advance!

Respectfully,

Shannon M. Sutherland

Shannon "Shān" Sutherland, AIF*, AAMS*, ADPASM
Wealth Advisor, Founder
Portfolio Manager for Diverstiy Inclusion Investments
Simple Impact LLC

cc:     The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

(310) 773-4411  |  asutherland@simpleimpactllc.com  |  www.simpleimpactllc.com
2665 Main Street, Suite 240B  Santa Monica, CA 90405

Registered Representative and Investment Adviser Representative with/and offers securites and advisory services through Commonwealth
Financial Network©, Member FINRA/SIPC, a Registered Investment Adviser.
Fixed Insurance products and services offered through CES Insurance Agency or Simple Impact, LLC

pvt. u div.



SCHOOL OF BUSINESS

Olin Hall, 235
5998 Alcalá Park
San Diego, CA 92110-2492
P: (619) 260-4830
F: (619) 260 4891

MAY 24, 2018

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman director onto the boards of all publicly traded corporations headquartered in California that don't currently have women directors. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are located in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat. .

The staff of the Appropriations Committee erroneously added inflated costs to SB 826, which may be the reason the bill is stalled. Experts testified at the hearing May 7th that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance.

Respectfully,

Annalisa Barrett, MBA
Clinical Professor in Finance
School of Business Administration, University of San Diego
(858) 774-1212

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

109



Achieve gender equality with our wallets.

May 24, 2018

To: The Honorable Ricardo Lara

Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Stella Martinez McShera

founder and CEO of equallet
2633 Lincoln Blvd #723,
Santa Monica, CA 90405

110

*pvt indiv.*



**HIGHTOWER**

ACACIA WEALTH ADVISORS

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Alev Lewis
Managing Director, Partner
Acacia Wealth Advisors

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

Securities offered through HighTower Securities, LLC | Member FINRA SIPC MSRB | HighTower Advisors, LLC is a SEC registered investment advisor

# HUGHES & HUGHES
### A LIMITED LIABILITY PARTNERSHIP
### ATTORNEYS AT LAW
*Practice Limited to Family Law*

LISA HUGHES * ††
BRUCE HUGHES *
DAVID E. WALD §
----------------
KATHRYN YARNAL
STACEY STONE
CORI STOCKMAN
SARAH DAVIDSON
ANGEL CAMINO
BRANDON P. KELSEY

*Of Counsel*
RONALD G. BROWER

660 W. FIRST STREET
TUSTIN, CA 92780
(714) 538-5200

74-710 HIGHWAY 111
PALM DESERT, CA 92260
(760) 836-5200

*www.hughesandhughesca.com*

\* C.P.A. CALIFORNIA
§ PRINCIPAL
†† CERTIFIED FAMILY
   LAW SPECIALIST
----------------------------
KATHERINE NEAL
VICKY ZUBERI
JEANNETTE GARCIA
MATTHEW LACROIX
GEORGE PENICHE
PATRICIA SANTAMARIA
JAMES BRENNER

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

Re:    SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate
        Boards - SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the
Suspense File. SB 826 would require publicly traded corporations headquartered in California to
have a minimum of one woman on its board of directors.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable
women leaders. California would be the first state in the nation to require gender diversity on public
company boards. Research shows that companies with women on their boards are significantly
more profitable and productive than companies with all-male boards.

Please allow SB 826 to proceed to the Senate Floor.

Respectfully,

Vicky Zuberi
Associate Attorney
HUGHES & HUGHES, LLP

cc:    The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

112

 pvt. ndmdel

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on
     Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author
Leyva) from the Suspense File. SB 826 would add a seat for a woman to the
boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We
know that the costs to implement SB 826 will be minimal and will be offset by
fines or penalties collected for noncompliance. SB 826 is a very important bill to
increase gender participation on the boards of publicly traded corporations by
adding a seat for a woman director. SB 826 does not unseat male directors who
currently hold existing seats, but requires public companies whose primary
headquarters are in the State of California to add a seat for a woman before the
end of 2019. If there is a retirement of a director during that year, then the board
must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with
experienced and capable women leaders. Many women business owners would
be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first
state in the nation to require gender diversity on public company boards. Other
states will follow. California also has the responsibility to shareholders and
retirees because research shows that companies with women on their boards are
actually significantly more profitable and more productive than companies with

865 S. Figueroa St., Ste. 3345 • Los Angeles, CA 90017 • p. (213) 337-4965 e. sydavis@aegworldwide.com

all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Syndey Davis
Director, Global Diversity & Inclusion
Anshultz Entertainment Group, LLC.

cc:    The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

## Ann MacDougall
Senior Advisor, Encore.org



1-917-488-4717
E-Mail: amacdougall@encore.org Web: Encore.org

*put ndiv.*

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA  95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards –
SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense
File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in
California.

The estimated costs of implementation were highly inflated by your staff.  We know that the costs to implement
SB 826 will be minimal and moreover would be offset by fines or penalties collected for noncompliance.  SB
826 is a very important bill to increase gender participation on the boards of publicly traded corporations by
adding a seat for a woman director.  SB 826 does not unseat male directors who currently hold existing seats,
but requires public companies whose primary headquarters are in the State of California to add a seat for a
woman before the end of 2019.  If there is a retirement of a director during that year, then the board must elect
a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women
leaders.  Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor!  California would be the first state in the nation to require
gender diversity on public company boards. Other states will follow.  California also has the responsibility to
shareholders and retirees because research shows that companies with women on their boards are actually
significantly more profitable and more productive than companies with all-male boards.  Please pass SB 826
on for the Senate floor vote.  Thank you in advance!

Respectfully,

Ann MacDougall
Senior Advisor
Encore.org


cc: The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

prt - ndu

**BILLIE GREER**
**1111 S. Grand Ave.**
**Los Angeles, CA 90015**

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on Boards -- SUPPORT**

Dear Senator Lara:

I respectfully request that you allow SB 826 (Jackson/Atkins and co-author Leyva), which is presently held in the Suspense File, to proceed to the Senate floor for a vote. SB 826 would add a seat for a woman to the boards of publicly traded corporations whose primary headquarters are in the state of California.

The stated, estimated costs of implementation of this bill do not seem defensible. Rather, the costs are expected to be minimal and will be offset by fines or penalties collected for noncompliance.

SB 826 does not unseat male directors who currently hold existing seats, but rather requires these publicly held companies to add a seat for a woman before the end of 2019. Should a director retire during that year, then the board must elect a woman director of their choice for that open seat.

Not only is there gender inequality on corporate boards, research shows that companies with women on their boards are significantly more profitable and more productive than companies having none. The resulting, positive impact on the economy of California should not be ignored but celebrated.

Approval of this bill - the first of its kind in the nation -- would bolster California's record of being the most forward-looking state in the nation. When California leads, doing the right thing -- others follow. Please be part of that forward motion, by moving SB 826 out of Suspense.

Respectfully,

Billie Greer

Billie Greer
1111 S. Grand Ave.
Los Angeles, CA 90015

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

prt rdw

May 23, 2018
The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol, Sacramento, CA  95816

RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate
Boards – SUPPORT

Dear Senator Lara:

I'm writing to request that SB826 be passed from the Suspense File. SB 826 would add a seat for
women to the boards of publicly traded corporations headquartered in California.

The costs to implement this legislation would be minimal, in comparison to the impact it would
have on the status of women in the business world. Men will never learn to treat women
equally if they don't interact with women on equal footing. Research has shown that mixed
groups (men and women) make better decisions. When both genders are represented, it is
possible to expand the perspective of a publically traded corporation, and that makes that
corporation stronger.

There are so many women yearning to have the opportunity to contribute to their community
through the business world. Many women who are business owners are ready to serve. They
just need to have the door opened for them.

I know you to be a person who understands justice and fairness. Please allow SB 826 to proceed
to the Senate Floor. Women of color suffer the most under the current situation where all male
boards are very common and very few women are chosen to serve. This situation is NOT due to
a lack of super-qualified women. Let's have California lead the way in empowering women to
serve on more boards of publically traded companies.

I ask that you pass SB 826 on to the Senate floor where there can be a vote. It's the fair and just
thing to do. Thank you for considering my request.

Sincerely,

Rosanna Herber

Rosanna Herber
Member of the Women and Girl's Advancement Committee
Member of the Sacramento Stonewall Democratic Club
Member of Soroptimist International of Metropolitan Sacramento
cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

117

pit ndw.



CORNERSTONE
WEALTH ADVISORS, INC.

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate
Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the
Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations
headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to
implement SB 826 will be minimal and will be offset by fines or penalties collected for
noncompliance. SB 826 is a very important bill to increase gender participation on the boards of
publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male
directors who currently hold existing seats, but requires public companies whose primary
headquarters are in the State of California to add a seat for a woman before the end of 2019. If there
is a retirement of a director during that year, then the board must elect a woman director of their
choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable
women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation
to require gender diversity on public company boards. Other states will follow. California also has the
responsibility to shareholders and retirees because research shows that companies with women on
their boards are actually significantly more profitable and more productive than companies with all
male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Lucinda Salinas, CFP®, CLU®
Financial Advisor
Cornerstone Wealth Advisors, INC

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

WWW.CWAINVESTORS.COM

A Registered Investment Advisor   |   Asset Custodian : Charles Schwab & Co.

1808 ASTON AVENUE, NO. 150   |   CARLSBAD, CA 92008   |   T : 760-476-1376   |   F : 760-476-2718
24681 LA PLAZA, NO. 320   |   DANA POINT, CA 92629   |   T : 949-240-4411   |   F : 949-366-0903

# TERRY BAYER

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on Corporate Boards -- SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Terry Bayer*

Terry Bayer
Member, Board of Directors
California Water Service Group

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

274 Argonne Avenue                    Long Beach, CA 90803

# INNOVATIVE

TUB SOLUTIONS
*Transforming your bathtubs with the future in mind.*

9733 Caminito Doha ⊛ San Diego, CA 92131 ⊛ 858-442-4583

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Janis Stevens
President/CEO
Innovative Tub Solutions
858-442-4583
jstevens@innovativetubsolutions.com

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

120

pst rdiv.



May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Farrell

Paige Farrell
Owner, Endeavor Financial Planning

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

ENDEAVORPLANNING.COM          3814 AUBURN BLVD. STE. 70, SACRAMENTO, CA 95821          916.333-5760
ENDEAVOR FINANCIAL PLANNING IS A REGISTERED INVESTMENT ADVISORY DOMICILED IN THE STATE OF CALIFORNIA

*pvt. univ.*

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

*Language to cut and paste:*

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Lois F. Campton*

Lois F. Campton
President
Body and Breathe Corp
And
L.A.F. Data Management Corp

cc:   The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

p4 ndws



**U.S. TRUST**
Bank of America Private Wealth Management

Bank of America, N.A.

May 23, 2018

Dear Senator Lara,

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates. Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Rosemary L. Ringwald
Managing Director
U.S. Trust, Bank of America

CA9-159-02-02, 2049 Century Park East, Suite 200
Los Angeles, CA 90067

U.S. Trust operates through Bank of America, N.A., and other subsidiaries of Bank of America Corporation.
Bank of America, N.A. Member FDIC.

♻ Recycled Paper

123

pvt ndvvd



AS 9100-C AND ISO 9001:2008 CERTIFIED
*Woman Owned Small Business*

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Mina Doshi
President
INTA Technologies Corporation

cc:   The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

Page 1 of 2

pA included



*ABUNDANT ADMINISTRATIVE SERVICES*
2784 Homestead Road #346 • Santa Clara, CA 95051
(408) 983-1006 • www.abundantadmin.com

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Marit Fox*
CEO and President
Abundant Administrative Services

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

125

pot udv

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Glenda Marsh
Private citizen and owner of publicly traded stock

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author



KING
SCARLET

1241 Johnson Ave #126
San Luis Obispo, CA 93401

Dear Senator Lara,

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote.

Sincerely,

Alex Cervantes
Owner
King Scarlet LLC

cc:    The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

www.kingscarlet.com

127

 PVT ndv,

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

On behalf of Via Consulting Group, a boutique leadership development and gender parity
research organization headquartered in California, we respectfully request that you pass
SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would
require a publicly traded company headquartered in California to add a seat for a woman
director.

The estimated costs of implementing this bill were significantly overstated. We believe that
the costs to implement SB 826 will be minimal and will be offset by any fines or penalties
collected for noncompliance. This is a very important bill to increase gender diversification
on the boards of publicly traded corporations by adding a seat for a woman director. This
bill does not displace existing seats that are currently held by men. SB 826 requires the
board to add a seat for a woman.

**Via Consulting Group Supports SB 826 (Jackson/Atkins/Co-Author Leyva)** and
believes that this bill will benefit women-owned small businesses. If you have any
questions, please contact me directly at 916.601.1139 or
jennifer@viaconsultinggroup.com. Additionally, you may contact our legislative advocate in
Sacramento, Lori Kammerer, Kammerer & Company, at 916.441.5674 or 916.716.5674 at
LoriKammerer@gmail.com.

Please allow SB 826 to proceed to the Senate Floor.

