UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CREIGHTON MELAND, JR.,

            Plaintiff,

    v.

SHIRLEY N. WEBER, in her
official capacity as
Secretary of State of the
State of California,

            Defendant.

No.  2:19-cv-02288-JAM-AC

**ORDER DENYING PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

This lawsuit is one of multiple ongoing legal challenges to
California Senate Bill No. 826 ("SB 826").  See Crest v. Padilla,
Case No. 19STCV27651, 2019 WL 3371990 (Cal. Super. 2019);
Alliance for Fair Board Recruitment v. Weber, No. 2:21-cv-01951-
JAM-AC (E.D. Cal. 2021); National Center for Public Policy
Research v. Weber, No. 2:21-cv-02168-JAM-AC (E.D. Cal. 2021).
Signed into law by Governor Brown in 2018, SB 826 requires
publicly held corporations headquartered in the state to have at
least one woman on their board of directors.  Cal. Corp. Code
§ 301.3(a).  The minimum number is set to increase after December
31, 2021; specifically, while a corporation with four or fewer
directors will continue to be required to have at least one

1

female director, a corporation with five directors will be required to have at least two female directors, and a corporation with six or more directors will be required to have at least three female directors. Cal. Corp. Code § 301.3(b)(1)-(3). A corporation may increase the number of directors on its board to comply with these minimum gender diversity requirements. Cal. Corp. Code § 301.3(a). Additionally, the Secretary of State is authorized to impose fines upon violators. Cal. Corp. Code § 301.3(e)(1). A first violation may result in a $100,000 fine and any subsequent violations may result in $300,000 fines. Cal. Corp. Code § 301.3(e)(1)(B)-(C).

SB 826 has generated not only multiple lawsuits, but also vigorous public debate. However, it is not the province of this Court to assess the soundness of the policies behind SB 826 or of SB 826 itself. Rather the Court's exclusive and painstaking focus is on the unique constitutional issues before it.

In the present action, Creighton Meland, Jr., ("Plaintiff") a shareholder of a OSI Systems, Inc., ("OSI"), a publicly held corporation subject to SB 826, challenges the law on equal protection grounds. See Compl., ECF No. 1. Specifically, Plaintiff asserts SB 826 impairs his right to vote for OSI's board of directors in violation of the Equal Protection Clause of the Fourteenth Amendment. Id. Thus, Plaintiff seeks to enjoin SB 826. Mot. for Prelim Inj ("Mot."), ECF No. 23-1.

As noted at the October 19, 2021 hearing on Plaintiff's motion, this area of equal protection law is unsettled and requires the Court to address an issue of first impression: whether minimum gender diversity requirements violate the Equal

2

1  Protection Clause.  October 19, 2021 Hearing Transcript in <u>Meland</u>

2  <u>v. Weber</u>, No. 2:19-cv-02288-JAM-AC (E.D. Cal. 2019) (hereinafter

3  "Hrg. Trans.") at 33.  Because the law is unsettled, Plaintiff

4  here – or plaintiffs in one of the other ongoing lawsuits –  may

5  ultimately prevail in their constitutional challenge to SB 826.

6       But that ultimate question of SB 826's constitutionality is

7  not before the Court today.  Rather, a much narrower question is

8  presented: has Plaintiff carried his burden to show he is

9  entitled to a preliminary injunction?  After careful

10  consideration of the parties' briefs, supporting documents,

11  declarations and exhibits, and oral arguments, the relevant law,

12  and the record in this case, the Court concludes that he has not.

13  Accordingly, Plaintiff's motion for a preliminary injunction is

14  denied.

15                     II.   BACKGROUND

16       OSI is a publicly traded corporation headquartered in

17  Hawthorne, California and incorporated in Delaware.  Compl.

18  ¶¶ 17-18.  Thus, it must comply with SB 826.  <u>Id.</u> ¶ 20.  When

19  Plaintiff filed his complaint on November 13, 2019, OSI had a

20  seven-member, all-male board of directors.  <u>Id.</u> ¶ 21.  To comply

21  with SB 826, OSI had to elect a woman to the board by the end of

22  2019 and will have to elect two more by the end of 2021.  <u>Id.</u>

23  Plaintiff, a shareholder of OSI, votes on the members of the

24  board of directors.  <u>Id.</u> ¶ 22.  Plaintiff alleges SB 826's

25  minimum gender diversity requirements constitute a sex-based

26  classification that harms shareholder voting rights and violates

27  the Fourteenth Amendment.  <u>Id.</u> ¶¶ 29, 31.