Respectfully,

Jennifer C. Manuel
CEO
Via Consulting Group

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

p4 ndw



**plan**the
**world**

DESIGNERS OF EXTRAORDINARY EVENTS

121 Broadway Ave #665
San Diego, CA 92101

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

cc:   The Honorable Hanna-Beth Jackson, The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,
*Summer Sepulveda*
Plan the World
Founder & Owner



Hummingbird PR

2781 W. MacArthur Blvd., Suite B357 | Santa Ana, CA 92704 | Office: (714) 418-5770
Yumiko Whitaker | ywhitaker@hummingbirdpr.net | hummingbirdpr.net

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates. Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Yumiko Whitaker
Yumiko Whitaker
Owner
Hummingbird PR

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

pot ndv.

Senator Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate, State Capitol
Sacramento, CA 95816

SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity
Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I strongly urge you to pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the
Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded
corporations headquartered in California. A single seat, while important, would be a
modest requirement.

Since 2003 Norway has required that public companies fill at least 40% of their board
seats with women or risk dissolution. Iceland, Spain and France all require 40% of
seats be filled by women. Germany mandates women fill 30% of supervisory board
seats.

The costs to implement SB 826 will be minimal and will be offset by fines or penalties
collected for noncompliance. SB 826 is a very important bill to increase gender
participation on the boards of publicly traded corporations by adding a seat for a
woman director. SB 826 does not unseat male directors who currently hold existing
seats, but requires public companies whose primary headquarters are in the State of
California to add a seat for a woman before the end of 2019. If there is a retirement of a
director during that year, then the board must elect a woman director of their choice for
that open seat.

California is rich with highly qualified, experienced, and capable women leaders, many
of which are successful business owners.

Your leadership can insure SB 826 proceeds to the Senate Floor. California would be the
first state in the nation to require gender diversity on public company boards. Other
states will follow. California also has the responsibility to shareholders and retirees
because research shows that companies with women on their boards are actually
significantly more profitable and more productive than companies with all-male
boards. Thank you for your leadership in advancing SB 826 to the Senate floor vote.

Respectfully,

Wendy J. Hoyt
Business Owner

c:    The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author

131

*pst wdu*

# AMPAC
## TRI-STATE
## CDC

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards –
SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense
File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in
California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to
implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB
826 is a very important bill to increase gender participation on the boards of publicly traded corporations
by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing
seats, but requires public companies whose primary headquarters are in the State of California to add a
seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the
board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable
women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to
require gender diversity on public company boards. Other states will follow. California also has the
responsibility to shareholders and retirees because research shows that companies with women on their
boards are actually significantly more profitable and more productive than companies with all-male
boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully submitted,

Hilda Kennedy
Founder/President
cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

AmPac Tri-State CDC, Inc.
22365 Baton Rd, Suite 304
Grand Terrace, CA 92313
909-915-1706 (o); 909-752-3140 (fax)
www.ampac.com
info@ampac.com - email

*put ndw.*





The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on Corporate Boards -- SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Celeste Voly Ford*

Celeste V. Ford
CEO/Founder
Stellar Solutions, Inc

*250 Cambridge Avenue, Suite 204 Palo Alto, CA 94306*
*Phone: 650-473-9866  Fax: 650-473-9867*

133

**WCMP**
Women's Collaborative Mentoring Program



❋ The Valley Economic Alliance

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

### RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:
I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.
The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.
The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.
Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Gail Lara
Executive Director
WCMP Women's Collaborative Mentoring Program
gail.lara@womenscollaborativementoring.com
818 359-2692
5121 Van Nuys Blvd, Suite 200
Sherman Oaks, CA 91403
cc:
The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author



pA ndw

**DYNAM**
CONSULTING

3943 Irvine Blvd, #617
Irvine, CA 92602

(949) 533-8832

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on
Corporate Boards -- SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from
the Suspense File. SB 826 would add a seat for a women to the boards of publicly
traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that
the costs to implement SB 826 will be minimal and will be offset by fines or penalties
collected for noncompliance. SB 826 is a very important bill to increase gender
participation on the boards of publicly traded corporations by adding a seat for a woman
director. SB 826 <u>does not unseat</u> male directors who currently hold existing seats, but
requires public companies whose primary headquarters are in the State of California <u>to
add a seat</u> for a woman before the end of 2019. If there is a retirement of a director
during that year, then the board must elect a woman director of their choice for that open
seat.

The pipeline of qualified women candidates for boards is overflowing with experienced
and capable women leaders. Many women business owners would be potential
candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state
in the nation to require gender diversity on public company boards. Other states will
follow. California also has the responsibility to shareholders and retirees because
research shows that companies with women on their boards are actually significantly
more profitable and more productive than companies with all-male boards. Please pass
SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Theresa M. Ashby, PHD, MBA
CEO
Dynam Consulting

cc:   The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author

p.t uldv,

# Resource Solutions of CA

4712 Admiralty Way Unit 633
Marina del Rey, CA 90292

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on
Corporate Boards -- SUPPORT

Dear Senator Lara:
I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from
the Suspense File. SB 826 would add a seat for a women to the boards of publicly
traded corporations headquartered in California.
The estimated costs of implementation were highly inflated by your staff. We know that
the costs to implement SB 826 will be minimal and will be offset by fines or penalties
collected for noncompliance. SB 826 is a very important bill to increase gender
participation on the boards of publicly traded corporations by adding a seat for a woman
director. SB 826 does not unseat male directors who currently hold existing seats, but
requires public companies whose primary headquarters are in the State of California to
add a seat for a woman before the end of 2019. If there is a retirement of a director
during that year, then the board must elect a woman director of their choice for that
open seat.
The pipeline of qualified women candidates for boards is overflowing with experienced
and capable women leaders. Many women business owners would be potential
candidates.
Please allow SB 826 to proceed to the Senate Floor! California would be the first state
in the nation to require gender diversity on public company boards. Other states will
follow. California also has the responsibility to shareholders and retirees because
research shows that companies with women on their boards are actually significantly
more profitable and more productive than companies with all-male boards. Please pass
SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,
Schenae
Schenae Rourk
President
Redwood Resources and Resource Solutions of CA

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

**Resource Solutions of CA**

136



PHOTOGRAPHY

8941 Atlanta Ave STE 148 Huntington Beach, CA    *S*HOWING YOUR BUSINESS IN THE BEST LIGHT...

May 22, 2018

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but it does require public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Best Regards,

Linda Joseph-Turek
Silver Moon Photography, owner

pA NAW



## COAST VIEW
### FULL SERVICE PLUMBING

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

138

Respectfully,

Ms. Rickie Moore
President/Contractor
Coast View Plumbing, Inc
CSLB C-36 991276
MBE VON 15040009


cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author



Eve Gumpel

*Good Writing MATTERS*

1119 Aspen St.
Santa Ana, California 92705
(714) 541-8765
eve@evegumpel.com

DA ndw.

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

It has come to my attention that SB 826 (Jackson, Leyva and Co-Author Leyva) has been relegated to the Appropriations Suspense File because of inaccurate information about how much it would cost to implement. Please allow this bill – which would add a seat for a women to the boards of publicly traded corporations headquartered in California – to proceed to the Senate Floor.

The estimated costs of implementation were highly inflated at the hearing held on Monday, May 7. We have access to updated, verified research for FREE – the only expense the state would have to incur would be staff costs, maybe $25,000. Moreover, any costs would be offset by fines or penalties for noncompliance.

Research shows that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards.

SB 826 does not unseat male directors currently hold existing seats. Instead, it requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If a director retires

140

during that year, then members of the board must elect a woman director of their choice for that open seat.

Capable, qualified and experienced women leaders are ready and able to serve on boards. Many women business owners are potential candidates.

If passed, SB826 would make California the first state in the nation to require gender diversity on public company boards. Other states will follow. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Eve Gumpel
Owner
Good Writing Matters

cc:   The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author



**BARGAS**
Environmental Consulting

Put nav.

April 12, 2017

The Honorable Steven Bradford
Chair, Senate Banking and Financial Institutions
California State Senate
State Capitol
Sacramento, CA 95814

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Sponsor Support
from Angela DePaoli

Dear Senator Bradford:

As a woman business owner in the State of California I am writing to express my belief and support that
gender diversity on corporate boards is a good public policy. California is the 5th largest economy in the
world and should set an example globally for enlightened business practices. It is therefore important
that California ensure that women are included in board discussions and decisions that affect corporate
actions and profitability. The amazing truth, is that a quarter of the public companies in our state have
no women directors on their boards.

If you have any questions, please contact me directly at 916-541-1385 or email at
adeapoli@bargasconsulting.com.

Sincerely,

Angela L DePaoli
President / Founder

put new

April 13, 2018

The Honorable
SENATOR STEVEN BRADFORD
CHAIR Senate Banking Committee;
INGLEWOOD, SAN PEDRO

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on
Corporate Boards

Dear Senator Bradford:

I am writing to ask for your support of SB 826 (Jackson, Atkins, Leyva). As background, I am a female executive currently serving as a Director on my second California-headquartered public company Board Of Directors. I currently serve on the California Water Services Group board and previously served on the board of Apria Healthcare. I have made a personal commitment to support getting more women on boards of California companies because it is good for California.

**Most people don't realize that 25% of California's public companies still have no women directors.** California companies average only 15.5% women directors, and lag behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%.

Among the counties in the state: **Los Angeles, Orange County and San Diego Counties have the lowest percentage of women directors (12%).** Silicon Valley (Santa Clara County) has 16% and San Francisco County has the highest at 21%.

Why is SB826 so important?

**Research proves that when women serve on public company boards, the profitability and productivity of those companies is higher than comparable companies with all men on boards.**

California is the 6th largest economy in the world and can set an example globally for enlightened business governance practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. The life savings of retirees and taxpayers whose pensions are invested by CalPERS and CalSTRS deserve the additional scrutiny and protection provided by women on boards.

California would lead the way as the first state in the union to have such a law. To have more women on corporate boards is a serious business issue -- and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men. But research also

143

says it will take 50 years to achieve parity unless something proactive is done!
SB 826 is that crucial, proactive step.

**Are there really enough qualified women to sit on these boards?**

The answer is of course -Yes! Since there are 100 California companies in the
Russell 3000 with NO women directors currently, a minimum of 100 new women
directors would be required in 2019. According to the 2016 study by UC Davis,
there are 191 women C-suite executives among the state's largest companies,
plus at least 200 qualified women CEOs of their own companies. That totals
almost 400 women of all ethnic backgrounds who could be considered for just
100 seats. There are many more public companies in CA--still too small to be
listed in the Russell 3000--that would benefit by adding women directors
including private-equity-held companies go for an Initial Public Offering (IPO).

**How does SB 826 address the issue?**

Senate Bill 826 would advance gender representation on corporate boards by
requiring each publicly-held corporation with its principal executive offices in
California to have at least one woman on its board of directors by the end of
2019. If there's no retirement or other open seat in 2019, then the board must
simply "add a seat for a woman director." Boards can add or reduce seats. This
solves the problem of too few open board seats. Some board members serve "for
life" even beyond the generally accepted board retirement age of 75. And when
an opening is expected, male candidates are confidentially expecting their friends
on the board to select them. The whole process is very secretive, so that Wall
Street isn't privy to those being considered.

Additionally, by the end of 2021, the bill requires a minimum of two women
directors on boards with five directors, and at least three women on boards with
six or more directors. For any company that does not comply, the CA Secretary
of State will be authorized to impose fines annually—an amount at least equal to
the compensation that company pays its directors each year.

I urge you to pass this important legislation. For questions, please contact the
NAWBO California Legislative Advocate, Lori Kammerer on her cell at
916.716.5674, office at 916.441.5674 or email lorikammerer@gmail.com

Sincerely,

Terry Bayer

terrypbayer@gmail.com

274 Argonne Avenue

Long Beach 90803

144

not handel



April 15, 2018

**The Honorable Senator Steven Bradford, Chair**
Senate Banking and Financial Institutions Committee
State Capitol
Sacramento, California

### SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Support

Dear Senator Bradford and Committee Members:

I am the owner and President of Sagent. We use the tools of marketing, public relations and advertising to help public agencies, non-profits and "companies with a conscience" to motivate people to make healthier, safer, more community-conscious choices.

I am writing to urge you to support SB 826, to set California on course to end the longstanding, unwarranted and economically harmful shortage of women on corporate boards of directors. California companies average only 15.5% women directors, lagging behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%. A quarter of California's public companies have no women directors at all.

- Research shows that the profitability and productivity of companies with women board members is higher than comparable companies with all men on their boards.
- Corporations can comply without displacing existing board members, by adding a seat if there are no retirements or other vacancies.
- SB 826 phases in the minimum standard, starting with a requirement for just one woman director beginning in 2019.
- Privately-held corporations are not affected. Only publicly-held companies with their principal offices in California must comply.
- There are plenty of qualified women. There are more than a million and a half woman business owners in California. According to a UC Davis study, there are at least four times as many qualified women in California as there are large (Russell 3000) companies with no women board members. And many more outside of California, of course.

California should set an example for other states and other world economies by moving to end the perpetual shortfall of women on the boards of publicly-held corporations. This is an important step for California's economy and for our business culture. I urge your "Yes' vote.