28  ///

                              3

1    On December 12, 2019, OSI's shareholders elected a woman to

2    the board of directors.  Mot. at 4.  To remain in compliance with

3    SB 826, two more female board members must be added by the end of

4    2021.  Id.  Plaintiff plans to vote in the next election in

5    December 2021.  Id.

6    In April 2020, the Court granted Defendant's motion to

7    dismiss for lack of standing.  Order Granting Mot. to Dismiss,

8    ECF No. 16.  On June 21, 2021, the Ninth Circuit Court of Appeals

9    reversed and remanded and this Court reopened the case.  USCA

10   Opinion, ECF No. 21.  The Ninth Circuit held that Plaintiff had

11   standing because he "has plausibly alleged that SB 826 requires

12   or encourages him to discriminate on the basis of sex."  Meland

13   v. Weber, 2 F.4th 838, 842 (9th Cir. 2021).

14   Plaintiff then filed the present motion, arguing he is

15   likely to succeed on the merits, he is likely to face irreparable

16   harm absent an injunction, and the balance of harms and public

17   interest favors an injunction.  See generally Mot.  Secretary of

18   State, Shirley Weber ("Defendant"), opposed Plaintiff's motion.

19   Opp'n, ECF No. 32.  Plaintiff responded.  Reply, ECF No. 46.

20                         III.   OPINION

21       A.   Supplemental Filings

22   In addition to their memoranda in support of and in

23   opposition to Plaintiff's motion for a preliminary injunction,

24   both parties filed thousands of pages of "extracurricular"

25   documents. Hrg. Trans. At 2-9.  First, Defendant filed a request

26   for judicial notice, see Def.'s Request for Judicial Notice

27   ("RFJN"), ECF No. 33, which Plaintiff opposed, see Pl.'s Opp'n

28   to Def.'s RFJN, ECF No. 47, and Defendant then replied, see

                              4

Def.'s Reply to Pl.'s Opp'n to Def.'s RFJN, ECF No. 53.  For the
reasons set forth at the hearing, the Court denies Defendant's
request for judicial notice as to Exhibit 31 but grants the
request as to all other exhibits.  Hrg. Trans. at 4-6.  In doing
so, the Court takes judicial notice only of the existence of
these documents, not their substance including any disputed or
irrelevant facts within them.  Lee v. City of Los Angeles, 250
F.3d 668, 690 (9th Cir. 2001).

Defendant also filed evidentiary objections to Plaintiff's
declaration in support of his motion at ECF No. 23-2.  See
Def.'s Obj. to Meland Decl., ECF No. 34.  Plaintiff responded.
See Pl.'s Reply to Def.'s Obj., ECF No. 49.  The Court reviewed
these objections.  However, as the Court explained at the
hearing, courts self-police evidentiary issues and a formal
ruling is unnecessary to the determination of this motion.  Hrg.
Trans. at 6-7; see also Sandoval v. Cty. Of San Diego, 985 F.3d
657, 665 (9th Cir. Jan. 13, 2021) (citing to Burch v. Regents of
the University of California, 433 F.Supp.2d 1110, 1119) (E.D.
Cal. 2006)).  Thus, the Court declines to specifically rule on
each objection.

Next, Plaintiff filed evidentiary objections to Defendant's
declarations in support of her opposition to Plaintiff's motion.
See Pl.'s Obj. to Def.'s Decls., ECF No. 48.  Defendant
responded.  See Def.'s Reply to Pl.'s Obj., ECF No. 52.  For the
reasons set forth at hearing – and principally the generalized,
categorical nature of Plaintiff's objections – the Court
overrules Plaintiff's objections.  Hrg. Trans. at 7-8; see also
Sandoval, 985 F.3d at 666 (explaining why "generalized

1  objections" are insufficient).

2      Finally, Defendant raised objections to and moved to strike
3  (1) Plaintiff's supplemental declaration and (2) portions of
4  Plaintiff's reply brief.  See Def.'s Obj. to Meland Supp. Decl.
5  and Mot. to Strike, ECF No. 54.  The Court addressed this motion
6  at the hearing.  See Hrg. Trans. at 8-9.  Specifically, the
7  Court explained that Plaintiff improperly added new facts in his
8  reply brief and submitted a declaration presenting an entirely
9  new theory of standing, namely that he intends to run for OSI's
10  Board of Directors.  Id.  Because these materials advance a
11  theory not pled in the operative complaint, the Court grants
12  Defendant's motion to strike, and did not consider these new
13  materials in deciding the motion.