Sincerely,

*Anne C. Staines*

Anne C. Staines
President

P√t ∩dℓ↩

# *Red Ticket Events*

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

Dear Senator Lara:

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

My name is Lynnette Coachman and I am a woman business owner residing Ontario, California.

I respectfully request that you pass SB 826 (Jackson, Atkins, and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Lynnette Coachman*

Lynnette Coachman
Owner
Red Ticket Events

cc: The Honorable Connie Leyva, Co-Author

---

www.redticketevents.com     *909-529-1248*     lynn@redticketevents.com

146



## International Cosmetics
The service you don't think
you need...until you do!

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Janet Winter Blaschke
CEO, ICRS
cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

United States
International Cosmetics & Regulatory Specialists, LLC
947 Manhattan Beach Blvd. Suite A., Manhattan Beach, CA 90266 USA
+1 310.545.3223

Intlcosmetics.com

United Kingdom
International Cosmetics & Chemical Services, LLC
3 Brock Business Centre, West London UB8 2FX
+44 (0)1753 680980



river
coyote
design

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Denise Pane
Owner
River Coyote Design

cc:  The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

1

148



**YNot Web**
P.O. Box 1963
Fair Oaks, CA 95628-1963

Phone: (916) 486-1838
E-mail: info@ynotweb.com
URL: http://www.ynotweb.com

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB826 (Jackson/Atkins, Co-Author Leyva) Board of Directors Gender Diversity– SUPPORT

Dear Senator Lara,

As a California business owner and resident, I respectfully request that you pass SB-826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB-826 would add a seat for at least one woman to the board of directors of publicly traded corporations headquartered here in California.

I believe the estimated costs of implementation were *highly* inflated by your staff. From readily available information, we know that the costs to implement SB-826 will actually be minimal and will be easily offset by fines or penalties collected for noncompliance. SB-826 is an extremely important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director where there is none. SB-826 does not unseat **any** male directors who currently hold existing seats, rather requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

With so many experienced and capable women leaders right here in California, this task is not difficult. The number and variety of qualified women candidates for boards is more than abundant. Many of the *1.3 million women business owners* could be among the potential candidates.

California has the ability to take the lead in our nation. Research shows that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards. Some of our largest state pension funds have made the request for increased diversity, including gender diversity, on boards in their role representing California worker's investments. I personally have begun to filter my own investment portfolio based on gender diversity of company boards.

Please allow SB-826 to proceed to the Senate Floor! California could be the first state in the nation to require gender diversity on public company boards and other states will follow. Please pass SB-826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Kammy Caruss
President
YNot Web, Inc.

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

On behalf of Small Business California and its network of more than 5,000 employers who
represent 3.8 million small businesses in this state, we respectfully request that you pass
SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would
require a publicly traded company headquartered in California to add a seat for a woman
director.

The estimated costs of implementing this bill were highly inflated. We believe that the
costs to implement SB 826 will be minimal and will be offset by any fines or penalties
collected for noncompliance. This is a very important bill to increase gender diversification
on the boards of publicly traded corporations by adding a seat for a woman director. This
bill does not displace existing seats that are currently held by men. SB 826 requires the
board to add a seat for a woman.

**Small Business California Supports SB 826 (Jackson/Atkins/Co-Author Leyva)** and
believes that this bill will benefit women-owned small businesses. If you have any
questions, please contact me directly at 415.680.2109 or email at
shauge@smallbusinesscalifornia.org. Or you may contact our legislative advocate in
Sacramento, Lori Kammerer, Kammerer & Company, at 916.441.5674 or 916.716.5674 at
LoriKammerer@gmail.com

Please allow SB 826 to proceed to the Senate Floor.

Respectfully,

Rachel Owens

Rachel Owens
Succession Strategies, Inc
Principal

cc:   The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author

Succession Strategies, Inc     1633 E Fourth Street Suite 216          Santa Ana CA 92701
Rachel Owens, Principal        rachel@succession-strategies.com        714-560-9022



pvt indv

**DYNAM**
CONSULTING

3943 Irvine Blvd, #617
Irvine, CA 92602

(949) 533-8832

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on
Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from
the Suspense File. SB 826 would add a seat for a women to the boards of publicly
traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that
the costs to implement SB 826 will be minimal and will be offset by fines or penalties
collected for noncompliance. SB 826 is a very important bill to increase gender
participation on the boards of publicly traded corporations by adding a seat for a woman
director. SB 826 does not unseat male directors who currently hold existing seats, but
requires public companies whose primary headquarters are in the State of California to
add a seat for a woman before the end of 2019. If there is a retirement of a director
during that year, then the board must elect a woman director of their choice for that open
seat.

The pipeline of qualified women candidates for boards is overflowing with experienced
and capable women leaders. Many women business owners would be potential
candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state
in the nation to require gender diversity on public company boards. Other states will
follow. California also has the responsibility to shareholders and retirees because
research shows that companies with women on their boards are actually significantly
more profitable and more productive than companies with all-male boards. Please pass
SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Theresa M. Ashby, PhD, MBA
CEO
Dynam Consulting

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

151

p/t navis



CREATING
ANSWERS
*Finances Made Fun*

May 22, 2018

Shawna Fitzgerald
1040 Lincoln Road, Ste. A,131
Yuba City, CA 95991
916-930-0777

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate
Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the
Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded
corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the
costs to implement SB 826 will be minimal and will be offset by fines or penalties collected
for noncompliance. SB 826 is a very important bill to increase gender participation on the
boards of publicly traded corporations by adding a seat for a woman director. SB 826
does not unseat male directors who currently hold existing seats, but requires public
companies whose primary headquarters are in the State of California to add a seat for a
woman before the end of 2019. If there is a retirement of a director during that year, then
the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced
and capable women leaders. Many women business owners would be potential
candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in
the nation to require gender diversity on public company boards. Other states will
follow. California also has the responsibility to shareholders and retirees because research
shows that companies with women on their boards are actually significantly more
profitable and more productive than companies with all-male boards. Please pass SB 826
on for the Senate floor vote. Thank you in advance!

Phone: 916-930-0777 Fax: 916-721-2761
Hours of Operation: Mon – Fri 7:00am to 4:00pm



Prosperity,

Shawna Fitzgerald
Fearless Leader/CEO
Creating Answers

cc:   The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author



**Rincon Consultants, Inc.**

180 North Ashwood Avenue
Ventura, California 93003

805 644 4455 OFFICE AND FAX

info@rinconconsultants.com
www.rinconconsultants.com

*pvt ndv,*

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

Subject:    SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender Diversity —
            Women on Corporate Boards – SUPPORT

Dear Senator Lara:

As a woman who has earned a Board of Directors seat in a male dominated industry, as a female leader
in my company and industry, as a mother, and as a business owner in California, I understand the
difficult climb for women leaders and the benefits of having female leadership in business. From this
experience, I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the
Suspense File. SB 826 would require a publicly traded company headquartered in California to add a
seat for a woman director.

This is a very important bill to increase gender diversification on the boards of publicly traded
corporations by adding a seat for a woman director. This bill does not displace existing seats that are
currently held by men. SB 826 requires the board to add a seat for a woman.

I supports SB 826 (Jackson/Atkins/Co-Author Leyva) and believe that this bill will benefit women-owned
small businesses. If you have any questions, please contact me directly at 805.644.4455 or email at
lcook@rinconconsultants.com.

Please allow SB 826 to proceed to the Senate Floor.

Sincerely,
**Rincon Consultants, Inc.**

Lacrissa Davis, MESM
Vice President, CFO

*Environmental Scientists          Planners          Engineers*

154

*PA ndw*

## CommunicationWorks

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

May 22, 2018

RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Mindy Bortness*

Mindy Bortness
Founder/CEO
Communication Works, Inc.

Cc:   The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author

private ndw,



- the -
# LIVING
PLANNER
∞

22 May, 2018
The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA  95816

RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards –
SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense
File.  SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered
in California.

The estimated costs of implementation were highly inflated by your staff.  We know that the costs to
implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance.  SB
826 is a very important bill to increase gender participation on the boards of publicly traded corporations
by adding a seat for a woman director.  SB 826 does not unseat male directors who currently hold
existing seats, but requires public companies whose primary headquarters are in the State of California to
add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then
the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable
women leaders.  Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor.  California would be the first state in the nation to
require gender diversity on public company boards. Other states will follow.  California also has the
responsibility to shareholders and retirees because research shows that companies with women on their
boards are actually significantly more profitable and more productive than companies with all-male
boards.  Please pass SB 826 on for the Senate floor vote.  Thank you in advance.

Respectfully,

Lynn Lambrecht
Founder
The Living Planner

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

Proprietary information The Living Planner© Not intended as legal or financial advice



*pit win*

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity – Women on Corporate Boards – SUPPORT

Dear Senator Lara:

I agree with the information listed below and hope you will support SB 826.

Please allow SB 826 to proceed to the Senate Floor.

Janet Lienhard
Virtual Instructor LLC
858 434-0400 (office)
858 627-1777 (mobile)
www.virtualinstructor.com
janet@virtualinstructor.com

On behalf of Small Business California and its network of more than 5,000 employers who
represent 3.8 million small businesses in this state, we respectfully request that you pass SB 826
(Jackson, Leyva and Co-Author Leyva) from the Suspense File.  SB 826 would require a publicly
traded company headquartered in California to add a seat for a woman director.

The estimated costs of implementing this bill were highly inflated.  We believe that the costs to
implement SB 826 will be minimal and will be offset by any fines or penalties collected for
noncompliance.  This is a very important bill to increase gender diversification on the boards of
publicly traded corporations by adding a seat for a woman director.  This bill does not displace
existing seats that are currently held by men.  SB 826 requires the board to add a seat for a
woman.

Small Business California Supports SB 826 (Jackson/Atkins/Co-Author Leyva and believes
that this bill will benefit women-owned small businesses.  If you have any questions, please contact
me directly at 415.680.2109 or email at shauge@smallbusinesscalifornia.org. Or you may contact
our legislative advocate in Sacramento, Lori Kammerer, Kammerer & Company, at 916.441.5674
or 916.716.5674 at LoriKammerer@gmail.com



**Diane L. Camacho, CLM, SPHR**
*DLC Consulting Services, LLC*
1724 Elm Road, Concord, CA 94519
(925) 676-6277 (O) / (925) 914-0766 (C)
diane@dlccs.com
www.dlccs.com

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Diane L. Camacho, CLM
President & CEO
DLC Consulting Services, LLC

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author

158

# Hiland *Consulting*

May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity - Women on Corporate Boards - SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Mary Hiland*

President

cc:   The Honorable Hanna-Beth Jackson,
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

3260 Oakwood Ct.      408-324-4814
Morgan Hill, CA 95037   www.hilandconsulting.org



**DG Consulting**

# DIANE M. GARGA, PH.D, ACC

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

May 23, 2018

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity -- Women on Corporate Boards -- SUPPORT**

Dear Senator Lara:

I recently learned that SB826 has been placed in the Suspense File. I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates. The current statistics of women on corporate boards show they are an untapped resource. As a professional executive coach for business leaders, I can attest to the distinctive talent and value women business owners and executive leaders offer to corporate boards.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Diane M. Garga*

Diane M. Garga, Ph.D
Founder and Principal
DG Consulting

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

160

# ROSE POLICY SOLUTIONS



The Honorable Ricardo Lara                                     May 23, 2018
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I am writing to request that you remove SB 826 (Jackson, Atkins and Co-Author Leyva)
from the Suspense File and pass the bill to the Senate Floor. SB 826 would increase
the representation of women on corporate boards by requiring every publicly traded
company headquartered in California to have at least one woman on its board of
directors by the end of 2019. By July 1, 2021, boards with five directors would be
required to have at least two, and boards with six or more directors would be required to
have at least three women directors.

I was, frankly, shocked by the price tag the Appropriations Committee attached to SB
826. There is so much data collected by highly reputable sources regarding the number
of women on boards and the economic benefits realized through gender diversity. That
information is continuously updated, readily available and would, for the most part,
render additional data collection unnecessarily duplicative. I think it's fair to say that the
costs to implement SB 826 would actually be minimal and that those costs would
certainly pale next to the economic benefits the State would realize through passage of
SB 826.

Among others, a 2016 McKinsey & Company study concluded that "....the companies
where women are most strongly represented at board or top-management levels are
also businesses that perform the best, in profitability, productivity, innovation,
governance, better performance and workforce engagement." Surely, the economic
benefit to California far outweighs the minimal costs associated with SB 826.

Sincerely,

Cristina Rose
Rose Policy Solutions

cc:    The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

**3314 Wonderview Drive, Los Angeles, CA 90068 Tel. 310.880.1129  Fax 323.851.8723**

**ANVAYA** Solutions

SECURE | PROTECT | THRIVE

2795 E. Bidwell St., #100-141, Folsom, CA 95630

April 23, 2018

The Honorable Hannah-Beth Jackson
Chair, Senate Standing Committee on Judiciary
State Capitol, Room 2187
Sacramento, CA 95814

Re:     SB 826 (Jackson): Corporations: Board of Directors – **SUPPORT**

Dear Senator Jackson:

We are writing in strong support of your bill, SB 826, which would require publicly-held corporations in California to seat at least one woman on their board of directors by 2019.