14      B.   Standing

15      As a threshold matter, Defendant renews her argument that
16  Plaintiff lacks standing, and that this case should therefore be
17  dismissed.  Opp'n at 8-11.  The Court granted Defendant's
18  previous motion to dismiss for lack of standing.  See Order
19  Granting Mot. to Dismiss at 13.  The Ninth Circuit reversed,
20  finding Plaintiff had standing because he "has plausibly alleged
21  that SB 826 requires or encourages him to discriminate on the
22  basis of sex."  Meland, 2 F.4th at 842.  According to Defendant,
23  new evidence alters the Ninth Circuit's standing analysis.

24      "If the court determines at any time that it lacks subject-
25  matter jurisdiction, the court must dismiss the action."  Fed. R.
26  Civ. P. 12(h)(3).  "The party invoking federal jurisdiction bears
27  the burden of establishing the elements of standing, and each
28  element must be supported in the same way as any other matter on

1  which the plaintiff bears the burden of proof, i.e., with the

2  manner and degree of evidence required at the successive stages

3  of the litigation." Meland, 2 F.4th at 843 (internal citations

4  and quotation marks omitted).

5        Defendant emphasizes that at the time the Ninth Circuit held

6  Plaintiff had standing, evidence concerning OSI's election

7  process and Plaintiff's voting history were not yet part of the

8  record.  Opp'n at 9.  Specifically, Defendant points to newly

9  discovered evidence that in both OSI director elections in which

10  Plaintiff has been eligible to vote, he voted against the sole

11  female OSI director nominee, with no impact on OSI or its

12  compliance with SB 826.  Id.  Further, Defendant highlights

13  Plaintiff owns only 65 of nearly 18 million (0.000363%) OSI

14  shares.  Id.  His vote therefore did not and cannot sway the

15  election in favor of, or against, any particular director.  Id.

16  It is "mathematically impossible." Id. at 10.  Because the

17  present record reflects Plaintiff is free "to withhold his vote,

18  vote in favor of any director, or decline to vote, without

19  impacting in any way who is elected to the Board," Defendant

20  contends Plaintiff has not demonstrated injury.  Id. at 9.

21        At the October hearing, the parties presented further oral

22  argument as to this issue, see Hrg. Trans. at 14-19, which the

23  Court considered along with the briefs and the Ninth Circuit's

24  opinion.  The Ninth Circuit decision controls.  See Meland, 2

25  F.4th at 844-848.  Specifically, the Ninth Circuit reasoned that

26  Plaintiff is injured because SB 826 "requires or encourages him"

27  to vote according to its dictates.  Id. at 846 (emphasis added).

28  Applying this reasoning, Plaintiff remains "encouraged" to

"discriminate on the basis of sex" regardless of how few shares he has or how he has voted in the past two elections.  Id. at 849.

In short, the Court finds the newly discovered evidence concerning OSI's election process and Plaintiff's voting history does not alter the Ninth Circuit's prior analysis.  Because the injury the Ninth Circuit identified remains, he continues to have standing.  Accordingly, Defendant's renewed request to dismiss the case for lack of standing is denied.

C.   Preliminary Injunction

1.   Legal Standard

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  An injunction may be granted only where the movant shows that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  Id. at 20.  The moving party bears the burden of proving these elements.  Id.

2.   Analysis

Plaintiff moves for a preliminary injunction on his sole claim for violation of the Fourteenth Amendment's Equal Protection Clause.  See generally Mot.

a.   Likelihood of Success on the Merits

As to the first Winter factor, Plaintiff contends he is likely to prevail on the merits because "SB 826's broad,

1   arbitrary, and perpetual quota is unconstitutional."  Mot. at 4.

2        Under the Equal Protection Clause of the Fourteenth

3   Amendment, sex-based classifications are subject to intermediate

4   scrutiny, which means they must be "supported by an 'exceedingly

5   persuasive justification' and substantially related to the

6   achievement of that underlying objective."  Associated Gen.