As a decade long member of The National Association of Women Business Owners, Sacramento Chapter (NAWBO-LA) and a busines owner, I advocate for polices that support women business owners and increase the number of women in workplace leadership roles.

I would like to see us strive for equal representation of women on corporate boards, but many boards currently fall far short of that goal. As an example, Los Angeles County is the most populous in the state, yet Russell 3000 companies based here have among the lowest percentage of female board members of any California county – just 12 percent of those board seats were held by women as of June 2017. In addition, NAWBO-LA chapter has identified more than a half dozen companies based in the Los Angeles region that have zero women on their boards.

SB 826 would ensure that more women have a seat at the table, and we hope, result in more women of color and women from underrepresented communities serving on corporate boards. Increasing the number of women on corporate boards will bring diverse perspectives to corporate decision making, benefiting shareholders, employees, and consumers.

While prior legislative actions, such as Concurrent Resolution 62 which you authored, have encouraged companies to diversify their boards, they have had limited success in increasing the number of female board members. Stronger action from the Legislature is needed now to bring about meaningful change. We strongly support SB 826.

Sincerely,

Shobha Mallarapu, , MS, PMP, CISA
President and CEO | Anvaya Solutions, Inc.
Board Member, NAWBO-Sacramento
SBA Contractor of the Year 2018
Woman Innovative Award 2017
Enterprising Woman of the Year 2017
Women Who Mean Business Award 2018

    Members, Senate Standing Committee on Judiciary
cc:  Margie Estrada Caniglia, Chief Counsel, Senate Standing Committee on Judiciary
     The Honorable Toni Atkins
     The Honorable Connie M. Leyva



May 23, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

**RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

On behalf of my company, Frieda's Specialty Produce, a Certified Woman-Owned
Business (WBENC) and as an employer of over 70 employees, I respectfully request
that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense
File.  SB 826 would require a publicly traded company headquartered in California to
add a seat for a woman director.

The estimated costs of implementing this bill were highly inflated.  We believe that the
costs to implement SB 826 will be minimal and will be offset by any fines or penalties
collected for noncompliance.  This is a very important bill to increase gender
diversification on the boards of publicly traded corporations by adding a seat for a
woman director.  This bill does not displace existing seats that are currently held by
men.  SB 826 requires the board to add a seat for a woman.

It only makes sense to pass this bill, as there is significant data that shows that Board
who have gender diversity on their board, produce better bottom line results.

Please allow SB 826 to proceed to the Senate Floor.

Respectfully,

Karen B Caplan
CEO & President

4465 Corporate Center Drive
Los Alamitos, CA 90720 USA
714.826.6100 | friedas.com



CR&A Custom Inc.
312 W. Pico Blvd. Los Angeles, CA 90015
(213)749-4440

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File.
SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.
The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement
SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very
important bill to increase gender participation on the boards of publicly traded corporations by adding a seat
for a woman director.

SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose
primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a
retirement of a director during that year, then the board must elect a woman director of their choice for that
open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women
leaders. Many women business owners would be potential candidates. Please allow SB 826 to proceed to the
Senate Floor! California would be the first state in the nation to require gender diversity on public company
boards. Other states will follow. California also has the responsibility to shareholders and retirees because
research shows that companies with women on their boards are actually significantly more profitable and
more productive than companies with all-male boards.

Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Carmen Rad
President
CR&A Custom Inc

cc:   The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

# www.cracustom.com

164

BARNARD-BAHN
CONSULTING & COACHING

510.301.0400 ■ amll@barnardbahn.com ■ www.barnardbahn.com

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA  95816

**RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity
– Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-
Author Leyva) from the Suspense File.  SB 826 would add a seat for a
woman to the boards of publicly traded corporations headquartered in
California.

The estimated costs of implementation were highly inflated by your
staff.  We know that the costs to implement SB 826 will be minimal
and will be offset by fines or penalties collected for
noncompliance.  SB 826 is a very important bill to increase gender
participation on the boards of publicly traded corporations by adding a
seat for a woman director.  SB 826 <u>does not unseat</u> male directors
who currently hold existing seats, but requires public companies
whose primary headquarters are in the State of California <u>to add a
seat</u> for a woman before the end of 2019. If there is a retirement of a
director during that year, then the board must elect a woman director
of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing
with experienced and capable women leaders.  Many women
business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor!  California would
be the first state in the nation to require gender diversity on public
company boards. Other states will follow.  California also has the
responsibility to shareholders and retirees because research shows

**BARNARD-BAHN**
CONSULTING & COACHING

510.301.0400 ■ amii@barnardbahn.com ■ www.barnardbahn.com

that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards.  Please pass SB 826 on for the Senate floor vote.  Thank you in advance.

Respectfully,

Amii Barnard-Bahn, JD, ACC
Principal and CEO
Barnard-Bahn Consulting and Coaching

cc:    The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

166

Laura Russell-Jones
POSH BABAN
1047 Ardmore Avenue
Oakland, CA 94610

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 94814

RE:  SB 826 (Jackson/Atkins, Co-Author Leyva) Corporate Governance: Gender
Diversity -- Women on Corporate Boards -- SUPPORT

Dear Senator Lara:

On behalf of my business, I respectfully request that you pass SB 826 (Jackson, Leyva
and Co-Author Leyva) from the Suspense File.  SB 826 would require a publicly traded
company headquartered in California to add a seat for a woman director.

The estimated costs of implementing this bill were highly inflated.  We believe that the
costs to implement SB 826 will be minimal and will be offset by any fines or penalties
collected for noncompliance.  This is a very important bill to increase gender diversification
on the boards of publicly traded corporations by adding a seat for a woman director.  This
bill does not displace existing seats that are currently held by men.  SB 826 requires the
board to add a seat for a woman.

**Laura Russell-Jones and POSH BABAN Supports SB 826 (Jackson/Atkins/Co-
Author Leyva** and believes that this bill will benefit women-owned small businesses.  If
you have any questions, please contact me directly at 415-722-0566 or email at lrussell-
jones@comcast.net. Or you may contact our legislative advocate in Sacramento, Lori
Kammerer, Kammerer & Company, at 916.441.5674 or 916.716.5674 at
LoriKammerer@gmail.com

Please allow SB 826 to proceed to the Senate Floor.

Respectfully,

Laura Russell-Jones
Owner, Posh Baban

cc:    The Honorable Hanna-Beth Jackson
       The Honorable Toni Atkins, Joint Author
       The Honorable Connie Leyva, Co-Author

167



May 22, 2018.

2100 28TH STREET
SACRAMENTO, CA 95818
PHONE: (916) 452-7535 | FAX: (916) 452-8884

The Honorable Ricardo Lara,
Chair, Senate Appropriations Committee,
California State Senate,
State Capitol,
Sacramento, CA 94816.

Re: 826 (Jackson-Atkins, Co-Author Leyva) Gender Diversity- Women on Corporate Boards = SUPPORT

Dear Senator Lara:

I respectfully request that you pas SB 826 (Authors mentioned above) from the Suspense File. SB826 would add a seat for a woman to the boards of publicity traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We believe that the costs of implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance.

SB 826 will increase gender participation on the boards of publicly traded corporations adding a seat for a woman director. It will not unseat male directors who hold existing seats, bur requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019.

The pipeline for qualified women candidates for boards is overflowing with experienced and capable women leaders. Many of them business owners.

Please allow SB826 to proceed to the Senate Floor. California will be the first State in the Nation to require gender diversity on public company boards. Other States will follow. Please pass SB 826 on for the Senate floor vote. Thank you for your consideration.

Respectfully,

Eva S. Garcia, Realtor.
Garcia Realty - Owner.

cc The Honorable Hanna-Beth Jackson
The Honorable Tony Atkins, Joint Author
The Honorable Connie Leyva - Co-Author

CA BRE # 00326871 | RESIDENTIAL SALES | INCOME PROPERTIES | PROPERTY MANAGEMENT | WWW.GARCIAREALESTATE.COM



**Lentini Design & Marketing, Inc.**

1626 Virginia Road
Los Angeles, CA 90019
*voice*   323.766.8090
*fax*     323.766.8022
*email*   info@lentinidesign.com
*web*     www.lentinidesign.com

May 23, 2018

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Hilary Lentini
**Lentini Design & Marketing**

169



*Dr. Sandra's Sanctuary*
A safe place for expansion and healing

May 23, 2018

To The Honorable Ricardo Lara

Chair, Senate Appropriations Committee

California State Senate

State Capitol

Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Dr. Sandra Calles

Empowerment and Executive Coach

cc:   The Honorable Hanna-Beth Jackson

The Honorable Toni Atkins, Joint Author

The Honorable Connie Leyva, Co-Author



**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity - Women on Corporate Boards - SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a woman to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

Toni Julian, CEO
Toni's Kitchen LLC
AABS Nutrition & Fitness

cc:    The Honorable Hanna-Beth Jackson
The Honorable Toni Atkins, Joint Author
The Honorable Connie Leyva, Co-Author

171



The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates. Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Beate Chelette*

CEO, Chelette Enterprises, Inc.

Chelette Enterprises, Inc., 4245 Irving Pl., Culver City, CA 90232 bc@beatechelette.com



## HUNTER HAWK INC

Custom Manufacturing ♦ Industrial Products & Services

1842 Taft St.  Concord, CA 94521
Phone 925-798-4950 ♦ Fax 925-798-5250
www.hunterhawk.com

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add seats for women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

M. S. Hunter, President

cc:     The Honorable Hanna-Beth Jackson
        The Honorable Toni Atkins, Joint Author
        The Honorable Connie Leyva, Co-Author



April 13, 2018

### Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Sponsor Support from NAWBO VC President Elaine Hollifield

To Whom It May Concern:

On behalf of women business owners in Ventura County, NAWBO Ventura County is in strong support of SB 826. You probably will be quite surprised to know that one-fourth of California's public companies still have NO women directors. And that California companies average only 15.5% women directors, lagging behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%.

As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of 3,645 corporate directors, but only 565 of those seats are held by women, compared to 3,080 held by men. Among the counties in the state: Los Angeles, Orange County and San Diego Counties have the lowest percentage of women directors (12%). Silicon Valley (Santa Clara County), which has been historically low, has 16%. And San Francisco County has the highest at 21%.

California ranks #1 in the number of women business owners—there are more than 1.55 million established women business owners who provide jobs to another 1.9 people, and generate $318.2 Billion in annual revenues.

Qualified women candidates in California: Hundreds of NAWBO women CEOs are qualified to serve on corporate boards, as are hundreds of women executives who are COO's, CFO's, CHRO's and General Counsel at California's public corporations. Research proves that when women serve on public company boards, the profitability and productivity of those companies is higher than comparable companies with all men on boards. That's why NAWBO-California sponsored and supports **SB 826 (Jackson, Atkins, Leyva).**

Senate Bill 826 would advance gender representation on corporate boards by requiring each publicly-held corporation with its principal executive offices in California to have at least one woman on its board of directors by the end of 2019. And if there's not a retirement or other open seat in 2019, then the board must simply "add a seat for a woman director." Boards add or reduce seats whenever they choose. This solves the problem that open board seats rarely happen. Some board members serve "for life" even beyond the generally accepted board retirement age of 75. And when an opening is expected, male candidates are confidentially expecting their friends on the board to select them.

It is known that board members knowing in advance of any opening is critical to being nominated. The whole process is very secretive, so that Wall Street isn't privy to who is being considered. Additionally, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with



six or more directors. For any company that does not comply, <u>the CA Secretary of State will be authorized to impose fines annually</u>—an amount at least equal to the compensation that company pays its directors each year.

<u>California is the 5th largest economy in the world</u> and should set an example globally for enlightened business governance practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. The life savings of retirees and taxpayers whose pensions are invested by CalPERS and CalSTRS deserve the additional scrutiny and protection provided by women on boards.

<u>California would lead the way as the first state in the union to have such a law.</u>  To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men.  But research also says it will take 50 years to achieve parity unless something proactive is done! SB 826 is that crucial, proactive step.

<u>Are there really enough qualified women to sit on these boards?</u>  The answer is of course, "Yes!"  Looking at just the 100 California companies in the Russell 3000 with NO women directors currently, a minimum of 100 new women directors would be required in 2019. According to the 2016 study by UC Davis, there are 191 women C-suite executives among the state's largest companies, plus at least 200 qualified women CEOs of their own companies.  That totals almost 400 women of all ethnic backgrounds who could be considered for just 100 seats. There are many more public companies in CA--still too small to be listed in the Russell 3000--that would benefit by adding women directors. And when private-equity-held companies go for an Initial Public Offering (IPO), that's when they should want to have women on their boards, if only for appearances sake.

For these reasons and more, NAWBO California is sponsoring and supporting SB 826. We urge you to pass this important door-opening legislation.  For any questions, please contact our NAWBO California Legislative Advocate, Lori Kammerer on her cell at 916.716.5674, office at 916.441.5674 or email lorikammerer@gmail.com.