7   Contractors of Am., San Diego Chapter, Inc. v. California Dep't

8   of Transp., 713 F.3d 1187, 1195 (9th Cir. 2013) (internal

9   citations omitted).  This level of scrutiny applies regardless of

10  whether a classification "discriminates against males rather than

11  against females."  Mississippi Univ. for Women v. Hogan, 458 U.S.

12  718, 723 (1982).  The state has the burden of justifying the sex-

13  based classification.  Monterey Mech. Co. v. Wilson, 125 F.3d

14  702, 713 (9th Cir. 1997) (citation omitted).

15       Plaintiff contends SB 826 imposes a sex-based classification

16  which does not survive intermediate scrutiny.  Mot. at 4-12.

17  Defendant insists the opposite, arguing that intermediate

18  scrutiny is satisfied.  Opp'n at 11-23.  Beginning with the first

19  issue of whether SB 826 is supported by an exceedingly persuasive

20  justification, Defendant contends there are two such

21  justifications: 1) remedying past discrimination, and

22  2) advancing diversity on public boards.  Opp'n at 12-19.  As to

23  the first justification, Plaintiff concedes that remedying past

24  discrimination is an important government interest and has been

25  recognized as such by the Ninth Circuit.  Mot. at 7 (citing to

26  Associated Gen. Contractors of California, Inc. v. City and

27  County of San Francisco, 813 F.2d 922, 932 (9th Cir. 1987)).

28  However, Plaintiff challenges whether the state had sufficient

9

evidence of discrimination to support its conclusion that
remedial action was warranted here.  Mot. at 7-9; Reply at 6-9.

Emphasizing that disparities alone do not demonstrate
discrimination, Plaintiff claims the state relies only on raw
disparities to demonstrate women have suffered discrimination in
corporate board selection processes.  Mot. at 7-9.  Further,
according to Plaintiff, recent hiring trends undermine the
legislature's determination that sex discrimination exists and
must be remedied.  Id. at 9.  To support this argument, Plaintiff
relies heavily on the following footnote and studies contained
therein: "In 2018, 34% of new board hires across the country were
women. In the first half of 2019, that number rose to 45%.  See,
e.g., U.S. Board Diversity Trends in 2019, Harvard Law School
Forum on Corporate Governance, https://corpgov.law.harvard.edu/
2019/06/18/u-s-board-diversity-trendsin-2019/; Equilar Q3 2018
Gender Diversity Index, https://www.equilar.com/reports/61-
equilarq3-2018-gender-diversity-index.html.  And as of September
2019, women had increased their representation on corporate
boards for 7 straight quarters in a row. See Equilar Q2 2019
Gender Diversity Index, https://www.equilar.com/reports/67-q2-
2019-equilar-gender-diversityindex.html." Id. at 1, n.1.  But as
Defendant points out, the Harvard published analysis and the 2019
Q2 Equilar report reflect data regarding women who secured their
directorships in 2019, after SB 826 was enacted, and the data
concern new hires only, rather than overall board composition.
Opp'n at 16, n.6.  By contrast, Equilar's 2018 Q3 report, which
reflects data from July to September 2018 - that is, the data
immediately prior to SB 826's enactment on September 30, 2018 -

shows only a .3 percent increase in the percentage of women on Russell 3000 boards; and Equilar's 2019 Q2 report shows less than two years of growth in the percentage of women on Russell 3000 boards, thereby rendering it of limited value because director elections typically occur annually.  Id.  At oral argument, Plaintiff conceded these facts.  Hrg. Trans. at 27-28.  Because these additional facts water down the statistics Plaintiff relies on so heavily, the Court finds they do little to advance his challenge to the legislature's evidentiary basis for its discrimination determination.

To the contrary, the present record reflects an abundance of evidence supporting the legislature's determination that discrimination exists and thus the remedial purpose of SB 826. See Opp'n at 3-6.  Thus, the Court finds Defendant has made the requisite showing, namely that "[s]ome degree of discrimination [] occurred in a particular field before a gender-specific remedy may be instituted in the field."  Coral Constr. Co. v. King County, 941 F.2d 910, 932 (9th Cir. 1991) (overruled on other grounds by Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers, 941 F.3d 1195 (9th Cir. 2019)); see also Associated Gen. Contractors, 813 F.2d at 940 (explaining a "gender-conscious program" is only justified if "members of the gender benefitted by the classification actually suffer a disadvantage").  The "factual predicate for the [gender-conscious] program should be evaluated based upon all evidence presented to the district court whether such evidence was adduced before or after enactment of the [program]."  Coral Constr. Co., 941 F.2d at 920.  Here, Defendant has made such a showing, bringing forward legislative

1   history materials, statistical analyses, expert studies,

2   anecdotal evidence, and expert declarations.  See Opp'n at 3-6

3   (summarizing the evidence of sex discrimination).  This evidence

4   supports Defendant's contention that the "stark lack of women on

5   corporate boards is due to longstanding discrimination against

6   women in the selection of corporate director seats . . . and the

7   Legislature's purpose in enacting SB 826 is to remedy that

8   discrimination."  Id. at 16.