Sincerely,

*Elaine Hollifield*

Elaine Hollifield
President, NAWBO Ventura County



**SMALL
BUSINESS
CALIFORNIA**

KAMMERER & COMPANY
Esquire Plaza - 1215 K Street, 17th Floor
SACRAMENTO, CA 95814

April 6, 2018

The Honorable Steven Bradford
Chair, Senate Banking and Financial Institutions
California State Senate
State Capitol
Sacramento, CA 95814

### Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Support

Dear Senator Bradford:

On behalf of Small Business California and its network of more than 5,000 employers who represent 3.7 million small businesses in this state, we are pleased to **SUPPORT SB 826 (Jackson, Atkins, Leyva)** that would provide for gender diverse representation on corporate boards by requiring each publicly-held corporation headquartered in California to have at least one woman on its board of directors by the end of 2019.

Senate Bill 826 would also require that beginning in July 2021, a minimum of two women directors be placed on boards with five directors and at least three women be added on boards with six or more directors.

California is the 5th largest economy in the world and should set an example globally for enlightened business practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. Research shows that corporations with female directors outperform companies that don't have women on boards. Yet, one-fourth of California's public companies still have no women directors.

Our state ranks No. 1 nationally in the number of woman-owned firms, who provide 1.9 million jobs, and generate $318.2 Billion in annual revenues. Women business owners are CEOs who bring diversity of thought, represent the majority of consumer purchasing power, and understand supplier/vendor relationships.

**Small Business California Supports SB 826 (Jackson, Atkins, Leyva)** and believes that gender diversity on corporate boards is good public policy. If you have any questions, please contact me directly at 415.680.2109 or email at shauge@smallbusinesscalifornia.org. Or you may contact our legislative advocate in Sacramento, Lori Kammerer, Kammerer & Company, at 916.716.5674 or at LoriKammerer@gmail.net.

Sincerely,

Scott Hauge
President

cc:     The Honorable Hannah-Beth Jackson, Member, California State Senate
        Eileen Newhall, Staff Director, Senate Banking and Financial Institutions
        Tim Conaghan, Republican Caucus Consultant, Senate Banking and Financial Institutions





Assemblywoman Susan Talamantes Eggman, **Acting-Interim Chair** | Senator Connie M. Leyva, **Vice-Chair**

April 24, 2018

The Honorable Hannah-Beth Jackson, Chair
Senate Judiciary Committee
State Capitol, Room 2187
Sacramento, CA 95814

Your bill, Senate Bill 826, authored along with President pro Tem Toni G.Atkins, is a priority bill for the Legislative Women's Caucus.

The Legislative Women's Caucus has once again championed a Stronger California agenda for 2018, securing opportunity for all women.  Our priority pillars encompass Protecting Vulnerable Communities, Fair Pay and Job Opportunity, Workplace Equity and Access to Childcare.  SB 826 requires all publicly-held corporations based in California to have at least one woman on their boards by the end of 2019.  Beginning in 2021, the bill requires a minimum of two women directors on boards with five directors and at least three women on boards with six or more directors.

California would lead the way as the first state in the union to have such a law. To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men. But research also says it will take 50 years to achieve parity unless something proactive is done.

Senate Bill 826 would advance gender representation on corporate boards by requiring each publicly-held corporation with its principal executive offices in California to have at least one woman on its board of directors by the end of 2019.

We strongly urge your support of your legislation, SB 826, as it moves through your committee.  Please do not hesitate to contact my office if you would like to discuss our strong support position further.  Women's Caucus staff can be reached at (916)319-3564 or emailed at Elizabeth.Fuller@asm.ca.gov.

Respectfully,

Susan Talamantes Eggman
Assemblywoman, 13th District

Connie M. Leyva, Vice Chair
Senator, 20th District



April 5, 2018

**The Honorable Senator Hannah-Beth Jackson**
**Chair of the Senate Judiciary Committee; and**
**Chair of the Senate Select Committee on Women, Work and Families**
**Santa Barbara / Ventura**

<u>Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards</u>

Dear Senator Jackson:

I am the founder & CEO of the Alliance of Chief Executives, an organization of 300 CEOs in Northern California. Our members lead companies in virtually every industry and market sector ranging from small, private companies to high-growth venture-backed companies to global public enterprises. I am writing in support of SB 826 which addresses the need for more women on public boards and I am in total agreement with the initiative.

In the past few years, I have been become associated with several initiatives to increase diversity on corporate boards:

<u>Directors Academy</u>
One of our Alliance members, James White, was one of very few African-American public company CEOs. When James retired, he asked me to help launch the Directors Academy (www.directorsacademy.com) whose mission is to "*Identify, develop and advance the next generation of diverse board members and future board leaders.*" They determined that diverse board candidates faced two major hurdles: a) training to become effective directors; and b) access to a network of active board members. The Directors Academy developed a unique learning program by enabling diverse board candidates to engage with a world-class faculty of active Directors from a variety of industry sectors.

<u>Athena Alliance</u>
I was introduced to Coco Brown, founder & CEO of The Athena Alliance (www.athenaalliance.org) which is dedicated to accelerating gender parity in the boardroom. They provide connections between corporate boards and executive women.

<u>Bay Area Women Leadership Roundtables</u>
In addition, I have had the opportunity to lead several roundtables for Bay Area women leaders. Although the participants were all highly qualified Bay Area executives (several are already on the board of FORTUNE 500 companies), I was surprised to learn about the significant challenges they continue to face (which are not experienced by male executives.)

<u>Summary</u>
I have the privilege to work closely with leaders of all types and I believe diversity is critical to helping leaders challenge their own assumptions and enable them to "*think differently.*" Without diverse points of view and perspectives, decisions are sub-optimal and we fail to achieve our maximum potential. Research has shown that teams increase their effectiveness with a higher percentage of women as you can read about in the book, "Smarter, Faster, Better" and at: https://www.theatlantic.com/business/archive/2015/01/the-secret-to-smart-groups-isnt-smart-people/384625/.

Gender is only one dimension of diversity but it is one of the most obvious opportunities to improve board performance. SB 826 would advance gender representation on corporate boards by requiring each publicly-held corporation to have at least one woman on its board of directors. There is an abundance of qualified women leaders who would be excellent board members if given the opportunity and I would like California to take a leadership role in this initiative.

I strongly recommend you pass this important legislation. If you have any questions or if I can be of any help, please feel free to contact me at: (925) 942-2403 or at: paulwitkay@allianceofceos.com.

Sincerely,

Paul Witkay
Founder & CEO

2185 N. California Blvd., Suite 590
Walnut Creek, CA 94596



**BERKHEMER CLAYTON, INC.**
RETAINED EXECUTIVE SEARCH

241 S. FIGUEROA . SUITE 500
LOS ANGELES . CA . 90012
E: INFO@BERKHEMERCLAYTON.COM
W: BERKHEMERCLAYTON.COM
T: 213.621.2300
F: 213.621.2309

April 12, 2018

**The Honorable**
**SENATOR STEVEN BRADFORD**
**CHAIR Senate Banking Committee**

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate
Boards – SUPPORT LETTER

Dear Senator Bradford:

You probably will be quite surprised to know that one-fourth of California's public
companies still have NO women directors. And that California companies average only
15.5% women directors, lagging behind the national Russell 3000 at 16.5%, and
significantly behind the Fortune 1000 at 19.8%.

As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of
3,645 corporate directors, but only 565 of those seats are held by women, compared to
3,080 held by men. Among the counties in the state: Los Angeles, Orange County and
San Diego Counties have the lowest percentage of women directors (12%). Silicon
Valley (Santa Clara County), which has been historically low, has 16%. And San
Francisco County has the highest at 21%.

Women of All Ethnic Backgrounds could be candidates in California:  Hundreds of
NAWBO women CEOs are **qualified to serve on corporate boards, as are hundreds**
**of women executives who are COO's, CFO's, CHRO's and General Counsel at**
**California's public corporations. Research proves that when women serve on**
**public company boards, the profitability** and productivity of those companies is
higher than comparable companies with all men on boards. That's why NAWBO-
California sponsored and supports **SB 826 (Jackson, Atkins, Leyva).**

Senate Bill 826 would advance gender representation on corporate boards by requiring
each publicly-held corporation with its principal executive offices in California to have at
least one woman on its board of directors by the end of 2019. And if there's not a
retirement or other open seat in 2019, then the board must simply "add a seat for a
woman director."  Boards add or reduce seats whenever they choose.  This solves the
problem that open board seats rarely happen. Some board members serve "for life"
even beyond the generally accepted board retirement age of 75. And when an opening

is expected, male candidates are confidentially expecting their friends on the board to select them.

From my experience in handling board searches, I assure you that being known to board members in advance of any opening, is critical to being nominated. The whole process is very secretive, so that Wall Street isn't privy to who is being considered. Additionally, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with six or more directors. For any company that does not comply, the CA Secretary of State will be authorized to impose fines annually—an amount at least equal to the compensation that company pays its directors each year.

California is the 5th largest economy in the world and should set an example globally for enlightened business governance practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. The life savings of retirees and taxpayers whose pensions are invested by CalPERS and CalSTRS deserve the additional scrutiny and protection provided by women on boards.

California would lead the way as the first state in the union to have such a law.  To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men.  But research also says it will take 50 years to achieve parity unless something proactive is done! SB 826 is that crucial step,

Are there really enough qualified women to populate board seats to be added? The answer is of course Yes!  Looking at just the 100 California companies in the Russell 3000 with NO women directors currently, a minimum of 100 new women directors would be required in 2019. According to the 2016 study by UC Davis, there are 191 women C-suite executives among the state's largest companies, plus at least 200 qualified women CEOs of their own companies.  That totals almost 400 women of all ethnic backgrounds who could be considered for just 100 seats. There are many more public companies in CA--still too small to be listed in the Russell 3000--that would benefit by adding women directors. And when private-equity-held companies go for an Initial Public Offering (IPO), that's when they should want to have women on their boards, if only for appearances sake.

I strongly support SB 826 and urge you to pass this important door-opening legislation. Any questions, please call me on my cel 213-810-2329, my office 213-621-2300 x1, or the Legislative Advocate, Lori Kammerer on her cell at 916.716.5674.

Sincerely,

*Betsy Berkhemer-Credaire*

Betsy Berkhemer-Credaire
CEO Berkhemer Clayton Retained Executive Search



March 19, 2018

The Honorable
**SENATOR STEVEN BRADFORD**
**CHAIR Senate Banking Committee;**
**INGLEWOOD, SAN PEDRO**

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards –
Sponsor Support from Betsy Berkhemer-Credaire

Dear Senator Bradford:

You probably will be quite surprised to know that one-fourth of California's public companies still have
NO women directors. And that California companies average only 15.5% women directors, lagging
behind the national Russell 3000 at 16.5%, and significantly behind the Fortune 1000 at 19.8%.

As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of 3,645 corporate
directors, but only 565 of those seats are held by women, compared to 3,080 held by men. Among
the counties in the state:  Los Angeles, Orange County and San Diego Counties have the lowest
percentage of women directors (12%). Silicon Valley (Santa Clara County), which has been
historically low, has 16%. And San Francisco County has the highest at 21%.

I've had the pleasure of meeting you on several occasions related to NAWBO-CA or the Los Angeles
Chamber—I own a retained executive search firm but long ago, I was the city editor of the Gardena
Valley News (my first job out of UCLA, about 40 years ago!) During the 70's, I became active in the
National Association of Women Business Owners (NAWBO) Los Angeles Chapter, and president in
2001. And since then I've been on the board of the statewide NAWBO-California, the consortium of
11 Chapters—San Diego, Orange County, Los Angeles, Bakersfield, Inland Empire, Santa Barbara,
Ventura County, Central Coast, Silicon Valley, San Francisco Bay Area and Sacramento Valley.
California ranks #1 in the number of women business owners—there are more than 1.55 million
established women business owners who provide jobs to another 1.9 people, and generate $318.2
Billion in annual revenues.

Qualified women candidates in California:  Hundreds of NAWBO women CEOs are qualified to serve
on corporate boards, as are hundreds of women executives who are COO's, CFO's, CHRO's and
General Counsel at California's public corporations. Research proves that when women serve on
public company boards, the profitability and productivity of those companies is higher than
comparable companies with all men on boards.  That's why NAWBO-California sponsored and
supports **SB 826 (Jackson, Atkins, Leyva).**

Senate Bill 826 would advance gender representation on corporate boards by requiring each publicly-
held corporation with its principal executive offices in California to have at least one woman on its
board of directors by the end of 2019. And if there's not a retirement or other open seat in 2019, then
the board must simply "add a seat for a woman director."  Boards add or reduce seats whenever they
choose.  This solves the problem that open board seats rarely happen. Some board members serve

NAWBO - California     **National Association of Women Business Owners**     *President@NAWBO-CA.org*



"for life" even beyond the generally accepted board retirement age of 75. And when an opening is expected, male candidates are confidentially expecting their friends on the board to select them.

From my experience in handling board searches, I assure you that being known to board members in advance of any opening, is critical to being nominated. The whole process is very secretive, so that Wall Street isn't privy to who is being considered. Additionally, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with six or more directors. For any company that does not comply, the CA Secretary of State will be authorized to impose fines annually—an amount at least equal to the compensation that company pays its directors each year.

California is the 5th largest economy in the world and should set an example globally for enlightened business governance practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. The life savings of retirees and taxpayers whose pensions are invested by CalPERS and CalSTRS deserve the additional scrutiny and protection provided by women on boards.