9       In response to the evidence Defendant brought forward in

10  opposition including numerous expert declarations, Plaintiff does

11  not offer any experts or other rebuttal evidence of his own.  See

12  generally Reply.  Instead, Plaintiff merely attempts to poke

13  holes in some of Defendant's expert declarations and studies.

14  Id. at 6-9.  This is insufficient to undermine Defendant's ample

15  evidence of discrimination.  The present record before this Court

16  therefore supports Defendant's first justification for SB 826 of

17  remedying past discrimination.

18      Along with remedying past discrimination, Defendant offers a

19  second justification for SB 826: advancing diversity on public

20  boards.  Opp'n at 16-19.  Specifically, Defendant contends SB 826

21  furthers an "important state interest in achieving economic

22  benefits and [the] State's long-term economic wellbeing advanced

23  by gender diverse corporate boards."  Id. at 16.  To support this

24  contention, Defendant cites to Grutter v. Bollinger, 539 U.S. 306

25  (2003), and Williams-Yulee v. Fla. Bar, 575 U.S. 433 (2015),

26  arguing that those cases reflect the Supreme Court's recognition

27  of "diversity and the benefits it brings" as an important and

28  indeed "compelling" government interest.  Id. at 17.  Publicly

held corporations, according to Defendant, are analogous to the institutions of higher education addressed in Grutter and the judiciary addressed in Williams-Yulee, for which the Supreme Court found an interest in diversity compelling because: "like those institutions, publicly held corporations hold a special position of influence within our society, are foundational for the long-term success and functioning of our society, and are entities created through statute." Id. (citing to Grutter, 539 U.S. at 328-333, and Williams-Yulee, 574 U.S. at 445-446).  But as Plaintiff points out, Defendant is asking the Court to extend Grutter and Williams-Yulee far beyond their facts and to recognize the diversity rationale in a novel context.  Reply at 2-3.

The Court declines to extend the diversity rationale for the first time to corporate boards for two principal reasons.  First, a close reading of those cases does not support such an extension.  For instance, in recognizing the diversity rationale, the Grutter Court noted it "defer[red] to the Law School's educational judgment that such diversity [was] essential to its educational mission" and held that the Law School had "a compelling interest in attaining a diverse student body."  539 U.S. at 328.  Thus, as this Court reads Grutter, the Supreme Court's recognition of the diversity rationale turned upon the special context of higher education.  See id. at 328-334.  Second and relatedly, since Grutter, the Supreme Court has declined to extend the diversity rationale to other contexts, even highly similar ones.  See e.g. Parents Involved in Community Schools v. Seattle School Dist. No. 1, 551 U.S. 701, 724-25 (2007).  In

13

1   Parents Involved, for example, the Supreme Court declined to

2   extend the diversity rationale to K-12 education, reasoning that

3   Grutter "relied upon considerations unique to institutions of

4   higher education" and the "special niche" universities occupy "in

5   our constitutional tradition."  551 U.S. at 724 (internal

6   citation omitted).  Given the Supreme Court's reluctance to

7   extend the diversity rationale even to other educational

8   settings, this Court also refuses to do so in a more dissimilar

9   context of corporate boards.

10      In the absence of any caselaw recognizing the diversity

11   rationale in this context and with all indications from the

12   Supreme Court pointing to the contrary, the Court does not find

13   Defendant's second justification for SB 826 is legally supported—

14   even it may be factually supported.  See Opp'n at 6-7

15   (summarizing the evidence of economic benefits and public

16   interests served by gender diversity).  However, as discussed

17   above, Defendant's first justification – remedying past

18   discrimination - is legally and factually supported.