California would lead the way as the first state in the union to have such a law. To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men. But research also says it will take 50 years to achieve parity unless something proactive is done! SB 826 is that crucial, proactive step.

Are there really enough qualified women to sit on these boards? The answer is of course Yes! Looking at just the 100 California companies in the Russell 3000 with NO women directors currently, a minimum of 100 new women directors would be required in 2019. According to the 2016 study by UC Davis, there are 191 women C-suite executives among the state's largest companies, plus at least 200 qualified women CEOs of their own companies. That totals almost 400 women of all ethnic backgrounds who could be considered for just 100 seats. There are many more public companies in CA--still too small to be listed in the Russell 3000--that would benefit by adding women directors. And when private-equity-held companies go for an Initial Public Offering (IPO), that's when they should want to have women on their boards, if only for appearances sake.

For these reasons and more, NAWBO California is sponsoring and supporting SB 826. We urge you to pass this important door-opening legislation. Any questions, please call me on my cel 213-810-2329, my office 213-621-2300 x 1, or email betsy@berkhemerclayton.com; or contact our NAWBO California Legislative Advocate, Lori Kammerer on her cell at 916.716.5674, office at 916.441.5674 or email lorikammerer@gmail.com.

Sincerely,

*Betsy Berkhemer-Credaire*

Betsy Berkhemer-Credaire
Past President, NAWBO California

NAWBO - California     **National Association of Women Business Owners**     *President@NAWBO-CA.org*

182



FRASER
COMMUNICATIONS

April 16, 2018

The Honorable
SENATOR STEVEN BRADFORD
CHAIR Senate Banking Committee

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate
Boards – SUPPORT LETTER

Dear Senator Bradford:

I strongly support SB 826 and urge you to pass this important legislation.

You may be surprised to know that one-fourth of California's public companies still have
NO women directors. And that California companies average only 15.5% women
directors, lagging behind the national Russell 3000 at 16.5%, and significantly behind
the Fortune 1000 at 19.8%.

As of June 30, 2017, California has 445 companies in the Russell 3000 with a total of
3,645 corporate directors; but only 565 of those seats are held by women, compared to
3,080 held by men. Among the counties in the state: Los Angeles, Orange County and
San Diego Counties have the lowest percentage of women directors (12%). Silicon
Valley (Santa Clara County), which has been historically low, has 16%. And San
Francisco County has the highest at 21%.

Women of All Ethnic Backgrounds could be candidates in California: Hundreds of
NAWBO women CEOs are qualified to serve on corporate boards, as are hundreds
of women executives who are COO's, CFO's, CHRO's and General Counsel at
California's public corporations. Research proves that when women serve on
public company boards, the profitability and productivity of those companies is
higher than comparable companies with all men on boards. That's why NAWBO-
California sponsored and supports SB 826 (Jackson, Atkins, Leyva).

Senate Bill 826 would advance gender representation on corporate boards by requiring
each publicly-held corporation with its principal executive offices in California to have at
least one woman on its board of directors by the end of 2019. And if there's not a
retirement or other open seat in 2019, then the board must simply "add a seat for a
woman director." Boards add or reduce seats whenever they choose. This solves the
problem that open board seats rarely happen. Some board members serve "for life"
even beyond the generally accepted board retirement age of 75. And when an opening
is expected, male candidates are confidentially expecting their friends on the board to
select them.

FRASER COMMUNICATIONS
1631 Pontius Avenue
Los Angeles, California 90025
Telephone 310.319.3737
Facsimile 310.319.1537
frasercommunications.com



# FRASER
## COMMUNICATIONS

From my experience in handling board searches, I assure you that being known to board members in advance of any opening, is critical to being nominated. The whole process is very secretive, so that Wall Street isn't privy to who is being considered. Additionally, by the end of 2021, the bill requires a minimum of two women directors on boards with five directors, and at least three women on boards with six or more directors. For any company that does not comply, the CA Secretary of State will be authorized to impose fines annually—an amount at least equal to the compensation that company pays its directors each year.

California is the 5th largest economy in the world and should set an example globally for enlightened business governance practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. The life savings of retirees and taxpayers whose pensions are invested by CalPERS and CalSTRS deserve the additional scrutiny and protection provided by women on boards.

California would lead the way as the first state in the union to have such a law. To have more women on corporate boards is a serious business issue – and it's a serious culture issue for women in the workforce. Women of all ethnic backgrounds should be on boards in equal numbers to men. But research also says it will take 50 years to achieve parity unless something proactive is done! SB 826 is that crucial step.

Are there really enough qualified women to populate board seats to be added? The answer is of course Yes! Looking at just the 100 California companies in the Russell 3000 with NO women directors currently, a minimum of 100 new women directors would be required in 2019. According to the 2016 study by UC Davis, there are 191 women C-suite executives among the state's largest companies, plus at least 200 qualified women CEOs of their own companies. That totals almost 400 women of all ethnic backgrounds who could be considered for just 100 seats. There are many more public companies in CA--still too small to be listed in the Russell 3000--that would benefit by adding women directors. And when private-equity-held companies go for an Initial Public Offering (IPO), that's when they should want to have women on their boards, if only for appearances sake.

I strongly support SB 826 and urge you to pass this important door-opening legislation.

Sincerely,

Renee White Fraser, PhD
CEO
Fraser Communications

FRASER COMMUNICATIONS
1631 Pontius Avenue
Los Angeles, California 90025
Telephone 310.319.3737
Facsimile 310.319.1537
frasercommunications.com



# CONSUMER ATTORNEYS OF CALIFORNIA

## *Seeking Justice for All*

| President<br>Lee S. Harris | CEO • Chief Lobbyist<br>Nancy Drabble | Legislative Director<br>Nancy Peverini | Legislative Counsel<br>Jacqueline Serna | Staff Counsel<br>Saveena K. Takhar | Political Director<br>Lea-Ann Tratten |
|---|---|---|---|---|---|

March 19, 2018

TO:  SENATOR HANNAH-BETH JACKSON

FR:  CONSUMER ATTORNEYS OF CALIFORNIA
     ADVOCATE CONTACT: NANCY PEVERINI

RE:  <u>SB 826 (Jackson) SUPPORT</u>

The Consumer Attorneys of California supports SB 826, which is scheduled to be heard before the Senate Banking and Financial Institutions Committee on April 4, 2018.  SB 826 would require every publicly-held corporation in California, as specified, to have a minimum of one woman on its board of directors by the end of 2019. Beginning July 2021, SB 826 would additionally require a minimum of two women directors on boards with five independent directors and at least three women on boards with six or more independent directors.

Several recent studies, including a 2017 study by MSCI entitled *"Women on Boards"*, have revealed the significant economic benefits of gender equity and diversity on corporate boards. Despite these major economic benefits, which range from increased profits to more sustainable organizational structures, one-fourth of California's publically-held corporations still have no women on their board of directors. Women only hold 15.5% of board director seats in California's publically-held corporations, which is below the national average of corporations traded on the Fortune 1000 and Russell 3000 indexes.

SB 826 is a good first step to establishing gender equity in corporate boardrooms, thereby providing California and it's corporations with a host of economic benefits.

If you or a member of your staff would like to discuss this further, please contact us.

cc: Senate Banking and Financial Institutions Committee

## Legislative Department



February 19, 2018

The Honorable Hannah-Beth Jackson
California State Senate
State Capitol
Sacramento, CA 95814

Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Sponsor Support

Dear Senator Jackson:

On behalf of the National Association of Women Business Owners (NAWBO) California and its 11 Chapters, including San Diego, Orange County, Los Angeles, Bakersfield, Inland Empire, Santa Barbara, Ventura County, Central Coast, Silicon Valley, San Francisco Bay Area and Sacramento Valley, who represent the interests of the more than 1.55 million established women business owners and women entrepreneurs across all industries in California, we are pleased to **Sponsor and Support SB 826 (Jackson, Atkins, Leyva).**

Senate Bill 826 would provide for gender diverse representation on corporate boards by requiring each publicly-held corporation headquartered in California to have at least one woman on its board of directors by the end of 2019. Additionally, beginning July 2021, the bill requires a minimum of two women directors on boards with five directors and at least three women on boards with six or more directors.

California is the 5th largest economy in the world and should set an example globally for enlightened business practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. Research shows that corporations with female directors outperform companies that don't have women on boards. Yet, one-fourth of California's public companies still have no women directors.

California would lead the way as the first state in the union to have such a law. To become a corporate board member is serious business – and it's a serious business issue. Our state ranks No. 1 nationally in the number of woman-owned firms, who provide 1.9 million jobs, and generate $318.2 Billion in annual revenues. Women business owners are CEOs who bring diversity of thought, represent the majority of consumer purchasing power, and understand supplier/vendor relationships. As directors, we would be role models for aspiring women leaders inside corporations.

For these reasons and more, NAWBO California is sponsoring and supporting SB 826. If you have any questions, please contact NAWBO California's Legislative Advocate, Lori Kammerer on her cell at 916.716.5674, office at 916.441.5674 or email at lorikammerer@gmail.com.

Sincerely,

Anne C. Staines

Anne Staines
President, NAWBO California

cc: Eileen Newhall, Staff Director, Senate Banking, Insurance and Financial Institutions
Tim Conaghan, Republican Caucus Consultant, Senate Banking, Insurance and Financial Institutions

NAWBO - California    **National Association of Women Business Owners**    *President@NAWBO-CA.org*

186

# NAWBOLA

National Association of Women Business Owners

811 W. 7th Street | Los Angeles, California 90017 | 213.622.3200

March 20, 2018

The Honorable Hannah-Beth Jackson
State Capitol, Room 2032
Sacramento, CA 95814

Re:   SB 826 (Jackson): Corporations: Board of Directors – **SUPPORT**

Dear Senator Jackson:

We are writing in strong support of SB 826, which would require publicly-held corporations in California to seat at least one woman on their board of directors by 2019.

The National Association of Women Business Owners, Los Angeles Chapter (NAWBO-LA) is the voice of more than 544,000 women-owned businesses in the greater Los Angeles area. We advocate for polices that support women business owners and increase the number of women in workplace leadership roles.

NAWBO-LA strives for equal representation of women on corporate boards, but many boards currently fall far short of that goal. Los Angeles County is the most populous in the state, yet Russell 3000 companies based here have among the lowest percentage of female board members of any California county – just 12 percent of those board seats were held by women as of June 2017. In addition, we have identified more than a half dozen companies based in the Los Angeles region that have zero women on their boards.

SB 826 would ensure that more women have a seat at the table. Increasing the number of women on corporate boards will bring diverse perspectives to corporate decision-making, benefiting shareholders, employees, and consumers.

While prior legislative actions, such as Concurrent Resolution 62 (Jackson), have encouraged companies to diversify their boards, they have had limited success in increasing the number of female board members. Stronger action from the Legislature is needed now to bring about meaningful change. We strongly urge you to support SB 826.

Sincerely,

Schenae Rourk
President

Ann D'Amato
Co-Chair, Advocacy Committee

Christine Frey
Co-Chair, Advocacy Committee

cc:   Members, Senate Banking and Financial Institutions Committee
Eileen Newhall, Staff Director, Senate Banking and Financial Institutions Committee
The Honorable Hannah-Beth Jackson
The Honorable Toni Atkins
The Honorable Connie M. Leyva



March 13, 2018
Senator Hannah-Beth Jackson
State Capitol, Room 2032
Sacramento, CA 95814

**Re: Senate Bill 826 (Jackson and Atkins) – SUPPORT**

Dear Senator Jackson:

As chief executive officer and co-founder of Sunrun Inc., I write to express my support for SB 826 and to personally help advance this bill. Sunrun is the largest dedicated residential solar, storage and energy services company in the United States. We are proudly headquartered in California, where many of our customers and employees reside.

I am committed to ensuring that diversity and inclusion are core values at Sunrun. I encourage equal opportunity for women in boardrooms and believe that California should lead the nation in gender equality. Sunrun applauds your vision and leadership to create the structural changes needed to realize equal rights for women in the workplace and throughout society.

As one of the few female CEOs in the energy industry, I recognize the challenges many women must overcome as they try to grow in their careers, despite having equivalent - and sometimes superior - capacity for success as men. Like many other women, I have worked diligently to advance along the way. Before Sunrun, I worked at Summit Partners, where, as one of few female venture capitalists, I completed investments with an aggregate arket value of over $900 million in the financial services and technology sectors. I was named one of *Fast Company's* Most Creative People in Business in 2013 and *Forbes'* Women to Watch in 2015.

With Sunrun co-founder Ed Fenster, I have seen my hard work pay off. We invented the "solar as a service" business model that unlocked consumer demand for clean, affordable energy direct from residential rooftops. Today with more than $3 billion in installed solar systems across 22 states and the District of Columbia, Sunrun is revolutionizing how consumers get electricity, and as of 2017, we have added energy storage to the products we offer in California. I'm incredibly proud of all of these achievements.

In addition to these personal career milestones, I am also grateful that at Sunrun, women are paving the way for future generations. Working women and those returning to the workforce have a purpose and place here. In 2017, *Comparably* rated Sunrun as a Best Company for Women to work. I am also happy to report that Sunrun has four women on its nine member board, exceeding the minimum requirements that SB 826 would set. Having gender diversity on our board and in our workforce has fueled our innovation and helped us make better decisions.