19      Finding Defendant has established at least one important

20   government interest, the Court turns to the second prong of

21   intermediate scrutiny: whether SB 826 is substantially related to

22   the underlying objective of remedying past discrimination.  See

23   Associated Gen. Contractors, 713 F.3d at 1195.

24      Two Ninth Circuit cases are particularly instructive in how

25   to apply the "substantially related" standard here: Associated

26   Gen. Contractors, 813 F.2d 922, and Coral Constr. Co., 941 F.2d

27   ///

28   ///

14

910.[1]  Because they are among the only controlling caselaw
dealing specifically with equal protection challenges to gender-
based programs, these two cases merit discussion.

In Associated Gen. Contractors, plaintiff, a general
contractors' association, brought a facial challenge to a city
ordinance which gave preference to minority, women, and locally
owned businesses.  813 F.2d at 924.  Plaintiff argued, inter
alia, that the ordinance violated the Equal Protection Clause.
Id.  The district court upheld the ordinance, and the Ninth
Circuit affirmed as to the women-owned business preferences being
valid under the Equal Protection Clause.  Id. at 923, 941-942.
As relevant here, the Ninth Circuit discussed the ordinance's
treatment of the minority-owned businesses and women-owned
businesses separately, applying distinct standards of review.
Strict scrutiny applied to the ordinance's racial preferences for
minority-owned businesses, see id. at 928-939, while intermediate
scrutiny applied to the ordinance's gender preference for women-
owned businesses, see id. at 939-942.  In upholding the
ordinance's gender preference, the Ninth Circuit noted: "the
ordinance is unusual in the breadth of the subsidy it gives
women . . . the San Francisco ordinance gives women an advantage
in a large number of businesses and professions.  We have no
reason to believe that women are disadvantaged in each of the
many different industries covered by the ordinance."  Id. at 941.

---

[1] As noted at the hearing on Plaintiff's motion, these are the
only controlling Ninth Circuit precedent the parties and the
Court itself are aware of that specifically considered gender-
conscious programs, as opposed to race-conscious programs.  See
Hrg. Trans. at 21, 33.

15

In spite of its breadth, the Ninth Circuit upheld this gender preference for women-owned businesses because: "While the city's program may well be overinclusive, we believe it hews closely enough to the city's goal of compensating women for disadvantages they have suffered so as to survive a facial challenge.  Unlike racial classifications, which must be 'narrowly' tailored to the government's objective, there is no requirement that gender-based statutes be 'drawn as precisely as [they] might have been' . . . the WBE program is therefore <u>substantially</u> related to the city's important goal of compensating women for the disparate treatment they have suffered in the marketplace."  <u>Id.</u> at 941-942 (internal citations omitted) (emphasis in original).

Turning to <u>Coral Const. Co</u>, in that case the Ninth Circuit again addressed an equal protection challenge to the validity of a county's minority and women business enterprise set-aside program.  941 F.2d 910.  The district court granted summary judgment for the defendant-county upholding the set-aside program.  <u>Id.</u> at 915. On appeal, the Ninth Circuit analyzed the minority business set-aside separately from the women business set-aside as it did in <u>Associated Gen. Contractors</u>, applying strict scrutiny to the former, <u>see</u> 941 F.2d at 915-925, and intermediate scrutiny to the latter, <u>see id.</u> at 928-933.  The Ninth Circuit reversed as to the minority owned business program. <u>Id.</u> at 926.  But relying on <u>Associated Gen. Contractors</u>, the Ninth Circuit affirmed as to the women business set-aside, finding the gender preference survived a facial challenge.  <u>Id.</u> at 933.  As relevant here, the Ninth Circuit made clear: "unlike the strict standard of review applied to race-conscious programs,

16

intermediate scrutiny does not require any showing of
governmental involvement, active or passive, in the
discrimination it seeks to remedy . . . the '[g]overnment has the
broad power to assure that physical differences between men and
women are not translated into permanent handicaps, and that they
do not serve as a subterfuge for those who would exclude women
from participating fully in our economic system.'"  Id. at 932
(internal citation omitted).  Further, the Court found that:
"Like San Francisco [in Associated Gen. Contractors], King County
has a legitimate and important interest in remedying the many
disadvantages that confront women business owners.  Moreover, the
means chosen are substantially related to the objective.  The
utilization goals under both the set-aside and preference methods
are legitimate means of furthering the objective, and are not
unduly onerous.  Similarly, while King County's program, like
that in San Francisco, gives preference to women in all
industries contracting with the County, this alone is
insufficient to warrant invalidating the entire program."  Id.