For all these reasons and more, I am proud to offer Sunrun's support for SB 826. We celebrate your dedicated advocacy for women and hope that this legislation will increase female representation on boards for companies like Sunrun.

In solidarity,

Lynn Jurich
Chief Executive Officer



28 North Marengo Avenue
Pasadena, California 91101
(626) 564-1500
www.impactsciences.com

April 19, 2018

California State Senate
State Capitol, Room 2032
Sacramento, CA 95814

**Attn:** Senator Hannah-Beth Jackson

**Re:** Support for SB 826 – Women on Corporate Boards

Dear Senator Jackson:

On behalf of Impact Sciences, a California-based environmental planning firm, I'm writing to express support for Senate Bill 826, which will establish equal gender representation and the increase of women on corporate boards. As a women-owned business, Impact Sciences understands the importance of having women in top leadership positions. We believe SB 826 is a step in the right direction toward achieving gender equity by developing a model for progressive legislation and economic opportunity.

Research proves that gender parity in the boardroom offers a substantial advantage to corporations by increasing profits, enhancing performance, and stimulating innovation. Yet, amidst these incredible benefits, one-fourth of California's public corporations still have no women directors on their boards. This is an unacceptable level of progress toward gender diversity in comparison to the rest of the country. However, SB 826 will show that high-level participation of women in corporations can positively influence multidimensional change, including economic stability and continued growth in our state and beyond. For these reasons, Impact Sciences is pleased to support SB 826.

Sincerely,
Impact Sciences, Inc.

Jessica Kirchner Flores
*Managing Principal & Owner*



**Burleson Consulting Inc.**
Woman-Owned Small Business
*Environmental Puzzle Masters*

May 22, 2018

The Honorable Ricardo Lara
Chair, Senate Appropriations Committee
California State Senate
State Capitol
Sacramento, CA 95816

**Subject: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California. The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

I have been a woman business owner for the past 17 years, and have skills to be on a corporate board. It is unfortunate that legislation is required to secure board positions for women as I know hundreds of woman with substantial business acumen and expertise. The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Nadia Buh*

Nadia Burleson, PE
President and CEO

**Burleson Consulting, Inc.**

950 Glenn Drive, Suite 245, Folsom, CA 95630 | (916) 984-4651 Tel | (916) 984-8261 Fax
www.burlesonconsulting.com



### RE: SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity — Women on Corporate Boards — SUPPORT

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

*Elaine Hollifield*

Elaine Hollifield
Owner/President                      President — NAWBO Ventura County
Hollifield Creative

cc: The Honorable Hanna-Beth Jackson
    The Honorable Toni Atkins, Joint Author
    The Honorable Connie Leyva, Co-Author

Elaine Hollifield
Creative Consultant + Copywriter

P 805 582 2380 / 310 991 2128   1552 Sinaloa Road Simi Valley CA +93065   ehollifield@hollifieldcreative.com   www.hollifieldcreative.com

191



**SCHAUB**
**INSURANCE**
**AGENCY**
Insurance Simplified

May 22, 2018

**RE:**   **SB 826 (Jackson/Atkins, Co-Author Leyva) Gender Diversity – Women on Corporate Boards – SUPPORT**

Dear Senator Lara:

I respectfully request that you pass SB 826 (Jackson, Leyva and Co-Author Leyva) from the Suspense File. SB 826 would add a seat for a women to the boards of publicly traded corporations headquartered in California.

The estimated costs of implementation were highly inflated by your staff. We know that the costs to implement SB 826 will be minimal and will be offset by fines or penalties collected for noncompliance. SB 826 is a very important bill to increase gender participation on the boards of publicly traded corporations by adding a seat for a woman director. SB 826 does not unseat male directors who currently hold existing seats, but requires public companies whose primary headquarters are in the State of California to add a seat for a woman before the end of 2019. If there is a retirement of a director during that year, then the board must elect a woman director of their choice for that open seat.

The pipeline of qualified women candidates for boards is overflowing with experienced and capable women leaders. Many women business owners would be potential candidates.

Please allow SB 826 to proceed to the Senate Floor! California would be the first state in the nation to require gender diversity on public company boards. Other states will follow. California also has the responsibility to shareholders and retirees because research shows that companies with women on their boards are actually significantly more profitable and more productive than companies with all-male boards. Please pass SB 826 on for the Senate floor vote. Thank you in advance!

Respectfully,

JoAnn Schaub
Owner/President
Schaub Insurance Agency, Inc.

Cc:   The Honorable Hanna-Beth Jackson
      The Honorable Toni Atkins, Joint Author
      The Honorable Connie Leyva, Co-Author



February 19, 2018

The Honorable Hannah-Beth Jackson
California State Senate
State Capitol
Sacramento, CA 95814

**Re: SB 826 (Jackson, Atkins, Leyva) Gender Diversity: Women on Corporate Boards – Sponsor Support**

Dear Senator Jackson:

On behalf of the National Association of Women Business Owners (NAWBO) California and its 11 Chapters, including San Diego, Orange County, Los Angeles, Bakersfield, Inland Empire, Santa Barbara, Ventura County, Central Coast, Silicon Valley, San Francisco Bay Area and Sacramento Valley, who represent the interests of the more than 1.55 million established women business owners and women entrepreneurs across all industries in California, we are pleased to **Sponsor and Support SB 826 (Jackson, Atkins, Leyva).**

Senate Bill 826 would provide for gender diverse representation on corporate boards by requiring each publicly-held corporation headquartered in California to have at least one woman on its board of directors by the end of 2019. Additionally, beginning July 2021, the bill requires a minimum of two women directors on boards with five directors and at least three women on boards with six or more directors.

California is the 5th largest economy in the world and should set an example globally for enlightened business practices. Therefore, California has a responsibility to ensure that women are included in board discussions and decisions that affect corporate actions and profitability. Research shows that corporations with female directors outperform companies that don't have women on boards. Yet, one-fourth of California's public companies still have no women directors.

California would lead the way as the first state in the union to have such a law. To become a corporate board member is serious business – and it's a serious business issue. Our state ranks No. 1 nationally in the number of woman-owned firms, who provide 1.9 million jobs, and generate $318.2 Billion in annual revenues. Women business owners are CEOs who bring diversity of thought, represent the majority of consumer purchasing power, and understand supplier/vendor relationships. As directors, we would be role models for aspiring women leaders inside corporations.

For these reasons and more, NAWBO California is sponsoring and supporting SB 826. If you have any questions, please contact NAWBO California's Legislative Advocate, Lori Kammerer on her cell at 916.716.5674, office at 916.441.5674 or email at lorikammerer@gmail.com.

Sincerely,

*Anne C. Staines*

Anne Staines
President, NAWBO California

cc:   Eileen Newhall, Staff Director, Senate Banking, Insurance and Financial Institutions
      Tim Conaghan, Republican Caucus Consultant, Senate Banking, Insurance and Financial Institutions

# BOARD GOVERNANCE RESEARCH

## WOMEN ON BOARDS OF CALIFORNIA COMPANIES
### 2017 REPORT KEY FINDINGS[1]

As of June 30, 2017, among the 445 Russell 3000 companies headquartered in California, only 15.5% of board seats were held by women and more than one-quarter (26.1%) had no female board members.

## Company Size



Number of Women on Boards
Comparison by Company Size*

- Smaller companies[1] are more likely to lack female directors.
  - Among the 50 California companies with the lowest revenues, only 8% of the board seats are held by women and nearly half (48%) of these boards have no female directors.
  - All 50 California companies with the highest revenues have at least one female director and 23% of their board seats are held by women.

## Industry

- Board gender diversity varies by industry.
  - California companies in the healthcare industry — nearly half which are biotechnology companies — are most likely to have no female directors.
  - Consumer Staples and Discretionary companies are least likely to have all male boards



% of Boards with No Female Directors
Comparison by Industry

| | |
|---|---|
| Real Estate (n=28) | 25.0% |
| Information Technology (n=142) | 23.2% |
| Industrials (n=29) | 27.6% |
| Health Care (n=124) | 33.9% |
| Financials (n=46) | 28.3% |
| Consumer Staples (n=10) | 10.0% |
| Consumer Discretionary (n=46) | 17.4% |

## Company Location

- The companies headquartered in San Francisco have the highest percentage of female directors, with 21.2% of board seats held by women.
- The companies headquartered in Orange, Los Angeles and San Diego counties have the lowest percentage of female directors, with only approximately 12% of board seats in each of these counties are held by women.

---

[1] Summarized from the Board Governance Research LLC (BGR) report entitled *Women on Boards of Public Companies Headquartered in California, 2017 Report* available at www.boardgovernanceresearch.com. Data analyzed by BGR, based on information filed by the companies with the Securities Exchange Commission and collected by Equilar Inc.

1

## SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS
## OPPOSE





























April 20, 2018

TO:             Members, Senate Committee on Judiciary

FROM:           California Chamber of Commerce
                BIOCOM
                Brea Chamber of Commerce
                California Ambulance Association
                California Association of Winegrape Growers
                California Business Properties Association
                California Grocers Association
                California Manufacturers and Technology Association
                California Restaurant Association
                California Trucking Association

Camarillo Chamber of Commerce
Cerritos Chamber of Commerce
Construction Employers' Association
Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce
Greater Riverside Chambers of Commerce
Lodi Chamber of Commerce
Long Beach Area Chamber of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
Simi Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Vacaville Chamber of Commerce
Wildomar Chamber of Commerce

SUBJECT:     SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS
             OPPOSE – AS AMENDED APRIL 3, 2018

The California Chamber of Commerce and the organizations listed above respectfully **OPPOSE SB 826**, as it requires a publicly held corporation with its principal executive offices in California to: (1) promote an individual to the Board of Directors simply on the basis of gender; (2) displace an existing member of the Board of Directors solely on the basis of gender; and (3) place gender as the main criteria of diversity over any other protected classification. It also likely violates the United States Constitution, California Constitution, and California's Civil Rights Act, which places California companies in a legal predicament.

We agree with you as to the intent of the bill, which is to create more diversity on boards of directors. However, we disagree with the manner in which **SB 826** seeks to accomplish this goal.

### SB 826 Only Considers One Element of Diversity:

Gender is an important aspect of diversity, as are the other protected classifications recognized under our laws. We are concerned that the mandate under SB 826 that focuses only on gender potentially elevates it as a priority over other aspects of diversity.

Many of our companies are making significant efforts to address and improve diversity in the workforce by focusing on their hiring practices, training, promotion, retention, etc. Our companies are not focused on only one particular classification, but rather all classifications. We believe this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity.

### SB 826 Violates the U.S. Constitution, California Constitution, and Civil Rights Law:

SB 826 places a phased-in, mandatory requirement regarding the number of female directors that must be on a board, with the threat of significant financial penalties if the company fails to achieve this number. This means that if there are two qualified candidates for a director position, one male and one female, SB 826 would require the company to choose the female candidate and deny the male candidate the position, based on gender. It further means that, if there are no vacancies on the board and the shareholders of the company do not approve of additional positions as SB 826 contemplates, the company will have to displace an existing board member, solely based upon gender.

California's Civil Code, Unruh Civil Rights, Section 51 explicitly states:

>    *"All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital*

196

status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

The California Constitution, Article I, Section 8 states:

"A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."

The United States Constitution states:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The U.S. Constitution, California Constitution, and California Civil Rights law all prohibit a business from engaging in the type of consideration SB 826 mandates. This places California corporations with executive offices in a legal predicament between satisfying the mandate of SB 826 without offending the U.S. Constitution, California Constitution, and Civil Rights law.

## SB 826 Conflicts with Corporations Code Section 2116 – Internal Affairs Doctrine:

"Corporations Code section 2116 codifies the modern view of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation. With certain exceptions, the law of the state of incorporation applies." *Vaughn v. LJ Intern., Inc.*, 174 Cal.App.4th 213, 226-227 (2009) (citations omitted)

"Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied." *Vaughn*, 174 Cal.App.4th at 226-227; *See also State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434 (2003)(explaining internal affairs doctrine and application).

SB 826 seeks to manage the directors of publicly traded corporations that have its principal executive offices in California yet are incorporated in another state. The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California. Such confusion and ambiguity will only lead to costly fines as proposed under the bill and potential litigation.