    Here, similarly to the plaintiffs in Coral Const. Co. and
Associated Gen. Contractors, Plaintiff argues SB 826 is not
substantially related to its remedial purpose because (1) it is
arbitrary, rigid, and overbroad, and because (2) it lacks a
sunset provision.  Mot. at 10-12.  Beginning with arbitrariness,
Plaintiff challenges the state's chosen numerical requirements,
arguing the numbers were "seemingly picked at random."  Id. at
10.  But while this argument might carry the day for strict
scrutiny review, intermediate scrutiny is not so exacting.  See
Associated Gen. Contractors, 813 F.2d at 941-942 ("unlike racial

classifications, which must be 'narrowly' tailored to the government's objective, there is no requirement that gender-based statutes be 'drawn as precisely as [they] might have been.'") Instead, the question is whether there is a "direct, substantial relationship between the objective and the means chosen to accomplish the objective." Coral Const. Co., 941 F.2d at 931 (internal citation omitted). Here, the state has provided persuasive evidence that the numbers chosen are roughly in line with empirical research supporting the idea that a critical mass of women is required and that any number below risks creating a token factor. Opp'n at 19-22; see also Hrg. Trans. at 37. That is sufficient.

Next, as to rigidity, Plaintiff complains that SB 826 is a quota that "assign[s] a preordained or outcome determinative value to sex in all cases without exception." Mot. at 10. Plaintiff further argues such quotas are per se unconstitutional. Id.; see also Reply at 1-2. Defendant counters that it is not a quota, but merely "minimum gender diversity requirements." Opp'n at 1, 22. According to Defendant, the hallmark of a quota program is a rigid mandate that allocates a fixed resource among a defined pool of applicants, such as the contracting firms participating in a bidding process in Richmond v. J.A. Croson Co., 488 U.S. 469, 481 (1989) and in Monterey Mech., 125 F.3d at 704, or the students competing for limited seats in an incoming class in Regents of Univ. of Cal. v. Bakke, 438 U.S. 265 (1978). Opp'n at 22. By contrast, corporate board seats are not a fixed resource because more board seats may be added and therefore displacement of male directors is not an inevitable outcome;

hence, no quota.  Id.  In reply, Plaintiff doubles down on his argument that SB 826 is a quota as defined in Grutter, 539 U.S. at 335 ("Properly understood, a 'quota' is a program in which a certain fixed number or proportion of opportunities are 'reserved exclusively for certain . . . groups.'").  Reply at 1.  Further, Plaintiff points out that Bakke itself involved a minimum seat set aside rather than fixed percentages, and that when the school argued the policy was not a quota because it merely set a floor, Justice Powell ruled that such a "semantic distinction" was "beside the point."  Id. at 1-2 (citing to 438 U.S. at 289).

Yet whether SB 826 is or is not a quota is not the dispositive issue; even if it were a quota, no case brought forward by Plaintiff supports a per se rule that gender quotas are unconstitutional.  See Mot. at 10 (Collecting cases). Plaintiff acknowledged as much at the hearing.  Hrg. Trans. at 33.  Instead, those cases dealt with racial quotas.  Id.  In the absence of any controlling caselaw specific to gender quotas, this Court declines to apply the rigid rule Plaintiff asks it to, that gender quotas are per se unconstitutional.  The Court instead follows Coral Const. Co and Associated Gen. Contractors in applying intermediate scrutiny.  Under intermediate scrutiny, the Court's proper focus is whether SB 826's minimum gender diversity requirements substantially relate to its remedial purpose.  As discussed above, Defendant has brought forward significant evidence that it does.  See Opp'n at 19-22.  This is sufficient at this early stage of the case.

In short, while SB 826's rigid numerical requirements might be fatal under a strict scrutiny inquiry, they are not under

1    intermediate scrutiny.  Plaintiff's second argument as to

2    rigidity thus fails.

3         Third, Plaintiff contends SB 826 is not substantially

4    related to its remedial purpose due its overbreadth.  Mot. at 11.