We are committed to workplace diversity, but for the reasons stated, we respectfully **OPPOSE SB 826.**

cc: The Honorable Hannah-Beth Jackson
Tom Dyer, Office of the Governor
Marisa Shea, Senate Committee on Judiciary
Tim Conaghan, Senate Republican Caucus
District Offices, Members, Senate Committee on Judiciary

## SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS
## OPPOSE



April 27, 2018

TO:         Members, Senate Committee on Appropriations

FROM:       California Chamber of Commerce
            Biocom
            Brea Chamber of Commerce
            California Ambulance Association
            California Association of Winegrape Growers
            California Business Properties Association
            California Grocers Association
            California Manufacturers and Technology Association
            California Restaurant Association
            California Trucking Association
            Camarillo Chamber of Commerce
            Cerritos Chamber of Commerce
            Construction Employers' Association

Garden Grove Chamber of Commerce
Gateway Chambers Alliance
Greater Coachella Valley Chamber of Commerce
Greater Riverside Chambers of Commerce
Lodi Chamber of Commerce
Long Beach Area Chamber of Commerce
Murrieta Chamber of Commerce
North Orange County Chamber
Official Police Garages of Los Angeles
Personal Insurance Federation of California
Rancho Cordova Chamber of Commerce
Redondo Beach Chamber of Commerce
Santa Maria Valley Chamber of Commerce
Simi Valley Chamber of Commerce
South Bay Association of Chambers of Commerce
Vacaville Chamber of Commerce
Wildomar Chamber of Commerce

**SUBJECT:** **SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS**
**OPPOSE – AS AMENDED APRIL 3, 2018**

The California Chamber of Commerce and the organizations listed above respectfully **OPPOSE SB 826**, as it requires a publicly held corporation with its principal executive offices in California to: (1) promote an individual to the Board of Directors simply on the basis of gender; (2) displace an existing member of the Board of Directors solely on the basis of gender; and (3) place gender as the main criteria of diversity over any other protected classification.   It also likely violates the United States Constitution, California Constitution, and California's Civil Rights Act, which places California companies in a legal predicament.

We agree with you as to the intent of the bill, which is to create more diversity on boards of directors. However, we disagree with the manner in which **SB 826** seeks to accomplish this goal.

## SB 826 Only Considers One Element of Diversity:

Gender is an important aspect of diversity, as are the other protected classifications recognized under our laws.  We are concerned that the mandate under **SB 826** that focuses only on gender potentially elevates it as a priority over other aspects of diversity.

Many of our companies are making significant efforts to address and improve diversity in the workforce by focusing on their hiring practices, training, promotion, retention, etc.  Our companies are not focused on only one particular classification, but rather all classifications.  We believe this comprehensive approach is more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity.

## SB 826 Violates the U.S. Constitution, California Constitution, and Civil Rights Law:

**SB 826** places a phased-in, mandatory requirement regarding the number of female directors that must be on a board, with the threat of significant financial penalties if the company fails to achieve this number.  This means that if there are two qualified candidates for a director position, one male and one female, **SB 826** would require the company to choose the female candidate and deny the male candidate the position, based on gender.  It further means that, if there are no vacancies on the board and the shareholders of the company do not approve of additional positions as **SB 826** contemplates, the company will have to displace an existing board member, solely based upon gender.

California's Civil Code, Unruh Civil Rights, Section 51 explicitly states:

*"All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."*

199

The California Constitution, Article I, Section 8 states:

"*A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin.*"

The United States Constitution states:

"*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*"

The U.S. Constitution, California Constitution, and California Civil Rights law all prohibit a business from engaging in the type of consideration **SB 826** mandates. This places California corporations with executive offices in a legal predicament between satisfying the mandate of **SB 826** without offending the U.S. Constitution, California Constitution, and Civil Rights law.

### SB 826 Conflicts with Corporations Code Section 2116 – Internal Affairs Doctrine:

"Corporations Code section 2116 codifies the modern view of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation. With certain exceptions, the law of the state of incorporation applies." *Vaughn v. LJ Intern., Inc.*, 174 Cal.App.4th 213, 226-227 (2009) (citations omitted)

"Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied." *Vaughn*, 174 Cal.App.4th at 226-227; *See also State Farm Mut. Auto. Ins. Co. v. Superior Court* , 114 Cal.App.4th 434 (2003)(explaining internal affairs doctrine and application).

**SB 826** seeks to manage the directors of publicly traded corporations that have its principal executive offices in California yet are incorporated in another state. The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California. Such confusion and ambiguity will only lead to costly fines as proposed under the bill and potential litigation.

We are committed to workplace diversity, but for the reasons stated, we respectfully **OPPOSE SB 826.**

cc:     The Honorable Hannah-Beth Jackson
        Tom Dyer, Office of the Governor
        Mark McKenzie, Senate Committee on Appropriations
        Jessica Billingsley, Senate Republican Caucus
        District Offices, Members, Senate Committee on Appropriations

SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS
OPPOSE



April 11, 2018

TO:         Members, Senate Committee on Banking and Financial Institutions

FROM:       California Chamber of Commerce
            Brea Chamber of Commerce
            California Ambulance Association
            California Association of Winegrape Growers
            California Business Properties Association
            California Grocers Association
            California Manufacturers and Technology Association
            California Restaurant Association
            California Trucking Association
            Camarillo Chamber of Commerce
            Cerritos Chamber of Commerce
            Garden Grove Chamber of Commerce
            Gateway Chambers Alliance
            Greater Coachella Valley Chamber of Commerce
            Greater Riverside Chambers of Commerce
            Murrieta Chamber of Commerce
            North Orange County Chamber
            Official Police Garages of Los Angeles
            Personal Insurance Federation of California
            Rancho Cordova Chamber of Commerce
            Redondo Beach Chamber of Commerce
            Santa Maria Valley Chamber of Commerce

South Bay Association of Chambers of Commerce
Wildomar Chamber of Commerce

**SUBJECT:**   **SB 826 (JACKSON) CORPORATIONS: BOARD OF DIRECTORS**
**OPPOSE – AS INTRODUCED JANUARY 3, 2018**

The California Chamber of Commerce and the organizations listed above respectfully **OPPOSE SB 826**,
as it requires a publicly held corporation with its principal executive offices in California to: (1) promote an
individual to the Board of Directors simply on the basis of gender; (2) displace an existing member of the
Board of Directors solely on the basis of gender; and (3) place gender as the main criteria of diversity over
any other protected classification.   It also likely violates the United States Constitution, California
Constitution, and California's Civil Rights Act, which places California companies in a legal predicament.

We agree with you as to the intent of the bill, which is to create more diversity on boards of directors.
However, we disagree with the manner in which **SB 826** seeks to accomplish this goal.

<u>SB 826 Only Considers One Element of Diversity</u>:

Gender is an important aspect of diversity, as are the other protected classifications recognized under our
laws.   We are concerned that the mandate under **SB 826** that focuses only on gender potentially elevates
it as a priority over other aspects of diversity.

Many of our companies are making significant efforts to address and improve diversity in the workforce by
focusing on their hiring practices, training, promotion, retention, etc.   Our companies are not focused on
only one particular classification, but rather all classifications.   We believe this comprehensive approach is
more productive in addressing diversity than a mandated quota that only focuses on one aspect of diversity.

<u>SB 826 Violates the U.S. Constitution, California Constitution, and Civil Rights Law</u>:

**SB 826** places a phased-in, mandatory requirement regarding the number of female directors that must be
on a board, with the threat of significant financial penalties if the company fails to achieve this number.   This
means that if there are two qualified candidates for a director position, one male and one female, **SB 826**
would require the company to choose the female candidate and deny the male candidate the position,
based on gender.   It further means that, if there are no vacancies on the board and the shareholders of the
company do not approve of additional positions as **SB 826** contemplates, the company will have to displace
an existing board member, solely based upon gender.

California's Civil Code, Unruh Civil Rights, Section 51 explicitly states:

> *"All persons within the jurisdiction of this state are free and equal, and no matter what their sex,*
> *race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital*
> *status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and*
> *equal accommodations, advantages, facilities, privileges, or services in all business establishments of*
> *every kind whatsoever."*

The California Constitution, Article I, Section 8 states:

> *"A person may not be disqualified from entering or pursuing a business, profession, vocation, or*
> *employment because of sex, race, creed, color, or national or ethnic origin."*

The United States Constitution states:

> *"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are*
> *citizens of the United States and of the state wherein they reside. No state shall make or enforce any law*
> *which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive*
> *any person of life, liberty, or property, without due process of law; nor deny to any person within its*
> *jurisdiction the equal protection of the laws."*

The U.S. Constitution, California Constitution, and California Civil Rights law all prohibit a business from
engaging in the type of consideration **SB 826** mandates.   This places California corporations with executive

offices in a legal predicament between satisfying the mandate of **SB 826** without offending the U.S. Constitution, California Constitution, and Civil Rights law.

## SB 826 Conflicts with Corporations Code Section 2116 – Internal Affairs Doctrine:

"Corporations Code section 2116 codifies the modern view of the common law doctrine, whereby a court will entertain an action involving the internal affairs of a foreign corporation. With certain exceptions, the law of the state of incorporation applies." *Vaughn v. LJ Intern., Inc.*, 174 Cal.App.4th 213, 226-227 (2009) (citations omitted)

"Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law. To the extent that they think about the matter, these persons would usually expect that their rights and duties with respect to the corporation would be determined by the local law of the state of incorporation. This state is also easy to identify, and thus the value of ease of application is attained when the local law of this state is applied." *Vaughn*, 174 Cal.App.4th at 226-227; *See also State Farm Mut. Auto. Ins. Co. v. Superior Court*, 114 Cal.App.4th 434 (2003)(explaining internal affairs doctrine and application).

**SB 826** seeks to manage the directors of publicly traded corporations that have its principal executive offices in California yet are incorporated in another state. The internal affairs doctrine appears to dictate that the laws of the state where the company is incorporated apply for these issues, not the law of where the principal executive offices are located, such as California. Such confusion and ambiguity will only lead to costly fines as proposed under the bill and potential litigation.

We are committed to workplace diversity, but for the reasons stated, we respectfully **OPPOSE SB 826.**

cc:     The Honorable Hannah-Beth Jackson
        Tom Dyer, Office of the Governor
        Eileen Newhall, Senate Committee on Banking and Financial Institutions
        Tim Conaghan, Senate Republican Caucus
        District Offices, Members, Senate Committee on Banking and Financial Institutions

37604

04/02/18  02:45 PM
RN 18 10280  PAGE 1
Substantive

## AMENDMENTS TO SENATE BILL NO. 826

### Amendment 1
On page 5, in line 28, strike out "Commencing December 31, 2019," and insert:

No later than the close of the 2019 calendar year,

### Amendment 2
On page 5, in line 28, after "held" insert:

domestic or foreign

### Amendment 3
On page 5, in line 29, strike out "with its principal place of business" and insert:

whose principal executive offices, according to the corporation's SEC 10-K form, are

### Amendment 4
On page 5, in line 30, strike out "woman director. If, by December", strike out lines 31 to 33, inclusive, and insert:

female director on its board. A corporation may increase the number of directors on its board to comply with this section.

### Amendment 5
On page 5, in line 34, strike out "Commencing July 1, 2021, every" and insert:

No later than the close of the 2021 calendar year, a

### Amendment 6
On page 5, in lines 34 and 35, strike out "corporation with its principal place of business" and insert:

domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are

### Amendment 7
On page 5, in line 37, strike out "authorized"



204

37604

04/02/18  02:45 PM
RN 18 10280  PAGE 2
Substantive

### Amendment 8
On page 5, in line 38, strike out "publicly held"

### Amendment 9
On page 5, in line 38, strike out "women" and insert:

female

### Amendment 10
On page 6, in line 1, strike out "authorized"

### Amendment 11
On page 6, in lines 1 and 2, strike out "publicly held"

### Amendment 12
On page 6, in line 2, strike out "women" and insert:

female

### Amendment 13
On page 6, in line 3, strike out "authorized"

### Amendment 14
On page 6, in line 4, strike out "publicly held"

### Amendment 15
On page 6, in line 4, strike out "woman" and insert:

female

37604

### Amendment 16
On page 6, between lines 5 and 6, insert:

(c) No later than July 1, 2019, the Secretary of State shall publish a report on its Internet Web site documenting the number of domestic and foreign corporations whose principal executive offices, according to the corporation's SEC 10-K form, are located in California and who have at least one female director.

### Amendment 17
On page 6, in line 6, strike out "(c) Commencing July 1, 2019," and insert:

(d) No later than March 1, 2020,

### Amendment 18
On page 6, in line 7, strike out "review publicly held corporations subject", strike out lines 8 to 10, inclusive, and insert:

publish a report on its Internet Web site regarding, at a minimum, all of the following:
(1) The number of corporations subject to this section that were in compliance with the requirements of this section during at least one point during the preceding calendar year.
(2) The number of publicly held corporations that moved their United States headquarters to California from another state or out of California into another state during the preceding calendar year.
(3) The number of publicly held corporations that were subject to this section during the preceding year, but are no longer publicly traded.

### Amendment 19
On page 6, in line 11, strike out "(d)" and insert:

(e)

### Amendment 20
On page 6, in line 12, strike out "a fine" and insert:

fines

### Amendment 21
On page 6, in line 14, strike out "in"

206

04/02/18  02:45 PM
RN 18 10280  PAGE 4
Substantive

37604

### Amendment 22
On page 6, in line 16, strike out "in"


### Amendment 23
On page 6, between lines 18 and 19, insert:

(2) For the purposes of this subdivision, each director seat required by this section to be held by a female, which is not held by a female during at least a portion of a calendar year, shall count as a violation.


### Amendment 24
On page 6, in line 19, strike out "(2)" and insert:

(3)


### Amendment 25
On page 6, in line 22, strike out "(e)" and insert:

(f)


### Amendment 26
On page 6, in line 23, strike out "the New", strike out lines 24 and 25 and insert:

a major United States stock exchange.


### Amendment 27
On page 6, in line 31, after the comma insert:

a


### Amendment 28
On page 6, in line 32, strike out "the", strike out lines 33 and 34 and insert:

a major United States stock exchange.

- 0 -