5    According to Plaintiff, SB 826 is overboard because "the

6    disparities vary wildly from corporation to corporation" yet SB

7    826 does not take into consideration variations across industry,

8    corporation size, or location.  Id.  The state, Plaintiff argues,

9    was required to take into account these variations and to provide

10   evidence of discrimination in the relevant field, defined

11   narrowly.  Id.  But the Ninth Circuit rejected precisely the same

12   argument in Associated Gen. Contractors and Coral Const. Co.  See

13   813 F.2d at 941-942 ("While the city's program may well be

14   overinclusive . . . there is no requirement that gender-based

15   statutes be 'drawn as precisely as [they] might have been'"); 941

16   F.2d at 932 ("while King County's program, like that in San

17   Francisco, gives preference to women in all industries

18   contracting with the County, this alone is insufficient to

19   warrant invalidating the entire program.")  In both of those

20   cases, the Ninth Circuit noted that the challenged laws were

21   overinclusive, but that overbreadth alone was insufficient to

22   find they facially violate the Equal Protection Clause.  Id.

23   Plaintiff's overbreadth argument likewise fails.

24        Lastly, Plaintiff argues SB 826 fails intermediate scrutiny

25   for lack of a sunset provision.  Mot. at 12.  But Plaintiff

26   fails to support this contention with any controlling caselaw.

27   Instead, Plaintiff cites to three non-binding out-of-circuit

28   cases.  Id. (citing to Ensley Branch, N.A.A.C.P. v. Seibels, 31

1  F.3d 1548, 1581 (11th Cir. 1994); Back v. Carter, 933 F. Supp.

2  738, 759 (N.D. Ind. 1196); Mallory v. Harkness, 895 F. Supp.

3  1556, 1562 (S.D. Fla. 1995)).  These cases do not persuade the

4  Court to hold that the lack of a sunset provision renders SB 826

5  unconstitutional as a matter of law.  Accordingly, Plaintiff's

6  final argument fails.  The Court thus finds SB 826 is

7  substantially related to its remedial goal and likely to survive

8  a facial challenge.

9      For the reasons detailed above, Plaintiff did not carry his

10  burden on the first Winter factor.

11            b.   Remaining Winter Factors

12      Because Plaintiff has failed to demonstrate a likelihood of

13  success on the merits, the Court need not consider the remaining

14  elements.  See Garcia v. Google, Inc., 786 F.3d 733, 740 (9th

15  Cir. 2015) ("Because it is a threshold inquiry, when a plaintiff

16  has failed to show the likelihood of success on the merits, we

17  need not consider the remaining three Winter elements.").

18      The Court, however, briefly notes its reservations that a

19  preliminary injunction would serve the public interest.

20  Plaintiff argues it is always in the public interest to enjoin an

21  unconstitutional law.  Mot. at 13.  But for the reasons set forth

22  above, this law is not clearly unconstitutional.  On the other

23  side of the ledger, enjoining this law at this early stage may

24  deny highly qualified women who are eager and seeking to join

25  corporate boards the opportunities provided by SB 826.  The

26  legislature determined that the law was necessary because the

27  glass ceiling had been bolted shut with metal, shutting out

28  thousands of qualified women.  Hrg. Trans. at 51; Opp'n at 23.

1   The record before the Court today does not persuade the Court it

2   should override the legislature's determination and enjoin a law

3   that the evidence shows is clearly working.

4        That the law is working is underscored by the California

5   Women Lawyers' amicus brief.  See Amicus Brief, ECF No. 43.  As

6   the brief explains: "Governmental action such as SB 826 reduces

7   the negative effect of networks on female board membership by

8   forcing boards to look outside their networks to recruit female

9   directors.  And it is beginning to work.  Two years after SB

10  826's enactment, the early progress has been measurable,

11  significant, and has increased at a much faster pace since SB 826

12  was passed.  In 2016, just 208 corporate board seats were newly

13  filled by women; by about 2020 that number grew to 739; and, in

14  the first quarter of 2021, women filled 45% of public company

15  board appointments in California. Indeed, before the legislation,

16  29% of California companies that would have been subject to the

17  law "had all-male boards, [and] as of March 1, 2021, only 1.3%

18  . . . have all-male boards."  Id. at 15 (internal citations and

19  quotation marks omitted).  As such, enjoining a law that survives

20  intermediate scrutiny and that the legislature has determined is

21  necessary to effectuate much needed and long overdue cultural

22  change does not serve the public interest.

23                          IV.   ORDER

24       For the reasons set forth above, the Court DENIES

25  Plaintiff's motion for preliminary injunction.

26       IT IS SO ORDERED.

27  Dated: December 27, 2021

28

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE